# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAVERICK GAMING LLC,

2926 Montessouri Street,
Las Vegas, NV 89117,

              Plaintiff,

   v.

THE UNITED STATES OF AMERICA,

555 4th Street, NW, Washington, DC 20001,

UNITED STATES DEPARTMENT OF THE
INTERIOR,

1849 C Street, NW, Washington, DC 20240,

DEB HAALAND, in her official capacity as
Secretary of the Interior,

1849 C Street, NW, Washington, DC 20240,

BRYAN NEWLAND, in his official capacity
as Assistant Secretary – Indian Affairs,

1849 C Street, NW, Washington, DC 20240,

JAY INSLEE, in his official capacity as the
Governor of Washington,

Office of the Governor, P.O. Box 40002,
Olympia, WA 98504,

ROBERT FERGUSON, in his official capacity
as the Attorney General of Washington,

1125 Washington Street, SE, P.O. Box 40100,
Olympia, WA 98504,

BUD SIZEMORE, in his official capacity as
Chair of the Washington State Gambling
Commission,

P.O. Box 42400, Olympia, WA 98504,

Civil Action No. 1:22-cv-00068

JULIA PATTERSON, in her official capacity as Vice-Chair of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

ALICIA LEVY, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

KRISTINE REEVES, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SARAH LAWSON, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

STEVE CONWAY, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

JEFF HOLY, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SHELLEY KLOBA, in her official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

BRANDON VICK, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

TINA GRIFFIN, in her official capacity as
Interim Director of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

                Defendants.

## COMPLAINT

Plaintiff Maverick Gaming LLC, alleges as follows:

### PRELIMINARY STATEMENT

1.      Maverick Gaming LLC ("Maverick") owns and operates 19 cardrooms in the State of Washington.  Maverick also owns casinos in Colorado and Nevada, which offer a wide variety of games, including roulette, craps, sports betting, and dealer-assisted electronic table games. Maverick seeks to expand its gaming offerings in Washington to include additional games such as roulette, craps, sports betting, and dealer-assisted electronic table games, but it is unable to do so because Washington allows only Indian tribes to offer these forms of gaming within the State.

2.      Purporting to act pursuant to the Indian Gaming Regulatory Act ("IGRA" or "the Act")—a federal statute regulating gaming on Indian lands—Washington entered into compacts (the "Compacts") with 29 Indian tribes (the "Tribes").  The Compacts grant the Tribes the exclusive right to offer most forms of casino-style gaming (known as "class III" gaming under IGRA).  In 2020, Washington passed a new law giving federally recognized Indian tribes the exclusive right to offer sports betting, which had previously been omitted from the list of class III games that Indian tribes could offer.  In 2021, Washington amended its compacts with 16 Indian tribes (the "Compact Amendments") to permit them to offer sports betting at tribal casinos.

3.      At the same time, Washington's criminal laws prohibit any non-tribal entities, such as Maverick, from offering most forms of class III gaming in Washington, including roulette,

craps, and sports betting.  The U.S. Secretary of the Interior approved this discriminatory tribal gaming monopoly by allowing the Compacts and recent Compact Amendments to go into effect.

4.    With a monopoly over most forms of casino-style gaming, the Tribes have established expansive casino operations in Washington.  This class III gaming monopoly has been extremely profitable for the Tribes.  In 2017, even before they were permitted to offer sports betting, the Tribes' net receipts from class III gaming totaled approximately $2.56 billion.  But the monopoly prevents non-tribal entities from competing on an equal footing with the Tribes.

5.    Washington's tribal monopoly is inconsistent with IGRA and federal criminal statutes, which prohibit class III gaming activity by tribal casinos on Indian lands unless a State permits the same activity by non-tribal entities.   The tribal monopoly also violates the Constitution's guarantee of equal protection of the laws by irrationally and impermissibly discriminating on the basis of race and ancestry.  Neither a State nor the federal government may give Indian tribes the exclusive right to engage in commercial activities that have no relation to uniquely tribal interests.  And IGRA itself violates the Tenth Amendment by mandating that States enter into negotiations with Indian tribes over class III gaming compacts.

6.    Maverick brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706; IGRA; 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the United States Constitution to challenge the validity of Washington's tribal gaming monopoly and the Compacts and Compact Amendments that purport to authorize it.  For the reasons stated herein, and as set forth in greater detail below, Maverick prays that this Court: (1) declare that the Compacts and Compact Amendments violate federal law, and are therefore void; (2) vacate and set aside the Secretary of the Interior's approvals of the Compacts and Compact Amendments; (3) enjoin the state Defendants from continuing to administer the

Compacts and Compact Amendments; (4) declare that the enforcement of Washington's criminal gaming laws against Maverick violates the Constitution's guarantee of equal protection, and enjoin the same; (5) enjoin the execution of new compacts granting tribal class III gaming monopolies; and (6) award nominal damages.

## PARTIES

7.      Plaintiff Maverick Gaming LLC, is a Nevada limited liability company with a residence at 2926 Montessouri Street, Las Vegas, NV 89117.  Maverick Gaming owns and operates 19 cardrooms in Washington and owns several hotel/casinos in Nevada and Colorado. Maverick's casinos in Nevada and Colorado offer a variety of games, including roulette, craps, sports betting, and dealer-assisted electronic table games.  Maverick seeks to expand its gaming offerings in Washington to include the same forms of gaming that its casinos have successfully provided in Nevada and Colorado, but it is unable to proceed because of Washington's criminal prohibitions of most forms of class III gaming.

8.      Defendant the United States of America is sued as a party to a claim seeking declaratory and injunctive decrees against federal officers.  *See* 5 U.S.C. § 702.  The U.S. Attorney's Office for the District of Columbia is located at 555 4th Street, NW, Washington, DC 20001.

9.      Defendant the U.S. Department of the Interior is an executive department of the United States.  The U.S. Department of the Interior is headquartered at 1849 C Street, NW, Washington, DC 20240.

10.     Defendant Deb Haaland is the U.S. Secretary of the Interior and the official charged with approving tribal-state class III gaming compacts under IGRA.  25 U.S.C. § 2710(d)(3)(B),

(8)(A)–(D).  Secretary Haaland maintains an office at 1849 C Street, NW, Washington, DC 20240.

Maverick is suing the Secretary in her official capacity.

11.     Defendant Bryan Newland is the U.S. Assistant Secretary – Indian Affairs.  The

Assistant Secretary has been delegated the Secretary of the Interior's authority under IGRA to

approve tribal-state class III gaming compacts.  Assistant Secretary Newland maintains an office

at 1849 C Street, NW, Washington, DC 20240.  Maverick is suing the Assistant Secretary in his

official capacity.

12.     For ease of reference, Maverick refers to the Secretary of the Interior and the

Assistant Secretary – Indian Affairs collectively as "the Secretary of the Interior" or "the

Secretary."

13.     Defendant Jay Inslee is the Governor of Washington.  The Governor is authorized

by state statute to review and execute tribal-state class III gaming compacts on behalf of the State

once approved by the Washington State Gambling Commission.  Wash. Rev. Code § 9.46.360(6).

The Governor of Washington executed each of the tribal-state class III gaming Compacts and

Compact Amendments at issue in this case.  The Governor is also authorized by statute to request

that Washington's Attorney General initiate criminal investigations and proceedings.  *Id.*

§ 43.10.090.  Governor Inslee maintains an official address at Office of the Governor, P.O. Box

40002, Olympia, WA 98504.  Maverick is suing the Governor in his official capacity.

