**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAVERICK GAMING, LLC, | |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE INTERIOR, DEB HAALAND, BRYAN NEWLAND, JAY INSLEE, ROBERT FERGUSON, BUD SIZEMORE, JULIA PATTERSON, ALICIA LEVY, KRISTINE REEVES, SARAH LAWSON, STEVE CONWAY, JEFF HOLY, SHELLEY KLOBA, BRANDON VICK, and TINA GRIFFIN, | Civil Action NO. 1:22-cv-00068-FYP |
| Defendants. | |

<u>**MEMORANDUM IN SUPPORT OF STATE DEFENDANTS' MOTION TO TRANSFER**</u>

<u>**VENUE**</u>

**TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................................1

II.  LCvR 7(m) STATEMENT...................................................................................2

III. BACKGROUND..................................................................................................2

IV.  ARGUMENT.......................................................................................................4

    A.  Legal Standard Governing Transfer of Venue..............................................4

    B.  The Court Should Transfer This Case to the Western District of Washington
        Because This Court Lacks Personal Jurisdiction over the State Defendants.................4

        1.  This District Cannot Exercise Personal Jurisdiction over the State
            Defendants....................................................................................................5

        2.  Transfer to the Western District of Washington is in the Interest of Justice..........9

        3.  The Western District of Washington Has Personal Jurisdiction and is a
            Proper Venue for this Case.........................................................................10

    C.  The Court Should Transfer This Case to the Western District of Washington on
        the Independent Grounds of Convenience and in the Interest of Justice.................12

        1.  Plaintiff Could Have Brought This Case in the Western District of
            Washington.................................................................................................12

        2.  The Interests of Justice Weigh Overwhelmingly in Favor of Transfer to the
            Western District of Washington.................................................................13

            a.  The Public Interest Factors Support Transfer.................................13

                (1)  Local interests in local decisions regarding local controversies
                    favor transfer........................................................................13

                (2)  The Western District of Washington's familiarity with
                    Washington State law favors transfer..................................14

                (3)  The relative congestion of the courts is not a significant factor.........14

            b.  The Private Interest Factors Support Transfer.................................15

                 (1)  Plaintiff's choice of forum should not receive deference.................15

i

(2)    State Defendants' choice of forum favors transfer..............................17

(3)    Transfer is appropriate because Maverick's allegations arise
from Washington State........................................................................17

(4)    The convenience of the parties and witnesses and the ease of
access to proof favor transfer ............................................................18

V.    CONCLUSION .................................................................................................19

# TABLE OF AUTHORITIES
<u>Cases</u>

*Abramoff v. Shake Consulting, L.L.C.*,
   288 F. Supp. 2d 1 (D.D.C. 2003) ........................................................................... 11

*Adams v. Bell*,
   711 F.2d 161 (D.C. Cir. 1983) ............................................................................... 14

*Alabama v. U.S. Army Corps of Eng'rs*,
   304 F. Supp. 3d 56 (D.D.C. 2018) ......................................................................... 13

*Alaska Wilderness League v. Jewell*,
   99 F. Supp. 3d 112 (D.D.C. 2015) ......................................................................... 13

*Ananiev v. Wells Fargo Bank, N.A.*,
   968 F. Supp. 2d 123 (D.D.C. 2013) ......................................................................... 4

*Atwal v. Myer*,
   841 F. Supp. 2d 364 (D.D.C. 2012) ....................................................................... 10

*Bederson v. United States*,
   756 F. Supp. 2d 38 (D.D.C. 2010) ......................................................................... 12

*Bethea v. Holder*,
   82 F. Supp. 3d 362 (D.D.C. 2015) ......................................................................... 10

*Brunson v. Kalil & Co.*,
   404 F. Supp. 2d 221 (D.D.C. 2005) ......................................................................... 8

*Cap. Bank Int'l Ltd. v. Citigroup, Inc.*,
   276 F. Supp. 2d 72 (D.D.C. 2003) ...................................................................... 9, 10

*Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*,
   75 F. Supp. 3d 353 (D.D.C. 2014) ................................................................ 16, 17, 18

*Daimler AG v. Bauman*,
   517 U.S. 117, 134 S.Ct. 746, 187 L. Ed. 2d 624 (2014) ............................................ 6

*Ebron v. Dep't of Army*,
   766 F. Supp. 2d 54 (D.D.C. 2011) ........................................................................... 4

*Env't. Rsch. Int'l Inc. v. Lockwood Greene Engineers, Inc.*,
   355 A.2d 808 (D.C. 1976) ...................................................................................... 8

*Exelon Generation Co., LLC v. Grumbles*,
  380 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................... 4

*First Chicago Int'l v. United Exch. Co.*,
  836 F.2d 1375 (D.C. Cir. 1988) ............................................................................. 6

*Freedman v. Suntrust Banks, Inc.*,
  139 F. Supp. 3d 271 (D.D.C. 2015) ........................................................... 5, 6, 9, 10

*Gilbert v. DaGrossa*,
  756 F.2d 1455 (9th Cir. 1985) ............................................................................. 11

*Goldlawr, Inc. v. Heiman*,
  369 U.S. 463, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962) ............................................. 9

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) .......................................................................... 6, 7

*Gulf Restoration Network v. Jewell*,
  87 F. Supp. 3d 303 (D.D.C. 2015) ...................................................................... 17

