## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAVERICK GAMING LLC,

12530 NE 144th Street,
Kirkland, WA 98034

                Plaintiff,

    v.

THE UNITED STATES OF AMERICA,

555 4th Street, NW, Washington, DC 20001,

UNITED STATES DEPARTMENT OF THE
INTERIOR,

1849 C Street, NW, Washington, DC 20240,

DEB HAALAND, in her official capacity as
Secretary of the Interior,

1849 C Street, NW, Washington, DC 20240,

BRYAN NEWLAND, in his official capacity
as Assistant Secretary – Indian Affairs,

1849 C Street, NW, Washington, DC 20240,

JAY INSLEE, in his official capacity as the
Governor of Washington,

Office of the Governor, P.O. Box 40002,
Olympia, WA 98504,

ROBERT FERGUSON, in his official capacity
as the Attorney General of Washington,

1125 Washington Street, SE, P.O. Box 40100,
Olympia, WA 98504,

BUD SIZEMORE, in his official capacity as
Chair of the Washington State Gambling
Commission,

P.O. Box 42400, Olympia, WA 98504,

Civil Action No. 1:22-cv-00068-FYP

JULIA PATTERSON, in her official capacity
as Vice-Chair of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

ALICIA LEVY, in her official capacity as
Commissioner of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

KRISTINE REEVES, in her official capacity
as Commissioner of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SARAH LAWSON, in her official capacity as
Commissioner of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

STEVE CONWAY, in his official capacity as
ex officio member of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

JEFF HOLY, in his official capacity as ex
officio member of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SHELLEY KLOBA, in her official capacity as
ex officio member of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

BRANDON VICK, in his official capacity as
ex officio member of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

TINA GRIFFIN, in her official capacity as
Interim Director of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

              Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO <u>STATE DEFENDANTS' MOTION TO TRANSFER VENUE</u>

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................... 1

ARGUMENT .............................................................................................................. 3

I.      The State Defendants' Personal Jurisdiction Challenge Is Moot........................... 3

II.     This Court Should Reject The State Defendants' Alternative Request To Transfer Venue On The Grounds Of Convenience And The Interest Of Justice................. 5

       A.      The Private-Interest Factors Weigh Against Transfer. ............................... 5

             1.     Maverick Is Challenging Only The Actions Of Federal Officials In The District Of Columbia, So This Court Should Defer To Maverick's Choice Of Forum. ........................................................ 6

             2.     Because Maverick's First Amended Complaint Would Drop The State Defendants From This Action, Their Choice Of Forum Is Irrelevant. ....................................................................................... 8

             3.     Because Maverick Is Challenging Agency Action That Occurred In The District Of Columbia, Its Claim Arose In This District........... 9

             4.     This District Is The Most Convenient Forum For Maverick's APA Claim.............................................................................................. 11

       B.      The Public Interest Factors Also Weigh Against Transfer. ..................... 12

             1.     This Case Raises Questions Of National—Not Merely Local—Importance. .................................................................................. 12

             2.     The Relative Congestion Of This Court And The Western District Of Washington Either Weighs Against Transfer Or Is A Neutral Factor. ........................................................................................... 14

             3.     This Court Is Familiar With The Governing Law. ....................... 15

CONCLUSION............................................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**

*Alabama v. U.S. Army Corps of Engineers*,
    304 F. Supp. 3d 56 (D.D.C. 2018) ........................................................................14

*Alaska Wilderness League v. Jewell*,
    99 F. Supp. 3d 112 (D.D.C. 2015) ......................................................................14

*Amador County v. Kempthorne*,
    592 F. Supp. 2d 101 (D.D.C. 2009) ....................................................................10

*Barnstead Broad. Corp. v. Offshore Broad. Corp.*,
    869 F. Supp. 35 (D.D.C. 1994) ..............................................................................4

*Bederson v. United States*,
    756 F. Supp. 2d 38 (D.D.C. 2010) ........................................................................5

*Boland v. Fortis Constr. Co.*,
    796 F. Supp. 2d 80 (D.D.C. 2011) ........................................................................5

*Cnty. Sec. Agency v. Ohio Dep't of Com.*,
    296 F.3d 477(6th Cir. 2002) ..................................................................................4

*Forest Cnty. Potawatomi Cmty. v. United States*,
    330 F. Supp. 3d 269 (D.D.C. 2018) ....................................................................10

*Freedman v. Suntrust Banks, Inc.*,
    139 F. Supp. 3d 271 (D.D.C. 2015) ......................................................................3

