1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HONORABLE DAVID G. ESTUDILLO**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| MAVERICK GAMING LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>                    Defendants. | Case No.: 22-cv-05325-DGE<br><br>**[PROPOSED] LIMITED INTERVENOR**<br>**SHOALWATER BAY TRIBE'S MOTION**<br>**TO DISMISS**<br><br>**Note on Motion Calendar:_____**<br><br>**ORAL ARGUMENT REQUESTED** |

[Proposed] Motion to Dismiss
Case No. 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

# **TABLE OF CONTENTS**

I.  Introduction ....................................................................................................... 1

II.  Background and Context .................................................................................. 2

   A.  Statutory Context: The Tribal-State Gaming Compact. ........................... 2

       i. Federal Law: The Indian Gaming Regulatory Act ........................... 2

       ii. State Law:  Statutory Structure for Negotiation and Ratification of Tribal-State Gaming Compacts ................................................................................. 4

   B.  Historical Context: The Shoalwater Bay Indian Tribe ........................... 5

   C.  The Instant Litigation ............................................................................ 9

III.  Argument ....................................................................................................... 10

   A.  Legal Standards for Dismissal Per Rule 12(b) 7 and Rule 19. ............. 10

   B.  The Shoalwater Bay Tribe is a Required or Necessary Party. ............... 13

   C.  The Shoalwater Bay Tribe Cannot Be Joined Because It Has Not Waived its Sovereign Immunity. ................................................................................. 15

   D.  All Four Factors Considered under Rule 19(b) weigh in the Tribe's favor; The Tribe's Interest in Maintaining Sovereign Immunity Leaves Very Little Room in Balancing the Four Factors of Rule 19(b). ........................................... 16

   E.  The Federal and State Defendants Are Not Able to Adequately Represent the Tribe's Protectable Interests. ................................................................. 18

   F.  The Narrow Public Rights Exception Does Not Apply Where the Claims Threaten an Absent Party Tribe's Legal Entitlement and Sovereignty. ................. 23

IV.  Conclusion ..................................................................................................... 24

i

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aguayo v. Jewell,*

    827 F.3d 1213 (9th Cir. 2016) ........................................................................................14

*Alto v. Black,*

    738 F.3d 1111 (9th Cir. 2013) ........................................................................................18

*American Greyhound Racing, Inc. v. Hull,*

    305 F.3d 1015 (9th Cir. 2002) ...................................................................................passim

*Artichoke Joe's California Grand Casino v. Norton,*

    353 F.3d 712 (9th Cir. 2003) ..........................................................................................22

*Backcountry Against Dumps v. United States Bureau of Indian Affairs,*

    2021 WL 2433942 (S.D. Cal. 2021) ...............................................................................21

*Behrens v. Donnelly,*

    236 F.R.D. 509 (D. Hawaii 2006) ..................................................................................12

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California,*

    547 F.3d 962 (9th Cir. 2008) ......................................................................................2, 12

*California v. Cabazon Band of Mission Indians,*

    480 U.S. 202 (1987) .........................................................................................................2

*Chicken Ranch Rancheria of Me-wuk Indians v. California,* __F.4th __,

    2022 WL 2978615 (9th Cir. July 28, 2022) ................................................................3, 4

*Clinton v. Babbitt,*

    180 F.3d 1081 (9th Cir. 1999) ........................................................................................13

*Comenout v. Whitener,*

    2015 WL 917631 (W.D. Wash. 2015) ...........................................................................18

*Confed. Tribes of Chehalis Indian Reservation v. Washington,*

    96 F.3d 334 (9th Cir. 1996) ..............................................................................................5

ii

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

*Confederated Tribes of Siletz Indians v. Oregon,*

    143 F.3d 481 (9th Cir.1998) ................................................................13

*Confederated Tribes of the Chehalis Indian Reservation v. Lujan,*

    928 F.2d 1496 (9th Cir. 1991) ...........................................................11

*Conner v. Burford,*

    848 F.2d 1441 (9th Cir. 1988) ...........................................................24

*Crow Tribe of Indians v. Racicot,*

    87 F.3d 1039 (9th Cir. 1996) .............................................................13

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*

    276 F.3d 1150 (9th Cir. 2002) ..........................................11, 13, 14, 17

*Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs,*

    932 F.3d 843 (9th Cir. 2019) .......................................................passim

*E.E.O.C. v. Peabody Western Coal Co.,*

    400 F.3d 774 (9th Cir. 2005) .......................................................11, 12

*Enterprise Management Consultants, Inc. v. United States ex rel. Hodel,*

    883 F.2d 890 (10th Cir. 1989) ...........................................................17

*Friends of Amador County v. Salazar,*

    554 Fed. Appx. 562 (9th Cir. 2014) ...................................10, 14, 18, 22

*Harris v. Lake of the Torches Resort,*

    2015 WL 1014778 (Wisc. App. March 10, 2015) ...............................16

*Jamul Action Comm. v. Simermeyer,*

    974 F.3d 984 (9th Cir. 2020) .............................................................20

*Kennedy v. United States Dept. of the Interior,*

    282 F.R.D. 588 (E.D. Cal. 2012) .......................................................24

*Kescoli v. Babbitt,*

    101 F.3d 1304 (9th Cir. 1996) ...........................................11, 12, 17, 24

iii

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1  *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt,*
2     43 F.3d 1491 (D.C. Cir. 1995)...................................................................13
3  *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,*
4      523 U.S. 751 (1998). ..............................................................................15
5  *Knox v. United States,*
6     759 F. Supp. 2d 1123 (D. Idaho 2010) .....................................................22
7  *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton,*
8     327 F. Supp. 2d 995 (W.D. Wis. 2004) ....................................................22
9  *Makah Indian Tribe v. Verity,*
10     910 F.2d 555 (9th Cir. 1990) ...........................................................11, 12, 24
11  *McShan v. Sherrill,*
12     283 F.2d 462 (9th Cir. 1960) ...................................................................12
13  *Michigan v. Bay Mills Indian Cmty.,*
14      572 U.S. 782 (2014) ............................................................................1, 15
15  *Milligan v. Anderson,*
16      522 F.2d 1202 (10th Cir. 1975) ...............................................................10
17  *MM&A Productions v. Yavapai Apache Nation,*
18     234 Ariz. 60, 316 P.3d 1248 (Ariz. App. 2014) .......................................16
19  *Naartex Consulting Corp. v. Watt,*
20     722 F.2d 779 (D.C. Cir.1983).....................................................................15
21  *National Licorice Co. v. N.L.R.B.,*
22     309 U.S. 350 (1940) ..................................................................................23
23  *No Casino in Plymouth v. National Indian Gaming Comm'n,*
24     2022 WL 1489498 (E.D. Cal. 2022) .........................................................21
25  *Northern Alaska Envtl. Ctr. v. Hodel,*
26     803 F.2d 466 (9th Cir. 1986) ...................................................................12

