EXHIBIT "1"

NOT YET SCHEDULED FOR ORAL ARGUMENT
**Case No. 21-5265**
(Consolidated with No. 22-5022)

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

WEST FLAGLER ASSOCIATES, LTD., a Florida Limited Partnership
d/b/a MAGIC CITY CASINO,

BONITA-FORT MYERS CORPORATION, a Florida Corporation
d/b/a BONITA SPRINGS POKER ROOM,
*Plaintiffs-Appellees*,

v.

DEB HAALAND, in her official capacity as Secretary of the
United States Department of the Interior,

UNITED STATES DEPARTMENT OF
THE INTERIOR,
*Defendants-Appellees.*

---

Appeal from the United States District Court
for the District of Columbia
Case No. 1:21-cv-02192 (Hon. Dabney L. Friedrich)

---

### BRIEF OF APPELLANT SEMINOLE TRIBE OF FLORIDA

Joseph H. Webster (D.C. Bar 448458)
Elliott A. Milhollin (D.C. Bar 474322)
Kaitlyn E. Klass (D.C. Bar 1032219)
HOBBS, STRAUS, DEAN & WALKER, LLP
1899 L Street NW, Suite 1200
Washington, DC 20036
Telephone: (202) 822-8282
jwebster@hobbsstraus.com

Barry Richard (D.C. Bar 419850)
GREENBERG TRAURIG, P.A.
101 East College Avenue
Tallahassee, FL 32301
Telephone: (850) 222-6891
Facsimile: (850) 681-0207
richardb@gtlaw.com

*Attorneys for Appellant,*
*Seminole Tribe of Florida*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), undersigned counsel certifies the following:

**PARTIES AND AMICI**

1. District Court
   - Seminole Tribe of Florida, *putative-limited-intervenor*
   - West Flagler Associates, Ltd., *plaintiff*
   - Bonita-Fort Myers Corporation, *plaintiff*
   - Deb Haaland, Secretary of the U.S. Department of the Interior, *defendant*
   - U.S. Department of the Interior, *defendant*
   - State of Florida, *amicus curiae*

2. Circuit Court of Appeals
   - Seminole Tribe of Florida, *appellant*
   - West Flagler Associates, Ltd., *plaintiff-appellee*
   - Bonita-Fort Myers Corporation, *plaintiff-appellee*
   - Deb Haaland, Secretary of the U.S. Department of the Interior, *defendant-appellee*
       - (*Defendant-appellant* in related case No. 22-5022)
   - U.S. Department of the Interior, *defendant-appellee*
       - (*Defendant-appellant* in related case No. 22-5022)
   - Monterra MF, LLC, et al., *amicus curiae*

**RULINGS UNDER REVIEW**

- *W. Flagler Assocs., Ltd. v. Haaland*, 573 F. Supp. 3d 260, No. 1:21-cv-02192 (D.D.C. Nov. 22, 2021) (J. Dabney L. Friedrich), JA 554–79 (Order and Memorandum Opinion).

**RELATED CASES**

*Pending in the D.C. Circuit:*

- *W. Flagler Assocs., Ltd. v. Haaland*, 573 F. Supp. 3d 260, No. 1:21-cv-02192 (D.D.C. Nov. 22, 2021) (J. Dabney L. Friedrich), *appeal docketed*, No. 22-5022, *and consolidated with No. 21-5265* (D.C. Cir. Jan. 25, 2022).

*Resolved in the D.C. Circuit:*

- *Monterra MF, LLC v. Haaland*, 573 F. Supp. 3d 260, No. 1:21-cv-02513 (D.D.C. Nov. 22, 2021) (J. Dabney L. Friedrich) (dismissed as moot due to decision in *W. Flagler Assocs., Ltd. v. Haaland*, 573 F. Supp. 3d 260, No. 1:21-cv-02192 (D.D.C. Nov. 22, 2021) (J. Dabney L. Friedrich)), *appeal docketed*, No. 22-5010 (D.C. Cir. Jan. 20, 2022), *voluntary dismissal granted* (D.C. Cir. June 1, 2022).

*Resolved in the Eleventh Circuit:*

- *W. Flagler Assocs., Ltd. v. DeSantis*, 568 F. Supp. 3d 1277, No. 4:21-cv-270 (N.D. Fla. Oct. 18, 2021) (J. Allen Winsor) (dismissing case due to plaintiffs' lack of standing), *appeal docketed*, No. 21-14141 (11th Cir. Nov. 29, 2021), *voluntary dismissal granted sub nom. W. Flagler Assocs., Ltd. v. Governor of Fla.*, 2021 WL 7209340 (11th Cir. Dec. 20, 2021).

Dated: August 17, 2022                */s/ Joseph H. Webster*
                                       Joseph H. Webster
                                       HOBBS STRAUS DEAN & WALKER, LLP
                                       1899 L Street NW, Suite 1200
                                       Washington, DC 20036
                                       Telephone: (202) 822-8282
                                       jwebster@hobbsstraus.com

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................v

GLOSSARY OF ABBREVIATIONS...................................................ix

JURISDICTIONAL STATEMENT.....................................................1

STATEMENT OF THE ISSUES.........................................................2

STATUTES AND REGULATIONS....................................................3

STATEMENT OF THE CASE............................................................4

    I.    Factual Background.................................................................4

    II.   Procedural History and Rulings Below...................................7

SUMMARY OF ARGUMENT...........................................................8

ARGUMENT.....................................................................................11

    I.    The District Court Erred by Concluding the Tribe Was Not Indispensable Under Rule 19(b) and Allowing the Case to Proceed in the Absence of the Tribe.........................................11

        A. The District Court Committed an Error of Law When It Failed to Give the Tribe's Sovereign Immunity the Proper Weight in Its Rule 19(b) Analysis.................................12

        B. The District Court's Analysis of the Four Rule 19(b) Factors Was Deeply Flawed and Based on Errors of Law........................17

            i. Prejudice to the Tribe.............................................18

                1. The Tribe's Claim Is Nonfrivolous.........................18

                2. The Rule 19(a) and Prejudice Analyses Should Be Intertwined.........................................................21

                3. Questions Regarding Application of Federal Law Are Still Subject to Rule 19....................................22

                4. The Tribe's Interests Were Not Adequately Represented by Interior or the State........................23

                5. The Tribe Was Not Adequately Represented by Interior's or the State's Actions in the Litigation....27

             ii. The Extent to Which Prejudice Could Be Lessened or Avoided.............................................................29

             iii. Whether Judgment Rendered in the Tribe's Absence Would Be Adequate...........................................30

iv.  Lack of an Adequate Remedy for West Flagler................ 30

II.   The District Court Erred by Denying the Tribe's Rule 24(a) Motion
for Limited Intervention........................................................ 32

CONCLUSION.................................................................................... 35

# TABLE OF AUTHORITIES

## CASES

*100Reporters LLC v. U.S. Dep't of Just.*,
  307 F.R.D. 269 (D.D.C. 2014)................................................................24

*Ali v. Carnegie Inst.*,
  306 F.R.D. 20 (D.D.C. 2014)..........................................................13, 14

*Am. Greyhound Racing, Inc. v. Hull*,
  305 F.3d 1015 (9th Cir. 2002)........................................................ 20, 21

*Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*,
  795 F.3d 351 (2d Cir. 2015)................................................................11

*Amador Cnty. v. Jewell*,
  312 F.R.D. 11 (D.D.C. 2013)..............................................................22

*Amador Cnty. v. Salazar*,
  640 F.3d 373 (D.C. Cir. 2011).............................................................22

*Cherokee Nation of Okla. v. Babbitt*,
  117 F.3d 1489 (D.C. Cir. 1997)...........................................................24

*Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*,
  699 F.2d 1274 (D.C. Cir. 1983)...........................................................11

*Crossroads Grassroots Pol'y Strategies v. FEC*,
  788 F.3d 312 (D.C. Cir. 2015)................................................24, 33, 34

*Ctr. for Biological Diversity v. Pizarchik*,
  858 F. Supp. 2d 1221 (D. Colo. 2012)..................................................26

*De Csepel v. Republic of Hungary*,
  27 F.4th 736 (D.C. Cir. 2022)....................................................11, 25, 27

*Dewberry v. Kulongoski*,
  406 F. Supp. 2d 1136 (D. Or. 2005)......................................... 20, 21, 26

*Diaz v. Glen Plaid, LLC*,
No. 7:13-cv-853, 2013 WL 5603944 (N.D. Ala. 2013)........................................13

*Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*,
932 F.3d 843 (9th Cir. 2019)................................................................. 26

*Forest Cnty. Potawatomi Cmty. v. United States*,
317 F.R.D. 6 (D.D.C. 2016)..................................................................24

*Friends of Amador Cnty. v. Salazar*,
554 Fed. App'x 562 (9th Cir. 2014)....................................... 16, 20, 21, 23, 24, 27

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003).............................................................24, 33, 34

\* *Kickapoo Tribe of Indians v. Babbitt*,
43 F.3d 1491 (D.C. Cir. 1995)..................... 8, 9, 13, 14, 15, 16, 17, 20, 21, 23, 30

*Klamath Claims Comm. v. United States*,
541 Fed. App'x 974 (Fed. Cir. 2013)..................................................... 13

*Klamath Tribe Claims Comm. v. United States*,
106 Fed. Cl. 87, 96 (Fed. Cl. 2012)....................................................... 14

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
327 F. Supp. 2d 995 (W.D. Wis. 2004)............................................ 16, 20, 23, 24

*MGM Glob. Resorts Dev., LLC v. U.S. Dep't of Interior*,
No. 19-2377, 2020 WL 5545496 (D.D.C. Sept. 16, 2020)..................................35

*Nanko Shipping, USA v. Alcoa, Inc.*,
850 F.3d 461 (D.C. Cir. 2017)............................................................ 12

*PPI, Inc. v. Kempthorne*,
No. 08-cv-248-SPM, 2008 WL 2705431 (N.D. Fla. July 8, 2008).....16, 19, 23, 24

*Pueblo of Sandia v. Babbitt*,
47 F. Supp. 2d 49 (D.D.C. 1999)............................................... 14, 20, 23

\* *Republic of Philippines v. Pimentel,*
   553 U.S. 851 (2008)............................................................ 8, 9, 12, 13, 18, 22, 31

*Rincon Band of Luiseño Mission Indians v. Schwarzenegger,*
   602 F.3d 1019 (9th Cir. 2010).................................................................. 5

*Sault Ste. Marie Tribe of Chippewas v. Bernhardt,*
   331 F.R.D. 5 (D.D.C. 2019)...................................................................25

*Seminole Tribe of Fla. v. Florida,*
   517 U.S. 44 (1996)...............................................................................4

*Seminole Tribe of Fla. v. Florida,*
   219 F. Supp. 3d 1177 (N.D. Fla. 2016)................................................ 5

*St. Pierre v. Norton,*
   498 F. Supp. 2d 214 (D.D.C. 2007)...................................................... 23

*Stand Up for Cal.! v. U.S. Dep't of Interior,*
   204 F. Supp. 3d 212 (D.D.C. 2016)............................................15, 17, 20, 23

*Weisberg v. U.S. Dep't of Just.,*
   631 F.2d 824 (D.C. Cir. 1980).............................................................. 17

*Wichita & Affiliated Tribes v. Hodel,*
   788 F.2d 765 (D.C. Cir. 1986)...............................14, 17, 23, 24, 29, 31

## RULES

Fed. R. Civ. P. 12(b)(1).......................................................................... 1
Fed. R. Civ. P. 12(b)(6).......................................................................... 1
Fed. R. Civ. P. 12(b)(7).......................................................................1, 7
Fed. R. Civ. P. 19.................................... 1, 7, 10, 13, 17, 22, 23, 24, 27, 28, 29, 34, 35
Fed. R. Civ. P. 19(a)................................................................ 11, 12, 21, 34
\* Fed. R. Civ. P. 19(b)......... 8, 9, 11, 12, 13, 14, 16, 17, 18, 21, 22, 29, 30, 32, 33, 34
Fed. R. Civ. P. 19(b)(4)........................................................................ 30
Fed. R. Civ. P. 24(a)....................................................................1, 7, 32, 33, 34

Fed. R. Civ. P. 24(a)(2)..................................................................... 33

**STATUTES**

25 U.S.C. § 2701 ................................................................................ 1

25 U.S.C. § 2701(4).........................................................................19

25 U.S.C. § 2702(1).....................................................................4, 19

25 U.S.C. § 2705 .............................................................................. 32

25 U.S.C. § 2710(b)(2)(B)(i)...........................................................19

25 U.S.C. § 2710(b)(2)(B)(ii)..........................................................19

25 U.S.C. § 2710(d)(3)(A)................................................................ 4

25 U.S.C. § 2710(d)(4)...................................................................... 5

25 U.S.C. § 2710(d)(8)(C)................................................................ 6

25 U.S.C. § 2713 .............................................................................. 32

25 U.S.C. § 2716 .............................................................................. 32

28 U.S.C. § 1291 ............................................................................... 1

Fla. Stat. § 285.710(3)(b)................................................................. 6

Fla. Stat. § 285.710(13)................................................................... 6

**REGULATIONS**

86 Fed. Reg. 44,037 (Aug. 11, 2021)............................................. 6

# GLOSSARY OF ABBREVIATIONS

| ABBREVIATION | DEFINITION |
|---|---|
| 2010 Compact | Class III Gaming Compact between the State and Tribe approved in 2010 |
| 2021 Compact | Class III Gaming Compact between the State and Tribe approved in 2021 |
| APA | Administrative Procedure Act |
| Interior | Defendants-Appellees U.S. Department of the Interior and Secretary of the Interior |
| IGRA | Indian Gaming Regulatory Act |
| State | State of Florida |
| Tribe | Seminole Tribe of Florida |
| West Flagler | Plaintiffs-Appellees West Flagler Associates, Ltd. and Bonita-Fort Myers Corporation |

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellees, West Flagler Associates, Ltd., and Bonita-Fort Myers Corporation (together West Flagler), filed a Complaint in the U.S. District Court for the District of Columbia, seeking to invalidate a compact executed in 2021 (the 2021 Compact) between the State of Florida (the State) and the Seminole Tribe of Florida (the Tribe) under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 *et seq*. Defendants-Appellees, the Secretary of the Interior and the U.S. Department of the Interior (together Interior), filed a Motion to Dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Appellant, the Tribe, filed a Motion for Limited Intervention pursuant to Rule 24(a) of the Federal Rules of Civil Procedure in order to file a Motion to Dismiss the case pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure.

In a final decision, the District Court denied the Tribe's Motion for Limited Intervention, denied Interior's Motion to Dismiss, and granted West Flagler's Motion for Summary Judgment on November 22, 2021. The Tribe timely filed a notice of appeal on November 24, 2021. This Court has jurisdiction under 28 U.S.C. § 1291 to review the District Court's decision granting West Flagler's Motion for Summary Judgment and denying the Tribe's Motion for Limited Intervention.

## STATEMENT OF THE ISSUES

1.    Whether the District Court erred by denying the Tribe's Motion for Limited Intervention even though the suit challenged the 2021 Compact to which the Tribe is a party, no other party to the 2021 Compact was named, a judgment would substantially affect the Tribe's vital interests, and the only named defendant could not be expected to adequately represent the Tribe's interests.

2.    Whether the District Court erred by failing to afford the Tribe an opportunity to defend its sovereign immunity after West Flagler challenged the Tribe's 2021 Compact with the State by suing only an agency that has no interest in the 2021 Compact and no regulatory responsibility or authority regarding the 2021 Compact.

3.    Whether the District Court erred by denying the Tribe's Motion for Limited Intervention without mitigating any injury to the Tribe by affording it an opportunity to waive its sovereign immunity as a condition of intervention so the Tribe could address the merits of the claim.

## STATUTES AND REGULATIONS

All pertinent statutes and regulations are set out in the Addendum following this brief.

## STATEMENT OF THE CASE

### I.    Factual Background

Congress enacted IGRA in 1988 "as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). IGRA permits tribes to engage in Class III gaming only when authorized by a compact, and mandates states to negotiate with tribes in good faith.  *Id.* § 2710(d)(3)(A).

Shortly after IGRA was enacted, the Tribe requested the State to negotiate a compact.  The State refused to engage in good faith negotiations with the Tribe, and in 1991 the Tribe filed suit in federal court.  Ultimately, the U.S. Supreme Court held that, despite the IGRA mandate, Congress lacked the authority under the Indian Commerce Clause to abrogate the State's Eleventh Amendment immunity, and the Tribe's suit could not proceed.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996).

