EXHIBIT "2"

No. 21-55869

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

BACKCOUNTRY AGAINST DUMPS, et al.
*Plaintiffs-Appellants*,

v.

UNITED STATES BUREAU OF INDIAN AFFAIRS, et al.,
*Defendants-Appellees*

and

TERRA-GEN DEVELOPMENT CO., LLC and CAMPO BAND OF DIEGUENO
MISSION INDIANS,
*Intervenor Defendants-Appellees.*

Appeal from the United States District Court for the Southern District of California
No. 2:20-cv-2343 (Hon. Janis Sammartino)

**FEDERAL APPELLEES' ANSWERING BRIEF**

TODD KIM
*Assistant Attorney General*

RACHEL HERON
MICHELLE MELTON
*Attorneys*
Environment and Natural Resources
Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 353-9231
michelle.melton@usdoj.gov

**Oral argument is not requested.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................... ii

GLOSSARY ............................................................................................ v

INTRODUCTION ................................................................................... 1

STATEMENT OF JURISDICTION..................................................... 2

STATEMENT OF THE ISSUE ............................................................ 3

PERTINENT STATUTES AND REGULATIONS ........................... 3

STATEMENT OF THE CASE ............................................................. 3

    A.    Legal background ......................................................... 3

    B.    Factual Background ...................................................... 7

    C.    This court's recent precedent regarding dismissal for failure to join a required party.................................... 11

    D.    The present lawsuit ...................................................... 16

SUMMARY OF ARGUMENT ............................................................ 21

STANDARD OF REVIEW.................................................................. 22

ARGUMENT.......................................................................................... 22

The district court appropriately dismissed in light of controlling circuit precedent. ............................................................................. 22

CONCLUSION....................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Baltimore Gas & Electric Co. v. NRDC, Inc.*,
   462 U.S. 87 (1983) ....................................................................................... 5

*Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*,
   (*Diné Citizens*), 932 F.3d 843 (9th Cir. 2019) ...... 1, 13, 14, 15, 16, 22, 23, 25, 27

*City of Sausalito v. O'Neill*,
386 F.3d 1186 (9th Cir. 2004) .......................................................................... 6

*Deschutes River Alliance v. Portland General Elec. Co.*, 1 F.4th 1153, 1163 (9th
   Cir. 2021) ....................................................................................................... 16

*Manygoats v. Kleppe*,
   558 F.2d 556 (10th Cir. 1977) .................................................................. 16, 27

*Protect Our Communities Foundation v. Jewell*,
   825 F.3d 571 (9th Cir. 2016) ....................................................................... 6, 7

*Protect Our Communities Foundation v. LaCounte*,
   939 F.3d 1029 (9th Cir. 2019) ................................................................... 7, 12

*Robertson v. Methow Valley Citizens Council*,
   490 U.S. 332 (1989) ........................................................................................ 5

## Statutes

5 U.S.C. § 706 ..................................................................................................... 2, 6

16 U.S.C. § 668(a) .................................................................................................. 6

16 U.S.C. § 701 ...................................................................................................... 2

16 U.S.C. § 703(a) .................................................................................................. 5

16 U.S.C. § 704(a) .................................................................................................. 5

16 U.S.C. § 668 ...................................................................................................... 2

25 U.S.C. § 415(a) ...................................................................................4

28 U.S.C. § 1291 .....................................................................................2

28 U.S.C. § 1331 .....................................................................................2

42 U.S.C. § 4321 .....................................................................................2

42 U.S.C. § 4332(2)(C) ...........................................................................5

49 U.S.C. § 44718 .................................................................................10

## Rules

Federal Rule of Appellate Procedure 4(a)(1)(B) .....................................3

Federal Rule of Civil Procedure 19 ........................... 1, 2, 3, 11, 12, 25

Federal Rule of Civil Procedure 24 ......................................................17

## Regulations

25 C.F.R. Part 162 ..................................................................................4

25 C.F.R. § 162.565(a)(2) .......................................................................4

25 C.F.R. § 162.566(a)(3) .......................................................................4

25 C.F.R. § 162.566(b) ...........................................................................4

40 C.F.R. § 1500.1 ..................................................................................4

50 C.F.R. § 10.1 ......................................................................................5

50 C.F.R. § 10.12 ....................................................................................5

50 C.F.R. §§ 21.1–21.61 .........................................................................5

85 Fed. Reg. 43304 (July 16, 2020) .......................................................4

# Other Authorities

Pub. L. 73-383.................................................................................................3

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| BGEPA | Bald and Golden Eagle Protection Act |
| EIS | Environmental Impact Statement |
| FAA | Federal Aviation Administration |
| FWS | U.S. Fish and Wildlife Service |
| MBTA | Migratory Bird Treaty Act |
| NEPA | National Environmental Policy Act |

## INTRODUCTION

In 2020, the Bureau of Indian Affairs (BIA) approved a lease negotiated by the Campo Band of Diegueno Mission Indians (the Tribe) and Terra-Gen Development Company, LLC (Terra-Gen) concerning the construction and operation of a renewable energy wind project on the Tribe's Reservation. The lease contemplates the construction and operation of 60 4.2-megawatt turbines on the Reservation and associated infrastructure on nearby, privately held lands (the Project). The Project is located approximately 70 miles southeast of San Diego in a sparsely populated, hilly area near the Mexican border.

