Exhibit "1"

*Klamath Irrigation District et. al. v. United States Bureau of Reclamation et. al.*, ___4th___, 2022 WL 4101175 (9th Cir. 2022)

2022 WL 4101175

Only the Westlaw citation is currently available.

United States Court of Appeals, Ninth Circuit.

KLAMATH IRRIGATION DISTRICT, Plaintiff-Appellant,
and
Shasta View Irrigation District; Tulelake Irrigation District;
Klamath Water Users Association; Klamath Drainage
District; Rob Unruh; Van Brimmer Ditch Company; Ben
Duval, Plaintiffs,
v.
UNITED STATES BUREAU OF RECLAMATION; Deb Haaland,
Secretary of the Interior, in her official capacity; Camille
Calimlim Touton, Commissioner of the Bureau of
Reclamation, in her official capacity; Ernest Conant,
Director of the Mid-Pacific Region, Bureau of Reclamation,
in his official capacity; Jared Bottcher, in his official
capacity as Acting Area Manager for the Klamath Area
Reclamation Office, Defendants-Appellees,
Hoopa Valley Tribe; The Klamath Tribes, Intervenor-
Defendants-Appellees.
Shasta View Irrigation District; Tulelake Irrigation District;
Klamath Water Users Association; Klamath Drainage
District; Rob Unruh; Van Brimmer Ditch Company; Ben
Duval, Plaintiffs-Appellants,
and
Klamath Irrigation District, Plaintiff,
v.
United States Bureau of Reclamation; Deb Haaland,
Secretary of the Interior, in her official capacity; Camille
Calimlim Touton, Commissioner of the Bureau of
Reclamation, in her official capacity; Ernest Conant,
Director of the Mid-Pacific Region, Bureau of Reclamation,
in his official capacity; Jared Bottcher, in his official
capacity as Acting Area Manager for the Klamath Area
Reclamation Office, Defendants-Appellees,

## Hoopa Valley Tribe; The Klamath Tribes, Intervenor-Defendants-Appellees.

No. 20-36020, No. 20-36009

Argued and Submitted December 7, 2021 San Francisco, California

Filed September 8, 2022

## Synopsis

**Background:** Irrigation districts brought action against Bureau of Reclamation seeking declaratory judgment that Bureau's operating procedures for federal irrigation project, which Bureau adopted to fulfill obligations arising under Endangered Species Act (ESA) and tribal treaties, violated Administrative Procedure Act (APA) and Reclamation Act. The Hoopa Valley and Klamath Tribes intervened as of right, but then moved to dismiss. The United States District Court for the District of Oregon, Michael J. McShane, J., 489 F.Supp.3d 1168, dismissed for failure to join required parties. Irrigation districts appealed.

**Holdings:** The Court of Appeals, Wardlaw, Circuit Judge, held that:

1 Tribes were required parties;

2 Tribes could not be joined due to tribal sovereign immunity; and

3 case could not proceed in equity and good conscience in the Tribes' absence.

Affirmed.

Bumatay, Circuit Judge, filed concurring opinion.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.



**West Headnotes (20)**

1 **Federal Courts**

Court of Appeals reviews a district court's decision to dismiss a case for failure to join a required party for abuse of discretion. Fed. R. Civ. P. 19.

170B

Federal Courts

### 2 Federal Courts

Court of Appeals reviews de novo any legal questions underlying a district court's decision to dismiss a case for failure to join a required party. Fed. R. Civ. P. 19.



**170B**

Federal Courts

### 3 Federal Courts

Court of Appeals reviews the proper interpretation of a federal statute de novo.



**170B**

Federal Courts

### 4 Indians

Court of Appeals reviews issues of tribal sovereignty de novo.



**209**

Indians

### 5 Federal Civil Procedure

Under rule governing required joinder of parties, an absent party has no legally protected interest at stake in a suit only to enforce compliance with administrative procedures. Fed. R. Civ. P. 19(a)(1).



**170A**

Federal Civil Procedure

### 6 Federal Civil Procedure

Under rule governing required joinder of parties, an absent party may have a legally protected interest at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted. Fed. R. Civ. P. 19(a)(1).



**170A**

Federal Civil Procedure

### 7  Federal Civil Procedure



**170A**

Hoopa Valley and Klamath Tribes were required parties in irrigation districts' action against Bureau of Reclamation seeking declaratory judgment that Bureau's operating procedures for federal irrigation project, which Bureau adopted to fulfill obligations arising under Endangered Species Act (ESA) and tribal treaties, violated Administrative Procedure Act (APA) and Reclamation Act, where Tribes' water rights were at a minimum coextensive with Bureau's obligations to provide water for instream purposes under ESA, Tribes' water rights could have been impaired if irrigation districts were successful in their action, and Tribes were in active litigation over degree to which Bureau was willing to protect Tribes' interests in several species of fish.  5 U.S.C.A. § 551 et seq.; Endangered Species Act of 1973 § 2, 16 U.S.C.A. § 1531; 43 U.S.C.A. § 383; Fed. R. Civ. P. 19(a)(1)(B)(i).

Federal Civil Procedure

### 8  Federal Civil Procedure



**170A**

Under rule governing required joinder of parties, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit. Fed. R. Civ. P. 19.

Federal Civil Procedure

**9**  **Federal Civil Procedure**



**170A**

Federal Civil
Procedure

Under rule governing required joinder
of parties, three factors are relevant to
whether an existing party may
adequately represent an absent
required party's interests: (1) whether
the interests of a present party to the
suit are such that it will undoubtedly
make all of the absent party's
arguments; (2) whether the party is
capable of and willing to make such
arguments; and (3) whether the absent
party would offer any necessary
element to the proceedings that the
present parties would neglect. Fed. R.
Civ. P. 19.

