Exhibit B-2

IN REPLY REFER TO:



# United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS

4015 WILSON BOULEVARD
ARLINGTON, VIRGINIA 22203

August 23, 2001

| | |
|---|---|
| IN THE MATTER OF SHOALWATER BAY INDIAN TRIBE : | Docket No. NIGC 99-2 |
| Indian Gaming Regulatory Act, : 25 U.S.C. Secs. 2701-2721 : : | Notice of Violation NOV-99-10 and Order of Closure OC-99-10 |

## Order Deferring Decision and Staying Proceedings on Reconsideration Motion

**Factual Background:** The Shoalwater Bay Indian Tribe (the Tribe), a Federally recognized Indian Tribe which governs the one-square-mile Shoalwater Bay Indian Reservation on the southwestern coast of Washington State, and which has a membership of approximately 155 members, seeks to have the above Notice of Violation (Notice) and Order of Closure (Order) dissolved in their entireties. The Notice and Order were issued by the Chairman of the National Indian Gaming Commission (NIGC) on August 11, 1999, because the Tribe was admittedly conducting Class III gaming activities in the State without a Tribal-State compact in apparent violation of 25 U.S.C. § 2710(d)(1)(C).

However, the NIGC enforcement action was stayed by a Stipulation of the parties entered into the day before the Notice and Order were issued, intended to enable the Tribe to pursue this appeal. The Tribe's defense is that it has made extensive efforts to obtain a compact but that Washington State (the State) has adamantly refused to negotiate a compact or even to enter into negotiations that might lead to the establishment of a compact.

On October 7, 1999, the former Presiding Official directed the parties to submit briefs on the issue of whether the circumstances under which the Tribe failed to obtain a compact for Class III games was an issue properly before the Presiding Official and the Commission. The Chairman's Brief was received on October 25; the Tribe's Brief on November 8; and the Chairman's Reply on November 18. On June 30, 2000, the Chairman's counsel requested a ruling on the matter so that this appeal could proceed expeditiously. The appeal was reassigned to the undersigned Presiding Official, who issued an Order dated July 10 denying the materiality of the State's reasons to the enforcement action contemplated by NIGC and seeking to have the appeal go forward (the Order).

<u>Current Status:</u> On May 17, 2001, however, the Presiding Official received a telephone conference call from the parties to the effect that the Tribe was seeking reconsideration of the Order denying the materiality of the circumstances surrounding the Tribe's failure to obtain a compact, and was requesting oral argument on the issue; whereas, the NIGC, while it fully supported the decision set forth in the Order and was planning to seek Summary Judgment on its basis, had no objection to the reconsideration request. A briefing schedule was agreed to and was confirmed by a second Order dated the same day. The briefs and reply briefs were submitted on schedule and the matter is procedurally ripe for the Presiding Official's decision.

<u>Legal Background:</u> The Tribe has argued extensively and persuasively that the explicit purpose of the Indian Gaming Regulatory Act (the Act) was to benefit Indian Tribes by assuring them full gaming rights on their reservations, rights that had already been judicially recognized in <u>Cabazon Band of Mission Indians v. California</u>, 480 U.S. 202, 107 S. Ct. 1087 (1987). In support, it cites the Act's stated purpose: "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. §2702(1). The Tribe notes that this purpose was premised on very specific Congressional findings, including the following:

> (5) Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by federal law and is conducted within a state which does not, as a matter of criminal law and public policy, prohibit such gaming.

25 U.S.C. 2701(5). In addition, the Tribe notes the view of House Interior Committee Chairman Morris Udall, who stated:

> Mr. Speaker, while this legislation does impose new restrictions on tribes and their members, it is legislation enacted basically for their benefit. I would expect that the federal courts in any litigation arising out of this legislation [S.B. 555] would apply the Supreme Court's time-honored rule of construction: that any ambiguities in legislation enacted for the benefit of Indians will be construed in their favor.

134 Cong. Rec. at H8153, September 26, 1988.

The Tribe then goes on to clarify the issue that the Order addressed, pointing out that "bad faith" was not the Tribe's principal concern, but rather that "[w]hether or not Washington State negotiated in bad faith, it has undeniably deprived the Shoalwater Bay Tribe of the remedies intended under IGRA." Reconsideration Motion, p. 7. The Tribe also urges that "it is irresponsible to move forward with this enforcement action without consideration of Shoalwater Bay Tribe's [having been]

2

deprived of IGRA's remedies," alleging that NIGC has, in fact, previously refrained from enforcement actions in California for precisely the same reasons advocated by the Tribe in this case. Ibid. at 11.

The whole rationale of the IGRA, according to the Tribe, was to permit state governments to be involved in a process that had previously excluded them under the Cabazon decision; namely, the process of establishing a framework for Class III gaming. Ibid. at 15-16. Thus, "[t]he compacting process is the crux of the entire IGRA; if the tribes have no recourse, and otherwise have no remedy against a state that fails to negotiate...the foundation of IGRA will have collapsed. Without a remedy against state governments, the remaining shell would be nonsensical." Ibid. at 16-17. Also, the Tribe argues, citing case law, that the tests of an unconstitutional Congressional act include situations where the Congress would not have enacted the provisions within its power independently of those outside its power; where the legislation cannot function independently of the flawed provision; where the legislation, absent the flawed provision, will not operate in a manner consistent with the intent of Congress, or where the statute would not have been enacted in the absence of the flawed provision. Ibid. at 17.