14.     Defendant Robert Ferguson is the Attorney General of Washington.  The Attorney

General is authorized by state statute to investigate, direct the prosecution of, and prosecute

violations of state criminal laws.  Wash. Rev. Code § 43.10.090.  The Attorney General's office is

located in Olympia, Washington.  Attorney General Ferguson maintains an official address at 1125

Washington Street, SE, P.O. Box 40100, Olympia, WA 98504.  Maverick is suing the Attorney General in his official capacity.

15.      Defendant Bud Sizemore is the Chair of the Washington State Gambling Commission (the "Commission").  The Commission is charged by state statute with implementing Washington's gaming policies.   Among other things, the Commission: (1) makes licensing decisions under Washington's gaming laws; (2) serves as a law-enforcement agency for the enforcement of Washington's gaming laws; (3) appoints a director charged with negotiating tribal-state gaming compacts and transmitting such compacts to the Commission; (4) reviews tribal-state compacts and votes on whether to return a compact to the director for further negotiation or to forward it to the Governor; and (5) is empowered to enforce the provisions of any tribal-state compact.  Wash. Rev. Code §§ 9.46.070, 9.46.075, 9.46.080, 9.46.140, 9.46.210, 9.46.360.  The Commission is headquartered in Lacey, Washington.  Chair Sizemore maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Sizemore in his official capacity.

16.      Defendant Julia Patterson is the Vice-Chair of the Washington State Gambling Commission.  Vice-Chair Patterson maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Patterson in her official capacity.

17.      Defendant Alicia Levy is a Commissioner of the Washington State Gambling Commission.  Commissioner Levy maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Levy in her official capacity.

18.      Defendant Kristine Reeves is a Commissioner of the Washington State Gambling Commission.  Commissioner Reeves maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Reeves in her official capacity.

19.     Defendant Sarah Lawson is a Commissioner of the Washington State Gambling Commission.  Commissioner Lawson maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Lawson in her official capacity.

20.     Defendant Steve Conway is an ex officio member of the Washington State Gambling Commission.  The ex officio members of the Commission are "deemed voting members of the gambling commission for the sole purpose of voting on proposed [tribal-state] compacts." Wash. Rev. Code § 9.46.360(4), (6).  Mr. Conway maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Conway in his official capacity.

21.     Defendant Jeff Holy is an ex officio member of the Washington State Gambling Commission.  Mr. Holy maintains an official address at P.O. Box 42400, Olympia, WA 98504. Maverick is suing Mr. Holy in his official capacity.

22.     Defendant Shelley Kloba is an ex officio member of the Washington State Gambling Commission.  Ms. Kloba maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Kloba in her official capacity.

23.     Defendant Brandon Vick is an ex officio member of the Washington State Gambling Commission.  Mr. Vick maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Vick in his official capacity.

24.     Defendant Tina Griffin is the Interim Director of the Washington State Gambling Commission.  The Director is appointed by the Commission and is tasked with carrying out the powers and duties of the Commission, issuing rules and regulations adopted by the Commission, supervising Commission employees, negotiating tribal-state gaming compacts, and transmitting proposed compacts to the Commission for a vote.  Wash. Rev. Code §§ 9.46.080, 9.46.360.  Ms.

Griffin maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Griffin in her official capacity.

<strong>JURISDICTION AND VENUE</strong>

25.     This action arises under the APA, IGRA, 42 U.S.C. § 1983, the Declaratory Judgment Act, and the U.S. Constitution.  This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 701–706 (review of agency action), and 28 U.S.C. § 1346(a)(2) (nominal damages).

26.     Venue is proper in this Court as to the federal Defendants under 28 U.S.C. § 1391(e)(1) because this is an action against officers and agencies of the United States, a substantial part of the events giving rise to the claims in this lawsuit occurred in this district, and no real property is involved in the action.  Venue is also proper under Section 1391(e)(1) because the federal Defendants perform their official duties in this district and therefore reside in this district.  *See Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 266 n.3 (7th Cir. 1978).

27.     Venue is proper in this Court as to the state Defendants under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this district.

<strong>FACTUAL ALLEGATIONS</strong>

**I.      The Indian Gaming Regulatory Act**

**A.      Background**

28.     The Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, provides a comprehensive scheme for regulating gaming on Indian lands.

29.     Congress enacted IGRA in 1988 in response to the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), which held that California could not regulate gaming on Indian lands within the State.

30.     IGRA established, for the first time, a federal framework governing gaming on "Indian lands"—defined principally as land "within the limits of any Indian reservation." 25 U.S.C. § 2703(4)(A).

31.     IGRA divides gaming activities into three classes—class I, class II, and class III—and imposes a different regulatory framework for each.

32.     Class I gaming encompasses low-stakes "social games" and "traditional forms of Indian gaming." 25 U.S.C. § 2703(6).

33.     Class II gaming covers bingo and lotto games, as well as non-banked card games that are either "explicitly authorized" by state law, or "not explicitly prohibited" and legally "played at any location in the State." 25 U.S.C. § 2703(7)(A)(i)–(ii). Non-banked card games are card games where players play against one another, rather than against the house. *Id.* § 2703(7)(B).

34.     Class III gaming—the type of gaming at issue here—is the most highly regulated under IGRA. It encompasses "all forms of gaming that are not class I gaming or class II gaming," including casino games (*e.g.*, craps and roulette), banked card games (*e.g.*, blackjack), pari-mutuel wagering (*e.g.*, wagering on horse races), lotteries, and sports betting. 25 U.S.C. § 2703(8); 25 C.F.R. § 502.4.

35.     IGRA allows tribes to conduct a particular class III gaming activity on Indian lands "only if" that activity: (1) is authorized by a federally approved tribal ordinance meeting certain statutory conditions; (2) is "located in a State that permits such gaming for any purpose by any

person, organization, or entity"; and (3) is "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . that is in effect."  25 U.S.C. § 2710(d)(1)(A)–(C).

36.     "Failure to comply with any one of the three conditions" renders class III gaming on Indian lands illegal under IGRA and "subject to applicable criminal statutes," including the Johnson Act, 15 U.S.C. § 1175 (prohibiting gambling devices in Indian country); the Organized Crime Control Act, 18 U.S.C. § 1955 (prohibiting illegal gambling businesses); and IGRA, 18 U.S.C. § 1166 (incorporating state-law gaming prohibitions into federal law and applying them on Indian lands).  *See Amador Cnty. v. Salazar*, 640 F.3d 373, 376–77 (D.C. Cir. 2011).

37.     IGRA's second and third requirements—that the class III gaming activity be located in a State that "permits such gaming" and conducted pursuant to a valid tribal-state compact—are central to this case.

**B.     IGRA's State-Permission Requirement**

38.     Congress designed IGRA's second condition of class III gaming—the state-permission requirement—to guarantee parity between tribal and non-tribal gaming, thereby "foster[ing] a consistency and uniformity in the manner in which laws regulating the conduct of gaming activities are applied."  S. Rep. No. 100-446, at 6 (1988).