*Jones v. Nat'l Institutes of Health Police Dep't*,
  404 F. Supp. 2d 1 (D.D.C. 2005) ........................................................................ 18

*Lamont v. Haig*,
  590 F.2d 1124 (D.C. Cir. 1978) ............................................................................ 4

*M & N Plastics, Inc. v. Sebelius*,
  997 F. Supp. 2d 19 (D.D.C. 2013) ....................................................................... 18

*Maysaroh v. Am. Arab Commc'ns & Translation Ctr., LLC.*,
  51 F. Supp. 3d 88 (D.D.C. 2014) .......................................................................... 4

*McCain v. Bank of Am.*,
  13 F. Supp. 3d 45 (D.D.C. 2014), *aff'd*, 602 F. App'x 836 (D.C. Cir. 2015) ............ 4

*Morgan v. Richmond Sch. of Health & Tech., Inc.*,
  857 F. Supp. 2d 104 (D.D.C. 2012) ...................................................................... 8

*Naartex Consulting Corp. v. Watt*,
  722 F.2d 779 (D.C. Cir. 1983) .............................................................................. 9

*Otter v. Salazar*,
  718 F. Supp. 2d 62 (D.D.C. 2010) ...................................................................... 12

iv

*Plackett v. Washington Deluxe Bus, Inc.*,
   No. 1:19-CV-00794 (CJN), 2020 WL 376511 (D.D.C. Jan. 23, 2020)............................ 15, 17

*Pueblo of Santa Ana v. Kelly*,
   104 F.3d 1546 (10th Cir. 1997) ........................................................................................ 2

*Rockefeller v. U.S. Ct. of Appeals Off., for Tenth Cir. Judges*,
   248 F. Supp. 2d 17 (D.D.C. 2003)................................................................................... 18

*Second Amend. Found. v. U.S. Conf. of Mayors*,
   274 F.3d 521 (D.C. Cir. 2001)........................................................................................... 6

*Shawnee Tribe v. United States*,
   298 F. Supp. 2d 21 (D.D.C. 2002).................................................................................. 16

*Siam Kraft Paper Co. v. Parsons & Whittemore, Inc.*,
   400 F. Supp. 810 (D.D.C. 1975)....................................................................................... 8

*Sierra Club v. Flowers*,
   276 F. Supp. 2d 62 (D.D.C. 2003)................................................................................... 18

*Sinclair v. Kleindienst*,
   711 F.2d 291 (D.C. Cir. 1983)........................................................................................... 5

*Spaeth v. Michigan State Univ. Coll. of L.*,
   845 F. Supp. 2d 48 (D.D.C. 2012).................................................................................. 16

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988).................................................. 12

*Toumazou v. Turkish Republic of N. Cyprus*,
   71 F. Supp. 3d 7 (D.D.C. 2014)........................................................................................ 9

*Trout Unlimited v. U.S. Department of Agriculture*,
   944 F. Supp. 13 (D.D.C. 1996)........................................................................................ 14

*Tulalip Tribes of Washington v. Washington*,
   No. C12-688 RAJ, 2013 WL 2253668 (W.D. Wash. May 22, 2013),
   *aff'd*, 783 F.3d 1151 (9th Cir. 2015)................................................................................ 14

*United States v. Ferrara*,
   54 F.3d 825 (D.C. Cir. 1995), *amended* (July 28, 1995) ................................................. 6

*Van Dusen v. Barrack*,
  376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) ........................................................ 13

*W. Watersheds Project v. Pool*,
  942 F. Supp. 2d 93 (D.D.C. 2013) ............................................................... 13, 14, 16

*West v. Holder*,
  60 F. Supp. 3d 190 (D.D.C. 2014) .......................................................................... 7

*West v. Lynch*,
  845 F.3d 1228 (D.C. Cir. 2017) ............................................................................. 7

*Williams v. GEICO Corp.*,
  792 F. Supp. 2d 58,  (D.D.C. 2011) ........................................................................ 4

*Wolfram Alpha LLC v. Cuccinelli*,
  490 F. Supp. 3d 324 (D.D.C. 2020) ........................................................................ 4

*Wyandotte Nation v. Salazar*,
  825 F. Supp. 2d 261 (D.D.C. 2011) .................................................................. 12, 14

<u>Statutes</u>

25 U.S.C. § 2701 *et seq* ............................................................................................. 2

25 U.S.C. § 2710(d)(8)(A) ......................................................................................... 2

25 U.S.C. § 2710(d)(8)(B) ......................................................................................... 2

28 U.S.C. § 1331 ..................................................................................................... 11

28 U.S.C. § 1346(a)(2) ............................................................................................. 11

28 U.S.C. § 1391(b)(2) ............................................................................................. 11

28 U.S.C. § 1391(e) ................................................................................................. 11

28 U.S.C. § 1404 ....................................................................................................... 1

28 U.S.C. § 1404(a) ................................................................................................. 12

28 U.S.C. § 1406 ............................................................................................... 1, 4, 5

28 U.S.C. § 1406(a) ........................................................................................... 5, 9, 10

28 U.S.C. § 1631 ............................................................................................... passim

D.C. Code § 13-422 ................................................................................................. 6

D.C. Code § 13-423(a) ............................................................................................. 7

D.C. Code § 13-423(a)(2) ........................................................................................ 7

D.C. Code § 13-423(a)(3) ........................................................................................ 7

D.C. Code § 13-423(a)(4) ........................................................................................ 7