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ................................................................................................6

*MGM Glob. Resorts Dev., LLC v. U.S. Dep't of the Interior*,
    2020 WL 5545496 (D.D.C. Sept. 16, 2020) ......................................................10

*\*Oceana, Inc. v. Pritzker*,
    58 F. Supp. 3d 2 (D.D.C. 2013) ....................................................................11, 15

*Pharm. Rsch. & Mfrs. of Am. v. Thompson*,
    259 F. Supp. 2d 39 (D.D.C. 2003) ........................................................................4

*Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*,
    893 F. Supp. 2d 49 (D.D.C. 2012) ........................................................................7

*Shawnee Tribe v. United States*,
    298 F. Supp. 2d 21 (D.D.C. 2002) ........................................................................7

*Stand Up for Cal.! v. U.S. Dep't of the Interior,*
  204 F. Supp. 3d 212 (D.D.C. 2016) ..............................................................10

*\*Stewart v. Azar,*
  308 F. Supp. 3d 239 (D.D.C. 2018) ...............................6, 8, 9, 10, 11, 12, 13, 14, 15

*Tower Lab'ys, Ltd. v. Lush Cosmetics Ltd.,*
  285 F. Supp. 3d 321 (D.D.C. 2018) ...............................................................8

*Trans World Airlines, Inc. v. Maddox,*
  897 F.2d 773 (5th Cir. 1990) ........................................................................4

*\*Tuttle v. Jewell,*
  952 F. Supp. 2d 203 (D.D.C. 2013) ..........................................................13, 15

*United States v. Microsemi Corp.,*
  2009 WL 577491 (E.D. Va. Mar. 4, 2009) .....................................................5

*\*W. Flagler Assocs. v. Haaland,*
  2021 WL 5492996 (D.D.C. Nov. 22, 2021) ...........................................10, 14, 15

*W. Watersheds Project v. Pool,*
  942 F. Supp. 2d 93 (D.D.C. 2013) .........................................................7, 8, 14

*Wilderness Soc'y v. Babbitt,*
  104 F. Supp. 2d 10 (D.D.C. 2000) ..........................................................7, 13

*Wyrough & Loser, Inc. v. Pelmor Lab'ys, Inc.,*
  376 F.2d 543 (3d Cir. 1967) ........................................................................4

**STATUTES**

5 U.S.C. § 704...................................................................................................10

25 U.S.C.
  § 2710(d)(1) .................................................................................................1
  § 2710(d)(3) .................................................................................................1
  § 2710(d)(8) .................................................................................................1

28 U.S.C.
  § 1391(b)(2) .................................................................................................3
  § 1404(a) ...................................................................................................2, 5
  § 1406 ....................................................................................................2, 3, 5
  § 1631 ....................................................................................................2, 3, 5

Wash. Rev. Code § 9.46.0364(1)..........................................................................2

2020 Wash. Legis. Serv. ch. 127, § 1 ...................................................................16

**REGULATIONS**

86 Fed. Reg. 49,046 (Sept. 1, 2021) ........................................................................7, 8, 9

**OTHER AUTHORITIES**

Admin. Off. of the U.S. Cts., "U.S. District Courts – Combined Civil and Criminal Federal Court
    Management Statistics" (Dec. 31, 2021), *available at*
    https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile1231.2021.pdf
    ........................................................................................................................................14

Gaming Compacts, Washington State Gambling Comm'n, *available at*
    https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts ....................................................1

Plaintiff Maverick Gaming LLC ("Maverick") respectfully submits this opposition to the Washington State defendants' ("State Defendants") motion to transfer venue to the Western District of Washington.  Maverick is concurrently moving to amend its complaint to drop the State Defendants and Counts Two and Three; its First Amended Complaint now challenges only the Secretary of the Interior's approval of the compact amendments giving Indian tribes a sports-betting monopoly.  *See* Dkt. 34.  Maverick's First Amended Complaint does not include any claim for relief against the State Defendants.  *See id.*  Instead, Maverick's First Amended Complaint is limited to a claim under the Administrative Procedure Act ("APA") alleging that actions committed by federal officials in the District of Columbia violated federal law.  Given these amendments, there is no conceivable basis to transfer venue, and this Court should deny the State Defendants' motion.

## BACKGROUND

The Indian Gaming Regulatory Act ("IGRA") permits federally recognized Indian tribes to offer class III gaming on Indian lands only if three conditions are met: (1) the gaming is authorized by a federally approved tribal ordinance; (2) the gaming is "located in a State that permits such gaming for any purpose by any person, organization, or entity"; and (3) the gaming is conducted in accordance with a tribal-state compact that has been approved by the U.S. Secretary of the Interior.  25 U.S.C. § 2710(d)(1), (3), (8).