27
28

iv

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1  *Northern Arapahoe Tribe v. Harnsberger*,
2     660 F. Supp. 2d 1264 (D. Wyo. 2009) ...................................................18
3  *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*,
4     498 U.S. 505 (1991) .................................................................................15
5  *Pit River Home & Agric. Coop. Ass'n v. United States*,
6     30 F.3d 1088 (9th Cir. 1994) ..........................................................2, 10, 21
7  *Puyallup Tribe, Inc. v. Dep't of Game*,
8     433 U.S. 165 (1977) .................................................................................20
9  *Quileute  Indian Tribe v. Babbitt*,
10    18 F.3d 1456 (9th Cir. 1994) ..................................................................17
11 *Republic of Philippines v. Pimental*,
12    553 U.S. 851 (2008) ............................................................................2, 11
13 *Safe Air v. Meyer*,
14    373 F.3d 1035 (9th Cir. 2004) ................................................................12
15 *Salt River Project Agric. Improvement & Power Dist. v. Lee*,
16    672 F.3d 1176 (9th Cir. 2012) ..........................................................11, 13
17 *Santa Clara Pueblo v. Martinez*,
18    436 U.S. 49 (1978) ...................................................................................15
19 *Shermoen v. United States*,
20    982 F.2d 1312 (9th Cir. 1992) ..........................................................11, 24
21 *Shields v. Barrow*,
22    58 U.S 130 (1855) ...................................................................................12
23 *Southwest Center for Biological Diversity v. Babbitt*,
24    150 F.3d 1152 (9th Cir. 1998) ................................................................14
25 *Tulalip Tribes of Wash. v. Washington*,
26    783 F.3d 1151 (9th Cir. 2015) ..................................................................2
27
28

v

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

                                                    Scott D. Crowell
                              Crowell Law Offices-Tribal Advocacy Group
                                              1487 W. State Route 89A, Suite 8
                                                           Sedona, AZ 86336
                                                        Tel: (425) 802-5369

*Union Pacific Railroad Co. v. Runyan,*

    320 F.R.D. 245 (D. Ore. 2017) ................................................................................23, 24

*United States   v. USF&G,*

    309 U.S. 506 (1940) ................................................................................................16

*United States v. Bowen,*

    172 F.3d 682 (9th Cir. 1999) ..................................................................................11

*United States v. Kagama,*

    118 U.S. 375 (1886) ................................................................................................19

*United States v. Shoalwater Bay Indian Tribe,*

    205 F.3d 1353 (9th Cir. 1999) ..................................................................................5

*United States v. Spokane Tribe,*

    139 F.3d 1297 (9th Cir. 1998) ......................................................................5, 20, 21

*United States v. Washington,*

    853 F.3d 946, 954–64 (9th Cir. 2017), *aff'd by an equally divided Court,* 138 S. Ct. 1832

    (2018) ......................................................................................................................19

*United States v. Wheeler,*

    435 U.S. 313 (1978) ................................................................................................15

*Ward v. Apple, Inc.,*

    791 F.3d 1041 (9th Cir. 2015) ................................................................................11

*Wash. State Dep't of Licensing v. Cougar Den, Inc.,*

    139 S. Ct. 1000 (2019) ............................................................................................19

*Washington v. Confed. Tribes of Colville Indian Reservation,*

    447 U.S. 134 (1980) ................................................................................................20

*White v. Univ. of Cal.,*

    765 F.3d 1010 (9th Cir. 2014) ..........................................................................passim

vi

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1

**Statutes**

2   18 U.S.C. §§ 1166 ...................................................................................................3

3   18 U.S.C. §§ 1955 ...................................................................................................3

4   25 U.S.C. § 2702(1) .................................................................................................3

5   25 U.S.C. § 2710(a) .................................................................................................3

6   25 U.S.C. § 2710(d)(3)(A) ..................................................................................3, 10

7   25 U.S.C. §§ 2705(a) ...............................................................................................3

8   25 U.S.C. §§ 2713 ....................................................................................................3

9   25 U.S.C. §§ 2710(d)(7)(A)(ii) ................................................................................3

10  Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA") ...................passim

11  RCW § 9.46.360 .......................................................................................................4

12  RCW §§ 39.34.020, 39.34.030 ................................................................................4

13  **Other Authorities**

14  Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil*

15  *3d*. § 1359 at 68 (2004)..........................................................................................19

16  Office of Indian Gaming within the Department of the Interior. www.bia.gov/as-ia/oig .............13

17  **Rules**

18
19  Fed. R. Civ. P. 12(b)(7) .....................................................................................passim

20  Fed. R. Civ. P. 19 .............................................................................................passim

21  Fed. R. Civ. P. 19(a)....................................................................................11, 12

22  Fed. R. Civ. P. 19(b)...............................................................................12, 16, 17

23  **Public Notices**

24  67 Fed. Reg. 68152.................................................................................................6

25  72 Fed. Reg. 30392.................................................................................................7

26  80 Fed. Reg. 31918.................................................................................................7

27  86 Fed. Reg. 51373.................................................................................................7

28

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

87 Fed. Reg. 4636 ..................................................................................................... 5

**Constitutional Provisions**

House Bill Report H.B. 2638 at 6 ............................................................................ 8

Laws of 2020, Chapter 127 § 1 ................................................................................ 4

U.S. Const. art. I, § 8, cl. 3 ..................................................................................... 15

viii

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

Limited Intervenor the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation ("Shoalwater Bay Tribe" or "Tribe") moves pursuant to Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19 to dismiss this lawsuit filed by Plaintiff Maverick Gaming LLC ("Maverick").

## I.    Introduction

In this lawsuit, Maverick seeks to invalidate the compacts between the State of Washington (the "State") and twenty-nine Indian tribes ("Washington Tribes") entered into under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA").  The Washington Tribes are the true target of its suit as the requested relief is intended to shutter tribally owned and operated casinos across the State of Washington and deprive them of a critical source of funding for governmental programs. Yet, Maverick has not brought this action against any of the Washington Tribes, each of which possesses Indian lands within the boundaries of the State of Washington.  Instead, Maverick sues the United States, various federal officials (collectively, "Federal Defendants"), and various officials of the State of Washington (collectively, "State Defendants").

There is a reason for the Tribes' absence from Maverick's corrected First Amended Complaint, Dkt. 66 ("FAC"): the Tribes are immune from suit.  *See, e.g., Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014).  Maverick cannot sue the Washington Tribes directly seeking a declaration that their gaming is illegal.  So, Maverick tries to circumvent the Washington Tribes' immunity by suing other defendants instead. This type of gamesmanship is precisely the circumstance that Rule 19 of the Federal Rules of Civil Procedure prevents – having a suit proceed in the absence of a necessary and required party.