After years of litigation and negotiations, the Tribe and State agreed to a compact in 2010 (the 2010 Compact).  Joint App'x (JA) 155–210.  The 2010 Compact authorized the Tribe to conduct various forms of gaming, including slot machines and banked card games such as blackjack.  In return for substantial exclusivity rights to offer such games, the Tribe agreed to share significant revenue with the State, including an unprecedented guarantee of $1 billion in revenue sharing

4

with the State over the first five years of the 2010 Compact.  Since IGRA prohibits a state from imposing any form of tax, fee, charge, or other assessment on tribal gaming, 25 U.S.C. § 2710(d)(4), the bargained-for exclusivity was necessary to justify the Tribe's payments to the State, *see Rincon Band of Luiseño Mission Indians v. Schwarzenegger*, 602 F.3d 1019, 1033 (9th Cir. 2010).

Only a year after the 2010 Compact was approved, the State violated the Tribe's exclusivity by permitting State-regulated pari-mutuel facilities to offer card games labeled "designated player games."  The games were in fact banked card games whose authorization violated the Tribe's right to exclusivity in the State for banked card games in the 2010 Compact.  In 2016, the U.S. District Court for the Northern District of Florida held that designated player games were banked card games within the meaning of the 2010 Compact.  *Seminole Tribe of Fla. v. Florida*, 219 F. Supp. 3d 1177, 1188 (N.D. Fla. 2016).  Despite the decision, the State failed to halt the conduct of designated player games by the pari-mutuels.  The Tribe ultimately suspended its revenue sharing payments to the State pursuant to the 2010 Compact.

In 2021, after lengthy negotiations involving the Governor, the Legislature, and the Tribe, with input from the pari-mutuels, the State and Tribe settled their years of disputes by entering a new gaming compact (the 2021 Compact), JA 55–130, along with legislative amendments to the State's gaming laws, *see* JA 131–40

5

(S.B. 2-A § 2, 2021 Leg., 2021A Sess. (Fla. 2021)).  The 2021 Compact was ratified by a bipartisan majority of the Florida Legislature.  *Id.* (codified at Fla. Stat. § 285.710(3)(b)).  As authorized by IGRA, 25 U.S.C. § 2710(d)(8)(C), Interior allowed the 2021 Compact to take effect by operation of law.

The 2021 Compact became effective on August 11, 2021.  86 Fed. Reg. 44,037 (Aug. 11, 2021).  The 2021 Compact and State statutory amendments authorized the Tribe to conduct new forms of gaming, including online sports betting, as permitted by IGRA, with substantial exclusivity.  *See* JA 60, 70–76, 110–19 (2021 Compact Parts III.F, III.CC, IV.A, XII); JA 134–36 (S.B. 2-A § 2, 2021 Leg., 2021A Sess. (Fla. 2021) (codified at Fla. Stat. § 285.710(13)).  In exchange, the Tribe agreed to resume and increase its revenue sharing payments to the State and guaranteed payments of $2.5 billion to the State over the first five years of the 2021 Compact.  JA 101–10 (2021 Compact Part XI).

The 2021 Compact and new State gaming laws were designed to bring peace and prosperity to Florida's gaming industry, with online sports betting as the keystone of the agreement.  The 2021 Compact required the Tribe to contract with all requesting qualified pari-mutuel facilities, whereby they would be paid to market the Tribe's sports betting.  JA 71–74 (2021 Compact Part III.CC.3–4).

The 2021 Compact's deemed approval and Interior's accompanying letter, JA 213–25, confirmed that all three sovereigns involved—the Tribe, the State, and the

United States—fully agreed that the online sports betting included in the 2021 Compact was lawful.  Relying on that, the Tribe invested tens of millions of dollars and hired hundreds of staff to launch its online sports betting operation, which went live on November 1, 2021.  *See* Osceola Decl., ECF No. 1924081.  Under the 2021 Compact, the Tribe had authority to begin operating sports betting beginning October 15, 2021.  *See* JA 211–12.  The Tribe has since suspended its online sports betting operations pending the outcome of the appeals in this litigation.

## II.   Procedural History and Rulings Below

West Flagler sued Interior on August 16, 2021, challenging the validity of the 2021 Compact's online sports betting provisions.  JA 12–54.  The Tribe and State— the only two parties to the 2021 Compact—were not named defendants.

On September 17, 2021, the Tribe filed a Motion for Limited Intervention under Rule 24(a) for the sole purpose of asserting sovereign immunity and moving to dismiss pursuant to Rules 12(b)(7) and 19, JA 239–59, and a Motion to Dismiss, JA 270–86.  West Flagler filed a Motion for Summary Judgment on September 21, 2021.  JA 287–303.  Interior filed a Motion to Dismiss on October 12, 2021.  JA 419–69.

The District Court heard oral argument on West Flagler's Motion for Summary Judgment and Interior's Motion to Dismiss on November 5, 2021, but denied the Tribe's request to be heard on its Motion for Limited Intervention.  JA

586.  On November 22, 2021, the District Court granted West Flagler's Motion for Summary Judgment and denied Interior's Motion to Dismiss.  JA 554, 579.  The District Court denied the Tribe's Motion for Limited Intervention as moot.  *Id.* Although West Flagler sought only to invalidate the online sports betting provisions in the 2021 Compact, the District Court struck down the entire 2021 Compact.  JA 577–79.

## SUMMARY OF ARGUMENT

The District Court denied the Tribe two fundamental rights: (1) the right to be heard as a necessary and indispensable party when the validity of a contract to which the Tribe is a party and in which it has a compelling interest was being challenged, and (2) the right to be protected from abrogation of its sovereign immunity.

The U.S. Supreme Court has held that sovereign immunity includes not only the right not to be sued, but also the right not to have the sovereign's substantial interests adjudicated in its absence.  *Republic of Philippines v. Pimentel*, 553 U.S. 851, 868–69 (2008).  This Court has recognized that in a Rule 19(b) analysis the existence of sovereign immunity is paramount, leaving "very little room for balancing of other [Rule 19(b)] factors."  *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1496 (D.C. Cir. 1995).

The District Court ignored these cases and not only failed to give even minimal weight to the Tribe's sovereign immunity, but refused to allow the Tribe's counsel to present oral argument on its Motion for Limited Intervention.

The District Court erred when it denied the Tribe's Motion for Limited Intervention as moot because the District Court erroneously found that—although the Tribe was a necessary party with an interest in the case whose sovereign immunity had not been waived—the case could nonetheless "in equity and good conscience" proceed without the Tribe under Rule 19(b).

In its analysis of the Rule 19(b) factors, the District Court gave no consideration to the Tribe's sovereign immunity, ignoring the holdings in *Kickapoo*, 43 F.3d at 1496, and *Pimentel*, 553 U.S. at 855, that sovereign immunity of an absent sovereign must be a paramount consideration in an analysis of the Rule 19(b) factors.

The District Court also erred when it found the Tribe would not be prejudiced if the case proceeded in its absence. It wrongly presumed the Tribe had failed to assert a nonfrivolous substantive claim in this case. Not only did the Tribe assert sovereign immunity, the preservation of which is a compelling interest in itself, the Tribe also demonstrated that it had substantial interests in the validity of the 2021 Compact. The Tribe demonstrated that the 2021 Compact would significantly extend the term of the Tribe's 2010 Compact, authorize new forms of gaming, and generate additional revenue and jobs for the Tribe, and that the Tribe had made

significant financial investments in implementing the 2021 Compact, relying on the 2021 Compact's approval by the three relevant sovereign governments involved, investments it would lose if the 2021 Compact's approval were invalidated.

The District Court also erred when it presumed the Tribe would not be prejudiced because Interior and the State briefed the case on the merits. Interior is not a party to the 2021 Compact and does not stand to suffer any financial detriment if the 2021 Compact is invalidated. Interior's sovereign immunity is not at stake. Interior not only failed to protect tribal interests but opposed the Tribe's Motion to Dismiss. Interior failed to file a brief on the merits until it was admonished and directed to by the District Court. JA 9 (Min. Order, Nov. 5, 2021). Once Interior did brief the merits, it failed to make significant arguments the Tribe would have made. Interior also failed to seek dismissal based on failure to join the State— another immune, necessary, and indispensable party under Rule 19—as the United States had done in previous IGRA cases.

The State's interests also did not align with the Tribe's, and the State's participation as amicus was not sufficient to mitigate prejudice.

The District Court compounded its error by holding that, because it found no prejudice to the Tribe, there was no prejudice to minimize, and by concluding that judgment in the Tribe's absence would be adequate simply because it wholly resolved West Flagler's claims.

10

Additionally, the District Court erred when it presumed that the validity of IGRA compacts would be unreviewable if the Tribe prevails. Compacts are reviewable by the U.S. Department of Justice and the National Indian Gaming Commission, which have authority to bring enforcement actions against tribes for IGRA violations.

## ARGUMENT

### I. The District Court Erred by Concluding the Tribe Was Not Indispensable Under Rule 19(b) and Allowing the Case to Proceed in the Absence of the Tribe

The District Court recognized that the Tribe is a necessary party under Rule 19(a) because it has an interest in the validity of its 2021 Compact, and that the Tribe could not be joined because it has sovereign immunity. JA 567. Nonetheless, the District Court erroneously decided the suit could proceed in "equity and good conscience" under the four Rule 19(b) factors despite the absence of the Tribe. JA 567–71.

This Court reviews "application of Rule 19(b)'s equity and good conscience test for abuse of discretion, but questions of law . . . are reviewed *de novo*." *De Csepel v. Republic of Hungary*, 27 F.4th 736, 746 (D.C. Cir. 2022) (citation omitted); *see also Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1277 (D.C. Cir. 1983). "An exercise of discretion that rests on an error of law is necessarily an abuse of discretion." *Am. Trucking Ass'n, Inc. v. N.Y. State*

*Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015) (citation omitted) (cited by *Nanko*

*Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 465 (D.C. Cir. 2017)).

    **A. The District Court Committed an Error of Law When It Failed to Give the Tribe's Sovereign Immunity the Proper Weight in Its Rule 19(b) Analysis**

The U.S. Supreme Court has held that, in determining whether a case can

proceed under Rule 19(b) in the absence of a necessary party under Rule 19(a), the

sovereign immunity of the absent party is a paramount consideration. *Republic of*

*Philippines v. Pimentel*, 553 U.S. 851, 855 (2008).

The *Pimentel* case was an interpleader action in which multiple parties were

claiming an interest in escrowed funds. *Id.* at 858–59. As in the case at bar, the

Philippines and a Philippine government agency moved to dismiss because their

sovereign immunity prevented joinder and they were indispensable parties under

Rule 19(b). *Id.* at 859. Like this case, the district court dismissed the government

entities and proceeded without them. *Id.* at 860. The Ninth Circuit affirmed, *id.*,

and the Supreme Court reversed, stating:

> The Court of Appeals erred in not giving the necessary weight to the absent entities' assertion of sovereign immunity. The court in effect decided the merits of the Republic and the Commission's claims to the [escrowed] assets. Once it was recognized that those claims were not frivolous, it was error for the Court of Appeals to address them on their merits when the required entities had been granted sovereign immunity. *The court's consideration of the merits was itself an infringement on foreign sovereign immunity*; and, in any event, its analysis was flawed.

> . . . .

12

> [I]t was improper to issue a definitive holding regarding a nonfrivolous, substantive claim made by an absent, required entity that was entitled by its sovereign status to immunity from suit. *That privilege is much diminished if an important and consequential ruling affecting the sovereign's substantial interest is determined, or at least assumed, by a federal court in the sovereign's absence and over its objection.*

*Id.* at 864, 868–69 (emphasis added).[1] Thus, the Supreme Court recognized that it is not only the act of suing a sovereign but also determining the merits of the sovereign's nonfrivolous claim in its absence that violates sovereign immunity.

Even before *Pimentel*, this Court recognized the overarching importance of sovereign immunity in a Rule 19(b) analysis. In *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1493 (D.C. Cir. 1995), this Court dismissed a case pursuant to Rule 19 that challenged an IGRA compact due to the absent state's sovereign immunity, stating:

> While Rule 19(b) sets forth four non-exclusive factors for the court to consider, this court has observed that "there is very little room for balancing of other factors" set out in Rule 19(b) where a necessary party

---

[1] While *Pimentel* involved foreign sovereign immunity, the relevant principles would apply as well to domestic sovereign immunity. Multiple courts have cited *Pimentel* as authority for applying those principles in cases involving domestic sovereigns, including Indian tribes. *See, e.g.*, *Klamath Claims Comm. v. United States*, 541 Fed. App'x 974, 980 (Fed. Cir. 2013); *Ali v. Carnegie Inst.*, 306 F.R.D. 20, 29 n.6 (D.D.C. 2014) ("[T]he central inquiry is *immunity* generally—and it is less meaningful whether that immunity stems from a party's status as a foreign sovereign, state sovereign, or tribe."), *aff'd*, 684 Fed. App'x 985 (Fed. Cir. 2017); *Diaz v. Glen Plaid, LLC*, No. 7:13-cv-853, 2013 WL 5603944, at *7 (N.D. Ala. 2013) ("While the University of Alabama is not a *foreign* sovereign, it is nonetheless clothed with the sovereign immunity of the State of Alabama, making its status comparable to that of the [*Pimentel* entities], at least for Rule 19(b) purposes.").

under Rule 19(a) is immune from suit because immunity may be viewed
as one of those interests "compelling by themselves."

*Id.* at 1496 (internal citation omitted) (quoting *Wichita & Affiliated Tribes v. Hodel*,

788 F.2d 765, 777 n.13 (D.C. Cir. 1986)).  The D.C. District Court in *Pueblo of*

*Sandia v. Babbitt* explained the *Kickapoo* decision as follows:

> [T]he Court of Appeals' *Kickapoo Tribe* decision read as a whole, with
> its emphasis on sovereign immunity and its easy dismissal of the
> Kickapoo Tribe's claim that no adequate alternative remedy existed,
> convinces the Court that *only an overpoweringly strong case on the*
> *remaining Rule 19(b) factors could permit a finding that the action may*
> *proceed without joinder of the State*.

47 F. Supp. 2d 49, 56 (D.D.C. 1999) (emphasis added) (holding state was necessary

and indispensable party in challenge to its IGRA compact).

Later, in *Ali v. Carnegie Institute*, the D.C. District Court again emphasized

that *Kickapoo* created a rule where a party's sovereign immunity is critical to the

Rule 19(b) analysis:

> In the D.C. Circuit, a party's sovereign immunity is pivotal in the Rule
> 19 analysis. . . . [T]he *Kickapoo* court elaborated that "notwithstanding
> the discretion generally accorded to the district court to consider which
> factors to weigh and how heavily to emphasize certain considerations,
> the district court is confronted with a more circumscribed inquiry when
> it assesses" whether an action could "in equity and good conscience"
> proceed in the absence of a party that is both necessary to and immune
> from the lawsuit.  [43 F.3d] at 1497.  Thus, in the D.C. Circuit, while
> the balancing of the Rule 19(b) factors is relevant and important,
> sovereign immunity reigns supreme in the analysis.

306 F.R.D. 20, 27 (D.D.C. 2014) (cleaned up), *aff'd*, 684 Fed. App'x 985 (Fed. Cir.

2017); *see also id.* at 28 (quoting *Klamath Tribe Claims Comm. v. United States*,

14

106 Fed. Cl. 87, 96 (Fed. Cl. 2012), *aff'd*, 541 Fed. App'x 974 (Fed. Cir. 2013))

("*Pimentel* stands for the proposition that where a sovereign party should be joined

in an action, but cannot be owing to sovereign immunity, the entire case must be

dismissed if there is the potential for the interests of the sovereign to be injured.").

In another recent decision dismissing an IGRA case due to the state's absence,

D.C. District Court Chief Judge Beryl Howell explained:

> [Sovereign] immunity is such a compelling interest that the Rule 19
> inquiry is "more circumscribed" with respect to assessing whether a
> lawsuit can proceed in the absence of a necessary party that is also
> immune from suit, such that, where the party would be unavoidably
> prejudiced by a judgment rendered in its absence, grounds exist to
> dismiss the case "without consideration of any additional factors."