Backcountry Against Dumps, Donna Tisdale, and Joe Tisdale (collectively, Backcountry) filed this suit. Backcountry alleged that the agency's environmental impact statement (EIS) failed to comply with the National Environmental Policy Act (NEPA) and asserted that the agency's lease approval also violated the Migratory Bird Treaty Act (MBTA) and the Bald and Golden Eagle Protection Act (BGEPA). The district court never reached the merits of these claims, however, as it dismissed the suit for failure to join the Tribe, which it held was a required party under Federal Rule of Civil Procedure 19.

Federal Defendants acknowledged below that dismissal was compelled by this Court's recent decision in *Diné Citizens Against Ruining Our Environment v. Bureau of Indian Affairs* (*Diné Citizens*), 932 F.3d 843 (9th Cir. 2019), *cert.*

*denied*, 141 S. Ct. 161 (2020). In that case, this Court held that an Administrative Procedure Act (APA) challenge to final action of a federal agency was properly dismissed under Federal Rule of Civil Procedure 19 where an absent tribal entity had a legally protected interest in the subject of the challenge and could not be joined due to sovereign immunity. Here, the district court faithfully applied *Diné Citizens*' holdings and concluded that dismissal of this suit was likewise appropriate.

Although Federal Defendants continue to adhere to the position that the United States is generally the only required party in litigation challenging final agency action, this case is materially indistinguishable from *Diné Citizens*. Accordingly, and consistent with its position below, the United States maintains that affirmance is compelled by circuit precedent.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because the claims pleaded by Backcountry arise under federal statutes, namely, the APA, 5 U.S.C. § 706; NEPA, 42 U.S.C. § 4321 *et seq.*; the MBTA, 16 U.S.C. § 701 *et seq.*; and BGEPA, 16 U.S.C. §§ 668–668c. 6-ER-1323–1356. The district court's judgment was final because it resolved all claims against all defendants. 1-ER-2.

This Court has jurisdiction under 28 U.S.C. § 1291.

2

The district court entered judgment on August 6, 2021. 1-ER-2. Plaintiffs filed a notice of appeal on August 12, 2021, or 6 days later. 6-ER-1358. The appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(B).

## STATEMENT OF THE ISSUE

Whether, under this Court's precedent, the district court correctly concluded that the Tribe was a required party under Federal Rule of Civil Procedure 19 who could not feasibly be joined and without whom, in equity and good conscience, the suit could not proceed?

## PERTINENT STATUTES AND REGULATIONS

The only pertinent statute or regulation in this case is Federal Rule of Civil Procedure 19, which is reproduced in the Addendum to Backcountry's opening brief.

## STATEMENT OF THE CASE

### A.    Legal background

#### 1.    BIA's responsibility for approving leases on Indian land.

Under the Indian Reorganization Act of 1934, Pub. L. 73-383, and Department of the Interior regulations, the Secretary of the Interior holds lands in trust for Indian tribes. BIA is the lead agency responsible for the oversight of these and other restricted tribal lands. As part of its responsibilities, BIA oversees, and must approve, the use of trust and other restricted status Indian land for business

purposes, including the development or utilization of natural resources in connection with leasing, such as mining and wind development. *See* 25 U.S.C. § 415(a); 25 C.F.R. Part 162 Subpart E (wind and solar resource leases).

Prior to approving a lease on trust or restricted land, federal law requires BIA to determine that adequate consideration has been given by the leasing parties to a variety of factors, such as the safety of the structures, the availability of fire protection and other services, and "the effect on the environment of the uses to which the leased lands will be subject." 25 U.S.C. § 415(a). BIA must also verify that the lease complies with all environmental and land use laws and ordinances, 25 C.F.R. § 162.565(a)(2), and ensure that the lease is in the best interest of the Indian landowners, *id.* § 162.566(a)(3). In reviewing a proposed lease, BIA will defer to the maximum extent possible to the Tribe's determination that the lease is in its best interest. 25 C.F.R. § 162.566(b).

### 2. NEPA

As the "basic national charter for protection of the environment," NEPA requires agencies to examine the environmental consequences of their actions before irrevocably committing resources to those projects. 40 C.F.R. § 1500.1.[1] NEPA serves the dual purpose of ensuring that federal agencies "consider every

---

[1] CEQ amended its NEPA regulations in July 2020. *See* 85 Fed. Reg. 43304 (July 16, 2020). Because BIA made its decision about the Tribe's lease before the new regulations were finalized, the prior regulations governed its review.

significant aspect of the environmental impact of a proposed action" and "inform the public" of their analysis. *Baltimore Gas & Electric Co. v. NRDC, Inc.*, 462 U.S. 87, 97 (1983). Among other provisions, NEPA requires an environmental impact statement (EIS) for any "major federal action"—including federal permits and approvals of non-government action—"significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Although agencies are required to comply with NEPA's procedures, it is "well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process" that an agency must follow. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

### 3. MBTA

The MBTA is a criminal statute that prohibits the "take" of certain birds unless permitted by the Secretary of the Interior. Take is defined to mean "to pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to pursue, hunt, shoot, wound, kill, trap, capture, or collect." 50 C.F.R. § 10.12; *see also* 16 U.S.C. § 703(a); 50 C.F.R. § 10.1. The U.S. Fish and Wildlife Service (FWS) implements the MBTA on behalf of the Secretary of the Interior. FWS is authorized to issue take permits under certain circumstances. *See* 16 U.S.C. § 704(a); *see generally* 50 C.F.R. §§ 21.1–21.61.