**10**  **Federal Civil Procedure**



**170A**

Federal Civil
Procedure

Bureau of Reclamation, as named
defendant, did not adequately
represent the interests of Hoopa Valley
and Klamath Tribes, and thus Tribes
were required parties in irrigation
districts' action seeking declaratory
judgment that Bureau's operating
procedures for federal irrigation project,
which Bureau adopted to fulfill
obligations arising under Endangered
Species Act (ESA) and tribal treaties,
violated Administrative Procedure Act
(APA) and Reclamation Act, even
though Bureau and Tribes shared an
interest in ultimate outcome of case,
where Tribes' primary interest was in
ensuring the continued fulfillment of
their reserved water and fishing rights,
while Bureau's primary interest was in
defending its action taken pursuant to
ESA and APA.   5 U.S.C.A. § 551 et
seq.; Endangered Species Act of 1973 §
2, 16 U.S.C.A. § 1531; 43 U.S.C.A. § 383;
Fed. R. Civ. P. 19(a)(1)(B)(i).

**11    Federal Civil Procedure**



**170A**

Federal Civil
Procedure

Bureau of Reclamation, as named
defendant, did not adequately
represent the interests of Hoopa Valley
and Klamath Tribes on the basis of the
federal government acting as a trustee
for the federal reserved water and
fishing rights of Native American tribes,
and thus Tribes were required parties in
irrigation districts' action seeking
declaratory judgment that Bureau's
operating procedures for federal
irrigation project, which Bureau
adopted to fulfill obligations arising
under Endangered Species Act (ESA)
and tribal treaties, violated
Administrative Procedure Act (APA) and
Reclamation Act; a unity of some
interests did not equal a unity of all
interests, and the Bureau and Tribes
shared an interest in the ultimate
outcome of case for very different
reasons.  5 U.S.C.A. § 551 et seq.;
Endangered Species Act of 1973 § 2, 16
U.S.C.A. § 1531; 43 U.S.C.A. § 383; Fed.
R. Civ. P. 19(a)(1)(B)(i).

**12    Indians**



**209**

Indians

Native American tribes are domestic
dependent nations that exercise
inherent sovereign authority.

**13    Indians**



**209**

Indians

Tribal sovereign immunity protects
Indian tribes from suit absent express
authorization by Congress or clear
waiver by the tribe.

**14    Indians**



**209**

Indians

Tribal sovereign immunity is a
necessary corollary to Indian
sovereignty and self-governance.

**15 Water Law**



**405**

Water Law

The McCarran Amendment's waiver of federal sovereign immunity for state general stream adjudications and administrations reaches federal water rights reserved on behalf of Native American tribes, but only controls in cases adjudicating or administering water rights. 43 U.S.C.A. § 666(a).

**16 Water Law**



**405**

Water Law

Assuming that the McCarran Amendment's waiver of federal sovereign immunity for state general stream adjudications and administrations extends to Native American tribes as parties, the Amendment does not waive sovereign immunity in every case that implicates water rights. 43 U.S.C.A. § 666(a).

**17 Water Law**



**405**

Water Law

Under the McCarran Amendment's waiver of federal sovereign immunity for state general stream adjudications and administrations, an "administration" of water rights occurs after there has been a prior adjudication of relative general stream water rights, but not every suit that comes later in time than a related adjudication amounts to an administration under the Amendment. 43 U.S.C.A. § 666(a)(2).

#### 18    Water Law



**405**                                      Water Law

The McCarran Amendment's waiver of
federal sovereign immunity for state
general stream adjudications and
administrations did not waive tribal
sovereign immunity of Hoopa Valley
and Klamath Tribes that were required
parties for irrigation districts' action
seeking declaratory judgment that
Bureau of Reclamation's operating
procedures for federal irrigation project,
which Bureau adopted to fulfill
obligations arising under Endangered
Species Act (ESA) and tribal treaties,
violated Administrative Procedure Act
(APA) and Reclamation Act; case was
not an administration of previously-
determined water rights but instead
was an APA challenge to federal agency
action. 5 U.S.C.A. § 551 et seq.;
Endangered Species Act of 1973 § 2, 16
U.S.C.A. § 1531; 43 U.S.C.A. §§ 383,
666(a); Fed. R. Civ. P. 19(a)(1)(B)(i).

#### 19    Water Law



**405**                                      Water Law

Irrigation districts' action seeking
declaratory judgment that Bureau of
Reclamation's operating procedures for
federal irrigation project, which Bureau
adopted to fulfill obligations arising
under Endangered Species Act (ESA)
and tribal treaties, violated
Administrative Procedure Act (APA) and
Reclamation Act could not proceed in
equity and good conscience without the
joinder of Hoopa Valley and Klamath
Tribes, as required parties, due to tribal
sovereign immunity, and thus dismissal
of action was warranted, where
irrigation districts claimed senior water
rights but Tribes sought to preserve
their reserved water rights in those
same waters. 5 U.S.C.A. § 551 et
seq.; Endangered Species Act of 1973 §
2, 16 U.S.C.A. § 1531; 43 U.S.C.A. §§ 383,
666(a); Fed. R. Civ. P. 19(b).



| | 20 | **Federal Civil Procedure**<br>Prejudice to any party resulting from a judgment militates toward dismissal of the suit due to nonjoinder of a party.<br>Fed. R. Civ. P. 19(b). | 🔑<br>**170A** | Federal Civil Procedure |

Appeal from the United States District Court for the District of Oregon, Michael J. McShane, District Judge, Presiding, D.C. Nos. 1:19-cv-00451-CL, 1:19-cv-00531-CL

## Attorneys and Law Firms

Christopher A. Lisieski (argued) and John P. Kinsey, Wanger Jones Helsley PC, Fresno, California; Nathan R. Rietmann, Rietmann Law PC, Salem, Oregon; for Plaintiff-Appellant Klamath Irrigation District.

Richard S. Deitchman (argued), and Paul S. Simmons, Somach Simmons & Dunn PC, Sacramento, California; Nathan J. Ratliff, Parks & Ratliff PC, Klamath Falls, Oregon; Reagan L.B. Desmond, Clyde Snow & Sessions PC, Bend, Oregon; for Plaintiffs-Appellants Shasta View Irrigation District, Tulelake Irrigation District, Klamath Water Users Association, Klamath Drainage District, Rob Unruh, Van Brimmer Ditch Company, and Ben Duval.