The effect of the Order, the Tribe asserts, "would be the deprivation of the tribes' ability to engage in Class III gaming if the states simply ignore the tribes' requests. ... Congress intended to avoid such an effect:"

> It is the Committee's intent that the compact requirement for Class III not be used as justification by a state for excluding Indian tribes from such gaming or for the protection of other State-licensed gaming enterprises from free market competition with Indian tribes.

S. Rep. No. 446, 100th Congress, 2d Sess. at 13; reprinted in 1988 U.S. Code Congr. & Admin. News 3071, 3082. Ibid. at 19-20. Yet, "the effect of IGRA without a viable remedy is to eliminate the very tribal sovereignty that IGRA was intended to protect. ... The compact process is the key to the delicate balance desired by Congress:"

> [T]he Committee has attempted to balance the need for sound enforcement for gaming laws and regulations with the strong federal interest in preserving the sovereign rights of tribal governments to regulate activities and enforce laws on Indian lands. The Committee recognizes and affirms the principle that by virtue of their original tribal sovereignty, tribes reserved certain rights when entering into treaties with the United States, and that today, tribal governments retain all rights that were not expressly relinquished.

S. Rep., op. cit., at 5; U.S. Code, op. cit. at 3076. Ibid. at 21-22.

3

In response to the Tribe's position, the Government replies essentially that (1) the position taken by the Presiding Official in the Order previously issued was correct; (2) the Tribe has a right to obtain a federal court review of the final Commission decision; (3) an alternative to a compact exists under the provisions of 25 CFR part 291, which permits an appeal to the Secretary of the Interior when a State refuses to enter into a compact; (4) the IGRA does not add caveats regarding the reasonableness, vel non, of a state's reasonableness at the bargaining table; it simply, and unequivocally, prohibits the operation of Class III gaming devices until a compact has been adopted.

Discussion: The issues before us are in many respects simply a rehash of the issues before the 9th Circuit in United States v. The Spokane Tribe of Indians, 139 F. 3d 1297, decided in March 1998. As the court noted:

> A different section of IGRA makes it a federal crime to violate state gambling law in Indian country unless authorized by a compact. See 18 U.S.C. § 1166. Only the federal government, not the state, may enforce this provision.

Thus, the court explained:

> The tribal-sate compact is pivotal to the IGRA provisions governing class III gaming. Without a compact in place, a tribe may not engage in class III gaming. To guard against the possibility that states might choose not to negotiate, or to negotiate in bad faith, Congress included a complex set of procedures designed to protect tribes from recalcitrant states.

At first blush, it appears that the view previously taken by the Presiding Official and currently by NIGC is correct. The court goes on to observe, however, that the Seminole decision, supra, "emasculated these procedures by holding that tribes are constitutionally precluded from bringing suit against recalcitrant states that do not consent to being sued," citing Seminole Tribe of Florida v. Florida, 517 U.S. 44 at 72, 116 S. Ct. 1114 at 1131 (1996). "The Supreme Court did not consider whether the rest of IGRA survives," the court notes. 139 F. 3d at 1299, emphasis added.

The court concluded that it was "highly unlikely" that Congress would have passed the compact requirement without tribes having the right to sue the states to force them to enter into a compact, thus leaving the tribes essentially powerless. 139 F. 3d at 1300. And that is the real issue here: whether NIGC should be able to pursue alleged Class III violations against an Indian tribe lacking a compact when the tribe is unable to persuade the state to enter into a compact.

The Shoalwater Bay Tribe takes strong issue with NIGC's suggestion that an alternative to a compact exists for the Tribe under 25 CFR Part 291 because, it

4

alleges, that remedy is illusory and unavailable. Apparently the Secretary has testified before Congress that no such procedures would be issued for any tribe unless a Federal court first determines that the rule was lawfully issued, an issue that the States of Florida and Alabama have raised and that other states have threatened to raise. Of the four tribes known to have invoked the procedure, according to the Tribe, none has received relief.

The Tribe therefore urges that:

Given that the Secretary is placing such procedures on hold pending court determinations, the Shoalwater Bay Tribe respectfully suggests that enforcement actions should also be on hold pending court determinations. ... The Shoalwater Bay Tribe avers to the Presiding Official and to the NIGC that it will pursue such procedures if the federal courts rule that such procedures are lawfully issued under IGRA. ... The crux of the arguments presented by the Shoalwater Bay Tribe is that Congress did not intend and would not have countenanced a situation wherein Tribes are deprived of their sovereign and statutory gaming rights by states simply refusing to consent to IGRA's negotiation/mediation process.

There appear to be too many unresolved political, equitable, legal, moral, and factual issues complicating this matter for the Presiding Official to take the path of least resistance and simply affirm the previous Order without reconsideration.

On the other hand, a reconsideration not based on a solid legal framework of knowing whether alternative avenues for relief are actually available to Indian tribes under a crippled statute and/or under a disavowed administrative procedure established by rule also makes little sense. Thus, the Tribe's suggestion of a stay until the legal status of these procedures has been determined seems appropriate and sound.

Decision: Accordingly, the request for reconsideration is hereby stayed until 30 days commencing after (1) Congress amends the Act, (2) a Federal appeals court sustains the administrative procedure under 25 CFR Part 291, (3) the Secretary affirms the availability of the procedure, or (4) the Tribe enters into a compact with the State as contemplated by the IGRA, whichever occurs first. The Presiding Official's May 17 Order is hereby amended to the extent that it is inconsistent with this decision.

Bernard V. Parrette
Presiding Official

5