39.     The state-permission requirement precludes tribal class III gaming monopolies by mandating that each form of class III gaming must remain illegal on Indian lands unless the State "permits" the same activity for non-tribal entities.  25 U.S.C. § 2710(d)(1)(B).  A State's purported authorization of class III gaming by Indian tribes alone does not suffice because a State cannot unilaterally "permit[]" class III gaming that federal law makes illegal without a valid tribal-state compact.  The state-permission requirement thus reflects Congress's express finding that Indian

tribes should be able to conduct a "gaming activity" on Indian lands only if the same activity "is conducted within a State." *Id.* § 2701(5).

40.     By the same token, the state-permission requirement prevents States from creating non-tribal class III gaming monopolies: If a State "permits" a form of class III gaming for non-tribal entities, IGRA gives Indian tribes within the State the right to negotiate a tribal-state compact authorizing the same form of class III gaming on Indian lands.  25 U.S.C. § 2710(d)(1)(B).  IGRA thus "provides that tribes are entitled to engage in all forms of Class III gaming that a state permits for other citizens." *Keweenaw Bay Indian Cmty. v. United States*, 136 F.3d 469, 473 (6th Cir. 1998).

41.     IGRA's state-permission requirement, and the parity and uniformity principles it embodies, are fundamental features of the statutory scheme.

42.     Class II gaming has a materially identical state-permission requirement:  Tribes cannot engage in class II gaming on Indian lands unless "such Indian gaming is located *within a State that permits such gaming*."  25 U.S.C. § 2710(b)(1)(A) (emphasis added).

43.     Class II non-banked card games likewise are prohibited on Indian lands unless the games are expressly authorized elsewhere in the State or are not expressly prohibited and "played at any location in the State." 25 U.S.C. § 2703(7)(A)(ii)(II).

44.     IGRA also waives application of the Johnson Act—a federal criminal statute prohibiting the possession of gambling devices in Indian country, 15 U.S.C. § 1175—only if the gambling devices are authorized under a tribal-state compact in "a State *in which gambling devices are legal*." 25 U.S.C. § 2710(d)(6)(A) (emphasis added).

45.     Congress omitted the state-permission requirement only with respect to class I gaming, and only because Congress left such gaming "within the exclusive jurisdiction of the Indian tribes."  25 U.S.C. § 2710(a)(1).

**C.     IGRA's Compacting Process**

46.     IGRA requires as a further condition of class III gaming on Indian lands that the gaming at issue be "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . that is in effect."  25 U.S.C. § 2710(d)(1)(C).

47.     To initiate the compacting process, IGRA provides that "[a]ny Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities."  25 U.S.C. § 2710(d)(3)(A).  "Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact."  *Id.*

48.     As Congress recognized, conditioning class III gaming on preexisting state-law permission for non-tribal entities to offer the same games allows States and tribes to "make use of existing State regulatory systems" in their "negotiated compacts."  S. Rep. No. 100-446, at 13–14 (1988).

49.     A tribal-state class III gaming compact thus may include, among other things, provisions addressing "the application of the criminal and civil laws and regulations of the . . . State that are directly related to, and necessary for, the licensing and regulation of" the class III gaming activity under negotiation.  25 U.S.C. § 2710(d)(3)(C)(i).

50.     IGRA's compact condition imposes two requirements: (1) the tribe must enter "a compact with the state"; and (2) "[t]he Secretary of the Interior must approve any such compact

before it may become effective." *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 136 (D.C. Cir. 2006).

51.     To satisfy the first requirement, the State must have authority to enter into the compact.  *See Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1556 (10th Cir. 1997).

52.     To satisfy the second requirement, the Secretary of the Interior must approve the compact and provide "notice of approval" in the Federal Register.  25 U.S.C. § 2710(d)(3)(B).

53.     The Secretary may either approve or disapprove the proposed compact within 45 days of its submission.  25 U.S.C. § 2710(d)(8)(C).

54.     If the Secretary does not approve or disapprove the compact within 45 days, the compact is "considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter."  25 U.S.C. § 2710(d)(8)(C).

55.     The Secretary must disapprove a compact if it violates: (1) any provision of IGRA, (2) "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," or (3) "the trust obligations of the United States to Indians."  25 U.S.C. § 2710(d)(8)(B); *see also Amador Cnty.*, 640 F.3d at 381 ("The Secretary must . . . disapprove a compact if it would violate any of [IGRA's] three limitations . . . .").

## II.     Washington Has Long Authorized Tribal Class III Gaming Monopolies

56.     Since the early 1990s, despite IGRA's prohibition of class III tribal gaming monopolies, Washington has authorized Indian tribes—and only Indian tribes—to engage in most forms of class III gaming, while subjecting non-tribal entities to criminal sanctions for the same activities.  Most recently, Washington has expanded that tribal monopoly to include sports betting.

## A.      Limited Non-Tribal Gaming In Washington

57.      It is illegal to offer most forms of gaming in Washington.  Washington makes it a crime to engage in "professional gambling," *see, e.g.*, Wash. Rev. Code § 9.46.222, which Washington defines to include: (1) unless acting as a player or in a manner authorized by law, "engag[ing] in conduct which materially aids any form of gambling activity"; (2) unless acting in a manner authorized by law, "pay[ing] a fee to participate in a card game, contest of chance, lottery, or other gambling activity"; (3) unless acting as a player or in a manner authorized by law, "knowingly accept[ing] or receiv[ing] money or other property pursuant to an agreement or understanding with any other person whereby he or she participates or is to participate in the proceeds of gambling activity"; (4) "engag[ing] in bookmaking"; (5) "conduct[ing] a lottery"; or (6) offering wagering on greyhound races, *id.* § 9.46.0269(1).

58.      Washington defines "gambling" as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome."  Wash. Rev. Code § 9.46.0237.

59.      Washington law specifies three degrees of illegal "professional gambling." Depending on the scale of the gaming operation, a person offering unauthorized gaming may be guilty of a gross misdemeanor, Wash. Rev. Code § 9.46.222(3), a class C felony, *id.* § 9.46.221(3), or a class B felony, *id.* § 9.46.220(3).

60.      Because Washington's definition of "professional gambling" excepts from its definition activities "authorized by this chapter," Wash. Rev. Code § 9.46.0269(1)(a)–(c), a business may offer gaming only if that form of gaming is expressly authorized by Washington law. *See also Illegal Activities*, Wash. State Gambling Comm'n, *available at*

https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities ("Gambling in Washington is illegal unless the activity is specifically authorized by state law.").

61.     Washington permits non-tribal entities to offer only limited types of gaming, such as raffles, bingo, card games, amusement games, pull-tabs, punchboards, sports pool boards, and fundraising events.  Wash. Rev. Code §§ 9.46.0305–.0361.

62.     None of these statutory exceptions authorizes non-tribal entities to engage in the full range of casino-style gaming in Washington.

63.     As a result, it is a crime in Washington for non-tribal entities to offer the vast majority of class III games, including roulette, craps, and sports betting.

64.     The Washington State Gambling Commission warns on its website, "Gambling in Washington is illegal unless the activity is specifically authorized by state law. . . .  Conducting illegal gambling activities may result in criminal charges being filed against you, your organization and/or its officers, and forfeiture of all property or money associated with the illegal gambling." *Illegal      Activities*,      Wash.      State      Gambling      Comm'n,      *available      at* https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities.