Wash. Rev. Code § 9.46.360 .................................................................................... 3

## Rules

Fed. R. Civ. P. 4(k)(1)(A) ...................................................................................... 11

LCvR 7(m) ............................................................................................................... 2

## Other Authorities

14D Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 3827
   (3d ed. 1998) ....................................................................................................... 9

Admin. Office of the U.S. Courts,
   "U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics"
   (Sept. 30, 2021), https://www.uscourts.gov/statistics/table/na/federal-court-
   managementstatistics/
   2021/09/30-1 (last visited February 14, 2022) ................................................ 15

Engrossed Substitute H.B. 2638, 66th Leg. Reg. Sess. (Wash. 2020). .................... 3, 17

Senate Rep. No. 100-446 (1988),
   reprinted in 1988 U.S.C.C.A.N. 3071 .............................................................. 2

## I.    INTRODUCTION

This case was filed in the wrong Washington. Plaintiff Maverick Gaming, LLC (Maverick), a company based in Washington State with no connections to the District of Columbia, brought suit here against Washington State's Governor, Attorney General, and all members of the State's Gambling Commission (collectively, the State Defendants), along with the federal government and officials (collectively, the Federal Defendants) who approved Washington State's gaming compacts with Indian tribes. Maverick claims those compacts and Washington State's regulatory regime have harmed Maverick's existing gambling operations in the state and thwarted its desire to expand them.

Maverick's chosen forum, however, does not have personal jurisdiction over the State Defendants. None of the State Defendants resides in the District of Columbia, and none of their alleged actions took place here. It would not be in the interest of justice to require the State Defendants to defend themselves in a foreign forum to which they have no relevant connections and which is far removed from Maverick's own allegations. Maverick's case should therefore be transferred to the Western District of Washington pursuant to 28 U.S.C. §§ 1631 and 1406, as that court would have jurisdiction over all parties and is the locus of the controversy.

Jurisdictional issues aside, the case should be transferred to the Western District of Washington—Maverick's home forum—for the independent reason of convenience pursuant to 28 U.S.C. § 1404. The people most affected by this controversy and its resolution—the Indian tribes, State Defendants, and other people in Washington—have a strong and legitimate interest in having the case decided by a court based in their own locale and with more experience interpreting local law (including the Washington State laws Maverick cites in its complaint). The local character of the controversy also means greater convenience for the State Defendants and any

1

witnesses, and easier access to proof—which, beyond the federal administrative record, would all be based in Washington State.

For the reasons of jurisdiction, justice, and convenience, this case should be transferred to the U.S. District Court for the Western District of Washington.

## II.    LCvR 7(m) STATEMENT

Pursuant to LCvR 7(m), Defendants conferred with Plaintiff by telephone on February 23, 2022 regarding this motion in a good-faith effort to determine whether Plaintiff opposed the relief sought and to narrow any areas of disagreement. Plaintiff indicated that it opposes this motion.

The Federal Defendants join the request to transfer on convenience grounds for the reasons stated in Section IV.C below.

## III.    BACKGROUND

The Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 *et seq.*, allows Indian tribes to negotiate and enter into gaming compacts with states. "The rationale for the compact system is that 'there is no adequate Federal regulatory system in place for Class III gaming, nor do tribes have such systems for the regulation of Class III gaming currently in place,' and thus 'a logical choice is to make use of existing State regulatory systems' through a negotiated compact." *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1549 (10th Cir. 1997) (quoting S. Rep. No. 100-446, at 13-14 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3083-84). IGRA provides no role for the federal government in negotiating compacts between Indian tribes and states. The Secretary of the Interior merely holds authority to disapprove compacts entered into by Indian tribes and states based on a narrow and exclusive set of statutory factors. 25 U.S.C. § 2710(d)(8)(A)-(B).

2

In 1992, shortly after the enactment of IGRA, Washington State codified its process for negotiating Class III gaming compacts with Indian tribes. Wash. Rev. Code § 9.46.360. Class III gaming includes several kinds of casino games and sports betting. Under Washington State's codified process, the director of the Washington State Gambling Commission negotiates with Indian tribes. *Id.* Once a tentative compact has been reached, the director shares it with members of the Gambling Commission and solicits comment from committees designated by the state legislature. *Id.* Forty-five days after receiving a tentative compact, the members of the Gambling Commission vote on whether to return the compact to the director for further negotiation or to forward it to the governor for review and execution. *Id.* Since 1991, Washington State has entered into gaming compacts with all 29 federally recognized tribes in Washington.

In 2020, Washington State enacted Engrossed Substitute House Bill 2638 (ESHB 2638), which allows for the amendment of tribal gaming compacts to authorize sports betting as an additional type of Class III gaming. In 2021, 16 of the 29 tribes amended their compacts in accordance with ESHB 2638 to authorize sports betting, and the Interior Secretary approved the amendments. Unless a gaming compact authorizes it, Class IIILL gaming is prohibited under Washington State law.

Maverick, a company with 19 cardrooms in Washington State, claims to have been illegally prohibited from expanding its operations to include Class III gambling in Washington State. Complaint ¶ 7. Though the complaint alleges Maverick is a "Nevada limited liability company," *id.*, Maverick converted itself to a Washington LLC in February 2022. *See* Articles of Conversion, Feb. 11, 2022, attached as Exhibit A to the Declaration of Brian H. Rowe. Maverick filed its Complaint in the U.S. District Court for the District of Columbia, bringing claims for violation of the Administrative Procedure Act (APA), IGRA, Equal Protection, and the Tenth Amendment.