Beginning in the early 1990s, the Secretary of the Interior approved tribal-state compacts between Washington and "[a]ll 29 federally recognized tribes in Washington," giving the tribes the exclusive right to offer certain class III games such as craps and roulette.  *See* Gaming Compacts, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts (last visited Mar. 10, 2022); Dkt. 30-1, at 11.

1

In 2020, Washington passed a law that permits an Indian tribe to amend its tribal-state gaming compact to allow the tribe to offer sports betting. *See* Wash. Rev. Code § 9.46.0364(1); *see also* Dkt. 1, at 18–19 (Compl. ¶¶ 74–76). Pursuant to this provision, 16 of Washington's 29 Indian tribes amended their compacts to authorize sports betting. Dkt. 1, at 19–20 (Compl. ¶¶ 77–81). The Secretary of the Interior approved each of these amendments. *Id.* Because offering sports betting remains a crime for all nontribal entities, the Secretary's approval of these compact amendments grants Indian tribes a monopoly over sports betting. Dkt. 1, at 15–16 (Compl. ¶¶ 57–63); Dkt. 30-1, at 11 ("Unless a gaming compact authorizes it, Class III[] gaming is prohibited under Washington State law.").

On February 24, 2022, the State Defendants filed a motion to transfer this case to the Western District of Washington. *See* Dkt. 30-1. The State Defendants argue that this Court should transfer the case pursuant to 28 U.S.C. §§ 1631 and 1406 on the ground that this Court lacks personal jurisdiction over them. *See* Dkt. 30-1, at 12–20. Alternatively, they argue that this Court should transfer the case pursuant to 28 U.S.C. § 1404(a) on the grounds of convenience and the interest of justice. *See id.* at 20–27.

Concurrently with this opposition, Maverick is moving to amend its complaint and to drop the State Defendants from this action. Maverick's First Amended Complaint would limit its challenge to Count One of the initial complaint in order to simplify the issues before this Court, promote judicial efficiency, and avoid unnecessary litigation. *See* Dkt. 34. Count One alleges that the Secretary of the Interior violated the APA by approving tribal-state gaming compact amendments that give Indian tribes a monopoly over sports betting because those compacts violate IGRA and related federal statutes, the U.S. Constitution's guarantee of equal protection, and the anticommandeering principle of the Tenth Amendment. Dkt. 1, at 34–35 (Compl. ¶¶ 161–73).

The First Amended Complaint drops Counts Two and Three, which challenged the State Defendants' execution and administration of the compacts and compact amendments, as well as the State Defendants' discriminatory enforcement of the State's criminal prohibitions against most forms of class III gaming.  *See* Dkt. 1, at 36–40 (Compl. ¶¶ 174–203).  The First Amended Complaint does not bring any claims against the State Defendants, turns only on questions of federal law, and challenges only the unlawful actions of federal officials in the District of Columbia.

## ARGUMENT

Concurrently with this opposition, Maverick is moving to amend its complaint and drop the State Defendants and all claims against them.  As amended, Maverick's complaint alleges only that the actions of federal officials in the District of Columbia violate federal law.  Maverick's amended complaint eliminates any possible concerns raised in the State Defendants' motion to transfer, and the motion should therefore be denied.

## I.    The State Defendants' Personal-Jurisdiction Challenge Is Moot.

The State Defendants' primary argument is that this Court lacks personal jurisdiction over them and should therefore transfer the case to the Western District of Washington under 28 U.S.C. §§ 1631 and 1406.  Dkt. 30-1, at 12–20.[1]  Maverick's First Amended Complaint, however, disposes of this argument.  As amended, Maverick's complaint challenges only the Secretary of the Interior's approvals of the compact amendments granting Indian tribes a sports-betting monopoly on the ground that those approvals violated IGRA and related federal statutes, the constitutional guarantee of equal protection, and the Tenth Amendment's anticommandeering

---

[1]  The State Defendants do not dispute that venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2); instead, they argue that a court may transfer a case pursuant to Section 1406(a) where a defendant challenges personal jurisdiction but not venue.  Dkt. 30-1, at 13 (citing *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 282 (D.D.C. 2015)).

doctrine. *See* Dkt. 34, at 25–26 (Am. Compl. ¶¶ 124–35). Maverick's First Amended Complaint drops all claims for relief against the State Defendants and removes them from the action entirely. *See* Dkt. 34, at 1. The State Defendants' personal jurisdiction arguments are, therefore, moot.