The stated purpose of Maverick's lawsuit is to void the Tribal-State gaming compacts entered into by the non-party Washington Tribes and the State of Washington. The Tribe has not

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

waived its sovereign immunity from the lawsuit. As a proper party that cannot be joined to the FAC, the case cannot in equity and good conscience proceed in the Tribe's absence. Accordingly, the FAC in its entirety should be dismissed.  With its substantial rights at stake, the Tribe is specially appearing for the limited purpose of moving to dismiss under Rules 12(b)(7) and 19.  For avoidance of doubt, by intervening in this action for the limited purpose of filing the instant Motion, the Tribe does not waive, and fully reserves, its sovereign immunity.  *See, e.g.*, *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1100 (9th Cir. 1994)[1]; *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004). Nothing herein shall be construed as a waiver, in whole or in part, of the Tribe's immunity, or as the Tribe's consent to be sued, and the legal counsel for the Tribe, undersigned, lack any authority to waive the Tribe's immunity or to consent to the jurisdiction of this Court.

## II.  Background and Context

### A.  Statutory Context: The Tribal-State Gaming Compact.

"In Washington, the process for entering into tribal gaming compacts is governed by both federal and state law." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1153 (9th Cir. 2015).

### i.  Federal Law: The Indian Gaming Regulatory Act

In 1987, the Supreme Court ruled that due to "traditional notions of Indian sovereignty and the congressional goal of Indian self-government," states may not regulate tribal gaming on tribal land absent congressional authorization. *California v. Cabazon Band of Mission Indians*, 480 U.S.

---

[1] Many of the cases cited in support of the Tribe's Motion were issued prior to 2007. When Rule 19 was amended in 2007, the word 'necessary' was replaced by the word 'required' and the word 'indispensable' was removed. The changes were intended to be 'stylistic only" and "the substance and operation of the Rule both pre- and post-2007 are unchanged." *Republic of Philippines v. Pimental*, 553 U.S. 853, 855-56; *Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*, 547 F.3d 962, 969 n.6 (9th Cir. 2008).

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

202, 216, 221–22 (1987).   The following year, Congress enacted IGRA with the purpose of creating a clear regulatory framework for Indian gaming that would allow for "gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments."   25 U.S.C. § 2702(1).

Consistent with its purpose, IGRA broadly protects Indian tribes' right to conduct and regulate gaming activities within a three-tier framework.   *See, e.g., Chicken Ranch Rancheria of Me-wuk Indians v. California*, __F.4th __, 2022 WL 2978615 at *4 (9th Cir. July 28, 2022).  Class I gaming (traditional and ceremonial games) and Class II gaming (bingo and non-banked card games) are regulated principally by tribes.  25 U.S.C. § 2710(a).  But Class III gaming (including casino games and sports betting) is regulated differently because IGRA provides an opportunity for states to be involved in the regulatory oversight of tribal gaming by negotiating compacts that will "govern[] the conduct of [Class III] gaming activities" on Indian land.   25 U.S.C. § 2710(d)(3)(A).

Congress vested the National Indian Gaming Commission ("NIGC") and the Department of Justice ("DOJ") with authority to take action against illegal gaming on Indian lands. 25 U.S.C. §§ 2705(a) and 2713; 18 U.S.C. §§ 1166 and 1955. Congress identified allocation of criminal jurisdiction as a proper subject of negotiation between states and Indian tribes. Congress vested the federal courts with jurisdiction over an action by a state against a tribe for breach of compact. 25 U.S.C. §§ 2710(d)(7)(A)(ii). Maverick has remedies available to redress its perceived grievances. It sought and failed to secure a sports betting entitlement in the Washington legislature. Maverick could ask Congress to amend IGRA. Maverick could plea its case to the NIGC, DOJ or the State and request that they take enforcement action against the Washington Tribes. But

3

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

Maverick filing its own federal litigation to shutter the Washington Tribes' gaming facilities is not among the remedies available to it.

### ii. State Law:  Statutory Structure for Negotiation and Ratification of Tribal-State Gaming Compacts

Congress provided states an opportunity to have a role in the regulation of tribal gaming, if they "engage in compact negotiations in good faith." *Chicken Ranch*, 2022 WL 2978615 at *5. To capture this opportunity, Washington state law directs the State's Gambling Commission to "negotiate compacts for class III gaming on behalf of the state with federally recognized Indian tribes in the state of Washington." RCW § 9.46.360.  Moreover, Washington statutes authorize intergovernmental joint powers agreements between tribes and local government agencies regarding provision of services to tribal casinos and reimbursement to local government for the costs of such services. RCW §§ 39.34.020, 39.34.030.

The State's approach to embracing the opportunities allowed by IGRA was most recently exemplified by the Washington legislature's approval of sports wagering in Indian country pursuant to IGRA compacts, which the legislature passed over Maverick's objection. The legislature found:

> It has long been the policy of this state to prohibit all forms and means of gambling except where carefully and specifically authorized and regulated. The legislature intends to further this policy by authorizing sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington. Tribes have more than twenty years' experience with, and a proven track record of, successfully operating and regulating gaming facilities in accordance with tribal gaming compacts. Tribal casinos can operate sports wagering pursuant to these tribal gaming compacts, offering the benefits of the same highly regulated environment to sports wagering.

Laws of 2020, Chapter 127 § 1.

4

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

**B.  Historical Context: The Shoalwater Bay Indian Tribe**

The Shoalwater Bay Indian Tribe is a federally recognized tribe located in rural western Washington State.  87 Fed. Reg. 4636, 4639 (2022).  The Shoalwater Bay people descend from the Lower Chinook and Lower Chehalis peoples who for centuries populated the villages that dotted Washington's coastal waterways.  Despite severe population loss and cultural displacement that European settlement brought to the region, the Tribe steadfastly resisted outside pressure to relinquish its lands.  *Confed. Tribes of Chehalis Indian Reservation v. Washington*, 96 F.3d 334, 338 (9th Cir. 1996).  Ultimately, the federal government relented, and in 1866 President Andrew Johnson set aside the Shoalwater Bay Indian Reservation within the Tribe's ancestral lands.  *Id.*

In the 1990s, seeking a source of employment and revenue to fund crucial tribal government operations, the Tribe exercised its rights under IGRA and approached Washington State to negotiate a gaming compact.  The State, however, insisted that the gambling machines the tribes sought to operate gaming activities were illegal, while refusing to waive its Eleventh Amendment immunity or otherwise consent to IGRA's negotiation/mediation remedial process. *See United States v. Spokane Tribe*, 139 F.3d 1297, 1298 (9th Cir. 1998). After years of unsuccessful negotiations, in 1998, the Tribe opened a gaming facility on the Shoalwater Bay Indian Reservation, over the objections of the State and without a compact. Specifically, the Tribe installed 108 gambling devices wherein random number generators ("RNGs") contained within the machines determined the outcome. *See United States v. Shoalwater Bay Indian Tribe*, 205 F.3d 1353 (9th Cir. 1999) (unpublished decision).