*Stand Up for Cal.! v. U.S. Dep't of Interior*, 204 F. Supp. 3d 212, 253 (D.D.C. 2016)

(quoting *Kickapoo*, 43 F.3d at 1496–98), *aff'd*, 879 F.3d 1177 (D.C. Cir. 2018); *see*

*also id.* at 253–54 (citation omitted) ("Since California would be unavoidably

prejudiced by a judgment rendered in its absence . . . , these claims are appropriately

dismissed 'without consideration of any additional factors.'").

The District Court below erroneously summarized the Circuit's rule in

*Kickapoo* when it stated:

> Although the Federal Rules present these [Rule 19] factors as non-
> exclusive, the D.C. Circuit has held that "there is very little room for
> balancing of other factors" where a necessary party is immune from
> suit. *Kickapoo Tribe*, 43 F.3d at 1496.

JA 567–68. The full quote from *Kickapoo* is:

15

> While Rule 19(b) sets forth four non-exclusive factors for the court to consider, this court has observed that "there is very little room for balancing of other factors" *set out in Rule 19(b)* where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests "compelling by themselves."

43 F.3d at 1496 (emphasis added) (citations omitted) (collecting cases). Thus, the actual *Kickapoo* rule is that, when a necessary party is immune, there is little room for balancing the Rule 19(b) factors because sovereign immunity can be an interest compelling by itself.[2]

The District Court compounded its error by failing to meaningfully consider the Tribe's immunity. Tribal immunity has led to the dismissal in other Circuits of challenges to IGRA compacts in the absence of tribes that could not be joined. *See, e.g.*, *Friends of Amador Cnty. v. Salazar*, 554 Fed. App'x 562, 565–66 (9th Cir. 2014); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1001 (W.D. Wis. 2004), *aff'd*, 422 F.3d 490 (7th Cir. 2005).

The U.S. District Court for the Northern District of Florida in *PPI, Inc. v. Kempthorne* dismissed a case remarkably similar to this one challenging the Tribe's 2010 Compact because of the Tribe's immunity. No. 08-cv-248, 2008 WL 2705431, at *4 (N.D. Fla. July 8, 2008). The District Court below concluded without discussion that the *PPI* court "erred." JA 571.

---

[2] *Kickapoo* does stand for the proposition that *only* the four Rule 19(b) factors may be considered. But it also held that, when a necessary party is immune, there is little *discretion* to consider the Rule 19(b) factors.

16

The District Court's failure in this case to address the U.S. Supreme Court's rule in *Pimentel* and its disregard of the *Kickapoo* Circuit rule and other relevant case law regarding the weight to afford sovereign immunity in a Rule 19(b) analysis was legal error.[3]

## B. The District Court's Analysis of the Four Rule 19(b) Factors Was Deeply Flawed and Based on Errors of Law

Even aside from not giving the Tribe's sovereign immunity the hefty weight it deserved, the District Court should have dismissed the case based on its analysis of the Rule 19(b) factors as applied to the Tribe's interests in this case. Pursuant to Rule 19(b), the Court should examine the following four factors: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;" (2) "the extent to which any prejudice could be lessened or avoided;" (3) "whether a judgment rendered in the person's absence would be

---

[3] The District Court also committed error when it failed to consider *sua sponte* whether it was obligated to dismiss the suit under Rule 19 based on the State's sovereign immunity. While the issue of the State's sovereign immunity was not raised below, the State preserved it by only filing an amicus brief in the case, and in this Circuit, courts have "a duty to raise *sua sponte* the issue of whether the State . . . is an indispensable party" in a case implicating its interests. *Kickapoo*, 43 F.3d at 1495 n.3; *accord Wichita & Affiliated Tribes*, 788 F.2d at 772 n.6; *Weisberg v. U.S. Dep't of Just.*, 631 F.2d 824, 830, 830 n.40 (D.C. Cir. 1980). Indeed, the District Court in this case noted its authority to address *sua sponte* whether a party is necessary and indispensable under Rule 19. JA 566. At least one court within this Circuit has dismissed an IGRA case on the ground (raised *sua sponte*) that the state was an indispensable party that could not be joined. *See Stand Up for Cal.!*, 204 F. Supp. 3d at 238, 253–54.

adequate;" and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

### i.    *Prejudice to the Tribe*

### 1.  <u>The Tribe's Claim Is Nonfrivolous</u>

The District Court found that a decision on the merits would not implicate the Tribe's sovereign immunity because "the Tribe is not a party to this case, and [West Flagler] make[s] no attempt to bind either the Tribe or its agents." JA 568. This finding is demonstrably incorrect and completely ignores the U.S. Supreme Court's response to materially similar facts in *Pimentel*. The sovereigns in *Pimentel*, having been dismissed due to sovereign immunity, were not parties either and would not have been bound by a judgment. The Supreme Court actually found this to be an additional factor favoring dismissal because it would not serve the Rule 19(b) factor that a judgment in the person's absence be adequate. *Pimentel*, 553 U.S. at 870–71.

The District Court attempted to distinguish *Pimentel* with the curious statement that "unlike in *Republic of Philippines v. Pimentel*, this case does not resolve the ownership of any asset to which the Tribe has a 'nonfrivolous, substantive claim,' which would indirectly violate the Tribe's immunity." JA 568 (quoting *Pimentel*, 553 U.S. at 868). To the contrary, this case clearly involves a nonfrivolous claim regarding the substantive rights of the Tribe. This case involves a contractual right of vital importance to the Tribe—from which the Tribe stands to

18

receive significant tribal government revenue and under which the Tribe could exercise its governmental powers to regulate gaming. The U.S. District Court for the Northern District of Florida in *PPI* specifically found that the Tribe's interests in the validity of its 2010 Compact made the Tribe an indispensable party. 2008 WL 2705431, at *4.

Invalidation of the 2021 Compact would seriously affect the Tribe's particularized and substantial economic and government interests. The 2010 Compact would terminate 21 years earlier than the 2021 Compact, affecting not only the Tribe's cumulative financial prospects, but its long-term borrowing ability. *See* JA 125 (2021 Compact Part XVI.B); JA 205 (2010 Compact Part XVI.B). The Tribe would also no longer be authorized to operate the new types of games allowed in the 2021 Compact, including online sports betting, which would result in the loss of a very substantial economic opportunity for the Tribe. Congress in designing IGRA intended to fill the void of tribal government funding that otherwise exists in Indian Country, *see* 25 U.S.C. §§ 2701(4), 2702(1), 2710(b)(2)(B)(i)–(ii), and the Tribe has utilized its gaming revenues to raise its members out of poverty and to fund its governmental operations, including its Tribal Council, a tribal court, health care and education for its members, and its own police force. Further, the Tribe has a broad and particular interest in maintaining the 2021 Compact, which is critical to the resolution of continuing discord between the Tribe and pari-mutuel facilities, and to

healing the long-standing rift between the Tribe and State.  Last, the Tribe has an interest in exercising its governmental powers to regulate gaming under the 2021 Compact.

Additionally, the District Court's finding is inconsistent with the reasoning of decisions in this Circuit holding that state parties to IGRA compacts would be prejudiced if their compacts' validity were litigated in their absence.  *Kickapoo*, 43 F.3d at 1500 ("Kansas' indispensability as a party in the Tribe's lawsuit is hardly a formality; not only its contractual rights are at issue but its fiscal interests are also potentially at stake."); *Pueblo of Sandia*, 47 F. Supp. 2d at 53–54 ("In addition to the financial loss that the State would stand to lose as a collateral consequence of an unfavorable decision by this Court, the State has a legitimate interest in the regulation of gaming within its territorial limits . . . ."); *see also Stand Up for Cal.!*, 204 F. Supp. 3d at 253–54.

Tribal parties to an IGRA compact would be no less prejudiced.  Other Circuits have also recognized that tribes have legally protected interests in the validity of their IGRA compacts.  *See, e.g., Friends of Amador Cnty.*, 554 Fed. App'x at 564; *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024–25 (9th Cir. 2002); *Lac Du Flambeau*, 327 F. Supp. 2d at 1001; *Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136, 1148 (D. Or. 2005).

## 2.  **The Rule 19(a) and Prejudice Analyses Should Be Intertwined**

The District Court failed to reconcile its contradictory conclusions regarding necessity under Rule 19(a) and prejudice under Rule 19(b).  The District Court easily held the Tribe was a necessary party under Rule 19(a) "because it 'has an interest in the validity of [its] compact . . . and [its] interest would be directly affected by the relief that [West Flagler] seeks.'"  JA 567 (quoting *Kickapoo*, 43 F.3d at 1495).

A showing of sufficient interest to qualify as a necessary party under Rule 19(a) is enough to demonstrate prejudice for purposes of Rule 19(b).  *See, e.g.*, *Kickapoo*, 43 F.3d at 1497 n.9 ("The inquiry as to prejudice under Rule 19(b) is the same as the inquiry under Rule 19(a)(2)(i) regarding whether continuing the action will impair the absent party's ability to protect its interest."); *Am. Greyhound Racing*, 305 F.3d at 1024–25 ("Not surprisingly, the first factor of prejudice, insofar as it focuses on the absent party, largely duplicates the consideration that made a party necessary under Rule 19(a): a protectible interest that will be impaired or impeded by the party's absence."); *Friends of Amador Cnty.*, 554 Fed. App'x at 565–66; *Dewberry*, 406 F. Supp. 2d at 1148.  The District Court did not address or explain how it could so easily find the Tribe to be a necessary party under Rule 19(a) yet conclude that the Tribe was not prejudiced under Rule 19(b).

21

### 3. **Questions Regarding Application of Federal Law Are Still Subject to Rule 19**

The District Court took the position that "holding that the *federal* government erred in applying *federal* law would fully respect the Tribe's sovereign immunity." JA 568.  Again, this is inconsistent with the U.S. Supreme Court's *Pimentel* decision and wrongly implies a carve-out from Rule 19 for challenges examining federal actions.  That West Flagler brought its claims under the Administrative Procedure Act (APA) does not avoid application of Rule 19(b) or the rule in this Circuit, confirmed by the Supreme Court in *Pimentel*, that sovereign immunity itself can be the overwhelmingly compelling factor in a Rule 19(b) analysis.

*Amador County v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011), is not to the contrary, as the District Court implied.  *See* JA 568.  While that decision may have confirmed that Interior's deemed approval of an IGRA compact is reviewable under the APA, 640 F.3d at 383, it did not consider whether the tribe's absence required dismissal under Rule 19(b).[4]  Here, the Tribe timely placed its Rule 19 arguments before the District Court.

---

[4] The *Amador County* tribe attempted to intervene later for the purpose of filing a motion to dismiss under Rule 19, but the D.C. District Court denied the motion because it was made six years after the case was initially filed and after this Court had already issued its previous decision, and the D.C. District Court did not consider the merits of the tribe's Rule 19 motion.  *Amador Cnty. v. Jewell*, 312 F.R.D. 11, 15–16 (D.D.C. 2013), *aff'd sub nom. Amador Cnty. v. U.S. Dep't of Interior*, 772 F.3d 901 (D.C. Cir. 2014).

Many of the compact cases discussed above involved claims that the federal government erred in applying federal law, yet those courts held the cases had to be dismissed under Rule 19 due to a sovereign's absence. *See, e.g.*, *Kickapoo*, 43 F.3d at 1500; *Friends of Amador Cnty.*, 554 Fed. App'x at 564; *Lac du Flambeau*, 327 F. Supp. 2d at 1001; *Pueblo of Sandia*, 47 F. Supp. 2d at 49; *PPI*, 2008 WL 2705431, at *4; *see also Stand Up for Cal.!*, 204 F. Supp. 3d at 254; *St. Pierre v. Norton*, 498 F. Supp. 2d 214, 219–21 (D.D.C. 2007).

As courts in this Circuit have recognized, "'review otherwise available under the Administrative Procedure Act may be unavailable due to the impossibility of joining an indispensable party,' particularly where a party enjoys sovereign immunity." *Stand Up for Cal.!*, 204 F. Supp. 3d at 252 (quoting *Wichita & Affiliated Tribes*, 788 F.2d at 778 n.14). In *Friends of Amador County*, the Ninth Circuit addressed this issue head-on and found in the context of IGRA compact litigation that the APA left intact a tribe's sovereign immunity and did not preclude its status as "necessary and indispensable [under Rule 19] even in APA actions." 554 Fed. App'x at 565.

### 4. The Tribe's Interests Were Not Adequately Represented by Interior or the State

The District Court wrongly found that "the Tribe's absence is not prejudicial because both [Interior] and [the State] have defended the Compact on its merits." JA 568.

23

This Circuit, like others, has been highly skeptical of the suggestion that a government party can adequately represent the interests of aspiring intervenors. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties."); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736–37 (D.C. Cir. 2003); *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 279–81 (D.D.C. 2014). Further, multiple courts outside this Circuit have found that the federal government did not adequately represent a tribe and thus the tribe was a necessary and indispensable party under Rule 19 in an IGRA compact dispute. *See, e.g.*, *PPI*, 2008 WL 2705431, at *4; *Friends of Amador Cnty.*, 554 Fed. App'x at 564; *Lac Du Flambeau*, 327 F. Supp. 2d at 1000–01; *see also Wichita & Affiliated Tribes*, 788 F.2d at 775 (finding, outside of IGRA context, federal government could not adequately represent absent tribe due to diverging interests); *Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489, 1497 (D.C. Cir. 1997) (same).

In cases examining the government's ability to represent aspiring intervenors, courts have said the "government entity's overarching 'obligation is to represent the interests of the American people,' while the intervenor's obligation is to represent its own interests." *100Reporters LLC*, 307 F.R.D. at 279 (quoting *Fund for Animals, Inc.*, 322 F.3d at 736); *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 15 (D.D.C. 2016) (quoting *Fund for Animals. Inc.*, 322 F.3d at 737) ("The federal

government . . . represents the public interest of its citizens as a whole, and would be 'shirking its duty were it to advance [a] narrower interest at the expense of its representation of the general public interest.'"); *Sault Ste. Marie Tribe of Chippewas v. Bernhardt*, 331 F.R.D. 5, 13 (D.D.C. 2019) (finding in IGRA context that tribes "have a narrow financial interest that the Government does not share").

This Circuit has said an absent sovereign's interests may be protected if those interests "are in complete alignment" with those of other defendants in the case. *De Csepel*, 27 F.4th at 752; *see also id.* at 746. Here, Interior and the Tribe have completely different interests at stake. Interior's singular role was to review the Compact and either approve it, disapprove it, or take no action and publish the result when it was deemed approved 45 days later. As Interior itself stated in its Motion to Dismiss, after publication in the Federal Register "the Secretary had, and continues to have, *no role whatsoever* with respect to the 2021 Compact or how it might be implemented." JA 424.

Interior had no incentive to defend the Tribe's sovereign immunity and, in fact, made no mention of tribal immunity or the Tribe's absence as a necessary and indispensable party in its Motion to Dismiss. *See* JA 419–69. In fact, it opposed the Tribe's Rule 19 Motion to Dismiss. JA 488–501. Interior also had no stake in extending the term of the 2010 Compact, the addition of new games, including online sports betting in particular, maintaining peaceful relations among the State,

the Tribe, and the pari-mutuel facilities, or the Tribe's exercise of its governmental powers to regulate gaming. Unlike the Tribe, Interior lost no jobs, lost no investment costs, and lost no future revenues. *See, e.g.*, *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 855 (9th Cir. 2019) ("[Federal Defendants'] interest differs in a meaningful sense from [the tribe's] sovereign interest in ensuring that the Mine and Power Plant continue to operate and provide profits to the Navajo Nation."), *cert. denied*, 141 S. Ct. 161 (2020); *Ctr. for Biological Diversity v. Pizarchik*, 858 F. Supp. 2d 1221, 1227 (D. Colo. 2012) (citation omitted) (holding United States lacked same interest in upholding permit sought by tribe because, unlike tribe, United States would not suffer significant lost revenue and lost jobs if permit were not upheld, even though United States "might conceivably 'make all of the [tribe's] arguments'").

The State's interests are also not aligned with the Tribe's. *See Dewberry*, 406 F. Supp. 2d at 1147–48 (discussing state's inability to adequately represent tribe's interests in IGRA compact litigation). The State represents all the people of the State (including West Flagler), not the proprietary interests of the Tribe. The State shares some interests in the validity of the 2021 Compact with the Tribe, but it also has financial and political interests and influences that cannot be assumed to be commensurate with the Tribe's interests.