As a criminal statute, the MBTA does not apply against the federal

government, nor does it include a citizen suit provision that would permit private citizens to bring a cause of action to enforce its provisions. 16 U.S.C. §§ 706, 707(a), (d). This Court has found standing to bring suit where the plaintiff alleges she is adversely affected by an agency action alleged to have violated the MBTA. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1204 (9th Cir. 2004).

But, this Court has held that federal government agencies are not liable under the MBTA for actions taken in a "purely regulatory capacity," such as approving a project right-of-way, because "the MBTA does not contemplate attenuated secondary liability." *Protect Our Communities Foundation v. Jewell*, 825 F.3d 571, 585, 588 (9th Cir. 2016). In other words, agency "regulatory acts [such as lease approvals] do not directly or proximately cause the 'take' of migratory birds," and thus the federal government is not liable under the MBTA when it takes such regulatory actions. *Id.*

### 4. BGEPA

Similar to the MBTA, the BGEPA makes it unlawful for any person to "take, possess, sell, purchase, barter, offer to sell, purchase or barter, transport, export or import" bald and golden eagles, except as permitted by the Secretary. 16 U.S.C. § 668(a)–(b). The BGEPA defines "take" to include "pursue, shoot, shoot at, poison, wound, kill, capture, trap, collect, molest or disturb." *Id.* § 668c. Like the MBTA, the BGEPA is implemented by FWS on behalf of the Secretary of the

Interior and contains no private right of action or citizen suit provision. *See* 16 U.S.C. § 668(a)–(b).

As with the MBTA and notwithstanding "some substantive differences" between the two statutes, this Court has concluded that government regulatory activities such as the approval of right-of-ways do not render the government liable for BGEPA violations. *See Protect Our Communities Foundation*, 825 F.3d at 588; *cf. Protect Our Communities Foundation v. LaCounte*, 939 F.3d 1029, 1043 (9th Cir. 2019) (rejecting APA challenge to BIA's approval of wind farm on tribal trust land alleging violations of the BGEPA).

## B. Factual Background

The Tribe's Reservation is located in a sparsely developed, high desert environment characterized by rolling hills and strong winds. 1-Fed. App. SER-96. To create economic opportunities for Tribal members, who live far from urban centers and have limited access to reliable public transportation, the Tribe settled on a strategic plan to pursue renewable energy on the Reservation. 1-Fed. App. SER-290–292. The Tribe negotiated with Terra-Gen to have that company build, own, and operate a renewable wind energy project on a 2,200 acre corridor on the Reservation (the facility will also extend onto approximately 320 acres of private

land).[2]  Because the Department of the Interior holds the Tribe's approximately

16,500 acre Reservation in trust for the Tribe, the lease was subject to BIA

approval.

Once the Tribe and Terra-Gen submitted the lease to BIA for its review, the

agency began its lease review process and commenced its NEPA review.  As to the

NEPA review, BIA held a scoping meeting in 2018 and released a draft EIS for

public comment in May 2019.  1-Fed. App. SER-10.  After considering comments

and making necessary changes, BIA released a final EIS in January 2020.[3]  *Id.*  The

final EIS examined three alternatives:  (1) a full build-out alternative consisting of

60 turbines capable of generating a total of 252 megawatts of power; (2) a reduced

intensity alternative consisting of 48 turbines capable of generating a total of 202

megawatts of power (an approximately 20 percent reduction in the project's

footprint compared to the full build-out alternative); and (3) a no-action alternative,

where BIA would not approve the development of a wind project on the

---

[2] The new wind facility will not be the first on the Reservation.  Kumeyaay Wind
Farm, which consists of 25 turbines, is an existing wind project on the Reservation,
and Tule Wind is located near the off-Reservation portion of the Project.  4-ER-
716; 4-ER-636; 4-ER-595–596.

[3] Backcountry's ER index lists the EIS as spread among three of the ER volumes,
but it is only contained in volumes 3 and 4; volume 5 does not contain excerpts of
the EIS.  Additionally, 10 pages of the EIS are missing from all volumes of the ER.
For the Court's convenience and to reproduce the missing pages, the complete EIS
is contained, unbroken, in Federal Appellees' Supplemental Excerpts of Record.
*See* 1-Fed. App. SER-61–217.