Thane D. Somerville (argued) and Thomas P. Schlosser, Morisset Schlosser Jozwiak & Somerville, Seattle, Washington, for Intervenor-Defendant-Appellee Hoopla Valley Tribe.

Rachel Heron (argued) and John L. Smeltzer, Attorneys; Jean E. Williams, Acting Assistant Attorney General; Environment and Natural Resources Division; United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

Jeremiah D. Weiner (argued), Rosette LLP, Sacramento, California, for Intervenor-Defendant-Appellee Klamath Tribes.

Before: Kim McLane Wardlaw, Daniel A. Bress, and Patrick J. Bumatay, Circuit Judges.

Concurrence by Judge Bumatay

## OPINION

WARDLAW, Circuit Judge:

This appeal concerns the distribution of waters in the Klamath Water Basin by the Bureau of Reclamation, which owns and operates the Klamath Project, a federal irrigation project. Shasta View Irrigation District, Klamath Irrigation District, and other irrigators, farmers, and water users appeal the dismissal of their action challenging Reclamation's current operating procedures, which were adopted in consultation with other relevant federal agencies to maintain specific lake levels and instream flows to comply with the Endangered Species Act and to safeguard the federal reserved water and fishing rights of the Hoopa Valley and Klamath Tribes. The Districts contend that compliance with those procedures violates the Administrative Procedure Act and the Reclamation Act because distributing water to fulfill the Tribal reserved waters deprives the Districts of waters they claim were lawfully appropriated to the Districts in a state adjudication proceeding. The Hoopa Valley and Klamath Tribes intervened as of right, but then moved to dismiss this action on the ground that they are required parties who cannot be joined due to their tribal sovereign immunity. Because the district court properly recognized that a declaration that Reclamation's operating procedures are unlawful would imperil the Tribes' reserved water and fishing rights, we affirm its conclusion that the Tribes were required parties who could not be joined due to their sovereign immunity, and, that in equity and good conscience, the action should be dismissed.

## I.

### A. The Klamath Water Basin

The Klamath Water Basin (the Klamath Basin) stretches from south-central Oregon to northern California, occupying approximately 12,000 square miles. The Klamath Basin consists of a complex network of interconnected rivers, canals, lakes, marshes, dams, diversions, wildlife refuges, and wilderness areas.

Upper Klamath Lake (UKL), a major lake within the Klamath Basin, is shallow and averages only about six feet of usable water storage when full. Drought conditions in past years have led to "critically dry" conditions in the Klamath Basin, including in UKL. *See Baley v. United States*, 942 F.3d 1312, 1323–24 (Fed Cir. 2019). This problem has only grown more severe with time. Recently, the Klamath Basin has experienced "multiple extremely dry years that unfortunately appear to be the new normal."

The waters of the Klamath Basin serve as a critical habitat for several species of fish that are listed as endangered pursuant to the Endangered Species Act (ESA), 16 U.S.C. § 1531–1544, including the Lost River sucker and shortnose sucker. UKL, which comprises 64,000 acres, serves as the largest remaining contiguous habitat for endangered suckers in the Upper Klamath Basin. Due to "changing water elevation in [UKL] and recurring water quality problems," U.S. Dep't of the Interior, Off. of the Solic., Opinion Letter on Certain Legal Rights and Obligations Related to the U.S. Bureau of Reclamation, Klamath Project for Use in Preparation of the Klamath Project Operations Plan (KPOP) (July 25, 1995) (Letter from the Solicitor); the population of endangered suckers has significantly declined. *See generally* U.S. Dep't of the Interior, Fish and Wildlife Serv., Biological Opinion on the Effects of Proposed Klamath Project Operations from April 1, 2019, through March 31, 2024, on the Lost River Sucker and the Shortnose Sucker, Opinion Letter (Mar. 29, 2019). The U.S. Fish and Wildlife service projected in 2019 that, over the next decade, "the [sucker] population [could] be[come] so small that it is unlikely to persist without intervention."

### B. The Tribes

#### 1. *Klamath Tribes*

*3  Since time immemorial, the Klamath Tribes have utilized the water and fish resources of the Klamath Basin for subsistence, cultural, ceremonial, religious, and commercial purposes. *See* United States v. Adair, 723 F.2d 1394, 1414 (9th Cir. 1983). In 1864, the United States and the Klamath Tribes entered into a treaty whereby the Tribes ceded their interests in millions of acres of land and retained a reservation of approximately 800,000 acres abutting UKL and several of its tributaries. The Klamath Tribes also retained "the exclusive right of taking fish in the streams and lakes included in said reservation, and of gathering edible roots, seeds, and berries within its limits." Treaty between the United States of America and the Klamath and Moadoc Tribes and Yahooskin Band of Snake Indians, art. 1, Oct. 14, 1864, 16 Stat. 707 (the 1864 Treaty).

We have acknowledged that "[i]n view of the historical importance of hunting and fishing, and the language of Article I of the 1864 Treaty ... one of the 'very purposes' of establishing the Klamath Reservation was to secure to the Tribe a continuation of its traditional hunting and fishing lifestyle." Adair, 723 F.2d at 1409 (quoting United States v. New Mexico, 438 U.S. 696, 702, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978)). The fish resources—particularly the *C'waam* (Lost River sucker) and *Koptu* (shortnose sucker)—of the Klamath Basin play an especially important role in the lives of the Klamath Tribes. "The Tribes' water right includes the right to certain conditions of water quality and flow to

support all life stages of [these] fish." Letter from the Solicitor at 5 (citations omitted). These rights "necessarily carry a priority date of time immemorial. The rights were not created by the 1864 Treaty, rather, the treaty confirmed the continued existence of these rights." *Adair*, 723 F.2d at 1414 (citations omitted).

Time and again, we have affirmed the critical importance of the Klamath Tribe's water and fishing rights in the Klamath Basin and its distributaries. *See, e.g., Adair*, 723 F.2d at 1411 (recognizing that the Tribe's fishing rights include "the right to prevent other appropriators from depleting the streams['] waters below a protected level").