65.     The Washington State Gambling Commission also provides a form for people to "submit a tip regarding illegal [gambling] activities occurring in Washington," and the form includes a field for "[b]usiness [n]ame."  *Illegal Activities*, Wash. State Gambling Comm'n, *available  at*  https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities; *Submit a Tip*, Wash.    State    Gambling    Comm'n,    *available    at*    https://www.wsgc.wa.gov/regulation-enforcement/submit-tip.   The Washington State Gambling Commission routinely prosecutes enforcement actions against unlawful gambling operations.  *See Administrative Orders*, Wash.

State        Gambling        Comm'n,        *available        at*        https://www.wsgc.wa.gov/regulation-enforcement/administrative-orders (collecting administrative orders).

### B.   Washington's Tribal Gaming Monopoly

66.   In contrast to its broad criminal prohibition of class III casino-style gaming among non-tribal entities, since the early 1990s Washington has authorized Indian tribes located within the State to conduct a wide range of class III games.

67.   In 1992 Washington codified its process for negotiating tribal-state class III gaming compacts pursuant to IGRA.  Wash. Rev. Code § 9.46.360.

68.   The director of the Washington State Gambling Commission (or the director's designee) "shall negotiate compacts for class III gaming on behalf of the state with federally recognized Indian tribes in the state of Washington."  Wash. Rev. Code § 9.46.360(2).

69.   On reaching a tentative agreement with an Indian tribe on a proposed compact, "the director shall immediately transmit a copy of the proposed compact to all voting and ex officio members of the gambling commission" and to the two standing committees designated by the Washington House of Representatives and Senate, each of which shall "forward its respective comments to the gambling commission."  Wash. Rev. Code § 9.46.360(3), (5).  The four ex officio members of the gambling commission are voting members of the gambling commission for the sole purpose of voting on proposed tribal-state compacts.  *Id.* § 9.46.360(4).

70.   Within 45 days of receiving a proposed compact from the director, the gambling commission, including the four ex officio members, "shall vote on whether to return the proposed compact to the director with instructions for further negotiation or to forward the proposed compact to the governor for review and final execution."  Wash. Rev. Code § 9.46.360(6).

71.     The gambling commission "is authorized and empowered to enforce the provisions of any compact between a federally recognized Indian tribe and the state of Washington."  Wash. Rev. Code § 9.46.360(9).

72.     In its first tribal-state compact (executed with the Tulalip Tribes of Washington on August 2, 1991), Washington authorized the Tulalip Tribes of Washington to conduct a wide range of class III games that are illegal for non-tribal entities to offer, including roulette and craps.  *See* Tribal-State Compact for Class III Gaming Between the Tulalip Tribes of Washington and the State of Washington at 4–5 (Aug. 2, 1991) (hereinafter "Tulalip Compact"), *available at* https://www.wsgc.wa.gov/sites/default/files/public/searchable-compacts/tulalip/A-1991%20Compact%20%28s%29.pdf.

73.     Since 1991, Washington has entered into analogous compacts with "[a]ll 29 federally recognized tribes in Washington," giving the Tribes the exclusive right to offer certain class III games such as craps and roulette.  Gaming Compacts, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts (last visited Jan. 11, 2022).

74.     On March 25, 2020, Washington passed a new law, S.H.B. No. 2638, giving Indian tribes in the state a monopoly over sports betting.  *See* 2020 Wash. Legis. Serv. ch. 127.  It remains a crime for non-tribal entities to offer sports betting.  *See* Wash. Rev. Code §§ 9.46.220–.222.

75.     The law states:

It has long been the policy of this state to prohibit all forms and means of gambling except where carefully and specifically authorized and regulated.  The legislature intends to further this policy by authorizing sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington.

2020 Wash. Legis. Serv. ch. 127, § 1.

76.     The new act states that "[u]pon the request of a federally recognized Indian tribe or tribes in the state of Washington, the tribe's class III gaming compact may be amended . . . to authorize the tribe to conduct and operate sports wagering on its Indian lands. . . .  Sports wagering conducted pursuant to the gaming compact is a gambling activity authorized by this chapter." Wash. Rev. Code § 9.46.0364(1).   The statute makes clear that "[s]ports wagering conducted pursuant to the provisions of a class III gaming compact entered into by a tribe and the state pursuant to [Wash. Rev. Code § 9.46.360] is authorized bookmaking and is not subject to civil or criminal penalties pursuant to [Wash. Rev. Code § 9.46.225]." *Id.* § 9.46.0364(2).

77.     On July 6, 2021, Governor Inslee and 15 of the 29 federally recognized Indian tribes in Washington executed Compact Amendments to each of the Tribes' respective compacts to permit the Tribes to offer sports betting at their gaming facilities. *See, e.g.*, Third Amendment to the Tribal State Compact for Class III Gaming Between Confederated Tribes of the Colville Reservation and the State of Washington (July 6, 2021), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Colville%28D%29/2021-0706%20Colville_Amendment_3_%26_Appendix_S%28s%29.pdf.

78.     These Tribes are: the Confederated Tribes of the Colville Reservation; the Cowlitz Indian Tribe; the Jamestown S'Klallam Tribe; the Kalispel Tribe; the Lummi Nation; the Muckleshoot Indian Tribe; the Puyallup Tribe of Indians; the Shoalwater Bay Indian Tribe; the Snoqualmie Indian Tribe; the Spokane Tribe; the Squaxin Island Tribe; the Stillaguamish Tribe of Indians; the Suquamish Tribe; the Swinomish Indian Tribal Community; and the Tulalip Tribes of Washington.

79.     On September 1, 2021, the Secretary approved the compact amendments for the Spokane Tribe, the Cowlitz Indian Tribe, the Suquamish Tribe, the Snoqualmie Indian Tribe, the

Stillaguamish Tribe of Indians, the Squaxin Island Tribe, the Lummi Nation, the Puyallup Tribe of Indians, and the Tulalip Tribes of Washington.  *See* 86 Fed. Reg. 49,046, 49,046–47, 49,049–54 (Sept. 1, 2021).  On September 15, 2021, the Secretary approved the compact amendments for the Muckleshoot Indian Tribe, the Confederated Tribes of the Colville Reservation, the Shoalwater Bay Indian Tribe, and the Kalispel Tribe.  *See* 86 Fed. Reg. 51,370, 51,370, 51,373–74 (Sept. 15, 2021).  On October 22, 2021, the Secretary approved the compact amendment for the Swinomish Indian Tribal Community.  *See* 86 Fed. Reg. 58,685 (Oct. 22, 2021).  On December 28, 2021, the Secretary approved the compact amendment for the Jamestown S'Klallam Tribe.  *See* 86 Fed. Reg. 73,800 (Dec. 28, 2021).

80.     The sports-betting amendments have therefore been approved by the Secretary pursuant to IGRA, and that approval purports to authorize Washington's tribal sports-betting monopoly.  *See* 25 U.S.C. § 2710(d)(3)(B), (8)(A).

81.     On September 19, 2021, a sixteenth tribe, the Port Gamble S'Klallam Tribe, amended its compact to permit it to offer sports betting.  Memorandum of Incorporation of Most Favored Nation Amendments to the Tribal/State Compact Between the Port Gamble S'Klallam Tribe and the State of Washington (Sept. 19, 2021), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Port_Gamble%28X%29/Port_Gamble_Sports_Wagering_MOI_FINAL%28signed%29.pdf.   Because Washington had amended compacts with other tribes to permit sports betting, the Port Gamble S'Klallam Tribe exercised its right under its compact's most-favored nation section to unilaterally amend its compact to permit sports betting as well.  *Id.* at 1.  On December 28, 2021, the Secretary approved the Port Gamble S'Klallam Tribe's Memorandum of Incorporation.  *See* 86 Fed. Reg. 73,800 (Dec. 28, 2021).