## IV.    ARGUMENT

### A.    Legal Standard Governing Transfer of Venue

The plaintiff bears the burden "to establish that venue is proper since it is 'the plaintiff's obligation to institute the action in a permissible forum.'" *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013) (quoting *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011)). In analyzing whether venue is proper, courts accept the complaint's factual allegations regarding venue as true but "need not accept the plaintiff's legal conclusions as true, and may consider material outside the pleadings, including undisputed facts evidenced in the record, to determine whether it has jurisdiction in the case." *Ebron v. Dep't of Army*, 766 F. Supp. 2d 54, 57 (D.D.C. 2011). "The court may resolve the motion on the basis of the complaint alone or, as necessary, consider undisputed facts outside the complaint." *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014), *aff'd*, 602 F. App'x 836 (D.C. Cir. 2015). In assessing proper venue, courts engage in "a commonsense appraisal" of "events having operative significance in the case." *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978); *see also Maysaroh v. Am. Arab Commc'ns & Translation Ctr., LLC.*, 51 F. Supp. 3d 88, 93 (D.D.C. 2014); *Exelon Generation Co., LLC v. Grumbles*, 380 F. Supp. 3d 1, 9 (D.D.C. 2019). "In deciding a motion to transfer, a court may consider materials outside the pleadings." *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 330 (D.D.C. 2020).

### B.    The Court Should Transfer This Case to the Western District of Washington Because This Court Lacks Personal Jurisdiction over the State Defendants

This Court should transfer this case to the U.S. District Court for the Western District of Washington under 28 U.S.C. §§ 1631 and 1406 because this Court lacks personal jurisdiction over the State Defendants. Section 1631 provides that, in any civil action in which the court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action"

to any other court in which the action could have been brought in the first instance. There are three elements to a section 1631 transfer: "(1) a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 286 (D.D.C. 2015). The party seeking transfer pursuant to section 1631 must demonstrate that these three elements are met. *Id*. at 277.

This Court may also transfer a case under 28 U.S.C. § 1406(a), which provides that when a case lays venue in the wrong district, the district court "shall dismiss or, if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Transfer is "in the interest of justice" where procedural obstacles, such as a "lack of personal jurisdiction," would "impede an expeditious and orderly adjudication on the merits." *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983); *Freedman*, 139 F. Supp. 3d at 282 (transfer under 28 U.S.C. § 1406 for lack of personal jurisdiction is proper even where defendants do not challenge venue). "Generally, the interests of justice require transferring a case to the appropriate judicial district rather than dismissing it." *Freedman*, 139 F. Supp. 3d at 277. The interest-of-justice analysis under 28 U.S.C. § 1631 is the same as under 28 U.S.C. § 1406. *See id*. at 286.

Here, transfer to the Western District of Washington is warranted because this Court lacks personal jurisdiction over the State Defendants, transfer would promote efficient and orderly adjudication of this case and preserve judicial and party resources, and jurisdiction and venue are both proper in the Western District of Washington.

### 1.    This District Cannot Exercise Personal Jurisdiction over the State Defendants

This Court lacks personal jurisdiction over State Defendants under well-established law. The D.C. Circuit conducts a two-part inquiry for establishing personal jurisdiction over

non-resident defendants. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Courts must first determine whether personal jurisdiction satisfies the District of Columbia's long-arm statute, and then determine whether exercising jurisdiction satisfies due process requirements. *Id.*; *see also United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995), *amended* (July 28, 1995). Maverick bears the burden of establishing a factual basis for exercising personal jurisdiction over each defendant and to make a prima facie showing of pertinent jurisdictional facts. *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). To meet this requirement, Maverick cannot rest on bare allegations or conclusory statements but "must allege specific acts connecting [the] defendant with the forum." *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation marks omitted); *Freedman*, 139 F. Supp. 3d at 276 (same).

Here, Maverick cannot satisfy the District's long-arm statute as to the State Defendants. None of the State Defendants is domiciled or has a principal place of business in the District of Columbia, as would be required to exercise general jurisdiction over them. *See* D.C. Code § 13-422. General jurisdiction under the District's long-arm statute is co-extensive with due process requirements and permits a court to exercise general jurisdiction only when a non-resident defendant's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum state.'" *Freedman*, 139 F. Supp. 3d at 278 (citing *Daimler AG v. Bauman*, 517 U.S. 117, 119, 134 S.Ct. 746, 187 L. Ed. 2d 624 (2014)). Maverick cannot allege such pervasive contacts by the State Defendants.

Nor can Maverick establish specific jurisdiction over the State Defendants. The District's long-arm statute grants specific jurisdiction over persons:

(1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of

>Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a). Maverick cannot allege facts demonstrating any of these grounds for specific jurisdiction over the State Defendants. Maverick cannot allege that the State Defendants contracted to supply services in the District, or regularly did or solicited business, derived revenue, or engaged in other persistent conduct in the District so as to meet the requirements of § 13-423(a)(2) or (3). Nor can Maverick allege that any State Defendant caused "tortious injury" in the District by an act or omission outside of the District under § 13-423(a)(4). To the contrary, Maverick is a Washington State LLC and alleges constitutional (not tortious) injury in Washington State, and seeks no compensatory damages. Rowe Decl., Ex. A; Compl. ¶ 7; *see also GTE New Media Servs. Inc.,* 199 F.3d at 1347 (noting that "tortious injury" under subsection (a)(4) is narrowly construed and requires plaintiff's injury, including financial injury, to occur "*in the District*") (emphasis added).