The State Defendants have indicated that they will oppose Maverick's motion to amend its complaint and drop them from this litigation. If they do so, then they cannot continue to object that this Court lacks personal jurisdiction over them. Given that Maverick's First Amended Complaint drops all claims against the State Defendants and removes them from this action, any attempts by the State Defendants to continue litigating in this Court would waive any personal jurisdiction objections. In that scenario, the State Defendants would be voluntarily seeking to remain parties to an action in which they are not indispensable, a course of conduct that is functionally equivalent to a motion to intervene. Just as "a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction," *Pharm. Rsch. & Mfrs. of Am. v. Thompson*, 259 F. Supp. 2d 39, 59 (D.D.C. 2003) (quoting *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 483 (6th Cir. 2002)), so too is continuing to litigate in a forum after a plaintiff has dropped all claims against the parties and removed them from the action, *see Trans World Airlines, Inc. v. Maddox*, 897 F.2d 773, 787 (5th Cir. 1990) (holding that parties who, "[w]ithout being required to do so, . . . came voluntarily into court . . . waived any objection to the jurisdiction of the court over their persons"); *cf. Barnstead Broad. Corp. v. Offshore Broad. Corp.*, 869 F. Supp. 35, 38 (D.D.C. 1994) (explaining that a party may waive an objection to personal jurisdiction "by action or conduct" other than failing to raise the defense in a motion or answer (quoting *Wyrough & Loser, Inc. v. Pelmor Lab'ys, Inc.*, 376 F.2d 543, 546 (3d Cir. 1967))).

Because Maverick's First Amended Complaint removes the State Defendants and drops all claims against them, there is no need for this Court to address the State Defendants' personal-jurisdiction arguments and no basis for transfer under § 1631 or § 1406.

## II.    This Court Should Reject The State Defendants' Alternative Request To Transfer Venue On The Grounds Of Convenience And The Interest Of Justice.

The State Defendants—joined by the federal defendants—alternatively argue for a transfer under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses" and "in the interest of justice."  When considering a motion to transfer under this provision, courts consider both private- and public-interest factors:  "The private interest factors that are considered include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to the sources of proof."  *Boland v. Fortis Constr. Co.*, 796 F. Supp. 2d 80, 91 (D.D.C. 2011) (quoting *Bederson v. United States*, 756 F. Supp. 2d 38, 46 (D.D.C. 2010)).  "The public interest factors . . . include: (1) the local interest in making local decisions regarding local controversies; (2) the relative congestion of the transferee and transferor courts; and (3) the potential transferee court's familiarity with the governing law."  *Id.* (omission in original) (quoting *Bederson*, 756 F. Supp. 2d at 46).  "[C]ourts have imposed a heavy burden on those who seek transfer and a court will not order transfer unless the balance is strongly in favor of the defendant."  *Id.* (alteration in original) (quoting *United States v. Microsemi Corp.*, 2009 WL 577491, at *6 (E.D. Va. Mar. 4, 2009)).

Particularly in light of the First Amended Complaint, these factors do not justify transferring the case.

### A.    The Private-Interest Factors Weigh Against Transfer.

Each of the private-interest factors weighs against transfer.  *First*, the District of Columbia is Maverick's chosen forum, and this choice is entitled to deference given that Maverick's First

Amended Complaint challenges only the actions of federal officials in the District of Columbia. *Second*, the State Defendants' choice of forum is irrelevant because Maverick seeks to drop all claims against them and to remove them from this action. *Third*, the Secretary of the Interior's approval of the relevant compact amendments—the only actions Maverick's First Amended Complaint challenges—arose in this district. *Finally*, in light of the First Amended Complaint, this district is the most convenient forum for all remaining parties, and any discovery (which would be minimal, if any) would be most easily undertaken in the District of Columbia.

> **1.    Maverick Is Challenging Only The Actions Of Federal Officials In The District Of Columbia, So This Court Should Defer To Maverick's Choice Of Forum.**

This district is Maverick's chosen forum, a factor that strongly weighs against transfer. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see Stewart v. Azar*, 308 F. Supp. 3d 239, 245 (D.D.C. 2018) ("A plaintiff's choice of forum is generally afforded substantial deference . . . ." (internal quotation marks omitted)).