The United States Attorney inserted itself in the dispute on the side of the State, filed an *in rem* action against the 108 machines, and, deploying federal officers**,** halted the Tribe's gaming

5

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

operation by seizing and carrying away the gaming machines from tribal property. *See generally* Arthur Santana & Jack Broom, *Shoalwater Tribe, Marshals Face Off—Agents Start to Confiscate Slot Machines*, SEATTLE TIMES, Sept. 23, 1998 (article attached to the Declaration of Chairperson Charlene Nelson, Ex. B ("Nelson Declaration") as Ex. B-1). The gaming operation was the Tribe's most significant source of employment and the primary source of discretionary governmental revenue, and the seizure resulted in the loss of sixty much-needed reservation jobs. *Id.*

Shortly after the seizure of the Tribe's gaming machines by the United States marshals, the Tribe installed a different type of gaming machine with a pre-determined win/loss percentage resembling the compacted class III games in operation today within the State. That development resulted in further enforcement action, but instead of United States marshals raiding the reservation and seizing machines, the NIGC, in 1999, issued a Notice of Violation, NOV-99-10, and an Order of Closure, OC-99-10. In the Tribe's subsequent administrative appeal to the United States Department of the Interior Office of Hearings and Appeals, Docket No. NIGC 99-2, the Tribe was successful in securing an Order enjoining the NIGC from taking further enforcement action until the United States demonstrated that it was seeking to provide an effective remedy for the Tribe's injuries resulting from Washington State's refusal to negotiate a gaming compact. *See* Order Deferring Decision and Staying Proceedings on Reconsideration Motion, August 23, 2001 (Attached to Nelson Declaration as Ex. B-2). While that injunction was pending, the Tribe and the State successfully reached agreement on a tribal/state Compact, which became effective on November 8, 2002. 67 Fed. Reg. 68152.[2]  Significant to the Tribe's instant motion to intervene

---

[2] The complete text of the Compact and the several amendments thereto are available for public viewing at the official web page of the Office of Indian Gaming within the Department of the Interior. www.bia.gov/as-ia/oig

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

and proposed Rule 19 motion, despite the coordinated and parallel efforts of both the United States and the State of Washington to prevent the Tribe from conducting gaming, the Tribe's gaming operation never closed, except for the few weeks between the seizure of the 108 gambling devices with RNGs and the installation of machines without RNGs.

That Compact marked a turning-point in the relationship between the three governments: the Tribe, the State and the United States, ending years of contentious and often confrontational disputes over gaming on the Tribe's lands. The Tribe and the State have subsequently reached agreement on three amendments to the Compact, all approved by the Department of the Interior, in 2007, 72 Fed. Reg. 30392, in 2015, 80 Fed. Reg. 31918; and most recently in 2021, 86 Fed. Reg. 51373.   The Third Amendment in 2021, authorizing sports wagering, is the focus of Maverick's FAC, but notably, it seeks to invalidate the initial compact and the three amendments thereto in their entirety.

In stark contrast to the contentious and tumultuous non-compacted environment of the 1990s, today, the Tribe operates a small gaming facility free of disputes with the State and United States.  The casino provides an anchor for the Tribe's economy and the economies of the surrounding rural communities.   Willapa Bay Enterprises, the Tribally-owned entity which operates the casino along with the restaurant, small lodge and other businesses,  employs 120 people, approximately 30% of which are Tribal members, their spouses or direct family members (*See* Nelson Declaration at 2, ¶ 7). The casino purchases goods and services from local vendors, and creates a gathering place for the Tribe and the surrounding community. Importantly, the small gaming facility is a source of pride for the Tribe and self-esteem for the Tribe's members. *Id.* at 2-3, ¶¶ 8-9.

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

The Tribe and the State have replaced the adversity of the 1990s with a constructive, working relationship for more than twenty years. Today's relationship is an example of the successful relationship between all Washington Tribes and the State, a key factor in the Washington legislature's decision to authorize sports betting at tribal casinos:

> Tribes and the state have an excellent working partnership already as sovereign-to-sovereign governments, including work done related to problem gambling, and so it makes sense to continue that partnership and add sports wagering as an additional offering at tribal casinos. The state has a history of acting conservatively in terms of expanding gambling. Tribal gaming is a structured regulatory environment and there are significant internal controls. Because tribes are located throughout the state, there will be access for consumers to sports betting no matter where they live. It is best to start slowly by authorizing sports wagering at existing tribal facilities, without adding mobile sports betting, and then to evaluate how it works.

House Bill Report H.B. 2638[3] at 6.

These facts are brought to this Court's attention in the context of the current motion as they highlight that the Compact, in effect as amended, is the vehicle that ended the adversity of the pre-compact relationship between the Tribe, the State and the United States. These facts are also relevant here because they highlight, as discussed in greater detail below in Section III(D), the adversarial environment which Maverick intends to recreate between the three respective governments if Maverick's requested relief, invalidation of the Compact, is ordered by this Court.

Maverick's owner, Eric Persson, boasts that he is a "proud" enrolled member of the Tribe and that his acquisition of commercial card rooms allows him "to come home again" to work with his "tribal brothers." *See* Maverick Gaming Press Releases of June 14, 2019; June 27, 2019; August 19, 2019; and October 1, 2019 (collectively included as Ex. B-3 to Nelson Declaration). As a

---

[3] https://lawfilesext.leg.wa.gov/biennium/2019-20/Pdf/Bill%20Reports/House/2638%20HBR%20APP%2020.pdf?q=20220519085734.

8

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

tribal member, Mr. Persson has access to the Tribe's governance and dispute mechanisms (voting, running for office, litigating in tribal court, etc.) to air his grievances. Mr. Persson has not had to use or rely upon the employment opportunities provided by, and/or the tribal programs funded by, the Tribe's gaming operation, because he left the reservation and relocated to the State of Nevada, where he amassed his own wealth with a very successful gaming company comprised of five casinos in northern Nevada, four casinos in Colorado, and eighteen commercial card rooms in Washington State. *See* official webpage of Maverick Gaming LLC, www.maverickgaming.com. Rather than returning to Washington State to assist his own Tribe, he returned to Washington State to purchase a majority of the State's commercial card rooms, and he now seeks to destroy, through his requested prayer for relief in the instant litigation, the major source of employment and discretionary revenue for his own Tribe.