26

5. **The Tribe Was Not Adequately Represented by Interior's or the State's Actions in the Litigation**

Interior demonstrated that it was not "capable of and willing to make" all the Tribe's arguments—as required by this Circuit to demonstrate adequate representation sufficient to diminish prejudice. *De Csepel*, 27 F.4th at 748 (citation omitted); *see also id.* (citation omitted) (finding existing parties had "incentive to make every argument on the merits that the absent [sovereign] would or could make").

The District Court's repeated references to Interior's failure to engage on the merits in this litigation, discussed below, make this case very similar to *Friends of Amador County v. Salazar*, where the Ninth Circuit found the Department of the Interior did not adequately represent the interests of a tribe for purposes of Rule 19. 554 Fed. App'x at 564. Both cases deal with attacks on a tribe's IGRA compact, Interior's failure to move for dismissal under Rule 19, and inaction on the part of Interior to engage on the merits—which together demonstrate "divergent interests between the Tribe and the government." *See id.* The District Court summarily dismissed *Friends of Amador County* without analysis. JA 571.

Interior was focused entirely on defending and preserving its limited role in the 2021 Compact. It failed to brief the substantive merits of the case, initially filing a consolidated Motion to Dismiss and Opposition to West Flagler's Motion for Summary Judgment that centered only on procedural and jurisdictional deficiencies

and did not address the merits of West Flagler's Motion for Summary Judgment. JA
419–69. The District Court admonished Interior for its initial failure to brief the
merits or inform the District Court of its position on the merits during oral argument,
stating it was "confounded" by Interior's position. JA 587–96. The District Court
concluded: "the government has just intentionally not set forth its response to the
arguments [West Flagler] ma[de] on the merits." JA 600. The District Court stated
it was "concerned by the government's refusal, both in its briefing and at oral
argument, to respond to" West Flagler's merits arguments and "concerned by the
government's failure to file any materials from the administrative record." JA 9
(Min. Order, Nov. 5, 2021).

When Interior did file its supplemental brief on the merits, as required by the
District Court, it failed to make key arguments the Tribe would have made. *See* JA
521–53. For example, in justifying its decision to vacate the entire 2021 Compact,
causing great harm and disruption to the Tribe, State, and public, the District Court
said Interior "forfeited any request for severance by omitting it from its motions to
dismiss, its corresponding replies, and its supplemental briefs." JA 578 n.8.
Additionally, Interior was wholly unprepared to brief two issues the District Court
found important: whether the Tribe and the State intended the 2021 Compact's terms
to authorize or merely regulate placement of wagers by patrons located physically
outside the Tribe's Indian lands and whether those terms violated Amendment 3 of

the State's Constitution.  JA 575–77.  Interior also failed to move to dismiss the case

due to the absence of the State as a necessary and indispensable party under Rule 19,

*see* JA 419–69, and it strongly opposed the Tribe's Motion to Dismiss based on its

status as a necessary and indispensable party under Rule 19, JA 488–501.

The State, also not named as a party, limited its role in this litigation to filing

an amicus brief.  This Court has rejected the notion that an amicus brief—even when

filed by a party asserting Rule 19 status—constitutes adequate representation of an

absent Indian tribe, explaining:

> If the opportunity to brief an issue as a non-party were enough to
> eliminate prejudice, non-joinder would never be a problem since the
> court could always allow the non-joinable party to file amicus briefs.
> Being party to a suit carries with it significant advantages beyond the
> amicus' opportunities, not the least of which is the ability to appeal an
> adverse judgment.

*Wichita & Affiliated Tribes*, 788 F.2d at 775.

### ii.    The Extent to Which Prejudice Could Be Lessened or Avoided

Having incorrectly found no prejudice to the Tribe, the District Court

concluded that it made little sense to address the second Rule 19(b) factor and

determine how prejudice could be minimized because "[t]he ability to minimize

prejudice . . . bears on indispensability only when there is prejudice to be

minimized."  JA 569–70.  As discussed above, the District Court erred in concluding

there would be no prejudice to the Tribe.

### iii.    *Whether Judgment Rendered in the Tribe's Absence Would Be Adequate*

The District Court held that judgment in this case would be adequate for purposes of the third Rule 19(b) factor because it would grant the relief sought by West Flagler and would resolve the case as a whole.  JA 570.  While recognizing the Tribe had immunity, the District Court entirely failed to accord immunity the proper weight.  The effects of the District Court's conclusion that the Tribe would not be prejudiced under the first Rule 19(b) factor trickled into its discussion of the other factors, including this one.  If the District Court had given the Tribe's sovereign immunity proper weight and found in favor of the Tribe for the first two Rule 19(b) factors, it should have dismissed the case on that basis alone.  *See Kickapoo*, 43 F.3d at 1498.

### iv.    *Lack of an Adequate Remedy for West Flagler*

The District Court found that "because [West Flagler] would have no 'adequate remedy if the action were dismissed for nonjoinder,' the fourth Rule 19(b) factor also favors proceeding."  JA 570 (quoting Fed. R. Civ. P. 19(b)(4)).

However, both the U.S. Supreme Court and this Circuit have held that the lack of an alternative forum for the plaintiff does *not* favor proceeding when the non-joined party is absent due to sovereign immunity.  The Supreme Court said:

> Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims.  But

that result is contemplated under the doctrine of foreign sovereign immunity.

*Pimentel*, 553 U.S. at 872.  This Circuit said:

> Although we are sensitive to the problem of dismissing an action where there is no alternative forum, we think the result is less troublesome in this case than some others.  The dismissal of this suit is mandated by the policy of tribal immunity.  This is not a case where some procedural defect such as venue precludes litigation of the case.  Rather, the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent.

*Wichita & Affiliated Tribes*, 788 F.2d at 777.

Moreover, West Flagler, pari-mutuel license holders who were entitled by the 2021 Compact to the same opportunity for participation in online sports betting as other pari-mutuel license holders, offered no credible evidence that they would be adversely affected by the 2021 Compact.  Indeed, it was only through the 2021 Compact that they could participate in sports betting at all.  Under the 2021 Compact, the Tribe was required to contract with all requesting qualified pari-mutuel facilities, whereby they would be paid to market the Tribe's online sports betting.  JA 71–74 (2021 Compact Part III.CC.3–4).

Further, the Tribe's gaming under the 2021 Compact would be subject to review by other parties.  The District Court made the erroneous observation that:

> [H]olding that the Tribe is indispensable in this case, where the Tribe has made no particularized showing of prejudice, would require treating tribes as indispensable in *every* case that challenges the Secretary's approval of a gaming compact.  And under that rule, those approvals

will *never* be subject to judicial review because the nonjoinder of a tribe will *always* require dismissal.

JA 570.  As an initial matter, in addition to the fact that the Tribe's particularized prejudice is self-evident, as noted above, the Tribe set forth such prejudice in its Motion for Limited Intervention, JA 253–54, its Motion to Dismiss, JA 280–82, and its Replies, JA 395–418; JA 502–09.

Second, it is incorrect that IGRA compacts would never be subject to judicial review if the Tribe's status as an indispensable party under Rule 19(b) were correctly recognized here.  IGRA provides that the legality of tribal gaming under a compact is subject to policing and judicial review by the United States in an appropriate proceeding filed by the U.S. Department of Justice or the National Indian Gaming Commission—and both have filed such actions against other tribes—as tribes have no sovereign immunity from actions by the United States.  *See* 25 U.S.C. §§ 2705, 2713, 2716.  Moreover, it is the nature of sovereign immunity that private parties often do not have the ability to obtain judicial review because Congress, as here, has chosen not to waive immunity.

## II.    The District Court Erred by Denying the Tribe's Rule 24(a) Motion for Limited Intervention

The Tribe filed a Motion for Limited Intervention pursuant to Rule 24(a), JA 239–59, for the purpose of filing its Rule 19 Motion to Dismiss for failure to join a

necessary and indispensable party whose sovereign immunity prevented joinder, JA 270–86.

However, the District Court did not address whether the Tribe had a right to intervene in the case pursuant to Rule 24(a), instead only examining the Tribe's status under Rule 19 in a bid to "conserve judicial resources." JA 567. The District Court claimed that, because it concluded the Tribe was not an indispensable party under Rule 19(b), JA 567–71, there was no necessity for intervention and denied the Tribe's Motion for Limited Intervention as moot, JA 571; JA 554.

To establish a right to intervene under Rule 24(a)(2), a party must demonstrate that it has Article III standing, *Crossroads*, 788 F.3d at 316, and this Court must consider the following four factors:

> (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

*Fund for Animals*, 322 F.3d at 731 (citation and quotation marks omitted). The Tribe meets these requirements, as it demonstrated in its Motion for Limited Intervention, JA 239–59, and its Reply, JA 395–418.

This Court "review[s] the denial of a motion to intervene as of right de novo for issues of law, clear error as to findings of fact, and an abuse of discretion on issues that 'involve a measure of judicial discretion.'" *Crossroads*, 788 F.3d at 316

(quoting *Fund for Animals*, 322 F.3d at 732).  However, where, as here, the district court has declined to address an issue, no deference is due under any standard of review.  *Fund for Animals*, 322 F.3d at 732.

For the first factor, the timeliness of the Tribe's Motion for Limited Intervention is not in question.  Further, as discussed above, the District Court correctly held the Tribe was a necessary party under Rule 19(a) because it had sufficient interests in the case.  JA 567.  These same interests satisfy the second and third Rule 24(a) factors and establish the Tribe's Article III standing.  With regard to the fourth factor, as the District Court noted, the Tribe's bar for demonstrating inadequate representation by Interior is even lower when establishing a Rule 24(a) right to intervene than it is for Rule 19(b) indispensable party status.  JA 569 n.5 (citing *Crossroads*, 788 F.3d at 321).  For the reasons already discussed, Interior did not adequately represent the Tribe.

The District Court did not rule in this case whether a sovereign may intervene on a limited basis in an action while preserving its sovereign immunity.  JA 566–67.  It nonetheless addressed the issue of whether the Tribe was a necessary and indispensable party under Rule 19, *see* JA 566, and it held the Tribe could not be joined because it enjoyed sovereign immunity, JA 567.

The D.C. District Court has already addressed and ruled on the appropriateness of limited intervention while preserving sovereign immunity.  In

34

*MGM Global Resorts Development, LLC v. U.S. Dep't of Interior*, No. 19-2377, 2020 WL 5545496, at *3, *7 (D.D.C. Sept. 16, 2020), the court allowed tribes to intervene on a limited basis for the purpose of filing a motion to dismiss based on Rule 19, preserving their sovereign immunity from suit while doing so. The plaintiffs in that case argued unsuccessfully that the tribes were required to intervene as full parties or not at all. *Id.* at *5–6.

The Tribe's Motion for Limited Intervention for the sole purpose of filing its Motion to Dismiss based on Rule 19 was an appropriate and available mechanism in this Circuit and preserved the Tribe's sovereign immunity.

## CONCLUSION

The Court is respectfully urged to remand to the District Court with instructions to dismiss this action with prejudice due to the nonjoinder of the Tribe.

Respectfully submitted this 17th day of August, 2022.

/s/ *Joseph H. Webster*
Joseph H. Webster (D.C. Bar No. 448458)
Kaitlyn E. Klass (D.C. Bar No. 1032219)
Elliott A. Milhollin (D.C. Bar No. 474322)
HOBBS STRAUS DEAN & WALKER, LLP
1899 L Street NW, Suite 1200
Washington, DC 20036
Telephone: (202) 822-8282
jwebster@hobbsstraus.com
kklass@hobbsstraus.com
emilhollin@hobbsstraus.com

/s/ *Barry Richard*
Barry Richard (D.C. Bar No. 419850)
GREENBERG TRAURIG, P.A.
101 East College Avenue
Tallahassee, FL 32301
Telephone: (850) 222-6891
Facsimile: (850) 681-0207
richardb@gtlaw.com

*Attorneys for Appellant,*
*Seminole Tribe of Florida*

35

**CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I certify that this brief complies with the type volume limitations of Fed. R. App. P. 32(a)(7) and this Court's July 8, 2022, Scheduling Order because this brief contains 9,052 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) and this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point font in the Times New Roman style.

Dated:  August 17, 2022                    */s/ Joseph H. Webster*
                                           Joseph H. Webster
                                           HOBBS STRAUS DEAN & WALKER, LLP
                                           1899 L Street NW, Suite 1200
                                           Washington, DC 20036
                                           Telephone: (202) 822-8282
                                           jwebster@hobbsstraus.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

Dated:  August 17, 2022                    */s/ Joseph H. Webster*
                                                 Joseph H. Webster
                                                 HOBBS STRAUS DEAN & WALKER, LLP
                                                 1899 L Street NW, Suite 1200
                                                 Washington, DC 20036
                                                 Telephone: (202) 822-8282
                                                 jwebster@hobbsstraus.com

# ADDENDUM

## STATUTES AND REGULATIONS

# ADDENDUM OF STATUTES AND REGULATIONS

## TABLE OF CONTENTS

**STATUTES**

*State*

Fla. Stat. § 285.710                                          A-1

*Federal*

25 U.S.C. § 2701                                             A-6

25 U.S.C. § 2702                                             A-7

25 U.S.C. § 2705                                             A-8

25 U.S.C. § 2710                                             A-9

25 U.S.C. § 2713                                             A-19

25 U.S.C. § 2716                                             A-21

28 U.S.C. § 1291                                             A-22

**REGULATIONS**

86 Fed. Reg. 44,037                                         A-23

**RULES**

Fed. R. Civ. P. 12                                          A-24

Fed. R. Civ. P. 19                                          A-34

Fed. R. Civ. P. 24                                          A-36

285.710. Compact authorization, FL ST § 285.710

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 51 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 50 of 86

> West's Florida Statutes Annotated
>     Title XIX. Public Business (Chapters 279-290)
>         Chapter 285. Indian Reservations and Affairs (Refs & Annos)
>             Part II. Gaming Compact (Refs & Annos)

West's F.S.A. § 285.710

## 285.710. Compact authorization

Effective: July 1, 2022
Currentness

(1) As used in this section, the term:

(a) "Compact" means the most recent ratified and approved gaming compact between the Seminole Tribe of Florida and the State of Florida.

(b) "Covered games" means the games authorized for the Seminole Tribe of Florida under the compact.

(c) "Documents" means books, records, electronic, magnetic and computer media documents, and other writings and materials, copies thereof, and information contained therein.

(d) "Indian Gaming Regulatory Act" or "IGRA" means the Indian Gaming Regulatory Act, Pub. L. No. 100-497, Oct. 17, 1988, 102 Stat. 2467, codified at 25 U.S.C. ss. 2701 et seq., and 18 U.S.C. ss. 1166-1168.

(e) "State" means the State of Florida.

(f) "State compliance agency" means the Florida Gaming Control Commission which is designated as the state agency having the authority to carry out the state's oversight responsibilities under the compact.

(g) "Tribe" means the Seminole Tribe of Florida or any affiliate thereof conducting activities pursuant to the compact under the authority of the Seminole Tribe of Florida.

(2)(a) The agreement executed by the Governor and the Tribe on November 14, 2007, published in the Federal Register on January 7, 2008, and subsequently invalidated by the Florida Supreme Court in the case of *Florida House of Representatives, et al. v. The Honorable Charles J. Crist*, No. SC07-2154, (2008), is not ratified or approved by the Legislature, is void, and is not in effect.

A-1

285.710 Compact authorization, FL ST § 285.710

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 52 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 51 of 86

(b) The agreement executed by the Governor and the Tribe on August 28, 2009, and August 31, 2009, respectively, and transmitted to the President of the Senate and the Speaker of the House of Representatives, is not ratified or approved by the Legislature, is void, and is not in effect.

(3)(a) The gaming compact between the Seminole Tribe of Florida and the State of Florida, executed by the Governor and the Tribe on April 7, 2010, was ratified and approved by chapter 2010-29, Laws of Florida.

(b) The gaming compact between the Seminole Tribe of Florida and the State of Florida, executed by the Governor and the Tribe on April 23, 2021, as amended on May 17, 2021, is ratified and approved. The Governor shall cooperate with the Tribe in seeking approval of such compact ratified and approved under this paragraph from the United States Secretary of the Interior. Upon becoming effective, such compact supersedes the gaming compact ratified and approved under paragraph (a). If the gaming compact ratified and approved under this paragraph is not approved by the United States Secretary of the Interior or is invalidated by court action or change in federal law, the gaming compact ratified and approved under paragraph (a) shall remain in effect.

(4) The Governor shall preserve all documents, if any, which relate to the intent or interpretation of the compact and maintain such documents for at least the term of the compact.