Reservation.[4]  1-Fed. App. SER-93–95.  The final EIS considered the impact of

each of these alternatives both individually and cumulatively on the region's

landscape and environment, including the Project's effects on the region's land,

water, and biological resources, air quality, greenhouse gas emissions, cultural

resources, noise levels, visual resources, and public health and safety, among

others.  1-Fed. App. SER-95–212; *see also id.* at 13–27 (record of decision

summarizing environmental impacts and mitigation measures).  In addition to

examining each alternative's environmental impacts, the EIS contained 20 separate

appendices, many of which were detailed technical reports supporting the EIS's

conclusions about the Project's environmental impacts.[5]  1-Fed. App. SER-67.  For

instance, Appendix K consisted of a detailed, 120-page acoustical impact analysis,

Appendix J contained a traffic impact analysis, and Appendix L contained a

---

[4] The EIS also details additional alternatives BIA considered but eliminated from further consideration, including a minimal build-out alternative, a reduced-capacity (i.e., smaller) turbine alternative, an off-reservation location alternative, and a mixed wind and solar development alternative.  1-Fed. App. SER-94–95.

[5] Some of the appendices were part of the record below and are in Backcountry's excerpts of record.  Although they are not relevant to this appeal, in the event the Court wishes to see them, all of the appendices are publicly available online through BIA's NEPA portal.  *See* *https://bianepatracker2.doi.gov/attachments/A%20-%20Campo%20Wind%20Scoping%20Report.pdf* (last accessed May 24, 2022).

technical, 100-page visual impact analysis, including photographs simulating the turbines on the landscape.[6]

In April 2020, after considering the Final EIS and meeting all other legal requirements, BIA approved the lease between the Tribe and Terra-Gen in a decision record.[7] *See* 1-Fed. App. SER-3–60 (decision record). The decision record permitted Terra-Gen to construct, operate, maintain, and eventually decommission 60 wind turbines and associated infrastructure on the Reservation, with a lease term of 25 years (with the possibility of a 13-year extension).[8] 1-Fed App. SER-60. As BIA explained: "[The chosen alternative] would provide the Tribe with the best economic opportunities and produce the greatest reduction in

---

[6] While not relevant to the Rule 19 issue before this Court, Backcountry repeatedly asserts in its opening brief that the wind project constitutes a hazard to airplanes and implies that the Federal Aviation Authority (FAA) agrees with its view. *See, e.g.*, Opening Br. 20–22; *id.* at 45. However, on August 31, 2021, FAA made a determination pursuant to 49 U.S.C. § 44718 that the project does *not* pose a hazard to aviation safety. As Backcountry notes in its statement of prior or related cases, it has filed a petition for review in this Court challenging that determination. *See* No. 21-71426 (9th Cir., filed 2021).

[7] BIA's decision record is found at pages 5-ER-1119–1174, although it is not listed in Backcountry's index. For the Court's convenience and to avoid confusion about this unindexed document, it is also reproduced in Federal Appellees' Supplemental Excerpts of Record. *See* 1-Fed. App. SER-3–60.

[8] As noted above, some of these associated facilities and infrastructure (including a high-voltage substation, a switchyard, access roads, and part of the transmission line) would be sited on 320 acres of private land adjacent to, but beyond, Reservation boundaries. This land is owned by private entities and under the permitting jurisdiction of San Diego County. Nonetheless, the off-Reservation facilities are considered part of the project and were evaluated by the EIS for informational purposes. 1-Fed. App. SER-80–83

national greenhouse gas emissions. This would enable the Tribe to establish, fund, and maintain governmental programs that offer a wide range of health, education and welfare services to tribal members, as well as provide the Tribe and its members with greater opportunities for employment and economic growth . . . The Department has considered potential effects to the environment, has adopted all practicable means to avoid or minimize environmental harm, and has determined that potential significant effects will be adequately addressed by the mitigation measures adopted in the Record of Decision." 1-Fed. App. SER-59.

### C. This court's recent precedent regarding dismissal for failure to join a required party

As noted above, this appeal turns on this Court's recent precedent regarding Federal Rule of Civil Procedure 19. Rule 19 provides that a nonparty to a lawsuit is "required to be joined if feasible" when one of two criteria is met:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

11

When joinder of a required nonparty is not feasible—as, for example, when the nonparty is protected from suit by sovereign immunity—"the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," that is, whether the nonparty is "indispensable" to the action. Fed. R. Civ. P. 19(b).  In making the indispensability determination, courts consider four factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

This Court recently addressed how Rule 19 operates when a plaintiff challenges the federal government's approval of a lease between an absent tribe, which cannot be joined without its consent, and a project developer.  In *Diné Citizens*, groups concerned about the environmental and public health consequences of a coal mine and affiliated power plant objected to federal

agencies' approvals which allowed for the expansion of a coal mine and continued operations at an affiliated power plant. 932 F.3d at 847-48. The mine and power plant, both built in the 1960s, were located on tribal land within the Navajo Reservation; the mine was also owned by an entity controlled by the Navajo Nation. *Id.* at 849. The tribe and its operating partners sought and received federal agencies' approval of a renewals and changes to lease agreements between the tribe and its operating partners, granting of certain rights of way, and issuance of a new mining permit. *Id.* After the agencies approved these changes, these entities made "significant financial investments in the Power Plant and Mine." *Id.* Unhappy with the mine's expansion and the prolonged life of the coal-fired power plant that mine expansion would enable, plaintiffs alleged that the agencies had failed to adequately perform analyses required by NEPA and the Endangered Species Act. *Id.* at 849-50. They sought declaratory relief, orders setting aside the agencies' biological opinion and record of decision, and prospective injunctive relief prohibiting federal defendants from authorizing any element of the mining operations until the agencies complied with federal environmental laws.