## 2. *Hoopa Valley Tribe*

The Act of April 8, 1864, ch. 48, 13 Stat. 39, authorized the creation of the Hoopa Valley Reservation, which is located in northern California along the Klamath River and its largest tributary, the Trinity River, as a permanent homeland for the Hoopa Valley Tribe (Hoopa). We have long held that traditional fishing is one of the central purposes for which, like the Klamath Reservation, the Hoopa Valley Reservation was created. *Parravano v. Babbitt*, 70 F.3d 539, 546 (9th Cir. 1995) ("Our interpretation accords with the general understanding that hunting and fishing rights arise by implication when a reservation is set aside for Indian purposes."). Generations of Hoopa have relied on the water and fish resources provided by the Klamath River and the Trinity River, which flow from the UKL, for cultural, religious, practical, commercial, and ceremonial purposes. *See Parravano*, 70 F.3d at 542 (noting that "the Tribes' salmon fishery was 'not much less necessary to [their existence] than the atmosphere they breathed' ") (quoting *Blake v. Arnett*, 663 F.2d 906, 909 (9th Cir. 1981) (alteration in original).

## C. The U.S. Bureau of Reclamation

The U.S. Bureau of Reclamation (Reclamation), a federal agency housed within the U.S. Department of the Interior, oversees water resource management. The Reclamation Act authorizes Reclamation to carry out water management projects in accordance with state law regarding the control, appropriation, use, and distribution of water for irrigation purposes, except where state law conflicts with superseding federal law. 43 U.S.C. § 383. In 1905, the United States Reclamation Service, the predecessor to the Bureau of Reclamation, filed a notice of appropriation with the Oregon State Engineer, indicating its intent to utilize the waters of the Klamath Basin in accordance with the Reclamation Act, and began construction of the Klamath River Basin Reclamation Project (the Klamath Project). Today, Reclamation manages the Klamath Project in accordance with state and federal law.

*4 Reclamation has the "nearly impossible" task of balancing multiple competing interests in the Klamath Basin. *Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 489 F. Supp. 3d 1168, 1173 (D. Or. 2020). First, Reclamation maintains contracts with individual irrigators and the irrigation districts that represent them, under which the United States has agreed to supply water from the Klamath Project to the irrigators, "subject to the availability of water." Letter from the Solicitor at 7. Simply put, Reclamation cannot distribute water that it does not have. "Water would not be available, for example, due to drought, a need to forego diversions to satisfy prior existing rights, or compliance with other federal laws such as the Endangered Species Act." *Id.*

Reclamation is also responsible for managing the Klamath Project in a manner consistent with its obligations under the ESA. The ESA "requires Reclamation to review its programs and utilize them in furtherance of the purposes of the [Act]." Letter from the Solicitor at 9. Specifically, the ESA, among other obligations, requires federal agencies to consult with specified federal fish and wildlife agencies to ensure that "any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence" of any species listed for protection under the Act "or result in the destruction or adverse modification of" the species' critical habitat.    16 U.S.C. § 1536(a)(2). Since the early 2000s, Reclamation has incorporated operating conditions developed through consultation with federal fish and wildlife agencies to ensure that its operations do not jeopardize the existence of fish species protected by the ESA, including the Lost River sucker, the shortnose sucker, and the Southern Oregon/Northern California Coast coho salmon. These conditions include maintaining minimum lake levels in UKL and minimum stream flows in the Klamath River downstream from the lake to benefit the fish.

Finally, Reclamation must operate the Project consistent with the federal reserved water and fishing rights of the Klamath, Hoopa Valley, and Yurok Tribes that predated the Project and any resulting Project rights. "The [P]roject's 1905 water rights are junior to the reserved water rights of the tribes ...." Letter from the Solicitor at 2.

### D. The Klamath Basin Adjudication

In 1975, the State of Oregon convened the Klamath Basin Adjudication (KBA) to adjudicate the relative rights of use of the Klamath River and its tributaries in accordance with its general stream adjudication law. *See* Or. Rev. Stat.§ 539.005. Oregon law required that all parties file claims of water rights and subjected contested claims to an administrative review conducted by the

Oregon Water Resources Department and then judicial review conducted by the county circuit court. *See id.* §§ 539.021, 539.100, 539.130. For the purposes of the adjudication, a party is "[a]ny person owning any irrigation works, or claiming any interest in the stream involved ..." *Id.* § 539.100. Parties filed claims beginning in 1990, and administrative hearings began in 2001. *Baley, 942 F.3d. at 1321.*

In 2013, the Adjudicator issued findings of fact and an order of determination, and in 2014, the Adjudicator submitted the Amended Corrected Findings of Fact and Order of Determination to the Klamath County Court (the ACFFOD). *See* Amended Corrected Findings of Fact and Order of Determination, In the Matter of the Determination of the Relative Rights to Use of the Water of the Klamath River and Its Tributaries, Oregon Water Resources Dept. (Feb. 28, 2014). [1]  In accordance with Or. Rev. Stat. § 539.150, the Klamath County Circuit Court is currently managing hearings to approve or modify the ACFFOD. While the court holds these hearings, the ACFFOD regulates water use in the Klamath Basin. Or. Rev. Stat. §§ 539.130, 539.170.

### E. Present Dispute

#### 1. *Biological Opinions and Operating Procedures*

**\*5**  Reclamation issued a Biological Assessment in 2018 following consultation with the Fish and Wildlife Service and the National Marine Fisheries Service (collectively, the Services) pursuant to section 7(c) of the ESA,    16 U.S.C. § 1536(c). The Biological Assessment evaluated the potential effects of Reclamation's plan to manage the Klamath Project on federally listed fish species. Reclamation subsequently amended its proposed action and adopted the Services' 2019 Biological Opinions, which analyzed the impact of the Amended Proposed Action on the sucker fish endemic to UKL, listed as endangered under the ESA, and the Oregon/Northern California coho salmon, listed as threatened under the ESA. In the Amended Proposed Action, Reclamation confirmed that it would continue using the water in UKL for instream purposes, including to fulfill its obligations under the ESA and to the Tribes, necessarily limiting the amount of water available to other water users who hold junior rights to the Klamath Basin's waters.