20

82.     Because the terms of each sports-betting amendment are materially identical, the compact amendment between Washington and the Confederated Tribes of the Colville Reservation is used for reference throughout this complaint.  *See* Third Amendment to the Tribal-State Compact for Class III Gaming Between Confederated Tribes of the Colville Reservation and the State of Washington (July 6, 2021) (hereinafter "Colville Compact Amendment"), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Colville%28D%29/2021-0706%20Colville_Amendment_3_%26_Appendix_S%28s%29.pdf.

83.     The Compact Amendments add "Sports Wagering" to the list of class III gaming activities that the Tribes are permitted to offer, subject to a new Appendix S prescribing certain conditions.  Colville Compact Amendment at 2.

84.     The Compact Amendments require each of the Tribes to contribute their share of a "Start-Up Costs fee," which "includes the actual costs incurred by the State Gaming Agency for negotiations, rule development, regulatory program development, training, and similar activities necessary to implement Sports Wagering."  Colville Compact Amendment at 3.

85.     The Compact Amendments also provide that the Tribes' sports-betting net win will be included in the Tribes' total net gaming revenues, of which the Tribes are required to pay 0.13% to Washington for "problem gambling education, awareness, and treatment in the State of Washington."   Colville Compact Amendment, Appendix S, § 8.1; First Amendment to the Tribal/State Compact for Class III Gaming Between the Confederated Tribes of the Colville Reservation and the State of Washington, Appendix X2, §§ 14.4, 14.6 (Mar. 30, 2007), *available at*         https://www.wsgc.wa.gov/sites/default/files/public/searchable-compacts/colville/D-2007%20Amendment%201%20%28App%20X2%29%20%28s%29.pdf.

C.      **The Tribes' Class III Gaming Operations**

86.      The Tribes currently operate 29 casinos on Indian lands in Washington.  *See Casino Locations*, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/casino-locations.  Of these 29 casinos, 22 are governed by compacts that Washington and the Tribes have amended to permit sports betting.  *Id.*; Gaming Compacts, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts.

87.      These casinos offer a range of class III games that are illegal for non-tribal entities to offer in Washington, including roulette, craps, and sports betting (among other games).

88.      In 2017, the Tribes' net receipts from class III gaming were approximately $2.56 billion.  Tribal Community Contributions at 14, Washington State Gambling Commission (Sept. 12, 2019), *available at* https://wsgc.wa.gov/sites/default/files/19%20Sept%2012%20-%20Tribal%20Contributions.pdf?_ga=2.85132313.104568771.1636491701-808950696.1634221088.  The Tribes' net receipts were approximately $2.42 billion in 2016 and approximately $1.98 billion in 2015.  *See id.* at 14–15.

89.      There are no non-tribal casinos in Washington that offer the full range of class III games that Washington permits tribal casinos to offer.

90.      No non-tribal casinos in Washington offer roulette, craps, or sports betting.

III.    **Washington's Tribal Gaming Monopoly Violates Federal Law**

A.      **The Federal Defendants' Approval Of Washington's Sports-Wagering Compact Amendments Violated Federal Law**

91.      The Secretary of the Interior's decision to approve the Compact Amendments was not in accordance with IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, or the equal-protection component of the Fifth Amendment's Due Process Clause, U.S. Const. amend. V, or the Tenth Amendment, *id.* amend. X.

92.     IGRA requires the Secretary of the Interior to disapprove any tribal-state class III gaming compact that violates: (1) any provision of IGRA, (2) "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," or (3) "the trust obligations of the United States to Indians."  25 U.S.C. § 2710(d)(8)(B); *see also Amador Cnty.*, 640 F.3d at 383.

93.     The Secretary of the Interior was obligated to disapprove the Compact Amendments for three independent reasons.

94.     *First*, the Secretary of the Interior was obligated to disapprove the Compact Amendments because they purport to authorize tribal class III gaming that violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

95.     IGRA provides that class III gaming on Indian lands is lawful "only if," among other things, the class III gaming activity is "located in a State that permits such gaming for any purpose by any person, organization, or entity" and is conducted in conformance with a tribal-state compact "that is in effect."  25 U.S.C. § 2710(d)(1)(B)–(C).

96.     Failure to comply with either condition renders class III gaming on Indian lands illegal under IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.  *See Pueblo of Santa Ana*, 104 F.3d at 1552.

97.     IGRA's state-permission requirement prohibits tribal class III gaming monopolies by ensuring that each class III gaming activity remains illegal on Indian lands unless a State "permits" the same class III gaming activity by non-tribal entities.

98.     IGRA's state-permission requirement has not been satisfied in Washington for sports betting because the State criminally prohibits such gaming by any non-tribal entities. *Compare* Wash. Rev. Code § 9.46.0364, *with id.* §§ 9.46.220–.222.

99.     Washington's grant of a right to only "a federally recognized Indian tribe or tribes in the state of Washington" to "operate sports wagering on its Indian lands," Wash. Rev. Code § 9.46.0364, violates IGRA's state-permission requirement because Washington prohibits any non-tribal entities from offering sports betting, and thereby does not "permit[] such gaming for any purpose by any person, organization, or entity" as IGRA requires, 25 U.S.C. § 2710(d)(1)(B).

100.    Neither the Compact Amendments nor any other state law can unilaterally "permit"—that is, authorize or legalize—sports betting solely on Indian lands because IGRA makes clear that such authorization can occur only through IGRA's statutory compacting process.

101.    Because Washington has not "permit[ted]" sports betting within the meaning of IGRA, 25 U.S.C. § 2710(d)(1)(B), sports betting remains illegal on Indian lands in Washington under IGRA and applicable federal criminal statutes.  *See* 25 U.S.C. § 2710(d)(1); 15 U.S.C. § 1175; 18 U.S.C. § 1955; 18 U.S.C. § 1166.

102.    Because the Compact Amendments purport to authorize the Tribes to offer class III gaming in Washington that federal law prohibits, the Compact Amendments violate federal law and are void.

103.    Because the Compact Amendments violate federal law, the Governor of Washington had no authority to "enter[] into" them within the meaning of IGRA.  25 U.S.C. § 2710(d)(1)(C).

104.    Because the Compact Amendments violate federal law and were not validly entered into, the Secretary was obligated to disapprove the Compact Amendments.  25 U.S.C. § 2710(d)(8)(B)(i).

105.   By instead approving the Compact Amendments and purporting to authorize illegal tribal class III gaming, the Secretary violated IGRA.  *See* 15 U.S.C. § 1175; 18 U.S.C. § 1955; 18 U.S.C. § 1166.

106.   *Second*, the Secretary also was required to disapprove the Compact Amendments under IGRA because they violate the Constitution's guarantee of equal protection.

107.   The Constitution's guarantee of equal protection mandates the equal treatment of people of all races and ancestries without discrimination or preference.  *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989).

108.   The Compact Amendments discriminate on the basis of race and ancestry, in violation of equal-protection principles, by granting monopolies to Washington Indian tribes over sports betting.

109.   By executing the Compact Amendments, Washington has purported to grant the Tribes a right to offer sports betting, an activity that Washington permits only tribal entities to offer.  *See* Wash. Rev. Code § 9.46.0364.