This leaves the "transacting business" prong of the long-arm statute, but Maverick does not allege *any* acts by any of State Defendants in this District, much less acts that could establish they were transacting business here. Even assuming, for example, that Maverick could amend the Complaint to allege some acts by State Defendants in seeking the Interior Secretary's approval of Washington's tribal gaming compacts, such uniquely governmental activities as a matter of law do not constitute "transacting business" in the District under its long-arm statute. Contacts falling under the "transacting business" provision of the long-arm statute "usually must be commercial" in nature. *See, e.g.*, *West v. Holder*, 60 F. Supp. 3d 190, 195 (D.D.C. 2014), *aff'd sub nom. West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017) (finding no personal jurisdiction over Washington State Governor Jay Inslee where complaint solely alleged governmental and not commercial

activities in the district); *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 234 (D.D.C. 2005) (holding defendant's communications with a company in the District for the purpose of receiving a commission did not constitute transacting any business under the statute, because "[t]he contact arose out [of] a desire to be paid services rendered, not out of any desire to do business in the District of Columbia").

Indeed, this Court has repeatedly held that "uniquely governmental activities"—the only type of activities at issue here—cannot establish the required jurisdictional nexus. *Morgan v. Richmond Sch. of Health & Tech., Inc.*, 857 F. Supp. 2d 104, 108 (D.D.C. 2012) (quoting *Siam Kraft Paper Co. v. Parsons & Whittemore, Inc.*, 400 F. Supp. 810, 812 (D.D.C. 1975)). As explained in *Morgan*, "[t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Id.* (quoting *Env't. Rsch. Int'l Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976)). This "government contacts exception" to specific personal jurisdiction has been applied to a broad range of contacts with federal officials and federal agencies, including:

> instances where a defendant was in administrative receivership and therefore managed by the Department of Housing and Urban Development, *Fuentes–Fernandez & Co.*, 770 F.Supp.2d at 280-82; where a defendant entered into a sales contract with the Department of Housing and Urban Development, *NBC-USA Housing, Inc. Twenty-Six*, 741 F.Supp.2d at 59; where a defendant school received funds from the Department of State, *Ficken v. Rice*, 594 F.Supp.2d 71, 75 (D.D.C. 2009); where a defendant entered into contracts to sell vaccines to the Department of Defense, *Savage v. Bioport, Inc.*, 460 F.Supp.2d 55, 62 (D.D.C. 2006); and where a defendant visited the Environmental Protection Agency to procure grants, *Envtl. Research Int'l*, 355 A.2d at 813.

*Id.* (applying government contacts exception to participation in federal financial aid programs through the Department of Education); *see also Toumazou v. Turkish Republic of N. Cyprus*,

71 F. Supp. 3d 7, 16 (D.D.C. 2014) (maintenance of office in District for purposes of interacting with the federal government insufficient to establish personal jurisdiction).

Here, because Maverick alleges no acts by any of the State Defendants in this District whatsoever, it is easy to conclude that personal jurisdiction is lacking. But even if Maverick were to allege governmental contacts between the State Defendants and Federal Defendants in seeking approval of Washington's tribal gaming compacts, such uniquely governmental activities cannot be considered in the jurisdictional calculus as a matter of law. This Court thus has no basis to exercise personal jurisdiction over the State Defendants.

### 2.    Transfer to the Western District of Washington is in the Interest of Justice

The interest of justice also supports transfer to the Western District of Washington because the lack of personal jurisdiction over State Defendants will invariably impede the prompt and efficient adjudication of this case. The decision whether to dismiss or transfer a case "in the interest of justice" under §§ 1631 and 1406(a) is committed to the sound discretion of the district court. *Id.* (applying same "interest of justice" standard under 28 U.S.C. §§ 1631 and 1406); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). Dismissal is one possible response to a lack of personal jurisdiction, but the interest of justice often requires transferring cases to an appropriate judicial district in lieu of dismissing the case if the transferee court has personal jurisdiction and is a proper venue. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962); *Cap. Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 78 (D.D.C. 2003) (citation omitted); 14D Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 3827 (3d ed. 1998). Transfer also serves the interest of justice when it would save the parties the time and expense of refiling the case in another jurisdiction. *Freedman*, 139 F. Supp. 3d at 284.

Applying these principles, courts in this district routinely transfer cases in which personal jurisdiction over defendants is lacking and personal jurisdiction can be obtained and venue is proper in the transferee court. *See, e.g.*, *id.* at 277 (transferring case to Florida for lack of personal jurisdiction under 28 U.S.C. §§ 1631 and 1406); *Bethea v. Holder*, 82 F. Supp. 3d 362, 367 (D.D.C. 2015) (transferring case to Federal Circuit under 28 U.S.C. § 1631 for lack of subject matter jurisdiction where unopposed by defendant); *Atwal v. Myer*, 841 F. Supp. 2d 364, 368 (D.D.C. 2012) (transferring case under 28 U.S.C. § 1406(a) to the Northern District of Texas due to lack of personal jurisdiction over defendants); *Capital Bank Intern. Ltd.*, 276 F. Supp. 2d at 78 (transferring case under 28 U.S.C. § 1406(a) to the District of Delaware due to lack of personal jurisdiction over defendants).