The State Defendants say this Court should accord little weight to this factor because the District of Columbia is not Maverick's home forum and "this case has nothing to do with the District of Columbia." Dkt. 30-1, at 23–24. But it is the plaintiff's *chosen* forum—not its "home forum"—that receives deference. The principle that a plaintiff's choice of forum is entitled to less deference when a defendant seeks transfer to the plaintiff's home forum "has little bearing" when a "case has a strong nexus to the District." *Stewart*, 308 F. Supp. 3d at 246. And the State Defendants are wrong to say this case has nothing to do with the District of Columbia. Maverick's First Amended Complaint challenges only actions of federal officials in the District of Columbia. This case therefore has a strong nexus to the District, and this Court should accordingly defer to

Maverick's choice of forum. *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000).

The State Defendants also minimize the role of the federal officials in Maverick's challenge by stating that "[t]he only alleged tie with the District of Columbia is the involvement of one federal agency and the officials who approved amendments to certain compacts between Washington State and Indian tribes." Dkt. 30-1, at 24. But the cases the State Defendants rely on are inapt—they involved circumstances in which a plaintiff sued the heads of federal agencies in the District of Columbia, but the challenged actions were actually performed by subordinates *outside the District*. *See W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 99 (D.D.C. 2013) (noting that the challenged actions of the Bureau of Land Management occurred in Utah); *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25 (D.D.C. 2002) (noting that the federal government's actions were not "centered in this forum" but occurred in various field offices). In such cases, this court has held that the application of a federal statute by a federal agency's field office does not create a sufficient nexus to the District of Columbia to weigh against transfer simply because the agency is headquartered in the District. *See Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54–56 (D.D.C. 2012).

That is not the case here; Maverick's First Amended Complaint is focused on challenging precisely those actions—and only those actions—by federal officials in the District of Columbia. The *only* actions that Maverick challenges are those that occurred in the District of Columbia: the Secretary's approvals of the sports-betting compact amendments.[2] "[S]ubstantial personalized

---

[2] Maverick's First Amended Complaint challenges only actions by high-level members of the Department of the Interior in the District of Columbia. Specifically, the approvals of the gaming compacts published in the Federal Register were signed by Defendant Bryan Newland, Assistant Secretary – Indian Affairs, whose office is in the District of Columbia. *See, e.g.*, 86

involvement by a member of the Washington, D.C. agency" constitutes "meaningful ties to the District of Columbia." *W. Watersheds Project*, 942 F. Supp. 2d at 98 (internal quotation marks omitted).

The State Defendants argue that a decision on Maverick's claim will affect residents of Washington, not the District of Columbia, Dkt. 30-1, at 24, but "personal involvement by District-based government officials . . . provides a link between [a] controversy and the District of Columbia, even if the case will have an impact on the residents of another state," *Stewart*, 308 F. Supp. 3d at 247 (internal quotation marks omitted).

Because Maverick's challenge to the actions of senior Department of the Interior officials has a clear nexus to the District of Columbia, its choice of forum should be respected.

### 2. Because Maverick's First Amended Complaint Would Drop The State Defendants From This Action, Their Choice Of Forum Is Irrelevant.

A defendant's choice of forum is "a consideration when deciding a § 1404(a) motion," but, unlike the plaintiff's choice of forum, "it is not ordinarily entitled to deference." *Tower Lab'ys, Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018). When a plaintiff opposes a motion to transfer, the defendant must show that the added convenience and justice of litigating in their preferred forum overcomes the deference given to the plaintiff's choice of forum. *Id.* Here, the State Defendants' choice of forum is irrelevant because Maverick's First Amended Complaint drops all claims against the State Defendants and would remove them from the action. Dkt. 34, at 1.

---

Fed. Reg. 49,046, 49,047 (Sept. 1, 2021). And the notices of approval direct those seeking further information to contact the Director of the Office of Indian Gaming, who is also located in the District of Columbia. *See id.* at 49,046.

### 3.      Because Maverick Is Challenging Agency Action That Occurred In The District Of Columbia, Its Claim Arose In This District.

The only claim remaining in Maverick's amended complaint is its APA challenge to the Secretary of the Interior's approvals of the sports-betting compact amendments.  Because this claim challenges agency action that took place in the District of Columbia, it arose in this District. The State Defendants contend that Maverick's claim arose in Washington because the tribal-state compact amendments were executed in Washington. Dkt. 30-1, at 25.  But "[i]n APA cases, courts generally focus on where the decisionmaking process occurred to determine where the claim arose." *Stewart*, 308 F. Supp. 3d at 246 (internal quotation marks omitted).  "An administrative claim is said to arise in this district if it was drafted, signed, and published in this district, and if the controversy stems from the formulation of national policy on an issue of national significance." *Id.* (internal quotation marks omitted).