The irony of Eric Persson boasting of his proud membership in the Tribe, while filing an action to destroy the Tribe's gaming facility and the governmental revenues, programs and jobs it supports, while not even attempting to join the Tribe as a party to the litigation, is not lost on the Tribe. Accordingly, the Tribe is compelled to seek limited intervention in this case and bring an end to his efforts to undermine his own Tribe's efforts to achieve economic self-sufficiency and provide adequate governmental services to its membership.

C.     **The Instant Litigation**

On July 5, 2022, Maverick filed the FAC, in this Court, making a sweeping request for declaratory and injunctive relief to prohibit Class III gaming on Shoalwater Bay Indian lands. More specifically, Maverick's FAC seeks, inter alia:

(1) a declaration that the Tribe's compact and its amendments (and all such compacts and amendments between the State and the Washington Tribes) are "void, were not validly

9

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

entered into, and are not in effect." FAC, Dkt. 66 at 40, prayer for relief at ¶ 207 (1);

(2) a declaration that the "Tribes' class III gaming activities violate IGRA." FAC, Dkt. 66 at 40, prayer for relief at ¶ 207 (4); and

(3) an order "enjoining the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission." FAC, Dkt. 66 at 40, prayer for relief at ¶ 207 (6).

Despite seeking relief that is unmistakably directed against the Tribe, and despite the fact that federal law expressly recognizes the Tribe's direct interest in its Compact, *see* 25 U.S.C. § 2710(d)(3)(A), Maverick did not name the Tribe—or any other Washington Tribe—as a defendant. Thus, to protect its substantial interests in this matter, the Tribe now moves to dismiss under Rule 12(b)(7) and Rule 19. *See Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 850 (9th Cir. 2019). Because the Tribe is a necessary party, and because the Tribe is protected by sovereign immunity and cannot be joined, this action must be dismissed. *See, e.g.*, *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1103 (9th Cir. 1994).

## III. Argument

### A. Legal Standards for Dismissal Per Rule 12(b) 7 and Rule 19.

The Tribe seeks an order dismissing the lawsuit in its entirety pursuant to Rule 12(b)(7) because the Tribe is a required party that cannot be joined, and accordingly, pursuant to Rule 19, the Court cannot in equity and good conscience proceed with the case without the Tribe.

A party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7)*; Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022-25 (9th Cir. 2002)*.* Similarly, non-parties that have not consented to the court's jurisdiction may specially appear to seek dismissal pursuant to Rule 19. *See Friends of Amador County v. Salazar*, 554 Fed. Appx. 562, 564 (9th Cir. 2014); *Milligan v. Anderson*, 522 F.2d 1202, 1203-04 (10th Cir. 1975)*.*

10

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1    Furthermore, a court may address whether to dismiss a case under Rule *19 sua sponte. Republic*
2    *of Philippines v. Pimental*, 553 U.S. 851, 861 (2008).

3           Rule 19 provides a three-step process for determining whether the court should dismiss an
4    action for failure to join a purportedly indispensable party. *E.E.O.C. v. Peabody Western Coal Co.*,
5    400 F.3d 774, 779 (9th Cir. 2005); *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999); *see*
6    *also Pimental*, 553 U.S. at 855-57; accord, *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th
7
8    Cir. 1990) (describes same process as a two-step process).

9           First, Rule 19 asks whether the absent party is "necessary (i.e., required to be joined if
10   feasible) under Rule 19(a)." *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d
11   1176, 1179 (9th Cir. 2012); *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014);
12
13   *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir.
14   1991). To make such a determination, the court "must consider whether 'complete relief' can be
15   accorded among the existing parties, and whether the absent party has a 'legally protected interest'
16   in the subject of the suit." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992); *Ward*,
17
18   *v. Apple, Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015). If the court finds that a party is not "necessary,"
19   then the court need not consider the second step under Rule 19 and the case may continue without
20   the absent party. *Makah*, 910 F.2d at 559; *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996).

21          If the party is "required" or "necessary," the court must then determine whether that party
22   is "indispensable." *Id.* To make such a determination, the court asks whether it is "feasible to order
23
24   that the absent party be joined." *Id.* "A party is indispensable if in 'equity and good conscience,'
25   the court should not allow the action to proceed in its absence." *Dawavendewa v. Salt River Project*
26   *Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161 (9th Cir. 2002) (citing Fed. R. Civ. P.
27
28

                                                    11

19(b)). To make this determination, the court balances four factors: (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Id.* at 1161–62; *Kescoli*, 101 F.3d at 1310.

If it is not feasible to join the absent party, the court asks whether the case can proceed without it — and if not, dismisses the action. *Peabody Western Coal*, 400 F.3d at 779, Fed. R. Civ. P. 19(b). An indispensable party is one which "not only [has] an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Peabody Western Coal*, 400 F.3d at 780 (quoting *Shields v. Barrow*, 58 U.S 130, 139 (1855)).

The movant bears the burden of persuading the court that a party must be joined (or the case dismissed). *Makah*, 910 F.2d at 558. There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). The determination is heavily influenced by the facts and circumstances of each case. *Cachil Dehe Band*, 547 F.3d at 970; *Northern Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986). To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside the pleadings. *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *Behrens v. Donnelly*, 236 F.R.D. 509, 512 (D. Hawaii 2006) (citing Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 3d.* § 1359 at 68 (2004).

Application of these standards to the FAC and the circumstances of the Tribe compels the dismissal of Maverick's lawsuit. Because the Tribe is immune and therefore cannot be joined involuntarily, and because the Tribe is a necessary, indispensable party under Rule 19, the entire case must be dismissed per Rule 12(b)(7). *Salt River Project*, 672 F.3d at 1179; *Greyhound Racing*, 305 F.3d at 1022-25.

### B. The Shoalwater Bay Tribe is a Required or Necessary Party.

The Tribe is a required or necessary party because the Tribe's protectable interests in continuing to offer gaming activities on its Indian lands are at stake, and Maverick cannot secure complete relief without joining the Tribe. The Tribe's interests in this matter could not be more clear. The Tribe has a federal right to conduct Class III gaming on its Reservation, rights in its Compact with Washington State that federal law expressly recognizes, and sovereign right to immunity from unconsented suit. The relationship between those legally protected interests and Maverick's claims could not be any more direct: Maverick brought this action to "void" the Tribes Compact in the Tribe's absence. FAC, Dkt. 66 at 40, ¶¶ 207 (1), (4) and (6). "Clearly," a sovereign "has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by . . . relief" that purports to affect the validity of the compact. *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995). The Ninth Circuit recognizes that IGRA "compacts are agreements . . . and are interpreted as contracts." *Chehalis,* 958 P.2d at 750 (citing *Confederated Tribes of Siletz Indians v. Oregon*, 143 F.3d 481, 485–486 (9th Cir.1998) and *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996)): *see also Dawavendewa*, 276 F.3d at 1156-57 ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

by the determination of the action are indispensable.") *Greyhound Racing*, 305 F.3d at 1022-23 (tribes had "substantial" interest sufficient for Rule 19 purposes in renewal of their compacts). It is the Tribe, along with the twenty-eight other Washington Tribes, that are the real parties in interest in this litigation. It is the Tribe that will be devastated by the loss of employment and governmental revenue if Maverick succeeds. It is the Tribe that will be severely hampered from achieving Congress' purpose in enacting IGRA: economic development, self-sufficiency and strengthened tribal governance through compacted gaming on its Indian lands.