(5) If any provision of the compact relating to covered games, revenue-sharing payments, suspension or reduction in payments, or exclusivity is held by a court of competent jurisdiction or by the Department of the Interior to be invalid, the compact is void.

(6) If a subsequent change to the Indian Gaming Regulatory Act, or to an implementing regulation thereof, mandates the retroactive application of such change without the respective consent of the state or Tribe, the compact is void if the change materially alters any provision in the compact relating to covered games, revenue-sharing payments, suspension or reduction of payments, or exclusivity.

(7) The Florida Gaming Control Commission is designated as the state compliance agency having the authority to carry out the state's oversight responsibilities under the compact authorized by this section.

(8)(a) The Governor is authorized to execute an agreement on behalf of the state with the Indian tribes in this state, acting on a government-to-government basis, to develop and implement a fair and workable arrangement to apply state taxes on persons and transactions on Indian lands. Such agreements shall address the imposition of specific taxes, including sales taxes and exemptions from those taxes.

(b) The agreement shall address the Tribe's collection and remittance of sales taxes imposed by chapter 212 to the Department of Revenue. The sales taxes collected and remitted by the Tribe shall be based on all sales to non-tribal members, except those non-tribal members who hold valid exemption certificates issued by the Department of Revenue, exempting the sales from taxes imposed by chapter 212.

(c) The agreement shall require the Tribe to register with the Department of Revenue and remit to the Department of Revenue the taxes collected.

A-2

(d) The agreement shall require the Tribe to retain for at least a period of 5 years records of all sales to non-tribal members which are subject to taxation under chapter 212. The agreement shall permit the Department of Revenue to conduct an audit not more often than annually in order to verify such collections. The agreement shall require the Tribe to provide reasonable access during normal operating hours to records of transactions subject to the taxes collected.

(e) The agreement shall provide a procedure for the resolution of any disputes about the amounts collected pursuant to the agreement. For purposes of the agreement for the collection and remittance of sales taxes, the agreement must provide that the Tribe agrees to waive its immunity, except that the state may seek monetary damages limited to the amount of taxes owed.

(f) An agreement executed by the Governor pursuant to the authority granted in this section shall not take effect unless ratified by the Legislature.

(9) The moneys paid by the Tribe to the state for the benefit of exclusivity under the compact ratified by this section shall be deposited into the General Revenue Fund. Three percent of the amount paid by the Tribe to the state shall be designated as the local government share and shall be distributed as provided in subsections (10) and (11).

(10) The calculations necessary to determine the local government share distributions shall be made by the state compliance agency based upon the net win per facility as provided by the Tribe. The local government share attributable to each casino shall be distributed as follows:

(a) Broward County shall receive 22.5 percent, the City of Coconut Creek shall receive 55 percent, the City of Coral Springs shall receive 12 percent, the City of Margate shall receive 8.5 percent, and the City of Parkland shall receive 2 percent of the local government share derived from the Seminole Indian Casino-Coconut Creek.

(b) Broward County shall receive 25 percent, the City of Hollywood shall receive 42.5 percent, the Town of Davie shall receive 22.5 percent, and the City of Dania Beach shall receive 10 percent of the local government share derived from the Seminole Indian Casino-Hollywood.

(c) Broward County shall receive 25 percent, the City of Hollywood shall receive 42.5 percent, the Town of Davie shall receive 22.5 percent, and the City of Dania Beach shall receive 10 percent of the local government share derived from the Seminole Hard Rock Hotel & Casino-Hollywood.

(d) Collier County shall receive 75 percent and the Immokalee Fire Control District shall receive 25 percent of the local government share derived from the Seminole Indian Casino-Immokalee.

(e) Glades County shall receive 100 percent of the local government share derived from the Seminole Indian Casino-Brighton.

(f) Hendry County shall receive 100 percent of the local government share derived from the Seminole Indian Casino-Big Cypress.

A-3

285.710 Compact authorization, FL ST § 285.710

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 54 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 53 of 86

(g) Hillsborough County shall receive 100 percent of the local government share derived from the Seminole Hard Rock Hotel & Casino-Tampa.

(h) Broward County shall receive 25 percent, the City of Hollywood shall receive 35 percent, the Town of Davie shall receive 30 percent, and the City of Dania Beach shall receive 10 percent of the local government share derived from the additional facilities authorized to be added to the Tribe's Hollywood Reservation under the gaming compact ratified, approved, and described in subsection (3).

(11) Upon receipt of the annual audited revenue figures from the Tribe and completion of the calculations as provided in subsection (10), the state compliance agency shall certify the results to the Chief Financial Officer and shall request the distributions to be paid from the General Revenue Fund within 30 days after authorization of nonoperating budget authority pursuant to s. 216.181(12).

(12) Any moneys remitted by the Tribe before the effective date of the compact shall be deposited into the General Revenue Fund and are released to the state without further obligation or encumbrance. The Legislature further finds that acceptance and appropriation of such funds does not legitimize, validate, or otherwise ratify any previously proposed compact or the operation of class III games by the Tribe for any period prior to the effective date of the compact.

(13)(a) For the purpose of satisfying the requirement in 25 U.S.C. s. 2710(d)(1)(B) that the gaming activities authorized under an Indian gaming compact must be permitted in the state for any purpose by any person, organization, or entity, the following class III games or other games specified in this section are hereby authorized to be conducted by the Tribe pursuant to the compact described in paragraph (3)(a), if the compact described in paragraph (3)(b) is not effective:

1. Slot machines, as defined in s. 551.102(9).

2. Banking or banked card games, including baccarat, chemin de fer, and blackjack or 21 at the tribal facilities in Broward County, Collier County, and Hillsborough County.

3. Raffles and drawings.

(b) For the purpose of satisfying the requirement in 25 U.S.C. s. 2710(d)(1)(B) that the gaming activities authorized under an Indian gaming compact must be permitted in the state for any purpose by any person, organization, or entity, the following class III games or other games specified in this section are hereby authorized to be conducted by the Tribe pursuant to the compact described in paragraph (3)(b), when such compact has been approved by the United States Secretary of the Interior, has not been invalidated by court action or change in federal law, and is effective:

1. Slot machines, as defined in s. 551.102(9).

2. Banking or banked card games, including baccarat, chemin de fer, and blackjack (21), and card games banked by the house, by a bank established by the house, or by a player.

A-4

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 55 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 54 of 86

3. Raffles and drawings.

4. Craps, including dice games such as sic-bo and any similar variations thereof.

5. Roulette, including big six and any similar variations thereof.

6. Fantasy sports contests. The acceptance of entry fees for fantasy sports contests conducted by the Tribe, including the receipt of entry fees paid by players physically located within the state using a mobile or other electronic device, shall be deemed to be exclusively conducted by the Tribe where the servers or other devices used to conduct such contests on the Tribe's Indian lands are located. A person must be 21 years of age or older to pay an entry fee for fantasy sports contests.

7. Sports betting. Wagers on sports betting, including wagers made by players physically located within the state using a mobile or other electronic device, shall be deemed to be exclusively conducted by the Tribe where the servers or other devices used to conduct such wagering activity on the Tribe's Indian lands are located. A person must be 21 years of age or older to wager on sports betting.

Games and gaming activities authorized under this subsection and conducted pursuant to a gaming compact ratified and approved under subsection (3) do not violate the laws of this state.

(14) Notwithstanding any other provision of state law, it is not a crime for a person to participate in the games specified in subsection (13) at a tribal facility operating under the compact entered into pursuant to this section.

**Credits**
Added by Laws 2009, c. 2009-170, § 1, eff. June 15, 2009. Amended by Laws 2010, c. 2010-29, § 1, eff. April 28, 2010; Laws 2011, c. 2011-4, § 12, eff. July 6, 2011; Laws 2021, c. 2021-268, § 1, eff. May 25, 2021; Laws 2021, c. 2021-268, § 2, eff. Aug. 11, 2021; Laws 2021, c. 2021-269, § 10, eff. July 1, 2022.

West's F. S. A. § 285.710, FL ST § 285.710
Current with laws, joint and concurrent resolutions and memorials through July 1, 2022, in effect from the 2022 Second Regular Session. Some statute sections may be more current, see credits for details.

---

**End of Document**                                     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

A-5

§ 2701. Findings, 25 USCA § 2701

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 56 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 55 of 86

United States Code Annotated
  Title 25. Indians (Refs & Annos)
    Chapter 29. Indian Gaming Regulation (Refs & Annos)

25 U.S.C.A. § 2701

§ 2701. Findings

Currentness

The Congress finds that--

**(1)** numerous Indian tribes have become engaged in or have licensed gaming activities on Indian lands as a means of generating tribal governmental revenue;

**(2)** Federal courts have held that section 81 of this title requires Secretarial review of management contracts dealing with Indian gaming, but does not provide standards for approval of such contracts;

**(3)** existing Federal law does not provide clear standards or regulations for the conduct of gaming on Indian lands;

**(4)** a principal goal of Federal Indian policy is to promote tribal economic development, tribal self-sufficiency, and strong tribal government; and

**(5)** Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity.

**CREDIT(S)**

(Pub.L. 100-497, § 2, Oct. 17, 1988, 102 Stat. 2467.)

25 U.S.C.A. § 2701, 25 USCA § 2701
Current through P.L. 117-159. Some statute sections may be more current, see credits for details.

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

A-6

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.    1

§ 2702. Declaration of policy, 25 USCA § 2702

Case 3:22-cv-05325-DGE   Document 80-1   Filed 08/19/22   Page 57 of 87
USCA Case #21-5265   Document #1959733   Filed: 08/17/2022   Page 56 of 86

United States Code Annotated
   Title 25. Indians (Refs & Annos)
      Chapter 29. Indian Gaming Regulation (Refs & Annos)

25 U.S.C.A. § 2702

## § 2702. Declaration of policy

Currentness

The purpose of this chapter is--

**(1)** to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments;

**(2)** to provide a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players; and

**(3)** to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.

**CREDIT(S)**

(Pub.L. 100-497, § 3, Oct. 17, 1988, 102 Stat. 2467.)

25 U.S.C.A. § 2702, 25 USCA § 2702
Current through P.L. 117-159. Some statute sections may be more current, see credits for details.

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

§ 2705, Powers of Chairman, 25 USCA § 2705

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 58 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 57 of 86

United States Code Annotated
    Title 25. Indians (Refs & Annos)
        Chapter 29. Indian Gaming Regulation (Refs & Annos)

25 U.S.C.A. § 2705

## § 2705. Powers of Chairman

Currentness

**(a)** The Chairman, on behalf of the Commission, shall have power, subject to an appeal to the Commission, to--

**(1)** issue orders of temporary closure of gaming activities as provided in section 2713(b) of this title;

**(2)** levy and collect civil fines as provided in section 2713(a) of this title;

**(3)** approve tribal ordinances or resolutions regulating class II gaming and class III gaming as provided in section 2710 of this title; and

**(4)** approve management contracts for class II gaming and class III gaming as provided in sections 2710(d)(9) and 2711 of this title.

**(b)** The Chairman shall have such other powers as may be delegated by the Commission.

### CREDIT(S)

(Pub.L. 100-497, § 6, Oct. 17, 1988, 102 Stat. 2470.)

25 U.S.C.A. § 2705, 25 USCA § 2705
Current through P.L. 117-159. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

A-8

§ 2710. Tribal gaming ordinances, 25 USCA § 2710.

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 59 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 58 of 86

United States Code Annotated
  Title 25. Indians (Refs & Annos)
    Chapter 29. Indian Gaming Regulation (Refs & Annos)

25 U.S.C.A. § 2710

§ 2710. Tribal gaming ordinances

Currentness

**(a) Jurisdiction over class I and class II gaming activity**

**(1)** Class I gaming on Indian lands is within the exclusive jurisdiction of the Indian tribes and shall not be subject to the provisions of this chapter.

**(2)** Any class II gaming on Indian lands shall continue to be within the jurisdiction of the Indian tribes, but shall be subject to the provisions of this chapter.

**(b) Regulation of class II gaming activity; net revenue allocation; audits; contracts**

**(1)** An Indian tribe may engage in, or license and regulate, class II gaming on Indian lands within such tribe's jurisdiction, if--

  **(A)** such Indian gaming is located within a State that permits such gaming for any purpose by any person, organization or entity (and such gaming is not otherwise specifically prohibited on Indian lands by Federal law), and

  **(B)** the governing body of the Indian tribe adopts an ordinance or resolution which is approved by the Chairman.

A separate license issued by the Indian tribe shall be required for each place, facility, or location on Indian lands at which class II gaming is conducted.

**(2)** The Chairman shall approve any tribal ordinance or resolution concerning the conduct, or regulation of class II gaming on the Indian lands within the tribe's jurisdiction if such ordinance or resolution provides that--

  **(A)** except as provided in paragraph (4), the Indian tribe will have the sole proprietary interest and responsibility for the conduct of any gaming activity;

  **(B)** net revenues from any tribal gaming are not to be used for purposes other than--

    **(i)** to fund tribal government operations or programs;

A-9

§ 2710. Tribal gaming ordinances, 25 USCA § 2710

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 60 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 59 of 86

**(ii)** to provide for the general welfare of the Indian tribe and its members;

**(iii)** to promote tribal economic development;

**(iv)** to donate to charitable organizations; or

**(v)** to help fund operations of local government agencies;

**(C)** annual outside audits of the gaming, which may be encompassed within existing independent tribal audit systems, will be provided by the Indian tribe to the Commission;

**(D)** all contracts for supplies, services, or concessions for a contract amount in excess of $25,000 annually (except contracts for professional legal or accounting services) relating to such gaming shall be subject to such independent audits;

**(E)** the construction and maintenance of the gaming facility, and the operation of that gaming is conducted in a manner which adequately protects the environment and the public health and safety; and

**(F)** there is an adequate system which--

**(i)** ensures that background investigations are conducted on the primary management officials and key employees of the gaming enterprise and that oversight of such officials and their management is conducted on an ongoing basis; and

**(ii)** includes--

**(I)** tribal licenses for primary management officials and key employees of the gaming enterprise with prompt notification to the Commission of the issuance of such licenses;

**(II)** a standard whereby any person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the public interest or to the effective regulation of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming shall not be eligible for employment; and

**(III)** notification by the Indian tribe to the Commission of the results of such background check before the issuance of any of such licenses.

**(3)** Net revenues from any class II gaming activities conducted or licensed by any Indian tribe may be used to make per capita payments to members of the Indian tribe only if--

**(A)** the Indian tribe has prepared a plan to allocate revenues to uses authorized by paragraph (2)(B);

A-10

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 61 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 60 of 86

**(B)** the plan is approved by the Secretary as adequate, particularly with respect to uses described in clause (i) or (iii) of paragraph (2)(B);

**(C)** the interests of minors and other legally incompetent persons who are entitled to receive any of the per capita payments are protected and preserved and the per capita payments are disbursed to the parents or legal guardian of such minors or legal incompetents in such amounts as may be necessary for the health, education, or welfare, of the minor or other legally incompetent person under a plan approved by the Secretary and the governing body of the Indian tribe; and

**(D)** the per capita payments are subject to Federal taxation and tribes notify members of such tax liability when payments are made.

**(4)(A)** A tribal ordinance or resolution may provide for the licensing or regulation of class II gaming activities owned by any person or entity other than the Indian tribe and conducted on Indian lands, only if the tribal licensing requirements include the requirements described in the subclauses of subparagraph (B)(i) and are at least as restrictive as those established by State law governing similar gaming within the jurisdiction of the State within which such Indian lands are located. No person or entity, other than the Indian tribe, shall be eligible to receive a tribal license to own a class II gaming activity conducted on Indian lands within the jurisdiction of the Indian tribe if such person or entity would not be eligible to receive a State license to conduct the same activity within the jurisdiction of the State.

**(B)(i)** The provisions of subparagraph (A) of this paragraph and the provisions of subparagraphs (A) and (B) of paragraph (2) shall not bar the continued operation of an individually owned class II gaming operation that was operating on September 1, 1986, if--

**(I)** such gaming operation is licensed and regulated by an Indian tribe pursuant to an ordinance reviewed and approved by the Commission in accordance with section 2712 of this title,

**(II)** income to the Indian tribe from such gaming is used only for the purposes described in paragraph (2)(B) of this subsection,

**(III)** not less than 60 percent of the net revenues is income to the Indian tribe, and

**(IV)** the owner of such gaming operation pays an appropriate assessment to the National Indian Gaming Commission under section 2717(a)(1) of this title for regulation of such gaming.