The absent tribal entity intervened for the limited purpose of filing a motion to dismiss, arguing that it was a required party under Rule 19(a) that could not be joined because it was shielded by tribal sovereign immunity, and that equity and good conscience demanded that the lawsuit be dismissed in its absence. *Id.* at 850.

This Court agreed, rejecting the United States' position that the federal government is generally the only required and indispensable defendant in an APA challenge to a federal agency's compliance with federal statutes.

First, this Court held that the absent tribal entity was a required party to the litigation under Rule 19(a).  In this Court's view, judgment for the plaintiffs could have impaired the tribal entity's existing interest in the existing lease, rights-of-way, and permit.  *Id.* at 852-53.  As the Court explained, "the litigation could affect already-negotiated lease agreements and expected jobs and revenue"—interests that the tribal entity already possessed, not merely interests that the tribal entity could one day seek to obtain.  *Id.* at 853.  The Court next turned to whether another party could adequately represent the absent tribal entity's interests, and opined that neither the United States nor the tribal entity's business partners could do so. While federal defendants "have an interest in defending their own analyses," they "do not share an interest in the *outcome* of the approvals—the continued operation of" the tribe's mine and associated power plant.  *Id.* at 855.  The Court also noted that the Navajo Nation's interest in being able to operate a mine and benefit from an associated power plant to support its population was not merely pecuniary but "sovereign" in nature, and the tribal entity's business partners could not adequately represent these sovereign interests.  *Id.*

After concluding that the absent tribal entity could not be joined without consent, the Court turned to Rule 19(b)'s indispensability analysis and walked through Rule 19(b)'s four listed factors. *Id.* at 857-58. The Court recognized that the prejudice to the tribe, the first of the rule 19(b) factors, was largely duplicative of the Rule 19(a) analysis. The Court concluded that the prejudice to the Navajo Nation and the tribe's business entity in that case would be great, amounting to $40 to 60 million annually in lost revenue, in addition to the sovereign injury it would suffer by not being able to "use its natural resources how it chooses." *Id.* at 857. This Court also held that the second 19(b) factor, the ability to shape relief to avoid prejudice, also favored dismissal. The Court recognized that it was possible that the tribal entity's interest would be vindicated, dismissal was nonetheless warranted because plaintiffs were, at base, challenging the "approv[al] of the mining activities in their exact form." *Id.* at 858–859. The Court acknowledged, however, that remaining two 19(b) factors arguably weighed against dismissal— noting that the community groups "would have no alternate forum in which to sue Federal defendants for their alleged procedural violations" if the case were dismissed. *Id.* at 858. Nevertheless, the Court held that "[e]ven assuming that no alternate remedy exists," dismissal would be proper because "the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs." *Id.*; *see also Deschutes River Alliance v. Portland General Elec. Co.*, 1 F.4th 1153,

1163 (9th Cir. 2021) (citing *Diné Citizens* to dismiss Endangered Species Act challenge to private-tribal hydroelectric project where action would implicate tribes' protected interests).

Finally, the Court declined to apply the "public rights" exception to traditional joinder rules to allow the lawsuit to go forward. *Diné Citizens*, 932 F.3d at 858-61. In doing so, it recognized that it was deviating from the law of the Tenth Circuit, which has refused to dismiss lawsuits in comparable circumstances to avoid producing the "anomalous result" that "[n]o one, except [a] Tribe, could seek review of . . . significant federal action relating to leases or agreements for development of natural resources on [that tribe's] lands," unless the tribe voluntarily waives its sovereign immunity. *Id.* at 860-61 (quoting *Manygoats v. Kleppe*, 558 F.2d 556, 559 (10th Cir. 1977)). The Court declared that anomaly was a problem "for Congress to address, should it see fit." *Id.*

### D. The present lawsuit

Backcountry filed suit in July 2020 challenging BIA's approval of the Project. Its amended complaint pleaded violations of NEPA and the APA, the MBTA, and the BGEPA. The vast majority of the complaint was devoted to the agency's allegedly flawed NEPA analysis. In Backcountry's view, the EIS failed to (1) consider connected actions; (2) consider the Project's cumulative impacts, (3) analyze a reasonable range of project alternatives, (4) adequately discuss

16

mitigation, and (5) take the requisite hard look at the Project's impacts on a variety of specific environmental resources. *See* 6-ER-1323–1353. The amended complaint also asserted that the MBTA and the BGEPA required BIA to obtain incidental take permits before approving the lease and BIA failed to do so, or in the alternative, that BIA had failed to comply with the APA by approving the Project without requiring that Project applicants obtain incidental take permits. 6-ER-1353–1356. The complaint prayed the district court to order BIA to "withdraw its Project approvals and its March 2020 FEIS" and to "preliminarily and permanently enjoin BIA from initiating or permitting any activities in furtherance of the Project" until the agency complied with NEPA, the MBTA, and the BGEPA. 6-ER-1357.