#### 2. *The Water Users*

Klamath Irrigation District (KID) and Shasta View Irrigation District (SVID) (collectively, the Districts) are special irrigation districts in Oregon formed to deliver irrigation water from UKL to their members. Additional water users who are parties to this action include other irrigation and drainage districts, farmers, and landowners whose land is served by the Klamath Project. All private property interests held by the water users are held in trust by the

United States for the use and benefit of the landowners. *Baley*, 942 F.3d at 1321.

II.

On March 27, 2019, KID and other water users filed this action for declaratory and injunctive relief against the Bureau of Reclamation and its officials. Shortly thereafter, SVID and other water users also filed a complaint for declaratory and injunctive relief against Reclamation and its officials, alleging similar claims. All parties stipulated to consolidate the two cases. KID and SVID sought a declaration that Reclamation's operation of the Klamath Project pursuant to the 2019 Amended Proposed Action based on the Services' biological assessments was unlawful under the Administrative Procedure Act (APA). KID and SVID also sought to enjoin Reclamation from using water from UKL for instream purposes and limiting the amount of water available to the irrigation districts.

The Hoopa Valley and Klamath Tribes successfully moved to intervene as of right, arguing that they were required parties to the suit. KID and SVID then filed Second Amended Complaints (SACs) seeking declaratory relief only.

The Districts asked the court, *inter alia*, to "[d]eclare Defendants [sic] actions under the APA unlawful" and "for declaratory relief setting forth the rights of the parties' rights [sic] under the ACFFOD, the Reclamation Act and the Fifth Amendment ...." Specifically, the Districts' SACs alleged that Reclamation's Amended Proposed Action failed to abide by the ACFFOD because Reclamation intended to use water stored in UKL for its own instream purposes without a water right or other authority under the laws of the State of Oregon, in violation of the APA and Section 8 of the Reclamation Act. The SACs also alleged that Reclamation's actions violated the APA and Section 7 of the Reclamation Act, which requires Reclamation to acquire property rights, such as the right to use water under Oregon law, through Oregon's appropriation process or "by purchase or condemnation under judicial process," using the procedure set out by Oregon law. Although the Districts' claims are framed as procedural challenges, their underlying challenge is to Reclamation's authority and obligations to provide water instream to comply with the ESA, an obligation that is coextensive with the Tribes' treaty water and fishing rights.

The Tribes moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(7) for failure to join a required party under Federal Rule of Civil Procedure 19, arguing that tribal sovereign immunity barred their joinder. In a well-reasoned opinion, the magistrate judge recommended that the district

court grant the Tribes' motions and dismiss this case, and on September 25, 2020, the district court adopted the magistrate's decision in full. This timely appeal followed.

### III.

**\*6** The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. We have jurisdiction over the district court's final judgment dismissing Appellants' complaints pursuant to 28 U.S.C. § 1291.

[1] [2] [3] [4] We review a district court's decision to dismiss a case for failure to join a required party under Rule 19 for abuse of discretion, and we review any legal questions underlying that decision de novo. *See, e.g., Alto v. Black*, 738 F.3d 1111, 1125 (9th Cir. 2013). We review de novo both the proper interpretation of a federal statute, such as the McCarran Amendment, *see United States v. Tan*, 16 F.4th 1346, 1349 n.1 (9th Cir. 2021), and issues of tribal sovereign immunity, *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 991 (9th Cir. 2020).

### IV.

Failure to join a party that is required under Federal Rule of Civil Procedure 19 is a defense that may result in dismissal under Federal Rule of Civil Procedure 12(b)(7). We engage in a three-part inquiry. We first examine whether the absent party must be joined under Rule 19(a). We next determine whether joinder of that party is feasible. Finally, if joinder is infeasible, we must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

### A.

[5] [6] A party is a "required party" and must be joined under Federal Rule of Civil Procedure 19 if:

> "(A) in that [party's] absence, the court cannot accord complete relief among existing parties; or (B) that [party] claims an interest relating to the subject of the action and ... disposing of the action in [their] absence may: (i) as a practical matter impair or impede the person's ability to protect the interest ... or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Fed. R. Civ. P. 19(a)(1).

> "Although an absent party has no legally protected interest at stake in a suit seeking only to enforce compliance with administrative procedures, our case law makes clear that an absent party may have a legally protected interest at

stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted."

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 852 (9th Cir. 2019), *cert. denied*, ––– U.S. ––––, 141 S. Ct. 161, 207 L. Ed. 2d 1098 (2020). In this case, the Districts argue that, as a result of the ACFFOD, Reclamation has neither a right nor any other legal authorization to use water stored in the UKL reservoir for instream purposes, a claim that, "as a practical matter," would impair Reclamation's ability to comply with its ESA and tribal obligations.

[7] We have long recognized that the Tribes have "federally reserved fishing rights." *See* *Parravano*, 70 F.3d at 541. Indeed, in *Adair* we held that the Klamath Tribe has "the right to prevent other appropriators from depleting the streams waters below a protected level." *Adair*, 723 F.2d at 1411. In addition, the Federal Circuit has held that both the Hoopa and Klamath Tribes "have [ ] implied right[s] to water to the extent necessary for them to accomplish hunting, fishing, and gathering." *Baley*, 942 F.3d at 1337 (citation omitted). We agree with the district court that our case law establishes that the Tribes' water rights are "at a minimum coextensive with Reclamation's obligations to provide water for instream purposes under the ESA." Thus, a suit, like this one, that seeks to amend, clarify, reprioritize, or otherwise alter Reclamation's ability or duty to fulfill the requirements of the ESA implicates the Tribes' long-established reserved water rights. The Districts' invocation of the APA does not alone render this suit merely procedural. Put simply, if the Districts are successful in their suit, the Tribes' water rights could be impaired, so the Tribes are required parties under Federal Rule of Civil Procedure 19(a)(1) (B)(i).

### B.

*7 The Districts argue that the Tribes are not required parties to this suit because the Tribes' interests are adequately represented by Reclamation. We disagree.