110.   At the same time, Washington criminally prohibits any entities other than those affiliated with Washington Indian tribes from offering sports betting in Washington.  Wash. Rev. Code §§ 9.46.220–.222.

111.   The Compact Amendments' grant of sports-betting monopolies to Washington Indian tribes is a racial and ancestral classification, as membership in a Washington Indian tribe depends on lineal descent from historical tribal rolls and often also a minimum blood quantum.

112.   The Compact Amendments' race-based preference for Indian tribal sports betting is subject to strict scrutiny.  *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

113.    The Compact Amendments' race-based preference does not fall within the narrow exception outlined in *Morton v. Mancari*, 417 U.S. 535 (1974), because Congress has not authorized and could not authorize a State to grant Indian tribes a monopoly over a commercial activity that is unrelated to uniquely Indian interests, *see Williams v. Babbitt*, 115 F.3d 657, 665 (9th Cir. 1997).

114.    The Compact Amendments' race-based preference for Indian tribal sports betting cannot survive strict scrutiny or even rational-basis review because it is unrelated to the furtherance of Congress's trust obligation to Indian tribes.

115.    Thus, the Compact Amendments' race-based preference for Indian tribal sports betting violates the Constitution's guarantee of equal protection.

116.    Because the Compact Amendments violate equal protection, the Governor of Washington lacked authority to "enter[] into" them within the meaning of IGRA.  25 U.S.C. § 2710(d)(1)(C).

117.    Because the Compact Amendments violate equal protection and were not validly entered into, the Secretary was required to disapprove the Compact Amendments.  25 U.S.C. § 2710(d)(8)(B)(ii).

118.    By instead approving the Compact Amendments and purporting to authorize a violation of equal protection, the Secretary violated IGRA.

119.    In addition to violating IGRA, the Secretary's approval independently violated the equal-protection component of the Fifth Amendment's Due Process Clause because it blessed and facilitated Washington's unconstitutional race-based preference for Indian tribal sports betting.

120.    *Third*, the Secretary also was required to disapprove the Compact Amendments because the process by which they were executed violated the Tenth Amendment.

121.    "The legislative powers granted to Congress are sizable, but they are not unlimited."  *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018).  "[C]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States."  *Id.*

122.    IGRA's state-negotiation mandate issues a "direct order" to the States: IGRA directs that upon receiving a request from an Indian tribe to negotiate a class III gaming compact, "the State *shall* negotiate with the Indian tribe in good faith to enter into such a compact."  25 U.S.C. § 2710(d)(3)(A) (emphasis added).  That sort of "direct order" violates the Constitution's anti-commandeering principle, and renders the process for entering into the Compact Amendments unlawful.  *See Murphy*, 138 S. Ct. at 1476.

123.    This state-negotiation mandate is not severable from the remainder of the Act.  An unconstitutional provision is not severable when "the statute created in its absence is legislation that Congress would not have enacted."  *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987).  The compacting process is IGRA's centerpiece, and the state-negotiation mandate is what ensures that process takes place.  Congress would not have enacted IGRA without this central requirement.

124.    Because the Compact Amendments violated the Tenth Amendment and were not validly entered into, the Secretary was required to disapprove the Compact Amendments.  25 U.S.C. § 2710(d)(8)(B)(ii).

125.    By instead approving the Compact Amendments and purporting to authorize a violation of the Tenth Amendment, the Secretary violated IGRA.

126.    In addition, because the state-negotiation mandate is not severable from the remainder of the Act, none of IGRA's provisions can stand, and the Secretary lacked any authority to approve the Compact Amendments.

**B.    The State Defendants' Execution And Administration Of Washington's Tribal-State Class III Gaming Compacts Violates Federal Law**

127.    The 2021 Compact Amendments giving the Tribes a monopoly over sports betting violate IGRA, federal criminal gaming statutes, the Constitution's guarantee of equal protection, and the Tenth Amendment.

128.    All of Washington's tribal-state Compacts—not just the recent Compact Amendments concerning sports betting—violate the Constitution's guarantee of equal protection because they give the Tribes a monopoly over many class III games, such as (but not limited to) roulette and craps, that non-tribal entities are criminally prohibited from offering. *See, e.g.*, Tulalip Compact at 4–5.

129.    All of the tribal-state Compacts also violate the Tenth Amendment because the process for entering into them was undertaken in violation of the Constitution's anti-commandeering principle.

130.    The Governor of Washington executed the Compacts and Compact Amendments, rendering them approved as a matter of state law.

131.    The members of the Washington State Gambling Commission continue to administer the Compacts and Compact Amendments.

132.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166, and aid and abet violations of the same, 18 U.S.C. § 2, by purporting to authorize and by facilitating tribal class III gaming that these federal statutes prohibit.

133.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Constitution's guarantee of equal protection by purporting to authorize and by facilitating Washington's race-based preference for tribal gaming.

134.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Tenth Amendment by continuing to administer agreements that were not lawfully entered into.

### C.    Washington's Criminal Prohibition Of Types Of Class III Gaming That It Permits Only Indian Tribes To Offer Violates Federal Law

135.    Washington criminally prohibits most forms of class III gaming, including (but not limited to) roulette, craps, and sports betting.   *See* Wash. Rev. Code §§ 9.46.220–.222; *id.* §§ 9.46.0305–.0361.

136.    In the Compacts and Compact Amendments, however, Washington has purported to exempt the Tribes from the application of its criminal prohibitions on these forms of class III gaming.   *See* Wash. Rev. Code §§ 9.46.360, 9.46.225; *see also id.* § 9.46.0364(2).

137.    Because the application of Washington's criminal class III gaming prohibitions turns on the race and ancestry of the offender, Washington's continued enforcement of its class III gaming prohibitions against non-tribal entities violates the Constitution's guarantee of equal protection.

138.    The Attorney General of Washington is authorized by state statute to investigate, direct the prosecution of, and prosecute violations of state criminal laws.   Wash. Rev. Code § 43.10.090.   The Governor of Washington is authorized to request that the Attorney General initiate criminal investigations and proceedings.   *Id.*   The members of the Washington State Gambling Commission are charged with investigating and enforcing Washington's criminal gaming laws.   Wash. Rev. Code §§ 9.46.140, 9.46.210(3).

**IV.     Maverick's Injuries Caused By Washington's Tribal Gaming Monopoly**

139.    Maverick currently owns and operates 19 cardrooms in Washington.  Maverick also owns casinos in Nevada and Colorado, which offer a range of class III gaming, including roulette, craps, sports betting, and dealer-assisted electronic table games.

140.    Sports betting in the United States has seen extraordinary growth over the past several years.[1]  The American Gaming Association reported that sports betting generated more than $1.5 billion in revenue in 2020, which represented a nearly 69% year-over-year growth rate.[2] Revenue from sports betting will continue to rise as consumer demand grows around the country.[3]

141.    With sports betting becoming increasingly popular, Maverick would like to offer that form of gaming to the patrons of its Washington cardrooms.  Maverick would also like to offer in Washington the kinds of class III games that its Nevada and Colorado casinos offer, including, but not limited to, roulette, craps, and dealer-assisted electronic table games.[4]  It would be economically viable and profitable for Maverick to offer games like roulette, craps, sports betting, and dealer-assisted electronic table games in Washington and Maverick seeks to do so, but

---

[1]   *See, e.g.*, David Purdum, *Sports Betting's Growth in U.S. 'Extraordinary'*, ESPN (May 14, 2020),          https://www.espn.com/chalk/story/_/id/29174799/sports-betting-growth-us-extraordinary ("More than $20 billion has been bet with U.S. sportsbooks since the Supreme Court struck down the Professional and Amateur Sports Protection Act of 1992 on May 14, 2018.").