The interest of justice similarly supports transfer of this case. This Court cannot adjudicate the claims against the State Defendants, so the only option for timely adjudication of this entire case is in Washington State. And, as detailed below, the true locus of this case is in Washington, where the compacts at issue were negotiated and signed, where the state laws at issue were passed, and where the alleged injuries to Maverick were purportedly suffered. It would make no sense to dismiss the claims against the State Defendants and permit litigation to occur simultaneously against different defendants in different forums, as doing so would waste judicial resources and pose a risk of inconsistent outcomes. Transfer of this case to the Western District of Washington is the most efficient way to achieve an efficient and orderly adjudication of the entire case.

### 3. The Western District of Washington Has Personal Jurisdiction and Is a Proper Venue for this Case

This Court may transfer this case to the Western District of Washington under 28 U.S.C. §§ 1631 and 1406(a) because that court would have personal jurisdiction over all Defendants and transfer would satisfy all venue requirements. The Western District of

Washington, like any federal district court, would have subject-matter jurisdiction over the cited

bases for Maverick's claims. *See* Complaint ¶ 25 (invoking subject-matter jurisdiction under

28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 701-706 (review of agency action), and

28 U.S.C. § 1346(a)(2) (nominal damages)). It would also have personal jurisdiction over the State

Defendants, *see* Fed. R. Civ. P. 4(k)(1)(A), and over the Federal Defendants sued in their official

capacities. *See* 28 U.S.C. § 1391(e); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1460 (9th Cir. 1985)

(28 U.S.C. § 1391(e) was designed "to permit an action which is essentially against the United

States to be brought locally rather than in the District of Columbia as would normally be required

if Washington, D.C., is the official residence of the agency sued").

Venue is likewise proper in the Western District of Washington. Generally, a civil action,

including actions against federal officers, may be brought in a district where "a substantial part of

the events or omissions giving rise to the claim occurred." 28 U.S.C. §§ 1391(b)(2), (e). Because

proper-venue requirements are intended to protect defendants, "courts often focus on the relevant

activities of the defendant . . . in determining where a substantial part of the underlying events

occurred." *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4 (D.D.C. 2003). Here, the

events that gave rise to Maverick's claims occurred within the Western District of Washington,

where the Washington state capitol is located and where all State Defendants maintain offices or

hold official addresses. *See* Complaint ¶¶ 13-24. The Western District of Washington is where the

state legislature enacted laws allowing tribal gaming and prohibiting other forms of gaming, and

where Governor Inslee, based in Olympia, executed various compacts allowing Indian tribes to

offer Class III gaming. *Id.* ¶¶ 66-77. It is also where Maverick wishes to expand its operations to

offer Class III gaming. *Id.* ¶¶ 141, 145. Because the tribal gaming compacts were authorized and

amended in Washington, and because Washington is where Maverick claims to have been

prevented from expanding, Maverick could have brought its case in Washington as the place where a substantial part of the events giving rise to its case occurred.

The requirements for transfer to the Western District of Washington are all met here. This case should be transferred.

**C.    The Court Should Transfer This Case to the Western District of Washington on the Independent Grounds of Convenience and in the Interest of Justice**

Convenience and the interest of justice likewise support transfer of this case to the Western District of Washington. Under Section 1404(a), the Court may transfer a case "to any other district or division where it may have been brought," "[f]or the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) "vests discretion in the District Court to adjudicate motions for transfer on an 'individualized, case-by-case consideration of convenience and fairness.'" *Otter v. Salazar*, 718 F. Supp. 2d 62, 63-64 (D.D.C. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)).

"Courts evaluate both public and private interest factors in determining whether to grant a transfer of venue." *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 265 (D.D.C. 2011) (citing *Bederson v. United States*, 756 F. Supp. 2d 38, 46 (D.D.C. 2010)). Public interest factors include (1) the "local interest in making local decisions regarding local controversies," (2) "the relative congestion of the transferee and transferor courts," and (3) "the potential transferee court's familiarity with the governing law." *Id.* Private interest factors include (1) the plaintiff's choice of forum, (2) the defendants' choice of forum; (3) where the claim arose; and (4) the convenience of the parties and witnesses, and ease of access to the sources of proof. *Id.*

**1.    Plaintiff Could Have Brought This Case in the Western District of Washington**

The "threshold consideration" under Section 1404(a) is whether the action "might have been brought" before the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616,

84 S. Ct. 805, 11 L. Ed. 2d 945 (1964). As discussed above, the Western District of Washington would have jurisdiction and satisfy venue requirements in this case, and so this first consideration is easily satisfied.

> ## 2. The Interests of Justice Weigh Overwhelmingly in Favor of Transfer to the Western District of Washington

> ### a. The Public Interest Factors Support Transfer

> #### (1) Local interests in local decisions regarding local controversies favor transfer

The interest in having local controversies "decided at home" is "preeminent" in a section 1404(a) transfer motion. *Alabama v. U.S. Army Corps of Eng'rs*, 304 F. Supp. 3d 56, 67 (D.D.C. 2018) (quoting *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 97 (D.D.C. 2013)).