The Secretary's decision-making process for approving the compact amendments occurred in the District of Columbia, as the notices of approval published in the Federal Register make clear. *See, e.g.*, 86 Fed. Reg. at 49,046–47 (signed by Defendant Bryan Newland, Assistant Secretary – Indian Affairs, whose office is in the District of Columbia, and referring those interested in more information to the Director of the Office of Indian Gaming, who is also located in the District of Columbia).  The challenged approvals were therefore drafted, signed, and published in this District.  And the approvals stem from national policy on an issue of national significance—*i.e.*, the Secretary of the Interior's position that federal law permits tribal-state gaming compacts that grant Indian tribes monopolies over class III gaming.

*Stewart* is instructive.  That case involved a challenge to the federal government's approval of a new Kentucky Medicaid program.  *Stewart*, 308 F. Supp. 3d at 242.  The government moved to transfer the case to the Eastern District of Kentucky, arguing that the case was essentially a local

controversy that arose in Kentucky.    Judge Boasberg rejected the government's argument,

explaining that the decision-making process "occurred primarily within the District of Columbia

and the decisionmakers [a]re located here."   *Id.* at 247 (alteration in original; internal quotation

marks omitted).   He further stated:

> Medicaid is a cooperative program between federal and state governments.   A
> challenge to HHS's decision to approve a state plan is thus almost always
> predicated on events that had their genesis in a state.   To buy Defendants' argument
> would mean that Medicaid challenges only belong in courts of the relevant state.
> That simply is not so.

*Id.*  So too here.  As with approval of state Medicaid programs, a challenge to the Secretary of the

Interior's approval of tribal-state compacts will always involve activity that occurred within a

particular state.   But that does not mean that Maverick's APA claim arose in Washington.   The

APA provides a right to seek review of "final agency action," 5 U.S.C. § 704, and it is undeniable

that the final agency action that gave rise to Maverick's claim occurred in the District of Columbia.

Indeed, challenges to the Secretary of the Interior's decision to approve or disapprove state-

tribal gaming compacts pursuant to IGRA are routinely brought in this Court.   *See W. Flagler*

*Assocs. v. Haaland*, 2021 WL 5492996, at *1 (D.D.C. Nov. 22, 2021) (APA challenge to

Secretary's approval of Florida tribal gaming compact); *MGM Glob. Resorts Dev., LLC v. U.S.*

*Dep't of the Interior*, 2020 WL 5545496, at *3 (D.D.C. Sept. 16, 2020) (APA challenge to

Secretary's approval of amendments to Connecticut tribal gaming compacts); *Forest Cnty.*

*Potawatomi Cmty. v. United States*, 330 F. Supp. 3d 269, 274 (D.D.C. 2018) (APA challenge to

Secretary's disapproval of amendment to Wisconsin tribal gaming compact); *Stand Up for Cal.!*

*v. U.S. Dep't of the Interior*, 204 F. Supp. 3d 212, 248 (D.D.C. 2016) (APA challenge to

Secretary's approval of California tribal gaming compact); *Amador County v. Kempthorne*, 592 F.

Supp. 2d 101, 103 (D.D.C. 2009) (APA challenge to Secretary's approval of amendment to California tribal gaming compact).

Because Maverick's APA claim arose in this district, this factor weighs strongly against transfer.

### 4.    This District Is The Most Convenient Forum For Maverick's APA Claim.

The convenience of the parties, the convenience of any witnesses, and the ease of access to proof all weigh against transfer. Maverick's First Amended Complaint would drop the State Defendants as parties; as a result, the State Defendants can no longer complain that litigating in this Court is inconvenient for them (and should they voluntarily continue to litigate in this Court, any inconvenience would be self-imposed). Further, to the extent the federal defendants join the State Defendants' motion, they "cannot reasonably claim to be inconvenienced by litigating in this district" because "[a]fter all, this is [their] home forum." *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 6 (D.D.C. 2013). Because Maverick's First Amended Complaint includes claims only against federal officials residing in the District of Columbia, the District of Columbia is the most convenient forum for all remaining parties.

Nor does the convenience of witnesses or the ease of access to proof support transfer. In "an APA case, the convenience of witnesses and the ease of access to sources of proof are not likely to be relevant." *Stewart*, 308 F. Supp. 3d at 248 (internal quotation marks omitted). To the extent these factors have any relevance at all, they weigh against transfer because the government "cannot" argue "that the administrative record would be more accessible" outside the District of Columbia. *Oceana*, 58 F. Supp. 3d at 7.