Moreover, Maverick's efforts to make an "'end run around tribal sovereign immunity" would impair the Tribe's immunity. *Aguayo v. Jewell*, 827 F.3d 1213, 1222 (9th Cir. 2016). It is well established that plaintiffs cannot "circumvent the barrier of sovereign immunity by merely substituting" other parties or officials "in lieu of the Indian tribe." *Dawavendewa,* 276 F.3d at 1160. That is because sovereign immunity protects a tribe's ability to "govern [its] reservation," and suits that indirectly attack a Tribe's "ability to negotiate contracts" go to the heart of that core sovereign right. *Id.* at 1157.

Moreover, complete relief is not available where the absent party is a tribe that is a signatory to the agreement at issue because the judgment would not be binding on the tribe, which could assert its rights under the agreement. *Friends of Amador County*, 554 Fed. Appx. at 564 (appellants seek to invalidate tribe's compact with state); *Greyhound Racing*, 305 F.3d at 1022-25 ("[t]he interests of the tribes in their compacts are being impaired and, not being parties, the tribes cannot defend those interests."); *Southwest Center for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) (party to settlement agreement regarding water rights at issue in litigation); *Dawavendewa*, 276 F.3d at 1161 (absent tribe was party to lease that provided for tribal preference

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

in hiring); *Clinton v. Babbitt*, 180 F.3d 1081, 1089 (9th Cir. 1999) (requested judgment would preclude absent tribe from fulfilling its obligations under settlement agreement); *Pit River*, 30 F.3d at 1099 ("[E]ven if the Association obtained its requested relief in [a dispute over which group of Indians are beneficial owners of a certain piece of property], it would not have complete relief, since judgment against the government would not bind the [other group of Indians], which could assert its right to possess the [property]."); *Chehalis*, 928 F.2d at 1498 (noting that judgment against federal officials in an action challenging an agreement between the United States and the Quinault Nation would not bind the Nation); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir.1983) ("an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined"). There can be no doubt that the Tribe is a required or necessary party.

## C. The Shoalwater Bay Tribe Cannot Be Joined Because It Has Not Waived its Sovereign Immunity.

Indian tribes are "domestic dependent nations" that exercise "inherent sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)). "Thus, unless and 'until Congress acts, the tribes retain' their historical sovereign authority." *Id.* (quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978)); *see also* U.S. Const. art. I, § 8, cl. 3 (authorizing Congress to "regulate Commerce . . . with the Indian Tribes"); *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998). As "distinct, independent political communities" with sovereign powers that have never been extinguished, "Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). *See also Bay Mills Indian Cmty*, 572 U.S. at 789

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

(sovereign immunity extends to bar suit whether on or off-reservation, whether or not the action concerns commercial activity). As such, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe*, 523 U.S. at 754. Further, any purported waiver must be duly authorized as a matter of tribal law. The person or entity that allegedly waived the immunity must have the authority to waive that immunity. *United States   v. USF&G*, 309 U.S. 506, 513 (1940); *MM&A Productions v. Yavapai Apache Nation*, 234 Ariz. 60, 316 P.3d 1248 (Ariz. App. 2014); *Harris v. Lake of the Torches Resort*, 2015 WL 1014778 (Wisc. App. March 10, 2015) (An attorney's attestations in court are insufficient to waive tribal immunity unless the attorney is duly authorized under tribal law to do so).

Maverick seeks sweeping relief that would cripple the Tribe's economy, jeopardize government services, and deprive the Tribe of its compact rights.  But Maverick cannot sue the Tribe due to the Tribe's sovereign immunity.  The Tribe has not waived its sovereign immunity regarding this litigation. Ex. B, Nelson Declaration at 2, ¶ 5.  The Tribe has not consented to this Court's jurisdiction to hear Maverick's claims. *Id.*  No Tribal officials, including its attorneys in this litigation, are authorized under Tribal law waive the Tribe's sovereign immunity regarding this litigation. *Id*. To sidestep this bar, Maverick seeks to proceed against *other* parties to indirectly obtain the relief that it cannot obtain directly.  Federal Rule 19 forbids this sleight of hand.

      **D.**    **All Four Factors Considered under Rule 19(b) weigh in the Tribe's favor; The Tribe's Interest in Maintaining Sovereign Immunity Leaves Very Little Room in Balancing the Four Factors of Rule 19(b).**

Addressing and balancing the four factors of Rule 19(b) (citing Fed. R. Civ. P. 19(b)). To make this determination, the court balances four factors: (1) the prejudice to any party or to the

16

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Dawavendewa*, 276 F.3d at 1161 (9th Cir. 2002)*; Kescoli*, 101 F.3d at 1310, merely reinforces the correctness of dismissal. The first factor, prejudice to the Tribe is overwhelming – Maverick seeks to "void" the Tribe's Compact through which these tribal opportunities directly flow. The second and third factors on the adequacy and form of relief also weigh in favor of dismissal. Any relief in Maverick's favor thrusts the Tribe into uncharted legal waters that threaten to terminate its sovereign rights and to destroy the tribal economy. As discussed in Section II(A)(i) above, Congress afforded Maverick alternative forums to seek redress, but a private party's legal challenge to the legality of a Tribe's gaming facility is not among them. All four factors weigh heavily in favor of dismissal.

A tribe's interest in sovereign immunity so greatly outweighs a plaintiff's interest in litigating its claims that there is "very little room for balancing of other factors" under Rule 19(b) in such cases. *Greyhound Racing*, 305 F.3d at 1025. Virtually all the cases to consider the question have dismissed  under Rule 19, regardless of whether an alternative remedy is available, if the absent parties are Indian tribes possessing sovereign immunity. *Dine Citizens*, 932 F.3d at 857; *White*, 765 F.3d at 1028; *Dawavendewa*, 276 F.3d at 1152*; Quileute  Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) ("Plaintiff's interest in litigating a claim may  be outweighed by a tribe's interest in maintaining its sovereign immunity."); *Chehalis*, 928 F.2d at 1499;  *Enterprise Management Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) ("[w]hen, as here, a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

of those interests compelling by themselves"). Federal courts acknowledge that plaintiffs may be left with no adequate remedy upon dismissal for non-joinder, "[b]ut this result is a common consequence of sovereign immunity, and [the Tribe's] interest in maintaining [its] sovereign immunity outweighs the [Appellants'] interest in litigating their claims." *White*, 765 F.3d at 1028; *Greyhound Racing*, 305 F.3d at 1025; *Friends of Amador County*, 554 Fed. Appx. at 566. Thus, although the Rule 19(b) factors still must be considered, the court's "discretion in balancing the equities ... is to a great degree circumscribed, and the scale is already heavily tipped in favor of dismissal." *Id. See also Comenout v. Whitener*, 2015 WL 917631 at *4 (W.D. Wash. 2015); *Northern Arapahoe Tribe v. Harnsberger*, 660 F. Supp. 2d 1264, 1280 (D. Wyo. 2009).