**(ii)** The exemption from the application of this subsection provided under this subparagraph may not be transferred to any person or entity and shall remain in effect only so long as the gaming activity remains within the same nature and scope as operated on October 17, 1988.

**(iii)** Within sixty days of October 17, 1988, the Secretary shall prepare a list of each individually owned gaming operation to which clause (i) applies and shall publish such list in the Federal Register.

A-11

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 62 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 61 of 86

**(c) Issuance of gaming license; certificate of self-regulation**

**(1)** The Commission may consult with appropriate law enforcement officials concerning gaming licenses issued by an Indian tribe and shall have thirty days to notify the Indian tribe of any objections to issuance of such license.

**(2)** If, after the issuance of a gaming license by an Indian tribe, reliable information is received from the Commission indicating that a primary management official or key employee does not meet the standard established under subsection (b)(2)(F)(ii)(II), the Indian tribe shall suspend such license and, after notice and hearing, may revoke such license.

**(3)** Any Indian tribe which operates a class II gaming activity and which--

    **(A)** has continuously conducted such activity for a period of not less than three years, including at least one year after October 17, 1988; and

    **(B)** has otherwise complied with the provisions of this section[1]

may petition the Commission for a certificate of self-regulation.

**(4)** The Commission shall issue a certificate of self-regulation if it determines from available information, and after a hearing if requested by the tribe, that the tribe has--

    **(A)** conducted its gaming activity in a manner which--

        **(i)** has resulted in an effective and honest accounting of all revenues;

        **(ii)** has resulted in a reputation for safe, fair, and honest operation of the activity; and

        **(iii)** has been generally free of evidence of criminal or dishonest activity;

    **(B)** adopted and is implementing adequate systems for--

        **(i)** accounting for all revenues from the activity;

        **(ii)** investigation, licensing, and monitoring of all employees of the gaming activity; and

        **(iii)** investigation, enforcement and prosecution of violations of its gaming ordinance and regulations; and

A-12

**(C)** conducted the operation on a fiscally and economically sound basis.

**(5)** During any year in which a tribe has a certificate for self-regulation--

**(A)** the tribe shall not be subject to the provisions of paragraphs (1), (2), (3), and (4) of section 2706(b) of this title;

**(B)** the tribe shall continue to submit an annual independent audit as required by subsection (b)(2)(C) and shall submit to the Commission a complete resume on all employees hired and licensed by the tribe subsequent to the issuance of a certificate of self-regulation; and

**(C)** the Commission may not assess a fee on such activity pursuant to section 2717 of this title in excess of one quarter of 1 per centum of the gross revenue.

**(6)** The Commission may, for just cause and after an opportunity for a hearing, remove a certificate of self-regulation by majority vote of its members.

**(d) Class III gaming activities; authorization; revocation; Tribal-State compact**

**(1)** Class III gaming activities shall be lawful on Indian lands only if such activities are--

**(A)** authorized by an ordinance or resolution that--

**(i)** is adopted by the governing body of the Indian tribe having jurisdiction over such lands,

**(ii)** meets the requirements of subsection (b), and

**(iii)** is approved by the Chairman,

**(B)** located in a State that permits such gaming for any purpose by any person, organization, or entity, and

**(C)** conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect.

**(2)(A)** If any Indian tribe proposes to engage in, or to authorize any person or entity to engage in, a class III gaming activity on Indian lands of the Indian tribe, the governing body of the Indian tribe shall adopt and submit to the Chairman an ordinance or resolution that meets the requirements of subsection (b).

A-13

§ 2710. Tribal gaming ordinances, 25 USCA § 2710

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 64 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 63 of 86

**(B)** The Chairman shall approve any ordinance or resolution described in subparagraph (A), unless the Chairman specifically determines that--

**(i)** the ordinance or resolution was not adopted in compliance with the governing documents of the Indian tribe, or

**(ii)** the tribal governing body was significantly and unduly influenced in the adoption of such ordinance or resolution by any person identified in section 2711(e)(1)(D) of this title.

Upon the approval of such an ordinance or resolution, the Chairman shall publish in the Federal Register such ordinance or resolution and the order of approval.

**(C)** Effective with the publication under subparagraph (B) of an ordinance or resolution adopted by the governing body of an Indian tribe that has been approved by the Chairman under subparagraph (B), class III gaming activity on the Indian lands of the Indian tribe shall be fully subject to the terms and conditions of the Tribal-State compact entered into under paragraph (3) by the Indian tribe that is in effect.

**(D)(i)** The governing body of an Indian tribe, in its sole discretion and without the approval of the Chairman, may adopt an ordinance or resolution revoking any prior ordinance or resolution that authorized class III gaming on the Indian lands of the Indian tribe. Such revocation shall render class III gaming illegal on the Indian lands of such Indian tribe.

**(ii)** The Indian tribe shall submit any revocation ordinance or resolution described in clause (i) to the Chairman. The Chairman shall publish such ordinance or resolution in the Federal Register and the revocation provided by such ordinance or resolution shall take effect on the date of such publication.

**(iii)** Notwithstanding any other provision of this subsection--

**(I)** any person or entity operating a class III gaming activity pursuant to this paragraph on the date on which an ordinance or resolution described in clause (i) that revokes authorization for such class III gaming activity is published in the Federal Register may, during the 1-year period beginning on the date on which such revocation ordinance or resolution is published under clause (ii), continue to operate such activity in conformance with the Tribal-State compact entered into under paragraph (3) that is in effect, and

**(II)** any civil action that arises before, and any crime that is committed before, the close of such 1-year period shall not be affected by such revocation ordinance or resolution.

**(3)(A)** Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

A-14

§ 2710. Tribal gaming ordinances, 25 USCA § 2710.
Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 65 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 64 of 86

**(B)** Any State and any Indian tribe may enter into a Tribal-State compact governing gaming activities on the Indian lands of the Indian tribe, but such compact shall take effect only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register.

**(C)** Any Tribal-State compact negotiated under subparagraph (A) may include provisions relating to--

**(i)** the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;

**(ii)** the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations;

**(iii)** the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity;

**(iv)** taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities;

**(v)** remedies for breach of contract;

**(vi)** standards for the operation of such activity and maintenance of the gaming facility, including licensing; and

**(vii)** any other subjects that are directly related to the operation of gaming activities.

**(4)** Except for any assessments that may be agreed to under paragraph (3)(C)(iii) of this subsection, nothing in this section shall be interpreted as conferring upon a State or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity. No State may refuse to enter into the negotiations described in paragraph (3)(A) based upon the lack of authority in such State, or its political subdivisions, to impose such a tax, fee, charge, or other assessment.

**(5)** Nothing in this subsection shall impair the right of an Indian tribe to regulate class III gaming on its Indian lands concurrently with the State, except to the extent that such regulation is inconsistent with, or less stringent than, the State laws and regulations made applicable by any Tribal-State compact entered into by the Indian tribe under paragraph (3) that is in effect.

**(6)** The provisions of section 1175 of Title 15 shall not apply to any gaming conducted under a Tribal-State compact that--

**(A)** is entered into under paragraph (3) by a State in which gambling devices are legal, and

**(B)** is in effect.

A-15

§ 2710. Tribal gaming ordinances, 25 USCA § 2710

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 66 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 65 of 86

**(7)(A)** The United States district courts shall have jurisdiction over--

**(i)** any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact under paragraph (3) or to conduct such negotiations in good faith,

**(ii)** any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into under paragraph (3) that is in effect, and

**(iii)** any cause of action initiated by the Secretary to enforce the procedures prescribed under subparagraph (B)(vii).

**(B)(i)** An Indian tribe may initiate a cause of action described in subparagraph (A)(i) only after the close of the 180-day period beginning on the date on which the Indian tribe requested the State to enter into negotiations under paragraph (3)(A).

**(ii)** In any action described in subparagraph (A)(i), upon the introduction of evidence by an Indian tribe that--

**(I)** a Tribal-State compact has not been entered into under paragraph (3), and

**(II)** the State did not respond to the request of the Indian tribe to negotiate such a compact or did not respond to such request in good faith,

the burden of proof shall be upon the State to prove that the State has negotiated with the Indian tribe in good faith to conclude a Tribal-State compact governing the conduct of gaming activities.

**(iii)** If, in any action described in subparagraph (A)(i), the court finds that the State has failed to negotiate in good faith with the Indian tribe to conclude a Tribal-State compact governing the conduct of gaming activities, the court shall order the State and the Indian Tribe[2] to conclude such a compact within a 60-day period. In determining in such an action whether a State has negotiated in good faith, the court--

**(I)** may take into account the public interest, public safety, criminality, financial integrity, and adverse economic impacts on existing gaming activities, and

**(II)** shall consider any demand by the State for direct taxation of the Indian tribe or of any Indian lands as evidence that the State has not negotiated in good faith.

**(iv)** If a State and an Indian tribe fail to conclude a Tribal-State compact governing the conduct of gaming activities on the Indian lands subject to the jurisdiction of such Indian tribe within the 60-day period provided in the order of a court issued under clause (iii), the Indian tribe and the State shall each submit to a mediator appointed by the court a proposed compact that represents their last best offer for a compact. The mediator shall select from the two proposed compacts the one which best comports with the terms of this chapter and any other applicable Federal law and with the findings and order of the court.

A-16

§ 2710. Tribal gaming ordinances, 25 USCA § 2710.

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 67 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 66 of 86

**(v)** The mediator appointed by the court under clause (iv) shall submit to the State and the Indian tribe the compact selected by the mediator under clause (iv).

**(vi)** If a State consents to a proposed compact during the 60-day period beginning on the date on which the proposed compact is submitted by the mediator to the State under clause (v), the proposed compact shall be treated as a Tribal-State compact entered into under paragraph (3).

**(vii)** If the State does not consent during the 60-day period described in clause (vi) to a proposed compact submitted by a mediator under clause (v), the mediator shall notify the Secretary and the Secretary shall prescribe, in consultation with the Indian tribe, procedures--

    **(I)** which are consistent with the proposed compact selected by the mediator under clause (iv), the provisions of this chapter, and the relevant provisions of the laws of the State, and

    **(II)** under which class III gaming may be conducted on the Indian lands over which the Indian tribe has jurisdiction.

**(8)(A)** The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.

**(B)** The Secretary may disapprove a compact described in subparagraph (A) only if such compact violates--

    **(i)** any provision of this chapter,

    **(ii)** any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or

    **(iii)** the trust obligations of the United States to Indians.

**(C)** If the Secretary does not approve or disapprove a compact described in subparagraph (A) before the date that is 45 days after the date on which the compact is submitted to the Secretary for approval, the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter.

**(D)** The Secretary shall publish in the Federal Register notice of any Tribal-State compact that is approved, or considered to have been approved, under this paragraph.

**(9)** An Indian tribe may enter into a management contract for the operation of a class III gaming activity if such contract has been submitted to, and approved by, the Chairman. The Chairman's review and approval of such contract shall be governed by the provisions of subsections (b), (c), (d), (f), (g), and (h) of section 2711 of this title.

A-17

§ 2710. Tribal gaming ordinances, 25 USCA § 2710,

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 68 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 67 of 86

**(e) Approval of ordinances**

For purposes of this section, by not later than the date that is 90 days after the date on which any tribal gaming ordinance or resolution is submitted to the Chairman, the Chairman shall approve such ordinance or resolution if it meets the requirements of this section. Any such ordinance or resolution not acted upon at the end of that 90-day period shall be considered to have been approved by the Chairman, but only to the extent such ordinance or resolution is consistent with the provisions of this chapter.

**CREDIT(S)**

(Pub.L. 100-497, § 11, Oct. 17, 1988, 102 Stat. 2472.)

Footnotes

1        So in original. Probably should be followed by a comma.

2        So in original. Probably should not be capitalized.

25 U.S.C.A. § 2710, 25 USCA § 2710
Current through P.L. 117-159. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

A-18

Case 3:22-cv-05325-DGE     Document 80-1     Filed 08/19/22     Page 69 of 87
USCA Case #21-5265     Document #1959733     Filed: 08/17/2022     Page 68 of 86

| United States Code Annotated |
| --- |
| Title 25. Indians (Refs & Annos) |
| Chapter 29. Indian Gaming Regulation (Refs & Annos) |

25 U.S.C.A. § 2713

## § 2713. Civil penalties

Currentness

**(a) Authority; amount; appeal; written complaint**

**(1)** Subject to such regulations as may be prescribed by the Commission, the Chairman shall have authority to levy and collect appropriate civil fines, not to exceed $25,000 per violation, against the tribal operator of an Indian game or a management contractor engaged in gaming for any violation of any provision of this chapter, any regulation prescribed by the Commission pursuant to this chapter, or tribal regulations, ordinances, or resolutions approved under section 2710 or 2712 of this title.

**(2)** The Commission shall, by regulation, provide an opportunity for an appeal and hearing before the Commission on fines levied and collected by the Chairman.

**(3)** Whenever the Commission has reason to believe that the tribal operator of an Indian game or a management contractor is engaged in activities regulated by this chapter, by regulations prescribed under this chapter, or by tribal regulations, ordinances, or resolutions, approved under section 2710 or 2712 of this title, that may result in the imposition of a fine under subsection (a)(1), the permanent closure of such game, or the modification or termination of any management contract, the Commission shall provide such tribal operator or management contractor with a written complaint stating the acts or omissions which form the basis for such belief and the action or choice of action being considered by the Commission. The allegation shall be set forth in common and concise language and must specify the statutory or regulatory provisions alleged to have been violated, but may not consist merely of allegations stated in statutory or regulatory language.

**(b) Temporary closure; hearing**

**(1)** The Chairman shall have power to order temporary closure of an Indian game for substantial violation of the provisions of this chapter, of regulations prescribed by the Commission pursuant to this chapter, or of tribal regulations, ordinances, or resolutions approved under section 2710 or 2712 of this title.

**(2)** Not later than thirty days after the issuance by the Chairman of an order of temporary closure, the Indian tribe or management contractor involved shall have a right to a hearing before the Commission to determine whether such order should be made permanent or dissolved. Not later than sixty days following such hearing, the Commission shall, by a vote of not less than two of its members, decide whether to order a permanent closure of the gaming operation.

**(c) Appeal from final decision**

A-19

A decision of the Commission to give final approval of a fine levied by the Chairman or to order a permanent closure pursuant to this section shall be appealable to the appropriate Federal district court pursuant to chapter 7 of Title 5.

**(d) Regulatory authority under tribal law**

Nothing in this chapter precludes an Indian tribe from exercising regulatory authority provided under tribal law over a gaming establishment within the Indian tribe's jurisdiction if such regulation is not inconsistent with this chapter or with any rules or regulations adopted by the Commission.

## CREDIT(S)

(Pub.L. 100-497, § 14, Oct. 17, 1988, 102 Stat. 2482.)

25 U.S.C.A. § 2713, 25 USCA § 2713
Current through P.L. 117-159. Some statute sections may be more current, see credits for details.

End of Document © 2022 Thomson Reuters. No claim to original U.S. Government Works.

A-20

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

§ 2716. Investigative powers, 25 USCA § 2716

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 71 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 70 of 86

United States Code Annotated
    Title 25. Indians (Refs & Annos)
        Chapter 29. Indian Gaming Regulation (Refs & Annos)

25 U.S.C.A. § 2716

§ 2716. Investigative powers

Currentness

**(a) Confidential information**

Except as provided in subsection (b), the Commission shall preserve any and all information received pursuant to this chapter as confidential pursuant to the provisions of paragraphs (4) and (7) of section 552(b) of Title 5.

**(b) Provision to law enforcement officials**

The Commission shall, when such information indicates a violation of Federal, State, or tribal statutes, ordinances, or resolutions, provide such information to the appropriate law enforcement officials.

**(c) Attorney General**

The Attorney General shall investigate activities associated with gaming authorized by this chapter which may be a violation of Federal law.

**CREDIT(S)**

(Pub.L. 100-497, § 17, Oct. 17, 1988, 102 Stat. 2484.)

25 U.S.C.A. § 2716, 25 USCA § 2716
Current through P.L. 117-159. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

A-21

§ 1291. Final decisions of district courts, 28 USCA § 1291

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 72 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 71 of 86

United States Code Annotated
    Title 28. Judiciary and Judicial Procedure (Refs & Annos)
        Part IV. Jurisdiction and Venue (Refs & Annos)
            Chapter 83. Courts of Appeals (Refs & Annos)

28 U.S.C.A. § 1291

§ 1291. Final decisions of district courts

Currentness

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; Pub.L. 85-508, § 12(e), July 7, 1958, 72 Stat. 348; Pub.L. 97-164, Title I, § 124, Apr. 2, 1982, 96 Stat. 36.)