After Backcountry initiated this lawsuit, Terra-Gen intervened. 6-ER-1362. Both Terra-Gen and the Federal Defendants subsequently filed motions for partial dismissal alleging that the amended complaint's second and third causes of action failed as a matter of law in light of Ninth Circuit precedent precluding MBTA and BGEPA liability for agency regulatory approvals such as BIA's. 6-ER-1364 (Terra-Gen motion ECF 46); 6-ER-1366 (Federal Defendants' motion ECF 60).

While that issue was pending, the Tribe moved to intervene under Federal Rule of Civil Procedure 24(a)(2) for the limited purpose of filing a motion to dismiss. 1-Fed. App. SER-229. The Tribe argued that it was entitled to intervene

as of right because its motion was timely, it had a significant, protectable interest in the action derived from its status as a party to the lease approved by BIA, and neither Federal Defendants nor Terra-Gen could adequately represent its interest. 1-Fed. App. SER-240–244.

Backcountry opposed Terra-Gen's and Federal Defendants' motions for partial dismissal as well as the Tribe's intervention motion. 6-ER-1366 (ECF 55 [opposition to intervention], ECF 61 [opposition to partial dismissal]). In addition, in late May, nearly a year after filing its initial complaint, Backcountry moved for a preliminary injunction. 6-ER-1367 (ECF 65). Federal Defendants and Terra-Gen opposed Backcountry's preliminary injunction motion. 6-ER-1367 (ECF 77 [Federal Defendants' opposition], ECF 78 [Terra-Gen opposition]).

While the preliminary injunction motion briefing was pending, the district court granted the Tribe's motion to intervene.[9] *See* 1-Fed. App. SER-218. It held that the Tribe met the Rule 24 factors, specifically finding that the Tribe's motion was timely, the Tribe had a significantly protectable interest in the action that would be impaired should the Tribe not be permitted to intervene, and no other party could adequately represent the Tribe's interest. 1-Fed. App. SER-224. As to

---

[9] Federal Defendants declined to take a position on the Tribe's motion to intervene, noting only that they would respond to any motion to dismiss in the event the court were to grant the intervention motion and the Tribe filed its proposed motion. *See* 6-ER-1365 (ECF 52).

the latter point, the court opined that it agreed with the Tribe's assertion that "controlling Ninth Circuit precedent" (namely, *Diné Citizens*) required it to find that the Tribe's interest could not be adequately protected by the other parties. 1-Fed. App. SER-225.

After the court's intervention ruling, the Tribe filed its motion to dismiss for failure to join a required party under Rule 19; Terra-Gen joined that motion. *See* 2-ER-205–233; 2-ER-194–204. Backcountry opposed the motion. 2-ER-100. Although Federal Defendants had not themselves moved to dismiss Backcountry's suit on Rule 19 grounds, they concluded, upon review of the motions and this Court's decision in *Diné Citizens*, that dismissal was consistent with circuit law. Accordingly, Federal Defendants filed a short response to the motion preserving their argument that the United States is the only necessary party in an action challenging final agency action and noting that *Diné Citizens* was controlling and supported dismissal. 6-ER-1369 (ECF 83).

The district court granted the Tribe's motion to dismiss and denied as moot Terra-Gen's and Federal Defendants' partial motions to dismiss.[10] 1-ER-4. The court first agreed that the Tribe was a necessary party under Rule 19(a). As the court explained, granting Backcountry's requested relief could impair the absent

---

[10] The court also overruled Backcountry's evidentiary objections and denied Backcountry's motion to strike. Backcountry has not challenged those rulings in its opening brief.

Tribe's "substantial and legally protected interest in the Lease . . . [and] the Tribe's sovereign [interest in controlling its resources]." 1-ER-19–21. In so ruling, the court expressly rejected Backcountry's contention that the Tribe had only a speculative, future financial stake in the outcome of the litigation because the Project had not yet begun operations. As an initial matter, the court noted that the Tribe need only claim an "*interest* rather than a formal property right," and that, in any event, "the Tribe has already received over a million dollars in rents and payments under the Lease, fourteen Tribal members were employed during the environmental review of the Project, and Tribal members have received fifteen scholarships pursuant to a 2019 scholarship program to fund higher education and training established as a result of the Project." 1-ER-16–17 (emphasis in original). The court explained that, if Backcountry were to prevail, "the relief [Plaintiffs] seek would essentially destroy the Lease" to which the Tribe was a party and "impair the Tribe's sovereign interests, including 'its use of its property, and its control of its resources, including pursuing its Energy Vision.'" 1-ER-19 (quoting 1-Fed. App. SER-255). The court also disagreed with Backcountry's assertions that the United States or Terra-Gen could adequately represent the Tribe's interest for the reasons discussed in the court's intervention order. 1-ER-20; *see also* 1-Fed. App. SER-224–227.