[8] [9] "[A]n absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Dine Citizens*, 932 F.3d at 852 (quoting *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013)). Whether an existing party may adequately represent an absent required party's interests depends on three factors: (1) "whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments;" (2) "whether the party is capable of and willing to make such arguments;" and (3) "whether the

absent party would offer any necessary element to the proceedings that the present parties would neglect." *Id.* (quoting    *Alto*, 738 F.3d at 1127–28).

Three years ago, in    *Dine Citizens*, we addressed the application of Rule 19 when an absent tribe that cannot be joined due to sovereign immunity has a legally protected interest that would be impaired by a successful suit to set aside agency action under the APA. In    *Dine Citizens*, a coalition of conservation organizations sued the U.S. Department of the Interior over its reauthorization of coal mining activities on land reserved to the Navajo Nation.    *Dine Citizens*, 932 F.3d at 847. The lawsuit specifically challenged agency approval of a variety of changes and renewals to the Navajo Transitional Energy Company's (NTEC) leases and mining permits on the grounds that the agency's actions violated the requirements of the ESA.    *Id.* at 849–50. NTEC, a corporation wholly owned by the Navajo Nation, intervened for the limited purpose of filing a motion to dismiss under Rule 12(b)(7) for failure to join a party required under Rule 19 due to that party's sovereign immunity.    *Id.* at 850. The district court granted the motion to intervene, then dismissed the case, concluding that "NTEC had a legally protected interest in the subject matter of [the] suit, because the 'relief Plaintiffs [sought] could directly affect the Navajo Nation ... by disrupting its 'interests in [its] lease agreements ....'"    *Id.* (internal quotation marks and citations omitted). We agreed with the district court, holding that:

> although an absent party has no legally protected interest at stake in a suit seeking only to enforce compliance with administrative procedures, our case law makes clear that an absent party may have a legally protected interest at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted.

*Id.* at 852. We concluded that "[a]lthough Federal Defendants ha[d] an interest in defending their decisions, their overriding interest ... must be in complying with environmental laws such as ... the ESA. This interest differs in a meaningful sense from [the tribe's] sovereign interest in ensuring [continued access to natural resources]." *Id.* at 855.

10  Under    *Dine Citizens*, Reclamation's and the Tribes' interests, though overlapping, are not so aligned as to make Reclamation an adequate representative of the Tribes. The Tribes' primary interest is in ensuring the continued fulfillment of their reserved water and fishing rights, while Reclamation's primary interest is in defending its Amended Proposed Action

taken pursuant to the ESA and APA. While Reclamation and the Tribes share an interest in the ultimate outcome of this case, our precedent underscores that such alignment on the ultimate outcome is insufficient for us to hold that the government is an adequate representative of the tribes.

*8  In *Dine Citizens*, we distinguished *Southwest Center for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) (per curiam), which the Districts cite heavily in support of their argument that the Tribes are adequately represented by Reclamation. In *Southwest Center*, we held that the government was an adequate representative of a tribe in a suit brought to stall the government from utilizing a newly built dam pending further environmental study. 150 F.3d at 1154–55. We concluded that the government and the tribe shared the same interest in "ensuring that the [dam was] available for use as soon as possible." *Id.* at 1154. *Dine Citizens* was distinguishable because "while Federal Defendants [in *Dine Citizens* had] an interest in defending their own analyses that formed the basis of the approvals at issue, [ ] they [did] not share an interest in the outcome of the approvals." *Dine Citizens*, 932 F.3d at 855 (emphasis omitted). The present action is analogous. While Reclamation has an interest in defending its interpretations of its obligations under the ESA in the wake of the ACFFOD, it does not share the same interest in the water that is at issue here.

11  The Districts argue that Reclamation is an adequate representative of the Tribes because the federal government acts as a trustee for the federal reserved water and fishing rights of Native American tribes. The Districts contend that this relationship results in a "unity of interest." But a unity of some interests does not equal a unity of all interests. As discussed above, Reclamation and the Tribes share an interest in the ultimate outcome of this case for very different reasons. Further, our case law has firmly rejected the notion that a trustee-trustor relationship alone is sufficient to create adequate representation. *See id.*

Further, outside of this case, the Tribes are in active litigation over the degree to which Reclamation is willing to protect the Tribes' interests in several species of fish. This fact further increases the likelihood that Reclamation would not "undoubtedly" make all of the same arguments that the Tribes would make in this case, and would materially limit Reclamation's representation of the Tribes' interests. For all of these reasons, Reclamation is not an adequate representative of the Tribes, so the Tribes are required parties to this suit under Federal Rule of Civil Procedure 19. [2]

V.

The Districts argue that even if the Tribes are required parties under Rule 19, the suit should proceed because the McCarran Amendment waives the Tribes' sovereign immunity. We disagree.

12  13  14  Native American tribes are "domestic dependent nations that exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Comm.*, 572 U.S. 782, 788, 134 S.Ct. 2024, 188 L.Ed.2d 1071 (2014) (internal quotation marks and citations omitted). "Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe." *Dine Citizens*, 932 F.3d at 856 (quoting *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008)). "That immunity ... is a necessary corollary to Indian sovereignty and self-governance," *Bay Mills*, 572 U.S. at 788, 134 S.Ct. 2024 (internal quotation marks and citations omitted), and is critically important for the protection of tribal resources.

15  16  The McCarran Amendment waives the United States' sovereign immunity in suits:

> (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.

*9  43 U.S.C. § 666(a). While the McCarran Amendment "reach[es] federal water rights reserved on behalf of Indians," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 811–12, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Amendment only controls in cases "adjudicati[ng]" or "administ[ering]" water rights. 43 U.S.C. § 666(a). Even assuming the McCarran Amendment's waiver of sovereign immunity extends to tribes as parties, *but see Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 567 n. 17, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983), the Amendment does not waive sovereign immunity in every case that implicates water rights.