[2]   *See Commercial Gaming Revenue Tracker: 2020 Fourth Quarter*, Am. Gaming Ass'n, https://www.americangaming.org/wp-content/uploads/2021/02/Q4-Email-PDF.pdf          (last visited Jan. 11, 2022).

[3]   *See id.*

[4]   This Complaint often lists roulette, craps, and sports betting as examples of the types of class III games that Maverick wants to offer in Washington.  In doing so, Maverick does not provide an exhaustive list of the class III games it wishes to offer but rather a few illustrative examples. In this action, Maverick seeks to vindicate its right to offer the full suite of class III games that Washington currently permits only Indian tribes to offer.

Maverick is unable to proceed because of Washington's criminal prohibition of most forms of class III gaming unless conducted at an authorized tribal gaming facility. *See* Wash. Rev. Code §§ 9.46.0364, 9.46.0368, 9.46.220–.222.

142.   Because the Tribes can offer these games (including roulette, craps, sports betting, and dealer-assisted electronic table games), but Maverick cannot, Maverick suffers competitive injury with tribal casinos.   That injury includes increased advertising expenses, increased promotional expenses, and increased entertainment expenses that Maverick must undertake in order to compete with tribal casinos.   It also includes lost revenue from customers who would frequent Maverick's cardrooms if they offered the class III games that they are currently prohibited from offering, but who instead frequent tribal casinos.   Maverick also suffers a loss of goodwill by failing to offer the same set of products as its tribal competitors.

143.   The Supreme Court "routinely recognizes probable economic injury resulting from [governmental actions] that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement] . . . .   It follows logically that any . . . petitioner who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test." *Clinton v. City of N.Y.*, 524 U.S. 417, 432–33 (1998) (alterations in original) (quoting 3 K. Davis & R. Pierce, Administrative Law Treatise 13–14 (3d ed. 1994)).

144.   Maverick competes with other casinos, including tribal casinos, to offer the best and most attractive selection of games allowed by law.

145.   But for Washington's tribal gaming monopoly, Maverick is able, ready, and prepared to expand its gaming offerings in Washington to include a wide variety of class III games, including (but not limited to) roulette, craps, sports betting, and dealer-assisted electronic table games.

146.     Maverick has access to the capital needed to offer a wide variety of class III games in Washington, including roulette, craps, and sports betting, and to finance any additional facilities or purchase any necessary equipment.

147.     As a company that predominantly operates in Washington, Maverick is familiar with the requirements of Washington's gaming laws and regulations.

148.     Maverick would earn significant additional revenue if it could offer games such as craps, roulette, and sports betting, and it would also earn additional revenue if tribal casinos could *not* offer such games exclusively.

149.     Maverick's successful class III gaming operations in Colorado and Nevada demonstrate that it has the necessary background and experience to offer additional class III games like roulette, craps, and sports betting in Washington.

150.     Maverick is unable to take advantage of the commercial opportunities it has identified because Washington criminally prohibits most class III games if offered by non-tribal entities.

151.     Due to the threat of enforcement of Washington's criminal laws, which prohibit most forms of class III gaming, Maverick is unable to offer the same forms of class III gaming as the Tribes.  As a result, Maverick cannot establish or acquire gaming operations in Washington that can effectively compete with the Tribes' operations.

152.     The Defendants' unlawful execution, approval, and administration of the Compacts and Compact Amendments also alters competitive conditions in a way that is unfavorable to Maverick.

153.     The Secretary's approval of the Compacts and the Compact Amendments has facilitated and continues to facilitate the Tribes' unlawful class III gaming activities.  Those

activities harm Maverick by making it more difficult for Maverick to grow its successful gaming offerings in Washington because Maverick cannot compete on an equal footing with the Tribes' much broader gaming offerings.

154.    The Secretary's approval of the Compacts and the Compact Amendments has resulted in the deprivation of Maverick's substantive rights under constitutional equal-protection principles and IGRA to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race and ancestry.

155.    If Washington did not limit most forms of class III gaming to tribal casinos, Maverick would offer a wide range of class III games (including roulette, craps, and sports betting) at its Washington cardrooms and increase its commercial casino revenue, and it would no longer suffer the violation of its equal-protection rights.

156.    If Washington applied its prohibition of most forms of class III gaming to the Tribes and non-tribal entities alike, many patrons of Washington's tribal casinos would instead frequent Maverick's Washington cardrooms, increasing Maverick's commercial casino revenue.

157.    Enjoining Washington from enforcing its tribal class III gaming monopoly would either permit Maverick to expand its operations in Washington or would increase the number of patrons at Maverick's existing Washington cardrooms.

158.    Washington's tribal class III gaming monopoly exists only because the Secretary approved the Compacts and Compact Amendments.

159.    If the Secretary had disapproved the Compacts and Compact Amendments, Washington would not be able to enforce its tribal class III gaming monopoly.

160.    Vacating the Secretary's approval would make Washington's tribal class III gaming monopoly unlawful, allowing Maverick to increase its commercial casino revenue either by

expanding its gaming offerings in Washington or by benefitting from increased patronage at its Washington cardrooms due to the elimination of the Tribes' competitive advantage.

## COUNT ONE:

### The Administrative Procedure Act
### (Not in Accordance with Law – IGRA, Equal Protection, and the Tenth Amendment)

161.    Maverick incorporates all preceding paragraphs by reference.

162.    The Department of the Interior and the Secretary of the Interior are "agencies" under the APA.  5 U.S.C. § 551(1).

163.    The APA prohibits agency actions that are "not in accordance with law."  5 U.S.C. § 706(2)(A).

164.    Federal law obligated the Secretary of the Interior to disapprove Washington's sports-wagering Compact Amendments.

165.    *First*, the Secretary of the Interior was obligated to disapprove the Compact Amendments because they purport to authorize tribal class III gaming that violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

166.    *Second*, the Secretary also was required to disapprove the Compact Amendments under IGRA and the equal-protection component of the Fifth Amendment's Due Process Clause because they violate the Constitution's guarantee of equal protection.

167.    *Third*, the Secretary also was required to disapprove the Compact Amendments because the process by which they were executed violated the Tenth Amendment.

168.    The Secretary's approval of the Compacts constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

169.   Maverick has suffered a legal wrong or has been adversely affected or aggrieved by the Secretary's approval of the Compact Amendments.  5 U.S.C. § 702.

170.   The Secretary's approval of the Compact Amendments has resulted in the deprivation of Maverick's substantive rights under equal-protection principles and IGRA to compete on equal terms with the Tribes to offer sports betting in Washington free from discrimination on the basis of race and ancestry.

171.   It would be economically viable for Maverick to offer sports betting in Washington and Maverick seeks to do so, but Maverick cannot offer sports betting because of Washington's tribal sports-betting monopoly.

172.   The Secretary's approval of the Compact Amendments also has facilitated and continues to facilitate the Tribes' unlawful sports-betting offerings.  Those activities harm Maverick by making it more difficult for Maverick to effectively compete with the Tribes' much broader gaming offerings.