The controversy and interests in this case are inexorably local: the legality of tribal gaming rights in Washington State. Those rights have been developed, negotiated, and implemented over the course of decades in Washington State, and the effects of any judicial decisions will be felt in Washington—not in the District of Columbia. The strong local interest in having those decisions made in Washington State is not diminished by the involvement of federal officials in the process of approving local gaming compacts. *See W. Watersheds Project*, 942 F. Supp. 2d at 102 ("localized controversy" rationale applies "to controversies requiring judicial review of an administrative decision") (citations omitted). Nor does any alleged "national importance" of the issues Maverick presents outweigh the local interests in Washington State's legal framework for gaming, which is the subject of this case. *See Alabama*, 304 F. Supp. 3d at 68 (rejecting national importance argument and transferring case); *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 117-18 (D.D.C. 2015) ("there is no 'blanket rule that national policy cases should be brought' in the District of Columbia"). Rather, any decision regarding Washington State's regulatory scheme for tribal gaming will impact, first and foremost, the tribes and people

in Washington State who have strong interests in local gaming—including those connected with Maverick's 19 cardrooms in the state. Because the Western District of Washington is where people's "rights and interests are in fact most vitally affected by the suit," the case should be transferred there. *W. Watersheds Project*, 942 F. Supp. 2d at 102 (quoting *Adams v. Bell*, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983)).

### (2)    The Western District of Washington's familiarity with Washington State law favors transfer

As with all federal courts, this Court and the Western District of Washington "are presumed to be equally familiar with the law governing federal statutory claims." *Wyandotte Nation*, 825 F. Supp. 2d at 267. But the Western District of Washington presumably has greater familiarity with Washington State law—particularly tribal-state compacts like those at issue here, and the state statutes that authorize them. *See, e.g.*, *Tulalip Tribes of Washington v. Washington*, No. C12-688 RAJ, 2013 WL 2253668, at *1 (W.D. Wash. May 22, 2013), *aff'd*, 783 F.3d 1151 (9th Cir. 2015). Though Maverick's claims are based on federal law, they may require interpretation of Washington State law. *See* Complaint ¶¶ 57-76 (citing various provisions of Wash. Rev. Code § 9.46 and ESHB 2638). For example, in *Trout Unlimited v. U.S. Department of Agriculture*, the plaintiff's APA claim "deal[t] directly with federal statutes and regulations," but the court found transfer warranted anyway because the case "may also, in part, involve the interpretation of Colorado law." 944 F. Supp. 13, 19 (D.D.C. 1996). Here too, because the criminal prohibitions about which Maverick complains are a "creation of [state] law," transfer to the federal forum more familiar with local law will "promote judicial economy." *Id.*

### (3)    The relative congestion of the courts is not a significant factor

The Western District of Washington has slightly more pending actions per judgeship (444) than the District for the District of Columbia (383). *See* Admin. Office of the U.S. Courts,

"U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics" (Sept. 30, 2021), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/09/30-1 (last visited February 14, 2022). This caseload is not unusually heavy; the Western District of Washington ranks 58th of 94 judicial districts for pending actions per judgeships. *Id.* Though the median time from filing to disposition for civil cases is 8.7 months in the Western District of Washington, compared to 4.8 months in the District for the District of Columbia, the former district managed to terminate almost twice as many actions per judgeship in the most recent 12-month period (518) as the latter (282). *Id.* And the most recently available comparators show the median civil case in the Western District of Washington took less than half as much time as in the District for the District of Columbia to proceed from filing to trial: 19.7 months versus 46.7 months. *Id.* Overall, the relative congestion of the courts is a mixed bag and does not tip the scales against transfer. *See, e.g.*, *Plackett v. Washington Deluxe Bus, Inc.*, No. 1:19-CV-00794 (CJN), 2020 WL 376511, at *4 (D.D.C. Jan. 23, 2020) (transferring to District of Maryland despite finding it showed more civil and pending cases per judge and took longer from filing to disposition than the District of the District of Columbia).

### b.    The Private Interest Factors Support Transfer

### (1)    Plaintiff's choice of forum should not receive deference

Courts do not accord significant weight to the plaintiff's chosen forum when, as here, that forum "is not the plaintiff's home forum and lacks meaningful ties to the controversy." *Plackett*, 2020 WL 376511, at *3.

Maverick has no meaningful ties to the District of Columbia. Maverick's home forum is now Washington State. Rowe Decl., Ex. A. It owns and operates gambling facilities in Nevada,

Colorado, and Washington State, including 19 cardrooms in the latter. *Id.* The Complaint does not allege any connection between Maverick and the District of Columbia.

More broadly, the controversy here has very little to do with the District of Columbia. The legal framework for gambling rights in Washington State was developed, negotiated, and implemented in that state. Any decision on Maverick's claims will have no impact on residents of the District of Columbia. The only alleged tie with the District of Columbia is the involvement of one federal agency and the officials who approved amendments to certain compacts between Washington State and Indian tribes. But "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative" for purposes of this factor. *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002); *see also Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 357 (D.D.C. 2014) ("any deference given to the plaintiff's choice of forum is minimized where the plaintiff's 'choice of forum has no meaningful ties to the controversy and no particular interest in the parties or the subject matter'") (quoting *Lentz v. Eli Lilly & Co.*, 464 F.Supp.2d 35, 38 (D.D.C. 2006)); *W. Watersheds Project*, 942 F. Supp. 2d at 98 (D.D.C. 2013) ("the mere fact that a case concerns the application of a federal statute by a federal agency does not provide a sufficient nexus to the District of Columbia to weigh against transfer") (quoting *Pres. Soc. of Charleston v. U.S. Army Corps of Engineers*, 893 F. Supp. 2d 49, 55 (D.D.C. 2012)).