The State Defendants note that any witnesses and proof concerning Counts Two and Three of Maverick's complaint "are likely to be located in Washington State." Dkt. 30-1, at 26. That

11

contention is dubious even under the initial complaint, as this case is unlikely to require extensive (if any) witnesses or proof. The State Defendants themselves acknowledge that Maverick's claims "appear to turn on legal issues not requiring significant discovery." *Id.* At any rate, in light of Maverick's First Amended Complaint and the removal of Counts Two and Three, Dkt. 34, any comparative ease of access to witnesses and proof on those two claims is now irrelevant. The three convenience factors therefore weigh against transfer.

*        *        *

Thus, all of the applicable private-interest factors weigh against transferring this case to the Western District of Washington.

### B.    The Public-Interest Factors Also Weigh Against Transfer.

The three public-interest factors weigh against transferring this case as well. *First*, this case does not involve an issue of merely local concern, but a question of national importance that will have implications beyond Washington—*i.e.*, whether federal law requires the Secretary of the Interior to disapprove tribal-state compacts that grant Indian tribes a monopoly over certain class III games. *Second*, the relative congestion of the two courts is either neutral or weighs against transfer because the Western District of Washington is more congested than this District. *Finally*, because this case turns on questions of federal law, the Western District of Washington's comparative expertise in interpreting Washington state law does not support transfer.

### 1.    This Case Raises Questions Of National—Not Merely Local— Importance.

The State Defendants mischaracterize this case as involving only a local controversy simply because it touches on local interests. Dkt. 30-1, at 21. Judge Boasberg rejected a similar argument in *Stewart*, noting that "[t]he central question . . . is not whether the people of [the proposed transferee State] have an interest—even a strong one—in the outcome of this case.

12

Instead the Court must determine whether this is a question[] of national policy or national significance." 308 F. Supp. 3d at 249 (second alteration in original; internal quotation marks and emphasis omitted). That case involved a national—not merely local—controversy because "[w]hile this suit has an undeniable connection to Kentucky and may affect the lives of many people there, it also carries national consequences." *Id.*; *see also Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208–09 (D.D.C. 2013) ("Presumably there is greater local interest" in the proposed transferee state, "but that interest is not germane to whether Interior acted in an arbitrary or capricious fashion or in violation of the law."); *Wilderness Soc'y*, 104 F. Supp. 2d at 13 (declining to transfer a case because, "[w]hile this case does present a controversy that will have an impact on the residents of Alaska," the Department of the Interior's "decision to commence oil and gas leasing" in Alaska's National Petroleum Reserve "is a national policy decision").

The federal-law issues raised in Maverick's First Amended Complaint are plainly of national concern. Maverick is asking this Court to declare that the Secretary's approval of a tribal-state compact giving Indian tribes the right to offer a form of class III gaming that the State does not permit nontribal entities to offer is inconsistent with IGRA, related federal statutes, and the U.S. Constitution. Dkt. 34, at 27 (Am. Compl. ¶ 136). These arguments are not based on local conditions in Washington, but involve an important question of national concern: Does federal law permit the Secretary of the Interior to approve tribal-state compacts that grant a monopoly over certain class III games to Indian tribes?

As in *Stewart*, the resolution of this question will have implications beyond Washington. The Secretary of the Interior has approved compacts in States other than Washington that grant Indian tribes class III gaming monopolies. For example, just last year, this District considered a challenge to the Secretary of the Interior's approval of a gaming compact between the State of

Florida and the Seminole Tribe of Florida that "grants the Tribe a monopoly over both all online betting and all wagers on major sporting events." *W. Flagler Assocs.*, 2021 WL 5492996, at *2.

The local issues involved in the cases cited by the State Defendants bear no resemblance to the questions of national importance raised by Maverick's complaint. *Alabama v. U.S. Army Corps of Engineers* involved a challenge to a decision by Corps staff in Georgia and Alabama "to allocate storage from Lake Lanier to meet water supply needs in Georgia." 304 F. Supp. 3d 56, 62, 67 (D.D.C. 2018). The plaintiffs in *Alaska Wilderness League v. Jewell* argued that a regulation allowing "certain oil and gas industry players" to take "Pacific walruses in the Chukchi Sea off the coast of Alaska" was arbitrary and capricious. 99 F. Supp. 3d 112, 113 (D.D.C. 2015). And *Western Watersheds Project* involved a claim that the Bureau of Land Management failed to comply with its own regulation because it did not take actions specified in its 2006 determinations for grazing lands in Utah's Grand Staircase and Glen Canyon. 942 F. Supp. 2d at 95.