### E.  The Federal and State Defendants Are Not Able to Adequately Represent the Tribe's Protectable Interests.

In evaluating whether an existing party adequately represents the interests of an absent party, courts consider "whether the interest of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." *Dine Citizens*, 932 F.3d at 852 (quoting *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013)).  In evaluating these considerations, it is not enough that the absent party and the existing defendants both currently wish to prevail in the suit.  As the Ninth Circuit has explained, an absent party is required (i) where the interests of the existing and intervening defendants "might [later] diverge" or (ii) where, in cases involving absent tribal parties, no existing defendant shares the absent tribe's "sovereign interest in ensuring that [a tribal business] continue[s] to operate and provide profits to the [Tribe]."  *Dine Citizens*, 932 F.3d at 855.

18

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

No party can be expected to defend the Tribe's interests in this matter. Maverick is opposed to the Washington Tribes' interests as it seeks to **shut down** all Class III gaming in the State. Nor can the Federal Defendants or the State Defendants be counted upon to represent the Tribe.

The State Defendants cannot represent the Tribe. It is black letter law in this Circuit that the State Defendants cannot represent the Tribe's interests. *American Greyhound Racing, Inc.*, 305 F.3d at 1023, n.5, is the controlling case in the Ninth Circuit on the inability of a state to adequately represent the interest of absent tribes. In *Greyhound Racing*, a commercial racetrack filed a lawsuit against then-Arizona Governor Hull seeking to invalidate the gaming compacts Arizona had reached with several tribes. The Court noted "the State and the tribes have often been adversaries in disputes over gaming, and the State owes no trust duty to the tribes" and noted the "Governor's and the tribes' interests under the compacts are potentially adverse," *Id.* Those circumstances are also present here, hence, the State Defendants are not able to adequately represent the interests of the Tribe.

Moreover, the historical animosity between tribal and state interests stemming from competition over sovereign power prevents the State Defendants from adequately representing the Tribe. *See, e.g.*, *United States v. Kagama*, 118 U.S. 375, 384 (1886) ("These Indian tribes . . . owe no allegiance to the states, and receive from them no protection. Because of the local ill feeling, the people of the states where they are found are often their deadliest enemies."). That is why, unlike the Tribe's desire to vigorously assert its immunity in this action, the State has frequently sought to *undermine* tribal sovereignty in order to expand its *own* authority. *E.g.*, *Wash. State Dep't of Licensing v. Cougar Den, Inc.*, 139 S. Ct. 1000 (2019); *United States v. Washington*, 853 F.3d 946, 954–64 (9th Cir. 2017), *aff'd by an equally divided Court*, 138 S. Ct. 1832 (2018)

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(per curiam); *Washington v. Confed. Tribes of Colville Indian Reservation*, 447 U.S. 134, 152 (1980); *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 167 (1977); *Spokane Tribe*, 139 F.3d at 1301.

Nor can the Federal Defendants represent the Tribe's interests here. *Dine Citizens* is the controlling case in the Ninth Circuit on when the United States cannot adequately represent the interest of absent tribes. There the Ninth Circuit held that Federal Defendants are unable to adequately represent an absent tribe where their obligations to follow relevant laws are in tension with tribal interests. 932 F.3d. at 855. In *Dine Citizens*, the absent tribal entity of the Navajo Nation intervened in an APA action challenging the federal government's compliance with federal laws requiring review of the potential environmental impacts of federal approval for the operation of a tribal coal mine and a power plant that relied on the coal mine. The Nation sought intervention for the limited purpose of filing a motion to dismiss pursuant to Rule 19. *Id.* at 850. Finding the absent tribal entity to be a required party, the court turned to whether another party could adequately represent the absent tribal entity's interests, and opined that neither the United States nor the tribal entity's business partners could do so. The court reasoned that while federal defendants "have an interest in defending their own analyses," they "do not share an interest in the *outcome* of the approvals—the continued operation of" the tribe's mine and associated powerplant. *Id.*at 855.

*Dine Citizens* also noted that the Navajo Nation's interest in being able to operate a mine and benefit from an associated power plant to support its population was not merely pecuniary but "sovereign" in nature, and the tribal entity's business partners could not adequately represent these sovereign interests. *Id.; see also Jamul Action Comm. v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020)

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

(applying *Dine Citizens*); *Pit River*, 30 F.3d at 1101 ("We have held that the United States cannot adequately represent an absent tribe, when it may face competing interests."); *No Casino in Plymouth v. National Indian Gaming Comm'n,* 2022 WL 1489498 at *9-10 (E.D. Cal. 2022) (appeal pending); *Backcountry Against Dumps v. United States Bureau of Indian Affairs*, 2021 WL 2433942 at *2-3 (S.D. Cal. 2021) (appeal pending). The same is true here.  A "[d]eclar[ation] that the Tribe['s] class III gaming activities" are unlawful, FAC ¶ 207(4), would undermine the Tribe's unique sovereign interests by eviscerating the Tribe's "very ability to govern itself, sustain itself financially, and make decisions about its own" gaming operation.  *Dine Citizens*, 932 F.3d at 856.

Indeed, this case is far clearer than *Dine Citizens*.  There, one of the existing defendants "share[d] at least some of [the absent tribal parties'] financial interest in the outcome of the case." *Id.* at 856.  Here, by contrast, the federal government has no pecuniary interest in the Tribe's gaming operation. Quite the contrary: If the Court grants Maverick the requested relief, that likely would result in conflict between the Shoalwater Bay Tribe and both the Federal Defendants and the State Defendants over the Tribe's operation of gaming. The history discussed above at Section II(B) suggests a finding the Compact is void could lead to renewed disagreements about the Tribe's right to conduct gaming. For example, the United States may take enforcement action to stop the Tribe's gaming following a court order granting such relief, while the Tribe would resist such an effort. *See United States v. Spokane Tribe*, 139 F.3d 1297 (9th Cir. 1998) (vacating injunction of tribal gaming and remanding for further proceedings in light of Supreme Court holding a portion of IGRA unconstitutional). Applying *Dine Citizens*, the outcome of Maverick's lawsuit, if it were

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1   successful, creates potentially competing interests between the Tribe and the United States.