28 U.S.C.A. § 1291, 28 USCA § 1291
Current through P.L. 117-159. Some statute sections may be more current, see credits for details.

End of Document    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.    1

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 73 of 87
Indian Gaming; Approval by Operation of Law of Tribal-State..., 86 FR 44037-01...
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 72 of 86

86 FR 44037-01, 2021 WL 3510890(F.R.)

NOTICES

DEPARTMENT OF THE INTERIOR

Bureau of Indian Affairs

[212A2100DD/AAKC001030/A0A501010.999900253G]

## Indian Gaming; Approval by Operation of Law of Tribal-State Class III Gaming Compact in the State of Florida

Wednesday, August 11, 2021

AGENCY: Bureau of Indian Affairs, Interior.

**\*44037** ACTION: Notice.

SUMMARY: This notice publishes the approval by operation law of the Compact Between the Seminole Tribe of Florida (Tribe) and the State of Florida (State).

DATES: The compacts take effect on August 11, 2021.

FOR FURTHER INFORMATION CONTACT: Ms. Paula L. Hart, Director, Office of Indian Gaming, Mailstop 3543, 1849 C Street NW, Washington, DC 20240, telephone (202) 219-4066, paula.hart@bia.gov.

SUPPLEMENTARY INFORMATION: The Indian Gaming Regulatory Act of 1988, 25 U.S.C. 2701 et seq., (IGRA) provides the Secretary of the Interior (Secretary) with 45 days to review and approve or disapprove a Tribal-State compact governing the conduct of class III gaming activity on the Tribe's Indian lands. 25 U.S.C. 2710(d)(8). If the Secretary does not approve or disapprove a Tribal-State compact within the 45 days, IGRA provides that the Tribal-State compact is considered to have been approved by the Secretary but only to the extent the compact is consistent with IGRA. 25 U.S.C. 2710(d)(8)(C). The IGRA also requires the Secretary of the Interior to publish in the Federal Register notice of approved Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. 25 U.S.C. 2710(d)(8(D). The Department's regulations at 25 CFR 293.4, require all compacts and amendments to be reviewed and approved by the Secretary prior to taking effect. The Secretary took no action on the Compact between the Tribe and the State. Therefore, the Compact is considered to have been approved, but only to the extent it is consistent with IGRA. See 25 U.S.C. 2710(d)(8)(C).

Bryan Newland,

Principal Deputy Assistant Secretary—Indian Affairs.

[FR Doc. 2021-17055 Filed 8-10-21; 8:45 am]

BILLING CODE 4337-15-P

End of Document    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.    1

Rule 12. Defenses and Objections: When and How Presented..., FRCP Rule 12

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 74 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 73 of 86

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 12

Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing [Rule Text & Notes of Decisions subdivisions I, II]

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 12 are displayed in multiple documents. >

**(a) Time to Serve a Responsive Pleading.**

**(1) *In General.*** Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

**(A)** A defendant must serve an answer:

**(i)** within 21 days after being served with the summons and complaint; or

**(ii)** if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

**(B)** A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

**(C)** A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

**(2) *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.*** The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

**(3) *United States Officers or Employees Sued in an Individual Capacity.*** A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

A-24

**(4)** *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

**(A)** if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

**(B)** if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

**(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

**(1)** lack of subject-matter jurisdiction;

**(2)** lack of personal jurisdiction;

**(3)** improper venue;

**(4)** insufficient process;

**(5)** insufficient service of process;

**(6)** failure to state a claim upon which relief can be granted; and

**(7)** failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

**(c) Motion for Judgment on the Pleadings.** After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

**(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

**(e) Motion for a More Definite Statement.** A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court

orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

**(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

    **(1)** on its own; or

    **(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

**(g) Joining Motions.**

    **(1)** *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

    **(2)** *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

**(h) Waiving and Preserving Certain Defenses.**

    **(1)** *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)-(5) by:

        **(A)** omitting it from a motion in the circumstances described in Rule 12(g)(2); or

        **(B)** failing to either:

            **(i)** make it by motion under this rule; or

            **(ii)** include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

    **(2)** *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

        **(A)** in any pleading allowed or ordered under Rule 7(a);

        **(B)** by a motion under Rule 12(c); or

A-26

Rule 12. Defenses and Objections; When and How Presented..., FRCP Rule 12

Case 3:22-cv-05325-DGE   Document 80-1   Filed 08/19/22   Page 77 of 87
USCA Case #21-5265      Document #1959733      Filed: 08/17/2022      Page 76 of 86

**(C)** at trial.

**(3) *Lack of Subject-Matter Jurisdiction.*** If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

**(i) Hearing Before Trial.** If a party so moves, any defense listed in Rule 12(b)(1)-(7)--whether made in a pleading or by motion--and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

**Note to Subdivision (a). 1.** Compare [former] Equity Rules 12 (Issue of Subpoena--Time for Answer) and 31 (Reply--When Required--When Cause at Issue); 4 Mont.Rev.Codes Ann. (1935) §§ 9107, 9158; N.Y.C. P.A. (1937) § 263; N.Y.R.C.P. (1937) Rules 109-111.

**2**. U.S.C., Title 28, § 763 (now § 547) (Petition in action against United States; service; appearance by district attorney) provides that the United States as a defendant shall have 60 days within which to answer or otherwise defend. This and other statutes which provide 60 days for the United States or an officer or agency thereof to answer or otherwise defend are continued by this rule. In so far as any statutes not excepted in rule 81 provide a different time for a defendant to defend, such statutes are modified. See U.S.C., Title 28, [former] § 45 (District courts; practice and procedure in certain cases under the interstate commerce laws) (30 days).

**3.** Compare the last sentence of [former] Equity Rule 29 (Defenses--How Presented) and N.Y.C.P.A. (1937) § 283. See Rule 15(a) for time within which to plead to an amended pleading.

**Note to Subdivisions (b) and (d). 1.** See generally [former] Equity Rules 29 (Defenses--How Presented), 33 (Testing Sufficiency of Defense), 43 (Defect of Parties--Resisting Objection), and 44 (Defect of Parties--Tardy Objection); N.Y.C.P.A. (1937) §§ 277-280; N.Y.R.C.P. (1937) Rules 106-112; *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 25, r.r. 1-4; Clark, *Code Pleading*, 1928, pp. 371-381.

**2.** For provisions authorizing defenses to be made in the answer or reply see *English Rules Under the Judicature Act,* (The Annual Practice, 1937) O. 25, r.r. 1-4; 1 Miss.Code Ann. (1930) §§ 378, 379. Compare Equity Rule 29 (Defenses--How Presented); U.S.C.A., Title 28, [former] § 45 (District Courts; practice and procedure in certain cases under the interstate commerce laws). U.S.C., Title 28, [former] § 45, substantially continued by this rule, provides: "No replication need be filed to the answer, and objections to the sufficiency of the petition or answer as not setting forth a cause of action or defense must be taken at the final hearing or by motion to dismiss the petition based on said grounds, which motion may be made at any time before answer is filed." Compare Calif.Code Civ.Proc., (Deering, 1937) § 433; 4 Nev.Comp.Laws (Hillyer, 1929) § 8600. For provisions that the defendant may demur and answer at the same time, see Calif.Code Civ.Proc. (Deering, 1937) § 431; 4 Nev.Comp.Laws (Hillyer, 1929) § 8598.

A-27

Rule 12. Defenses and Objections: When and How Presented..., FRCP Rule 12

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 78 of 87
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 77 of 86

**3.** [Former] Equity Rule 29 (Defenses--How Presented) abolished demurrers and provided that defenses in point of law arising on the face of the bill should be made by motion to dismiss or in the answer, with further provision that every such point of law going to the whole or material part of the cause or causes stated might be called up and disposed of before final hearing "at the discretion of the court." Likewise many state practices have abolished the demurrer, or retain it only to attack substantial and not formal defects. See 6 Tenn.Code Ann. (Williams, 1934) § 8784; Ala.Code Ann. (Michie, 1928) § 9479; 2 Mass.Gen.Laws (Ter.Ed., 1932) ch. 231, §§ 15-18; Kansas Gen.Stat.Ann. (1935) §§ 60-705, 60-706.

**Note to Subdivision (c).** Compare [former] Equity Rule 33 (Testing Sufficiency of Defense); N.Y.R.C.P. (1937) Rules 111 and 112.

**Note to Subdivisions (e) and (f).** Compare [former] Equity Rules 20 (Further and Particular Statement in Pleading May be Required) and 21 (Scandal and Impertinence); *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r.r. 7, 7a, 7b, 8; 4 Mont.Rev.Codes Ann. (1935) §§ 9166, 9167; N.Y.C.P.A. (1937) § 247; N.Y.C.P.A. (1937) Rules 103, 115, 116, 117; Wyo.Rev.Stat.Ann. (Courtright, 1931) §§ 89-1033, 89-1034.

**Note to Subdivision (g).** Compare Rules of the District Court of the United States for the District of Columbia (1937) Equity Rule 11; N.M. Rules of Pleading, Practice and Procedure, 38 N.M.Rep. vii. [105-408] (1934); Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI(e) and (f).

**Note to Subdivision (h).** Compare Calif.Code Civ.Proc. (Deering, 1937) § 434; 2 Minn.Stat. (Mason, 1927) § 9252; N.Y.C.P.A. (1937) §§ 278 and 279; Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI(e). This rule continues U.S.C.A., Title 28, former § 80 [now 1359, 1447, 1919] (Dismissal or remand) (of action over which district court lacks jurisdiction), while U.S.C.A., Title 28, § 399 (Amendments to show diverse citizenship) is continued by Rule 15.

1946 Amendment

**Note. Subdivision (a).** Various minor alterations in language have been made to improve the statement of the rule. All references to bills of particulars have been stricken in accordance with changes made in subdivision (e).

**Subdivision (b).** The addition of defense (7), "failure to join an indispensable party", cures an omission in the rules which are silent as to the mode of raising such failure. See Commentary, *Manner of Raising Objection of Non-Joinder of Indispensable Party,* 1940, 2 Fed.Rules Serv. 658, and 1942, 5 Fed.Rules Serv. 820. In one case, *United States v. Metropolitan Life Ins. Co.,* E.D.Pa.1941, 36 F.Supp. 399, the failure to join an indispensable party was raised under Rule 12(c).

Rule 12(b)(6), permitting a motion to dismiss for failure of the complaint to state a claim on which relief can be granted, is substantially the same as the old demurrer for failure of a pleading to state a cause of action. Some courts have held that as the rule by its terms refers to statements in the complaint, extraneous matter on affidavits, depositions or otherwise, may not be introduced in support of the motion, or to resist it. On the other hand, in many cases the district courts have permitted the introduction of such material. When these cases have reached circuit courts of appeals in situations where the extraneous material so received shows that there is no genuine issue as to any material question of fact and that on the undisputed facts as disclosed by the affidavits or depositions, one party or the other is entitled to judgment as a matter of law, the circuit courts, properly enough, have been reluctant to dispose of the case merely on the face of the pleading, and in the interest of prompt disposition of the action have made a final disposition of it. In dealing with such situations the Second Circuit has made the sound suggestion that whatever its label or original basis, the motion may be treated as a motion for summary judgment and disposed of as such. *Samara v. United States,* C.C.A.2, 1942, 129 F.2d 594, certiorari denied 63 S.Ct. 258, 317 U.S. 686, 87 L.Ed. 549; *Boro Hall Corp. v. General Motors Corp.,* C.C.A.2, 1942, 124 F.2d 822, certiorari denied 63 S.Ct. 436, 317 U.S. 695, 87 L.Ed. 556. See, also, *Kithcart v. Metropolitan Life Ins. Co.,* C.C.A.8, 1945, 150 F.2d 997.

A-28

Rule 12. Defenses and Objections: When and How Presented..., FRCP Rule 12

Case 3:22-cv-05325-DGE   Document 80-1   Filed 08/19/22   Page 79 of 87
USCA Case #21-5265   Document #1959733   Filed: 08/17/2022   Page 78 of 86

It has also been suggested that this practice could be justified on the ground that the federal rules permit "speaking" motions. The Committee entertains the view that on motion under Rule 12(b)(6) to dismiss for failure of the complaint to state a good claim, the trial court should have authority to permit the introduction of extraneous matter, such as may be offered on a motion for summary judgment, and if it does not exclude such matter the motion should then be treated as a motion for summary judgment and disposed of in the manner and on the conditions stated in Rule 56 relating to summary judgments, and, of course, in such a situation, when the case reaches the circuit court of appeals, that court should treat the motion in the same way. The Committee believes that such practice, however, should be tied to the summary judgment rule. The term "speaking motion" is not mentioned in the rules, and if there is such a thing its limitations are undefined. Where extraneous matter is received, by tying further proceedings to the summary judgment rule the courts have a definite basis in the rules for disposing of the motion.

The Committee emphasizes particularly the fact that the summary judgment rule does not permit a case to be disposed of by judgment on the merits on affidavits, which disclose a conflict on a material issue of fact, and unless this practice is tied to the summary judgment, rule, the extent to which a court, on the introduction of such extraneous matter, may resolve questions of fact on conflicting proof would be left uncertain.

The decisions dealing with this general situation may be generally grouped as follows: (1) cases dealing with the use of affidavits and other extraneous material on motions; (2) cases reversing judgments to prevent final determination on mere pleading allegations alone.

Under group (1) are: *Boro Hall Corp. v. General Motors Corp.*, C.C.A.2, 1942, 124 F.2d 822, certiorari denied 1943, 63 S.Ct. 436, 317 U.S. 695, 87 L.Ed. 556; *Gallup v. Caldwell,* C.C.A.3, 1941, 120 F.2d 90; *Central Mexico Light & Power Co. v. Munch,* C.C.A.2, 1940, 116 F.2d 85; *National Labor Relations Board v. Montgomery Ward & Co.*, 1944, 144 F.2d 528, 79 U.S.App.D.C. 200, certiorari denied 1944, 65 S.Ct. 134, 323 U.S. 774, 89 L.Ed. 619; *Urquhart v. American-La France Foamite Corp.*, 1944, 144 F.2d 542, 79 U.S.App.D.C. 219; *Samara v. United States,* C.C.A.2, 1942, 129 F.2d 594; *Cohen v. American Window Glass Co.*, C.C.A.2, 1942, 126 F.2d 111; *Sperry Products Inc. v. Association of American Railroads,* C.C.A.2, 1942, 132 F.2d 408; *Joint Council Dining Car Employees Local 370 v. Delaware, Lackawanna and Western R. Co.*, C.C.A.2, 1946, 157 F.2d 417; *Weeks v. Bareco Oil Co.,* C.C.A.7, 1941, 125 F.2d 84; *Carroll v. Morrison Hotel Corp.*, C.C.A.7, 1945, 149 F.2d 404; *Victory v. Manning,* C.C.A.3, 1942, 128 F.2d 415; *Locals No. 1470, No. 1469, and No. 1512 of International Longshoremen's Association v. Southern Pacific Co.*, C.C.A.5, 1942, 131 F.2d 605; *Lucking v. Delano,* C.C.A.6, 1942, 129 F.2d 283; *San Francisco Lodge No. 68 of International Association of Machinists v. Forrestal,* Cal.1944, 58 F.Supp. 466; *Benson v. Export Equipment Corp.,* 1945, 164 P.2d 380, 49 N.M. 356, construing New Mexico rule identical with Rule 12(b)(6); *F. E. Myers & Bros. Co. v. Gould Pumps, Inc.,* W.D.N.Y.1946, 9 Fed.Rules Serv. 12b.33, Case 2, 5 F.R.D. 132. Cf. *Kohler v. Jacobs,* C.C.A.5, 1943, 138 F.2d 440; *Cohen v. United States,* C.C.A.8, 1942, 129 F.2d 733.