After concluding that the Tribe was a necessary party, the court noted that it was undisputed that the Tribe could not be joined due to sovereign immunity. 1-ER-21. Accordingly, the court proceeded to examine whether the Tribe was an indispensable party by analyzing Rule 19(b)'s four factors. 1-ER-22–24. The court held that the Tribe would suffer prejudice if the suit proceeded without it, explaining that, as in *Diné Citizens*, the Tribe would lose tens of millions of dollars in revenue, as well as lose control over its ability to use its natural resources as it chooses. 1-ER-22. It also agreed with the Tribe that it would not be possible for the court to shape relief to avoid such prejudice, again relying heavily on *Diné Citizens* for that conclusion. 1-ER-22–23. Notwithstanding the fact that the remaining two factors weighed against dismissal, the court held that, as in *Diné Citizens*, Rule 19(b)'s equitable factors favored dismissal. 1-ER-24. The court also rejected Backcountry's argument that the public rights exception applied. 1-ER-24–26. This appeal followed. 6-ER-1358.

## SUMMARY OF ARGUMENT

Under this Court's controlling precedent, a Tribe has an existing legally protected interest in an approved lease, and dismissal of a challenge to final agency action is proper where granting the requested relief would impair the absent tribe's existing legally protected interest. This Court has applied that rule even where dismissal would deprive the plaintiff of any alternate forum for raising its

21

challenge. *Diné Citizens* remains law of this circuit, and under that controlling

precedent, the district court correctly dismissed Backcountry's lawsuit.

Affirmance is warranted.

## STANDARD OF REVIEW

This Court reviews a district court's decision to dismiss for failure to join a

required party for abuse of discretion but reviews its underlying legal conclusions

*de novo*. *Diné Citizens*, 932 F.3d at 851.

## ARGUMENT

### The district court appropriately dismissed in light of controlling circuit precedent.

As discussed above, this Court held in *Diné Citizens* that, in a challenge to a

federal agency's compliance with environmental laws in approving a lease

between an absent tribal entity and a third party, the absent tribal entity was a

required party under Rule 19(a). In this Court's view, a judgment declaring the

challenged federal approvals unlawful would have impaired the absent tribal

entity's financial and sovereign interest in those approvals. *Id.* at 852-53.

Moreover, this Court expressly rejected the notion that either the United States,

who shared the Tribe's interest in defending its environmental analyses, or the

project's private operator, who stood to financially benefit from the project's

operation, could adequately represent the absent tribal entity's interests. *Id.* at

855–866. Turning to Rule 19(b)'s equitable analysis, this Court concluded that

dismissal was proper because the prejudice to the Tribe and the inability of the district court to adequately shape relief to mitigate that prejudice outweighed the fact that dismissal would deprive plaintiffs of a forum for challenging federal action. *Id.* at 858. Finally, this Court declined to allow the suit to proceed under the public rights exception, reasoning that the suit's existence threatened destroy the legal entitlements of the absent tribal entity. *Id.* at 860.

Here, as in *Diné Citizens*, Backcountry challenges the lawfulness of federal agency action, specifically alleging that the federal government has failed to comply with its environmental obligations. Here, as in *Diné Citizens*, the federal approval concerns a lease between an absent tribe and a project developer. Here, as in *Diné Citizens*, a judgment granting the relief requested by the plaintiffs could call into question the scope or existence of the absent tribe's legal rights.

To briefly elaborate, Backcountry asked the district court to invalidate BIA's record of decision approving the lease, which allowed the Project to move forward. 6-ER-1356–1357. It further requested an injunction prohibiting BIA from initiating or permitting project activities until Federal Defendants comply with the environmental statutes. 6-ER-1357. In seeking to enjoin the Project unless and until Federal Defendants correct any purported deficiencies, Backcountry sought relief that, if granted, could prevent the Project from moving forward in its current form. For instance, if the district court were to remand and BIA were to conclude,

after additional environmental analysis, that further mitigation measures were required, or that a different project configuration were necessary, those decisions could impair the Tribe's interest under this Court's Rule 19 analysis. Because Backcountry's lawsuit seeks relief that could ultimately impair the Tribe's interests in the lease, which has already been approved, *Diné Citizens* controls and affirmance is appropriate.

In urging this Court to reverse, Backcountry never grapples with the holding of *Diné Citizens* or offers plausible arguments distinguishing that case from this one. Backcountry's brief instead offers a host of thinly veiled merits arguments impugning the Project and repeats arguments rejected in *Diné Citizens*.