17  An "administration" of water rights under 43 U.S.C. § 666(a)(2) occurs after there has been a "prior adjudication of relative general stream water rights." *See     South Delta Water Agency v. United States*, 767 F.2d 531, 541 (9th Cir. 1985). However, not every suit that comes later in time than a related adjudication amounts to an administration under the Amendment. *Cf.     id.* at 542 ("The McCarran Amendment was ... not an attempt to resolve the whole

field of water rights litigation."); *San Luis Obispo Coastkeeper v. U.S. Dep't of the Interior*, 394 F. Supp. 3d 984, 995 (N.D. Cal. 2019), *aff'd*, 827 F. App'x 744 (9th Cir. 2020) ("In sum, the purpose of the McCarran Amendment is not to waive sovereign immunity whenever litigation may incidentally relate to water rights administered by the United States. It is for determining substantive water rights by giving courts the ability to enforce those determinations ....").

18    The parties do not dispute that the Klamath Adjudication that resulted in the ACFFOD is an adjudication within the meaning of the McCarran Amendment. Indeed, we agree that the Klamath Basin Adjudication was a McCarran Amendment case. However, the parties disagree as to whether *this* case is an administration of that general stream adjudication within the meaning of the McCarran Amendment.

The Districts argue that this case is, in effect, an enforcement action to ensure that Reclamation complies with the terms of the ACFFOD. Reclamation and the Tribes disagree. Reclamation argues this suit is not an administration because the KBA is ongoing and the present suit is not one to administer rights that were provisionally determined in the administrative phase of that adjudication. The Klamath Tribes argue that this suit is not an administration because, rather than requesting that the government administer the various water rights at stake in the KBA in relation to one another, here the Districts seek to define the relationship between certain of the Districts' KBA-determined rights in relation to Reclamation's *obligations* under the ESA and the Reclamation Act.

We conclude that this lawsuit is not an administration of previously determined rights but is instead an APA challenge to federal agency action—specifically, Reclamation's Amended Proposed Action and Reclamation's authority to release water from Upper Klamath Lake consistent with the ESA and the downstream rights of the Hoopa Valley and Klamath Tribes. The Klamath Tribes argue that the rights adjudicated to them and others in the KBA do not define the extent of the Tribes' treaty-based interests in the water and fish resources of Upper Klamath Lake or its distributaries. And because Hoopa are a *California*-based tribe, their rights were not adjudicated in the *Oregon* KBA, so those rights cannot be "administered" in this proceeding within the meaning of the McCarran Amendment.

## VI.

19    *10   Having determined that the Tribes are required parties under Federal Rule of Civil Procedure 19 that cannot be joined due to sovereign immunity, we consider whether this case should proceed in equity and good conscience. We

agree with the district court that it should not.

To determine whether a suit should proceed among the existing parties where a required party cannot be joined, courts consider (i) potential prejudice, (ii) possibility to reduce prejudice, (iii) adequacy of a judgment without the required party, and (iv) adequacy of a remedy with dismissal. Fed. R. Civ. P. 19(b). Here, we are up against "a wall of circuit authority" requiring dismissal when a Native American tribe cannot be joined due to its assertion of tribal sovereign immunity. See Deschutes River All. v. Portland Gen. Elec. Co., 1 F.4th 1153, 1163 (9th Cir. 2021) (internal quotation marks and citation omitted). In Deschutes, we considered whether the Clean Water Act could abrogate tribal sovereign immunity such that a tribe could be joined as a defendant in a citizen suit against Portland General Electric (PGE) over a hydroelectric project that PGE and the tribe co-owned and co-operated. In holding that sovereign immunity barred the tribe's joinder, we stated:

> The balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity.... If the necessary party is immune from suit, there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor .... [T]here is a wall of circuit authority in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity—virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether [an alternative] remedy is available, if the absent parties are Indian tribes invested with sovereign immunity.

Id. (alteration in original) (internal citations and quotations omitted).

[20]  "[P]rejudice to any party resulting from a judgment militates toward dismissal of the suit." Makah Indian Tribe v. Verity, 910 F.2d 555, 560 (9th Cir. 1990) (emphasis omitted). Reclamation and the Tribes argue that if the Districts succeed in this suit, the government will be unable, as trustee of the Tribes' water rights, to operate consistent with those rights, and this will imperil tribal water rights. Specifically, Hoopa argues that the government's, and therefore the Tribes', water rights are senior to those of the irrigators, but a decision for the Districts on the merits in this suit could threaten that understanding.

In some circumstances, a court may lessen the prejudice to a nonparticipating

party, and therefore push the balance against dismissal, if it provides protective provisions in its judgment, thoughtfully shapes the relief it grants, or takes other ameliorative measures. *See* Fed. R. Civ. P. 19(b)(2). The Districts argue that the district court can carefully craft its declaratory judgment to grant the Districts relief "without forestalling Reclamation's ability to acquire and use whatever water it needs to satisfy whatever obligations it has."

However, there is no way to shape relief to avoid the prejudice here because the Districts' claims and the Tribes' claims are mutually exclusive. The Districts seek a declaration that they hold senior water rights from UKL following the ACFFOD, and the Tribes seek to preserve their reserved water rights in those same waters. For example, fulfilling the Districts' irrigation needs in the spring and early summer would require restricting the water flows necessary to limit disease in fish during that same period. *See* *Hoopa Valley Tribe v. Nat'l Marine Fisheries Servs.*, 230 F. Supp. 3d 1106, 1146 (N.D. Cal. 2017) (entering an injunction to make additional flow available from April 1 through June 15 to mitigate disease impacts). In cases involving competing claims to finite natural resources, courts have found that there is no way to shape relief to avoid prejudice. *See* *Skokomish Indian Tribe v. Goldmark*, 994 F. Supp. 2d 1168, 1187–88 (W.D. Wash. 2014) (finding no way to eliminate prejudice to absent tribes where tribal claimant sought exclusive authority to manage and harvest all of treaty resources to the exclusion of other tribes); *Makah*, 910 F.2d at 560 (finding no way to shape remedy where only "adequate" remedy would be at expense of absent tribes). We also find no such path forward here, so this case must be dismissed in equity and good conscience.

## VII.

**\*11** Because the Tribes are required parties under Federal Rule of Civil Procedure 19 who cannot be joined due to sovereign immunity, and because this case in equity and good conscience should not proceed in the Tribes' absence, we **AFFIRM** the district court's dismissal of this action.