173.   Maverick therefore is entitled to an order: (1) declaring that the Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore were not validly entered into and are not in effect; (2) declaring that the Secretary's approval of the Compact Amendments violated IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment; (3) setting aside and vacating the Secretary's approval of the Compact Amendments; (4) declaring that the Tribes' sports-betting activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166; and (5) awarding nominal damages.

## COUNT TWO:

### 42 U.S.C. § 1983, Equity, Declaratory Judgment Act
### (Violation of IGRA, Equal Protection, and the Tenth Amendment)

174.    Maverick incorporates all preceding paragraphs by reference.

175.    42 U.S.C. § 1983 provides private parties a cause of action for declaratory and injunctive relief against any person who, under color of state law, deprives them of rights guaranteed by the U.S. Constitution or a federal statute.

176.    Courts of equity likewise provide private parties a cause of action to seek declaratory and injunctive relief against state officials that violate federal law.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015); *Ex parte Young*, 209 U.S. 123, 127 (1908).

177.    The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

178.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166, and aid and abet violations of the same, 18 U.S.C. § 2, by purporting to authorize and by facilitating tribal class III gaming that these federal statutes prohibit.

179.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Constitution's guarantee of equal protection by purporting to authorize and by facilitating Washington's race-based preference for tribal gaming.

180.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Tenth Amendment by continuing to administer agreements that were not lawfully entered into.

181.    The Defendants' unlawful actions executing and administering the Compacts and Compact Amendments have directly, personally, and substantially injured Maverick.

182.    The Defendants' actions have deprived and continue to deprive Maverick of its substantive rights under the Constitution's guarantee of equal protection and IGRA to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race and ancestry.

183.    As detailed above, but for Washington's tribal monopoly, Maverick is able, ready, and prepared to expand its class III gaming offerings in Washington to include games such as roulette, craps, and sports betting.

184.    The Defendants' actions also have facilitated and continue to facilitate the Tribes' unlawful class III gaming activities.  Those activities harm Maverick by making it more difficult for Maverick to compete with the Tribes' much broader gaming offerings in Washington. Declaring that the Compacts and Compact Amendments are illegal and void and enjoining Defendants from enforcing them would eliminate the Tribes' class III gaming monopoly, prohibit the Tribes from offering class III gaming that Washington does not permit non-tribal entities to offer, and redress Maverick's injuries by ensuring that it can compete with the Tribes on equal footing.

185.    These injuries give rise to a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

186.    Maverick therefore seeks a declaration: (1) that the Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore were not

validly entered into and are not in effect; (2) that the Governor's execution of the Compacts and Compact Amendments violated IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and the Compacts and Compact Amendments are therefore void; (3) that the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment; and (4) that the Tribes' class III gaming activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

187.    Maverick also seeks an injunction: (1) prohibiting the members of the Washington State Gambling Commission from continuing to administer the Compacts and Compact Amendments; and (2) prohibiting the Governor from entering into any new class III gaming compacts with the Tribes granting them exclusive rights to engage in any form of class III gaming.

188.    Maverick also seeks an award of nominal damages.

## COUNT THREE:

### 42 U.S.C. § 1983, Equity, Declaratory Judgment Act
### (Violation of Equal Protection)

189.    Maverick incorporates all preceding paragraphs by reference.

190.    42 U.S.C. § 1983 provides private parties a cause of action for declaratory and injunctive relief against any person who, under color of state law, deprives them of rights guaranteed by the U.S. Constitution or a federal statute.

191.    Courts of equity likewise provide private parties a cause of action to seek declaratory and injunctive relief against state officials that violate federal law. *See Armstrong*, 575 U.S. at 326; *Ex parte Young*, 209 U.S. at 127.

192.     The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

193.     The Constitution's guarantee of equal protection mandates the equal treatment of people of all races and ancestries without discrimination or preference.

194.     Washington criminally prohibits most forms of class III gaming, including roulette, craps, and sports betting.  *See* Wash. Rev. Code §§ 9.46.220–.222; *id.* §§ 9.46.0305–.0361.

195.     In the Compacts and Compact Amendments, however, Washington has purported to exempt the Tribes from the application of its criminal prohibitions on these forms of class III gaming.  *See* Wash. Rev. Code §§ 9.46.360, 9.46.225; *see also id.* § 9.46.0364(2).

196.     Because the application of Washington's criminal class III gaming prohibitions turns on the race and ancestry of the offender, Washington's continued enforcement of its class III gaming prohibitions against non-tribal entities violates the Constitution's guarantee of equal protection.

197.     The Defendants' potential enforcement of Washington's racially discriminatory criminal gaming laws has directly, personally, and substantially injured Maverick.

198.     The Defendants' discriminatory application and enforcement of Washington's criminal laws prohibiting these forms of class III gaming deprives Maverick of its right under the Constitution's guarantee of equal protection to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race and ancestry.

199.    As detailed above, but for Washington's tribal monopoly, Maverick is able, ready, and prepared to expand its gaming offerings in Washington to include games such as roulette, craps, and sports betting.

200.    Due to the threat of enforcement of Washington's criminal laws, which prohibit most forms of class III gaming, Maverick is unable to offer the same forms of class III gaming as the Tribes.  As a result, Maverick cannot establish or acquire gaming operations in Washington that can effectively compete with the Tribes' operations.

201.    These injuries give rise to a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

202.    Maverick therefore seeks a declaration that the Defendants' continued enforcement of Washington's criminal laws prohibiting class III gaming—including roulette, craps, and sports betting—violates the Constitution's guarantee of equal protection, and an injunction prohibiting the Defendants from enforcing those laws against Maverick.

203.    Maverick also seeks an award of nominal damages.

## PRAYER FOR RELIEF

204.    Maverick demands a judgment against the Defendants as follows:

a.      Declaring that the Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore are void, were not validly entered into, and are not in effect;

b.      Declaring that the Secretary of the Interior's approval of the Compacts and Compact Amendments; the Governor's execution of the Compacts and Compact

Amendments; and the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment;

c.     Declaring that the continued enforcement of Washington's criminal laws prohibiting class III gaming against Maverick violates the Constitution's guarantee of equal protection;

d.     Declaring that the Tribes' class III gaming activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166;

e.     Vacating and setting aside the Secretary of the Interior's approval of the Compacts and Compact Amendments;

f.     Enjoining the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission;

g.     Enjoining the Governor, the Attorney General, and the members of the Washington State Gambling Commission from enforcing against Maverick Washington's criminal laws prohibiting class III gaming;

h.     Issuing all process necessary and appropriate to postpone further administration of the Compacts and Compact Amendments and prevent enforcement against Maverick of Washington's criminal laws prohibiting class III gaming pending the conclusion of this case;

i.     Awarding Maverick its reasonable costs, including attorneys' fees, incurred in bringing this action;

j.     Awarding Maverick nominal damages; and

k.      Granting such other and further relief as this Court deems just and proper.


Dated:  January 11, 2022                    Respectfully submitted,




                                            /s/ *Theodore B. Olson*

                                            THEODORE B. OLSON
                                                D.C. Bar No. 367456
                                            MATTHEW D. MCGILL
                                                D.C. Bar No. 481430
                                            LOCHLAN F. SHELFER
                                                D.C. Bar No. 1029799
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1050 Connecticut Avenue, N.W.
                                            Washington, D.C. 20036
                                            Phone:  202.955.8668
                                            Email:  tolson@gibsondunn.com