Because Maverick's home forum is Washington State and because this case has nothing to do with the District of Columbia, Maverick's "choice of forum in the District of Columbia is entitled to very little deference." *Spaeth v. Michigan State Univ. Coll. of L.*, 845 F. Supp. 2d 48, 58 (D.D.C. 2012).

### (2)    State Defendants' choice of forum favors transfer

The State Defendants' preference to litigate in their home forum of Washington State deserves weight. In cases under the APA, "a defendant's choice of forum deserves 'some weight' where the harm from a federal agency's decision is felt most directly in the transferee district." *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015). Washington State is where the State Defendants reside, where the Indian tribes who are parties to the compacts are located, where Maverick wishes to expand its gambling operations, and where the potential effects of a decision on Maverick's claims will be felt. Accordingly, the State Defendants' preferred forum weighs in favor of transfer. *Plackett*, 2020 WL 376511, at *3 (according weight to Defendants' choice of their home forum); *Ctr. for Env't Sci., Accuracy & Reliability*, 75 F. Supp. 3d at 357–58 (finding Defendants' choice of Eastern District of California favored transfer because underlying project—though involving decision-makers in Washington, D.C.—"affects the diversion of water flows in rivers" in California).

### (3)    Transfer is appropriate because Maverick's allegations arise from Washington State

Maverick's allegations arise from Washington State, as explained above. According to the Complaint, the controversy arises from Washington State's regulation of tribal gaming, from the early 1990s to the passage of ESHB 2638 and the amendment of various compacts between Indian tribes and Washington State. Complaint ¶ 56. Naturally, Washington State's regulatory framework was developed in Washington State, and its tribal gaming compacts were likewise negotiated and executed there. Maverick's claimed injury comes from its alleged inability to expand its gaming operations in Washington State and nowhere else. *Id.* ¶¶ 139-160. Thus, this factor also weighs heavily in favor of transfer. *See Ctr. for Env't Sci., Accuracy & Reliability*, 75 F. Supp. 3d at 358.

          **(4)**      **The convenience of the parties and witnesses and the ease of access to proof favor transfer**

Finally, the convenience of the parties and witnesses and the ease of access to proof favor transfer to the Western District of Washington.

For Maverick's APA claim, the administrative record can be assembled electronically and remotely, and there is unlikely to be any discovery requiring proximity to the District of Columbia. *See M & N Plastics, Inc. v. Sebelius*, 997 F. Supp. 2d 19, 25 (D.D.C. 2013) (where "'the action involves administrative review that the court is likely to determine on the papers' the convenience factors carry little weight in the transfer analysis") (quoting *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003)); *Ctr. for Env't Sci., Accuracy & Reliability*, 75 F. Supp. 3d at 358 (finding factor "largely irrelevant because the case will almost certainly be resolved as a matter of law based on the administrative record and no witnesses are likely to be called"). Maverick's second and third claims (under 42 U.S.C. § 1983, Equity, and the Declaratory Judgment Act) likely involve only the State Defendants, *Jones v. Nat'l Institutes of Health Police Dep't*, 404 F. Supp. 2d 1, 2 (D.D.C. 2005) ("individuals who act in their official capacities as 'federal government officials' are exempt from § 1983 liability") (quoting *Rockefeller v. U.S. Ct. of Appeals Off., for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 24 (D.D.C. 2003)), and appear to turn on legal issues not requiring significant discovery, if any. To the extent they require discovery, however, the necessary witnesses and sources of proof are likely to be located in Washington State, where State Defendants reside, where the primary decision-making took place, where Maverick claims to suffer injury, and where Maverick now resides. In contrast, the District of Columbia as a forum would provide no comparable convenience or ease of access to proof. Maverick's claimed injury is all in Washington State. Complaint ¶¶ 139-160. Thus, this factor

favors transfer to the Western District of Washington, where any necessary discovery would be taken.

Moreover, the Western District of Washington is the only venue where the case could proceed as a whole without sacrificing the State Defendants' right to a forum in which they are subject to personal jurisdiction. Splitting the case in two or requiring the State Defendants to waive jurisdictional objections would not advance convenience or justice, but transferring the case would.

## V.      CONCLUSION

For the foregoing reasons, this Court should transfer this case to the U.S. District Court for the Western District of Washington.

DATED this 24th day of February, 2022.

ROBERT W. FERGUSON
Attorney General of Washington

*s/ Kristin Beneski*
KRISTIN BENESKI, WSBA No. 45478
First Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
kristin.beneski@atg.wa.gov

## CERTIFICATE OF SERVICE

I certify, under penalty of perjury under the law of the District of Columbia, that the

foregoing was electronically filed in the United States District Court for the District of Columbia

and electronically served on the following parties:

Theodore B. Olson, DCBA No.
Matthew D. McGill, DCBA 481430
Lochlan F. Shelfer, DCBA No. 1029799
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955 – 8668
tolson@gibsondunn.com

DATED this 24th day of February 2022.

ROBERT W. FERGUSON
Attorney General of Washington

*s/ Kristin Beneski*
KRISTIN BENESKI, WSBA No. 45478
First Assistant Attorney General

20