In contrast to these highly fact-bound local controversies, Maverick's claim involves important questions of federal statutory interpretation and constitutional law that will have implications for the Secretary of the Interior's process for reviewing *any* tribal-state gaming compact conferring a tribal monopoly over class III games and will have implications for numerous extant compacts that grant such a monopoly. This is not merely a "local controvers[y]," as the State Defendants aver. *See* Dkt. 30-1, at 21–22. The issues of national concern presented by this case weigh "sharply against transfer." *Stewart*, 308 F. Supp. 3d at 249.

> ## 2.    The Relative Congestion Of This Court And The Western District Of Washington Either Weighs Against Transfer Or Is A Neutral Factor.

As of December 31, 2021, the Western District of Washington had 420 pending cases per judgeship, and the District of Columbia had 386 pending cases per judgeship, making the Western District of Washington a more congested forum. *See* Admin. Off. of the U.S. Cts., *U.S. District*

*Courts – Combined Civil and Criminal Federal Court Management Statistics* 2, 76 (Dec. 31, 2021), *available at* https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile1231.2021.pdf.  A court in this District has held that "[a]bsent a showing that either court's docket is 'substantially more congested' than the other, this factor weighs neither for nor against transfer." *Stewart*, 308 F. Supp. 3d at 248.  Because the congestion of the two courts is not substantially different, this factor is likely neutral, but to the extent it is relevant, the greater congestion of the Western District of Washington weighs against transfer.

### 3.    This Court Is Familiar With The Governing Law.

The State Defendants tout the Western District of Washington's greater familiarity with Washington law as a basis to transfer this case to that forum.  But Maverick's APA claim turns on questions of *federal* law, not state law.  Maverick's claim is based on the APA, IGRA, other federal statutes, and the U.S. Constitution.  All federal courts are "competent to decide federal issues correctly." *Oceana*, 58 F. Supp. 3d at 7 (internal quotation marks omitted).  This factor weighs against transfer because "this Court receives more APA claims than its western colleagues given the number of federal agencies and officials located in Washington, D.C." *Tuttle*, 952 F. Supp. 2d at 208.

The State Defendants nevertheless claim that this case may require interpretation of tribal-state compacts, the Washington statutes authorizing the compacts, and the State's criminal prohibitions on class III gaming. Dkt. 30-1, at 22.  None of those issues moves the needle here.  As a preliminary matter, "[t]he interpretation of tribal-state gaming compacts is a question of federal law." *W. Flagler Assocs.*, 2021 WL 5492996, at *10.  And Maverick has dropped its challenges to the State Defendants' execution and administration of the compacts and compact amendments, as well as their enforcement of Washington's criminal prohibitions of class III gaming. *See* Dkt. 34.  Moreover, the State Defendants concede—as they must—that Washington

law permits 16 Indian tribes to offer sports betting, while such "gaming is prohibited under Washington State law" for everyone else. Dkt. 30-1, at 11; *see* 2020 Wash. Legis. Serv. ch. 127, § 1 ("The legislature intends to further this policy by authorizing sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington."). The outcome of this case does not turn on any contested question of state law.

Thus, the only question for this Court to answer is whether the Secretary of the Interior violated *federal* law when she approved compact amendments granting Indian tribes a sports-betting monopoly. The Western District of Washington's comparative advantage in interpreting Washington law provides no basis to transfer this case.

*       *       *

Because the relevant private- and public-interest factors all weigh against transferring this case to the Western District of Washington, the State Defendants cannot meet their heavy burden of showing that transfer is appropriate. Maverick's choice of forum should not be disturbed.

## CONCLUSION

This Court should deny the State Defendants' Motion To Transfer Venue.

Dated:  March 10, 2022                    Respectfully submitted,

                                      /s/ *Theodore B. Olson*

                                      THEODORE B. OLSON
                                          D.C. Bar No. 367456
                                      MATTHEW D. MCGILL
                                          D.C. Bar No. 481430
                                      LOCHLAN F. SHELFER
                                          D.C. Bar No. 1029799
                                      GIBSON, DUNN & CRUTCHER LLP
                                        1050 Connecticut Avenue, N.W.
                                        Washington, D.C. 20036
                                        Phone:  202.955.8668
                                        Email:  tolson@gibsondunn.com

17