2   Accordingly, the Federal Defendants are not able to adequately represent the interests of the Tribe.[4]

3        Moreover, no Defendant has moved under Rule 12(b)(7) or 19 for failure to join the Tribe,

4   or otherwise raised the Tribe's sovereign immunity as an issue.  No Defendant has indicated in

5   filings in this case, during the April 28, 2022 status conference, or in the scheduling order, that it

6   would make such a motion.  And in the process of conferring with the parties in advance of filing

7   this Motion, none of the parties—not the Federal Defendants, not the State Defendants, and

8   certainly not Maverick—stated that they would raise the Rule 19 issue if the Tribe did not. That

9   factor itself demonstrates that their interests diverge from those of the Tribe's. *Friends of Amador*

10  *County*, 554 Fed. Appx. 562, 564 (9th Cir. 2014).

11       Further, governmental entities are unable to adequately represent tribal interests where the

12  governmental entity (or other remaining parties) may pursue a settlement or litigation strategy that

13  diverges from the Tribe's. *Friends of Amador County*, 554 Fed. Appx. at 564 ("[t]he government's

14  response to the district court's questions on this issue at a status conference caused the district court

15  to suspect that the government favored judicial resolution of the lawsuit as opposed to early

16  dismissal, and would seek to avoid taking positions contrary to its national Indian policy, even if

17  contrary to the Tribe's interest"). Still further, governmental entities such as Federal and State

---

[4] In a footnote in an earlier decision involving a challenge to IGRA gaming by tribes, *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003), a panel of the Ninth Circuit declined to address whether that case should have been dismissed pursuant to Rule 19 because that issue was not raised by the United States in its pleadings on appeal.  In a dictum, *see Knox v. United States*, 759 F. Supp. 2d 1123, 1236 (D. Idaho 2010), the court commented that Interior's interests were not adverse to the gaming tribes in that case because the Department has the primary responsibility in carrying out the United States' trust responsibility to tribes. 353 F.3d at 719 n.10.  That dictum is not consistent with the holding in *Diné Citizens* that tribes and federal agency defendants do not share "an interest in the outcome of [federal agency] approvals" of tribal business operations or involving tribal sovereignty interests, 932 F.3d at 855.

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

Defendants have a "broad obligation" to serve many people, which may conflict with the governmental entities' obligations to a tribe. *White*, 765 F.3d at 1027 (finding that a state university could not adequately represent the interests of the absent tribes because the university had a "broad obligation to serve the interests of the people of California, rather than any particular subset," and therefore had different motivations); *Union Pacific Railroad Co*. v. *Runyan*, 320 F.R.D. 245, 252 (D. Ore. 2017) (County government has broad obligations and no trust responsibility to protect absent tribes' treaty rights). Still further, even if the positions of the present parties are aligned with the absent tribe at a given point in time, they may diverge over the course of the litigation, including on appeal. *See, e.g*., *White* 765 F.3d at 1027. ("At present, their interests are aligned. There is some reason to believe that they will not necessarily remain aligned."). Certainly, the Tribe, the State and the United States appear poised to vigorously defend the compacts at issue, but they all have different and potentially competing interests which may diverge, or which may change over the course of the litigation.

For all of these reasons, this Court cannot conclude that the State Defendants or the Federal Defendants are able to adequately represent the protectable interests of the Tribe.

### F.    The Narrow Public Rights Exception Does Not Apply Where the Claims Threaten an Absent Party Tribe's Legal Entitlement and Sovereignty.

The federal courts do recognize a public rights exception to the joinder rules when the lawsuit is narrowly restricted to the protection and enforcement of public rights. *National Licorice Co. v. N.L.R.B*., 309 U.S. 350, 363 (1940). In order for the public rights exception to apply, (1) "the litigation must transcend the private interests of the litigants and seek to vindicate a public right," and (2) "although the litigation may   adversely affect the absent parties' interests, the

23

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

litigation must not destroy the legal entitlements of the   absent parties". *White*, 765 F.3d at 1028; *Kescoli*, 101 F.3d at 1311; *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988); *Union Pacific Railroad Co*., 320 F.R.D. at 256-57. However, the public rights exception is generally precluded where the lawsuit seeks to extinguish a tribe's substantial legal entitlements, it precludes application of the public rights exception. *See Shermoen*, 982 F.2d at 1319 ("Because of the threat to the absent tribes' legal entitlements, and indeed to their sovereignty, posed by the present litigation, application of the public rights exception to the joinder rules would be inappropriate."); *see also Kennedy v. United States Dept. of the Interior*, 282 F.R.D. 588, 599 (E.D. Cal. 2012). The only circumstance of which the Tribe is aware in which the public rights exception arguably prevented dismissal of a claims involving absent tribes has been found necessary and indispensable under Rule 19 is *Makah*, 910 F.2d at 559 n.6. There, the Ninth Circuit affirmed the District Court's dismissal on Rule 19 grounds in most respects, but allowed Makah's claims seeking ***future*** compliance with administrative procedures to be heard on remand. *Id.* Given the broad relief requested in Maverick's FAC, Dkt. 66 at 40, that extremely narrow exception is inapplicable to the circumstances here. *Id*. at 559 ("[T]he scope of the relief available to the Makah on their procedural claims is narrow.").

## IV.    Conclusion

The Shoalwater Bay Tribe and the other Washington Tribes are the real parties in interests in this litigation, none of which have waived their immunity from Maverick's lawsuit. Accordingly, the Tribe respectfully requests this Court to dismiss Maverick's claims in their entirety pursuant to Rule 12(b)(7) and Rule 19.

Respectfully submitted this _____ day of _____, 2022.

24

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*s/*_____

SCOTT CROWELL (WSBA No. 18868)
CROWELL LAW OFFICES-TRIBAL
ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
Fax: (509) 290-6953
Email: scottcrowell@hotmail.com

LAEL ECHO-HAWK (WSBA No. 34525)
MThirtySix, PLLC
700 Pennsylvania Avenue SE
The Yard – 2nd Floor
Washington, D.C. 20003
Telephone: (206) 271-0106
Email: Lael@MThirtySixPLLC.com

*Attorneys for Limited Intervenor Shoalwater
Bay Tribe*

25

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2022, I filed the foregoing PROPOSED MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in this matter.

DATED: August 3, 2022

*s/ Scott Crowell*
SCOTT CROWELL (WSBA No. 18868)
CROWELL LAW OFFICES-TRIBAL
ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
Fax: (509) 290-6953
Email: scottcrowell@hotmail.com

26

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Offices-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369