Under group (2) are: *Sparks v. England,* C.C.A.8, 1940, 113 F.2d 579; *Continental Collieries, Inc. v. Shober,* C.C.A.3, 1942, 130 F.2d 631; *Downey v. Palmer,* C.C.A.2, 1940, 114 F.2d 116; *DeLoach v. Crowley's Inc.*, C.C.A.5, 1942, 128 F.2d 378; *Leimer v. State Mutual Life Assurance Co. of Worcester, Mass.,* C.C.A.8, 1940, 108 F.2d 302; *Rossiter v. Vogel,* C.C.A.2, 1943, 134 F.2d 908, compare s.c., C.C.A.2, 1945, 148 F.2d 292; *Karl Kiefer Machine Co. v. United States Bottlers Machinery Co.*, C.C.A.7, 1940, 113 F.2d 356; *Chicago Metallic Mfg. Co. v. Edward Katzinger Co.*, C.C.A.7, 1941, 123 F.2d 518; *Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co. of America, Inc.*, C.C.A.8, 1942, 131 F.2d 419; *Publicity Bldg. Realty Corp. v. Hannegan,* C.C.A.8, 1943, 139 F.2d 583; *Dioguardi v. Durning,* C.C.A.2, 1944, 139 F.2d 774; *Package Closure Corp. v. Sealright Co., Inc.,* C.C.A.2, 1944, 141 F.2d 972; *Tahir Erk v. Glenn L. Martin Co.,* C.C.A.4, 1941, 116 F.2d 865; *Bell v. Preferred Life Assurance Society of Montgomery, Ala.*, 1943, 64 S.Ct. 5, 320 U.S. 238, 88 L.Ed. 15.

The addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion

A-29

Case 3:22-cv-05325-DGE   Document 80-1   Filed 08/19/22   Page 80 of 87
Rule 12 Defenses and Objections: When and How Presented..., FRCP Rule 12
USCA Case #21-5265   Document #1959733   Filed: 08/17/2022   Page 79 of 86

for summary judgment. In this manner and to this extent the amendment regularizes the practice above described. As the courts are already dealing with cases in this way, the effect of this amendment is really only to define the practice carefully and apply the requirements of the summary judgment rule in the disposition of the motion.

**Subdivision (c).** The sentence appended to subdivision (c) performs the same function and is grounded on the same reasons as the corresponding sentence added in subdivision (b).

**Subdivision (d).** The change here was made necessary because of the addition of defense (7) in subdivision (b).

**Subdivision (e).** References in this subdivision to a bill of particulars have been deleted, and the motion provided for is confined to one for more definite statement to be obtained only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question. With respect to preparations for trial, the party is properly relegated to the various methods of examination and discovery provided in the rules for that purpose. *Slusher v. Jones,* E.D.Ky.1943, 7 Fed.Rules Serv. 12e.231, Case 5, 3 F.R.D. 168; *Best Foods, Inc. v. General Mills, Inc.,* D.Del.1943, 7 Fed.Rules Serv. 12e.231, Case 7, 3 F.R.D. 275; *Braden v. Callaway,* E.D.Tenn.1943, 8 Fed.Rules Serv. 12e.231, Case 1 (". . . most courts . . . conclude that the definiteness required is only such as will be sufficient for the party to prepare responsive pleadings"). Accordingly, the reference to the 20 day time limit has also been eliminated, since the purpose of this present provision is to state a time period where the motion for a bill is made for the purpose of preparing for trial.

Rule 12(e) as originally drawn has been the subject of more judicial rulings than any other part of the rules, and has been much criticized by commentators, judges and members of the bar. See general discussion and cases cited in 1 Moore's *Federal Practice,* 1938, Cum.Supplement, § 12.07, under "Page 657"; also, Holtzoff, *New Federal Procedure and the Courts,* 1940, 35-41. And compare vote of Second Circuit Conference of Circuit and District Judges, June 1940, recommending the abolition of the bill of particulars; *Sun Valley Mfg. Co. v. Mylish,* E.D.Pa.1944, 8 Fed.Rules Serv. 12e.231, Case 6 ("Our experience . . . has demonstrated not only that 'the office of the bill of particulars is fast becoming obsolete' . . . but that in view of the adequate discovery procedure available under the Rules, motions for bills of particulars should be abolished altogether."); *Walling v. American Steamship Co.,* W.D.N.Y.1945, 4 F.R.D. 355, 8 Fed.Rules Serv. 12e.244, Case 8 (". . . the adoption of the rule was ill advised. It has led to confusion, duplication and delay.") The tendency of some courts freely to grant extended bills of particulars has served to neutralize any helpful benefits derived from rule 8, and has overlooked the intended use of the rules on depositions and discovery. The words "or to prepare for trial"--eliminated by the proposed amendment--have sometimes been seized upon as grounds for compulsory statement in the opposing pleading of all the details which the movant would have to meet at the trial. On the other hand, many courts have in effect read these words out of the rule. See *Walling v. Alabama Pipe Co.,* W.D.Mo.1942, 3 F.R.D. 159, 6 Fed.Rules Serv. 12e.244, Case 7; *Fleming v. Mason & Dixon Lines, Inc.,* E.D.Tenn.1941, 42 F.Supp. 230; *Kellogg Co. v. National Biscuit Co.,* D.N.J.1941, 38 F.Supp. 643; *Brown v. H. L. Green Co.,* S.D.N.Y.1943, 7 Fed.Rules Serv. 12e.231, Case 6; *Pedersen v. Standard Accident Ins. Co.,* W.D.Mo.1945, 8 Fed.Rules Serv. 12e.231, Case 8; *Bowles v. Ohse,* D.Neb.1945, 4 F.R.D. 403, 9 Fed.Rules Serv. 12e.231, Case 1; *Klages v. Cohen,* E.D.N.Y.1945, 9 Fed.Rules Serv. 8a.25, Case 4; *Bowles v. Lawrence,* D.Mass.1945, 8 Fed.Rules Serv. 12e.231, Case 19; *McKinney Tool & Mfg. Co. v. Hoyt,* N.D.Ohio 1945, 9 Fed.Rules Serv. 12e.235, Case 1; *Bowles v. Jack,* D.Minn.1945, 5 F.R.D. 1, 9 Fed.Rules Serv. 12e.244, Case 9. And it has been urged from the bench that the phrase be stricken, *Poole v. White,* N.D.W.Va.1941, 5 Fed.Rules Serv. 12e.231, Case 4, 2 F.R.D. 40. See also *Bowles v. Gabel,* W.D.Mo.1946, 9 Fed.Rules Serv. 12e.244, Case 10. ("The courts have never favored that portion of the rules which undertook to justify a motion of this kind for the purpose of aiding counsel in preparing his case for trial.").

**Subdivision (f).** This amendment affords a specific method of raising the insufficiency of a defense, a matter which has troubled some courts, although attack has been permitted in one way or another. See *Dysart v. Remington-Rand, Inc.,* D.Conn.1939, 31 F.Supp. 296; *Eastman Kodak Co. v. McAuley,* S.D.N.Y.1941, 4 Fed.Rules Serv., 12f.21, Case 8, 2 F.R.D. 21; *Schenley Distillers Corp. v. Renken,* E.D.S.C.1940, 34 F.Supp. 678; *Yale Transport Corp. v. Yellow Truck & Coach Mfg. Co.,* S.D.N.Y.1944, 3 F.R.D. 440; *United States v. Turner Milk Co.,* N.D.Ill.1941, 4 Fed.Rules Serv. 12b.51, Case 3, 1 F.R.D. 643; *Teiger v. Stephan Oderwald, Inc.,* S.D.N.Y.1940, 31 F.supp. 626; *Teplitsky v. Pennsylvania R. Co.,* N.D.Ill.1941, 38 F.Supp. 535; *Callagher v. Carroll,* E.D.N.Y.1939, 27 F.Supp. 568; *United States v. Palmer,* S.D.N.Y.1939, 28 F.Supp. 936. And see *Indemnity Ins. Co. of*

A-30

Rule 12. Defenses and Objections: When and How Presented..., FRCP Rule 12

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 81 of 87
USCA Case #21-5265    Document #1959733    Filed 08/17/2022    Page 80 of 86

*North America v. Pan American Airways, Inc.,* S.D.N.Y.1944, 58 F.Supp. 338; Commentary, *Modes of Attacking Insufficient Defenses in the Answer,* 901, 1939, 1 Fed.Rules Serv. 669, 1940, 2 Fed.Rules Serv. 640.

**Subdivision (g).** The change in title conforms with the companion provision in subdivision (h).

The alteration of the "except" clause requires that other than provided in subdivision (h) a party who resorts to a motion to raise defenses specified in the rule, must include in one motion all that are then available to him. Under the original rule defenses which could be raised by motion were divided into two groups which could be the subjects of two successive motions.

**Subdivision (h).** The addition of the phrase relating to indispensable parties is one of necessity.

1963 Amendment

This amendment conforms to the amendment of Rule 4(e). See also the Advisory Committee's Note to amended Rule 4(b).

1966 Amendment

**Subdivision (b)(7).** The terminology of this subdivision is changed to accord with the amendment of Rule 19. See the Advisory Committee's Note to Rule 19, as amended, especially the third paragraph therein before the caption "Subdivision (c)."

**Subdivision (g).** Subdivision (g) has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein. Thus if the defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion. Amended subdivision (g) is to the same effect. This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case. For exceptions to the requirement of consolidation, see the last clause of subdivision (g), referring to new subdivision (h)(2).

**Subdivision (h).** The question has arisen whether an omitted defense which cannot be made the basis of a second motion may nevertheless be pleaded in the answer. Subdivision (h) called for waiver of "* * * defenses and objections which he [defendant] does not present * * * by motion * * * or, if he has made no motion, in his answer * * *." If the clause "if he has made no motion," was read literally, it seemed that the omitted defense was waived and could not be pleaded in the answer. On the other hand, the clause might be read as adding nothing of substance to the preceding words; in that event it appeared that a defense was not waived by reason of being omitted from the motion and might be set up in the answer. The decisions were divided. Favoring waiver, see *Keef v. Derounian,* 6 F.R.D. 11 (N.D.Ill.1946); *Elbinger v. Precision Metal Workers Corp.,* 18 F.R.D. 467 (E.D.Wis.1956); see also *Rensing v. Turner Aviation Corp.,* 166 F.Supp. 790 (N.D.Ill.1958); *P. Beiersdorf & Co. v. Duke Laboratories, Inc.,* 10 F.R.D. 282 (S.D.N.Y.1950); *Neset v. Christensen,* 92 F.Supp. 78 (E.D.N.Y.1950). Opposing waiver, see *Phillips v. Baker,* 121 F.2d 752 (9th Cir.1941); *Crum v. Graham,* 32 F.R.D. 173 (D.Mont.1963) (regretfully following the Phillips case); see also *Birnbaum v. Birrell,* 9 F.R.D. 72 (S.D.N.Y.1948); *Johnson v. Joseph Schlitz Brewing Co.,* 33 F.Supp. 176 (E.D.Tenn.1940); cf. *Carter v. American Bus Lines, Inc.,* 22 F.R.D. 323 (D.Neb.1958).

Amended subdivision (h)(1)(A) eliminates the ambiguity and states that certain specified defenses which were available to a party when he made a preanswer motion, but which he omitted from the motion, are waived. The specified defenses are lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process (see Rule 12(b)(2)-(5)). A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver reinforces the policy of subdivision (g) forbidding successive motions.

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.    8

By amended subdivision (h)(1)(B), the specified defenses, even if not waived by the operation of (A), are waived by the failure to raise them by a motion under Rule 12 or in the responsive pleading or any amendment thereof to which the party is entitled as a matter of course. The specified defenses are of such a character that they should not be delayed and brought up for the first time by means of an application to the court to amend the responsive pleading.

Since the language of the subdivisions is made clear, the party is put on fair notice of the effect of his actions and omissions and can guard himself against unintended waiver. It is to be noted that while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted, failure to join a party indispensable under Rule 19, and failure to state a legal defense to a claim (see Rule 12(b)(6), (7), (f)), as well as the defense of lack of jurisdiction over the subject matter (see Rule 12(b)(1)), are expressly preserved against waiver by amended subdivision (h)(2) and (3).

1987 Amendment

The amendments are technical. No substantive change is intended.

1993 Amendment

Subdivision (a) is divided into paragraphs for greater clarity, and paragraph (1)(B) is added to reflect amendments to Rule 4. Consistent with Rule 4(d)(3), a defendant that timely waives service is allowed 60 days from the date the request was mailed in which to respond to the complaint, with an additional 30 days afforded if the request was sent out of the country. Service is timely waived if the waiver is returned within the time specified in the request (30 days after the request was mailed, or 60 days if mailed out of the country) and before being formally served with process. Sometimes a plaintiff may attempt to serve a defendant with process while also sending the defendant a request for waiver of service; if the defendant executes the waiver of service within the time specified and before being served with process, it should have the longer time to respond afforded by waiving service.

The date of sending the request is to be inserted by the plaintiff on the face of the request for waiver and on the waiver itself. This date is used to measure the return day for the waiver form, so that the plaintiff can know on a day certain whether formal service of process will be necessary; it is also a useful date to measure the time for answer when service is waived. The defendant who returns the waiver is given additional time for answer in order to assure that it loses nothing by waiving service of process.

2000 Amendment

Rule 12(a)(3)(B) is added to complement the addition of Rule 4(i)(2)(B). The purposes that underlie the requirement that service be made on the United States in an action that asserts individual liability of a United States officer or employee for acts occurring in connection with the performance of duties on behalf of the United States also require that the time to answer be extended to 60 days. Time is needed for the United States to determine whether to provide representation to the defendant officer or employee. If the United States provides representation, the need for an extended answer period is the same as in actions against the United States, a United States agency, or a United States officer sued in an official capacity.

An action against a former officer or employee of the United States is covered by subparagraph (3)(B) in the same way as an action against a present officer or employee. Termination of the relationship between the individual defendant and the United States does not reduce the need for additional time to answer.

**GAP Report**

No changes are recommended for Rule 12 as published.

A-32

Case 3:22-cv-05325-DGE    Document 80-1    Filed 08/19/22    Page 83 of 87
Rule 12. Defenses and Objections: When and How Presented..., FRCP Rule 12
USCA Case #21-5265    Document #1959733    Filed: 08/17/2022    Page 82 of 86

2007 Amendment

The language of Rule 12 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 12(a)(4)(A) referred to an order that postpones disposition of a motion "until the trial on the merits." Rule 12(a)(4) now refers to postponing disposition "until trial." The new expression avoids the ambiguity that inheres in "trial on the merits," which may become confusing when there is a separate trial of a single issue or another event different from a single all-encompassing trial.

2009 Amendment

The times set in the former rule at 10 or 20 days have been revised to 14 or 21 days. See the Note to Rule 6.

Notes of Decisions (953)

Fed. Rules Civ. Proc. Rule 12, 28 U.S.C.A., FRCP Rule 12
Including Amendments Received Through 8-1-22

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
      Title IV. Parties

Federal Rules of Civil Procedure Rule 19

# Rule 19. Required Joinder of Parties

Currentness

**(a) Persons Required to Be Joined if Feasible.**

**(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**(2)** *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

**(3)** *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

**(A)** protective provisions in the judgment;

A-34

**(B)** shaping the relief; or

**(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

**(c) Pleading the Reasons for Nonjoinder.** When asserting a claim for relief, a party must state:

**(1)** the name, if known, of any person who is required to be joined if feasible but is not joined; and

**(2)** the reasons for not joining that person.

**(d) Exception for Class Actions.** This rule is subject to Rule 23.

**CREDIT(S)**

(Amended February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007.)

Fed. Rules Civ. Proc. Rule 19, 28 U.S.C.A., FRCP Rule 19
Including Amendments Received Through 7-1-22

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

A-35

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title IV. Parties

Federal Rules of Civil Procedure Rule 24

## Rule 24. Intervention

Currentness

**(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

    **(1)** is given an unconditional right to intervene by a federal statute; or

    **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b) Permissive Intervention.**

    **(1)** *In General.* On timely motion, the court may permit anyone to intervene who:

        **(A)** is given a conditional right to intervene by a federal statute; or

        **(B)** has a claim or defense that shares with the main action a common question of law or fact.

    **(2)** *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

        **(A)** a statute or executive order administered by the officer or agency; or

        **(B)** any regulation, order, requirement, or agreement issued or made under the statute or executive order.

    **(3)** *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

**(c) Notice and Pleading Required.** A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

A-36

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; December 29, 1948, effective October 20, 1949; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 30, 1991, effective December 1, 1991; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007.)

Fed. Rules Civ. Proc. Rule 24, 28 U.S.C.A., FRCP Rule 24
Including Amendments Received Through 7-1-22

**End of Document**    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

A-37