Backcountry first contends that the Tribe's only interests are in BIA's compliance with environmental laws and in what Backcountry considers to be an environmentally sound project.[11] Opening Br. 32; *accord id.* at 40. As an initial

---

[11] Backcountry also briefly argues that the district court misapplied the standard of review. *See* Opening Br. 30–32. The district court did not apply an incorrect standard of review. The contours of Backcountry's argument are unclear but, to the extent Backcountry is alleging that the district court erred in (1) crediting the Tribe's declarations that the Project was in its interest and (2) declining to credit Backcountry's allegations that the Project is *not* in the Tribe's interest, the argument is misplaced. Backcountry appears to suggest that the Court should have examined whether the Project was, as a factual matter, *actually* in the Tribe's interest. But, as the district court correctly recognized, the Tribal decision that the Project is in its interest—and any factual predicates to that decision—are not before the Court. *See* 1-ER-14 n.2.

matter, the content of Backcountry's argument is a transparent attempt to put before the Court the merits of the underlying suit, and as such, is improper.  In any event, Backcountry misconstrues the nature of the Tribe's interest and, consequently, the prejudice it might suffer were this suit to move forward.[12] Backcountry is mistaken that *it*, rather than the Tribe, may define the Tribe's interest, and that the Tribe's only interest is in an environmentally sound project, as defined by Backcountry.  The interest actually identified by the district court was the Tribe's *financial* interest in the Project and its *sovereign* interest in preserving its ability to control its own destiny and manage its resources in a way it sees fit. The district court appropriately followed *Diné Citizens* in identifying these interests, and Backcountry offers no persuasive argument that in so doing the district court erred.

Backcountry next renews its assertions that the Tribe has no legally protected interest in the outcome of this litigation  because the Project's operations have not yet commenced.  Opening Br. 38–39.  But the district court was following this Court's statement in *Diné Citizens* that a lease's approval *itself* creates an

---

[12] Because Backcountry misconstrues the nature of the interest at issue, it also misunderstands what is required to tailor relief to lessen the prejudice under Rule 19(b).  *See* Opening Br. 36.  Backcountry contends that the district court's analysis on this 19(b) factor was flawed, but it only reiterates its view that relief could mitigate the Project's *actual* environmental impacts.  The fact that Backcountry believes that the Project would be better for the Tribe if it were modified is irrelevant to the legal question before the Court.

interest that could be impaired in litigation concerning that approval. *See Diné Citizens*, 932 F.3d at 853 ("Although Plaintiffs' challenge is to Federal Defendants' NEPA and [Endangered Species Act] processes . . . it does not relate only to the agencies' future administrative process, but instead may have retroactive effects on approvals already granted for mining operations."). Thus, the district court did not err in concluding that the fact "that the Project is neither built nor operational is not dispositive" of whether the Tribe has an "interest" in the litigation. 1-ER-16.

Moreover, as the district court also noted, the Tribe is currently receiving material benefits from the lease, notwithstanding the fact that operations have not commenced. Although the wind turbines themselves are not yet operational, there *are* ongoing Project activities that give the Tribe an existing interest in the Lease (e.g., scholarships for Tribal members and rent payments that the Tribe has already collected). 1-ER-17. Indeed, Backcountry ultimately concedes as much. *See* Opening Br. 39. And while Backcountry argues that this interest is adequately represented by the United States and Terra-Gen, Opening Br. 39–42, that conclusion is contrary to this Court's controlling precedent in *Diné Citizens*.[13]

---

[13] That argument also conflicts with the district court's intervention decision, which Backcountry has not appealed. 6-ER-1359.

Finally, Backcountry relies on out-of-circuit precedent for the proposition that equity and good conscience require the suit to move forward notwithstanding the fact that the Tribe cannot be joined. Opening Br. at 42–43. But neither the district court cases from within the Tenth Circuit cited by Backcountry nor the Tenth Circuit's decision in *Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977), are binding on this Court. To the contrary, *Diné Citizens* controls.

To be clear, the United States remains concerned about the *Diné Citizens* decision, including that decision's functional constriction of the APA cause of action. The Government aired those concerns in the *Diné Citizens* suit, however, and this Court acknowledged the problem but nevertheless decided that those concerns did not change the Court's final analysis. *See Diné Citizens*, 932 F.3d at 860–61. Nothing in Backcountry's brief meaningfully distinguishes this case from *Diné Citizens* or otherwise explains how a panel of this Court could reach a different outcome here. Therefore, affirmance is appropriate.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

s/ Michelle Melton
TODD KIM
*Assistant Attorney General*

RACHEL HERON
MICHELLE MELTON
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
May 24, 2022                    (202) 353-9231
DJ 90-1-4-16078                michelle.melton@usdoj.gov

28

# STATEMENT OF RELATED CASES

Backcountry has petitioned this Court for review of a separate federal agency action involving the same wind facility. *See* No. 21-71426 (9th Cir., filed 2021). That case is not a related case as defined by 9th Cir. R. 28-2.6, and counsel is also not aware of any other related cases.

# Form 8.   Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**          21-55869

I am the attorney or self-represented party.

**This brief contains 6,350 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of ___, Cir. R. 29-2(c)(2),
or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one)*:
[  ] it is a joint brief submitted by separately represented parties;
[  ] a party or parties are filing a single brief in response to multiple briefs; or
[  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**    s/ Michelle Melton

**Date**       May 24, 2022