## Concurrence

BUMATAY, Circuit Judge, concurring:

Our precedent requires us to affirm here. In *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, we made it "clear that an absent party may have a legally protected interest at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted." 932 F.3d 843, 852 (9th Cir. 2019). Given *Dine Citizens*, I agree with the majority that the Hoopa Valley

and Klamath Tribes are necessary parties, they are entitled to tribal sovereign immunity, and the Irrigation Districts' actions must be dismissed under Rule 19(b) of the Federal Rules of Civil Procedure.

Yet I write separately because the Klamath Irrigation District's arguments on the McCarran Amendment are much closer than the majority presents. While I ultimately agree that this case is not a McCarran Amendment case, the analysis requires more attention. I thus join the majority opinion except for Section V.

The McCarran Amendment is a "virtually unique federal statute." *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 571, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). It waives federal sovereign immunity in "any suit" for the "adjudication" or "administration" of the "rights to the use of water of a river system or other source." 43 U.S.C. § 666(a). The Amendment recognizes the "highly interdependent" nature of water rights and the costs of "permitting inconsistent dispositions" of such rights among different proceedings. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 819, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). By stripping sovereign immunity, Congress sought to "avoid[ the] piecemeal adjudication of water rights" and to encourage their resolution in "unified proceedings." *Id.*

And the Supreme Court has construed the Amendment to strip sovereign immunity over tribal water rights held as "reserved rights" by the federal government. *United States v. District Court for Eagle Cnty.*, 401 U.S. 520, 524, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971). Based on its text and underlying policy, the Court has held that the Amendment "reach[es] federal water rights reserved on behalf of Indians." *Colo. River Water Conservation Dist.*, 424 U.S. at 811, 96 S.Ct. 1236. Because of the "ubiquitous nature of Indian water rights," the Court observed that it would frustrate Congress's will to exclude those rights from water-rights suits. *Id.* So, at its core, the McCarran Amendment grants parties an opportunity to resolve competing water rights, including against reserved tribal water rights, in any suit for the adjudication or administration of certain water rights.

Given the unique nature of the McCarran Amendment, our Rule 19 adequacy analysis necessarily changes too. *See Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (Under Rule 19, we typically look to see whether an absent party's "interest will be adequately represented by existing parties to the suit."). As the Court emphasized, in McCarran

proceedings, the federal government retains "responsibility [to] fully ... defend Indian rights" and to ensure that "Indian interests [are] satisfactorily protected." *Colo. River Water Conservation Dist.*, 424 U.S. at 812, 96 S.Ct. 1236. Thus, by consenting to join tribal water rights in water-rights adjudications, Congress entrusted the stewardship of those rights to the federal government. And so, in my view, Congress has determined that the federal government adequately represents reserved tribal water rights for Rule 19 purposes in McCarran proceedings.

**\*12** Putting these pieces together, if a case falls within the scope of the McCarran Amendment, then sovereign immunity over reserved tribal water rights is stripped and the federal government becomes an adequate representative to fully defend those rights in court. Such a situation would render dismissal under Rule 19(b) unnecessary.

The important question here is, thus, whether the Irrigation Districts have brought a suit subject to the McCarran Amendment. I ultimately conclude that this case is not a McCarran Amendment case because of the presence of the Hoopa Valley Tribe. The Hoopa Valley Tribe is a California-based tribe whose interest in the Klamath River was not adjudicated in the Klamath Basin Adjudication. And "[l]ogically, a court cannot adjudicate the administration of water rights" unless "those rights" were first determined elsewhere. *S. Delta Water Agency v. United States*, 767 F.2d 531, 541 (9th Cir. 1985). In other words, if the Hoopa Valley Tribe's rights to Klamath River water in Oregon were never adjudicated, then there would be nothing to "administ[er]" here. [1] 43 U.S.C. § 666(a)(2). As a result, this case cannot be a McCarran Amendment "administration" case.

But things are different with the Klamath Tribe. The Klamath Tribe is in Oregon and the Klamath Basin Adjudication did rule on its water rights. *See United States v. Oregon*, 44 F.3d 758, 769 (9th Cir. 1994). So if the Irrigation Districts seek to "execute [the Klamath Basin Adjudication], to enforce its provisions, to resolve conflicts as to its meaning, [or] to construe and to interpret its language," *S. Delta Water Agency*, 767 F.2d at 541 (simplified), as to the Klamath Tribe, then this case would be a McCarran Amendment "administration." I thus disagree with the majority's suggestion that Administrative Procedure Act challenges or cases involving Endangered Species Act obligations can never be McCarran Amendment cases. *See* Maj. Op. Section V.

For these reasons, I concur in the majority opinion except for Section V.

## All Citations

--- F.4th ----, 2022 WL 4101175

---

### Footnotes

1    The ACFFOD may be found at
     https://www.oregon.gov/owrd/programs/WaterRights/Adjudications/KlamathAdj/KBA_
     ACFFOD_00001.PDF (last visited Aug. 9, 2022).

2    KID argues that "even if the Tribes are somehow necessary parties to the APA claims
     seeking to administer the rights found in the ACFFOD ... the Tribes clearly have no
     interest in whether KID's procedural due process rights are being violated." Thus, KID
     argues, the district court erred by failing to separately analyze the application of Rule 19
     to KID's procedural due process claim. We disagree. Because the Tribes assert that they
     have senior water rights, a ruling on KID's procedural due process claim would
     necessarily implicate the Tribes' water rights for the same reasons discussed above.

1    The Klamath Irrigation District contends that the Hoopa Valley Tribe has no rights to
     Klamath River water in Oregon. That might be so, but that needed to be litigated in
     another water-rights proceeding—not here—for this action to be a McCarran
     "administration."

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Contact us    Live chat    Training and support    Improve Westlaw Edge/Report an error    Transfer My Data

Pricing guide    Sign out

1-800-REF-ATTY (1-800-733-2889)    My Account

THOMSON REUTERS

Westlaw Edge. © 2022 Thomson Reuters    Accessibility    Privacy    Supplier terms    Thomson Reuters is not providing professional advice