# ATTACHMENT A

**HONORABLE DAVID G. ESTUDILLO**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

MAVERICK GAMING LLC,

          Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

          Defendants.

Case No.: 22-cv-05325-DGE

**[PROPOSED]** *AMICUS CURIAE* **BRIEF OF NON-PARTY TRIBES IN SUPPORT OF LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.    INTERESTS OF THE *AMICI* ..................................................................................1

II.   INTRODUCTION ....................................................................................................2

III.  FACTUAL BACKGROUND ....................................................................................3

    A.    The Indian Gaming Regulatory Act................................................................3

    B.    Tribal Gaming in Washington ........................................................................4

    C.    Sports Wagering in Washington .....................................................................7

IV.   ARGUMENT ............................................................................................................8

    A.    The Tribes Are Required Parties Because Maverick's Claims Would Severely Impair Their Existing Rights to Their Compacts and Gaming Activities. .............8

    B.    Existing Defendants Do Not Adequately Represent the Tribes' Interests.............12

        1.    The Federal and State Defendants Do Not Share the Tribes' Sovereign Interests. ......................................................................................12

        2.    The Interests of the Federal and State Defendants and the Tribes Could Fully Diverge. .........................................................................14

        3.    Maverick's Adequate Representation Arguments are Wrong. .................17

    B.    This Action Cannot Proceed in Equity and Good Conscience Without the Tribes. ...................................................................................18

V.    CONCLUSION..........................................................................................................20

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

# TABLE OF AUTHORITIES

## CASES

*American Greyhound Racing, Inc. v. Hull*,
  305 F.3d 1015 (9th Cir. 2002) ................................................9–12, 16, 18, 20–21

*Artichoke Joe's California Grand Casino v. Norton*,
  353 F.3d 712 (9th Cir. 2003) ................................................................17

*Backcountry Against Dumps v. United States Bureau of Indian Affairs*,
  No. 20-CV-2343, 2021 WL 3611049 (S.D. Cal. Aug. 6, 2021),
  *appeal docketed*, No. 21-55869 (9th Cir. Aug. 13, 2021) ......................................12

*City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007)..........................................16

*Connecticut v. United States Department of Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) .........................................................16

*Daniels-Hall v. National Education Ass'n*, 629 F.3d 992 (9th Cir. 2010) ....................................6

*Dawavendewa v. Salt River Project Agricultural Improvement &*
  *Power District*, 276 F.3d 1150 (9th Cir. 2002)........................................10–13, 20

*Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136 (D. Or. 2005) ...................................10–11, 16, 20

*Diné Citizens Against Ruining Our Environment v. BIA*,
  932 F.3d 843 (9th Cir. 2019) ................................................13–15, 18–19, 21

*Friends of Amador County v. Salazar*, 554 F. App'x 562 (9th Cir. 2014) .......................10, 17, 20

*Hansen v. Group Health Cooperative*, 902 F.3d 1051 (9th Cir. 2018) .......................................20

*Jamul Action Committee v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020),
  *cert. denied*, 142 S. Ct. 83 (2021) ........................................................9, 12

*Kalispel Tribe of Indians v. United States Department of the Interior*,
  999 F.3d 683 (9th Cir. 2021) ...................................................................5

*Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996).................................................12, 19

*Klamath Irrigation District v. United States Bureau of Reclamation*,
  No. 20-36009, __ F.4th __, 2022 WL 4101175
  (9th Cir. Sept. 8, 2022)......................................................10, 13–15, 18–19

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – ii

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

*Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975) .................................................10

*Maine v. Wheeler*, No. 14-CV-00264, 2018 WL 6304402 (D. Me. Dec. 3, 2018).......................16

*Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977).........................................................15

*McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020)...................................................................16

*Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014) .............................................5

*Nevada v. United States*, 463 U.S. 110 (1983) ................................................................18

*Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165 (1977) .......................................17

*Southwest Center for Biological Diversity v. Babbitt*,
     150 F.3d 1152 (9th Cir. 1998) ...............................................................................17

*Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151 (9th Cir. 2015).............................15

*United States v. AT&T Co.*, 642 F.2d 1285 (D.C. Cir. 1980) ...............................................16

*United States v. Egan Marine Corp.*, 843 F.3d 674 (7th Cir. 2016)........................................16

*United States v. Jicarilla Apache Nation*, 564 U.S. 162 (2011) ...........................................18

*United States v. Spokane Tribe of Indians*, 139 F.3d 1297 (9th Cir. 1998)................................17

*United States v. Washington*, 853 F.3d 946 (9th Cir. 2017),
     *aff'd by an equally divided Court*, 138 S. Ct. 1832 (2018)...........................................17

*Washington State Department of Licensing v. Cougar Den, Inc.*,
     139 S. Ct. 1000 (2019)........................................................................................17

*Washington v. Confederated Tribes of Colville Indian Reservation*,
     447 U.S. 134 (1980) ...........................................................................................17

*White v. University of California*, 765 F.3d 1010 (9th Cir. 2014)..........................................16

STATUTES

25 U.S.C. § 2702.................................................................................................5

25 U.S.C. § 2710..............................................................................................5, 15

RCW § 9.46.010 .................................................................................................8

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – iii

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

**LEGISLATIVE MATERIALS**

2020 Wash. Sess. Laws ch. 127 ............................................................................8

2638-S AMH APP H4708.1, 66th Leg.,
    2020 Reg. Sess. (Wash. 2020), https://bit.ly/3T6dSYF................................8–9

H.B. 1674, 67th Leg., Reg. Sess. (Wash. 2022) ....................................................9

H.B. Rep. on H.B. 2638, 66th Leg., Reg. Sess.
    (Wash. 2020), https://bit.ly/3RMewcy.........................................................8–9

S.B. 5212, 67th Leg., Reg. Sess. (Wash. 2021) ....................................................9

S.B. Rep. on Engrossed Substitute H.B. 2638,
    66th Leg., Reg. Sess. (Wash. 2020), https://bit.ly/3SNmxzh .........................8

**OTHER AUTHORITIES**

*2021: ACS 1-Year Estimates Subject Tables, Employment Status*,
    U.S. Census Bureau (Sept. 29, 2022), https://bit.ly/3fRwb5e ........................7

*Annual Gambling Activity Report: Fiscal Year 2020*,
    Wash. State Gambling Comm'n (updated Apr. 25, 2022), https://bit.ly/3fPQznh ...................5

Geoff Baker, *Pledge to Boost Depleted Washington Tax Revenues
    Now a Main Thrust of Expanded Sports Gambling Push*, Seattle Times (Jan. 14, 2021),
    https://bit.ly/3fpVStq ..................................................................................15

Will Campbell, *ilani to Add 14-Story Hotel, Enlarge Gaming Space*,
    The Columbian (Oct. 3, 2020), https://bit.ly/3CFHwP6................................8

*Casino Locations*, Wash. State Gambling Comm'n, https://bit.ly/3SAlAdz (last visited Oct. 10,
    2022) ............................................................................................................6

The Columbian (Oct. 3, 2020), https://bit.ly/3CFHwP6........................................8

*Distressed Areas List*, Wash. State Emp't Sec.
    Dep't (Apr. 28, 2022), https://bit.ly/3CDL18w ..............................................6

*The Economic & Community Benefits of Tribes in Washington*,
    Wash. Indian Gaming Ass'n (May 2022), https://bit.ly/3RGO8Ri ....................6

Fed. R. Civ. P. 19 .................................................................9, 11, 12, 19–20

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Fed. R. Evid. 201 ................................................................................................6

*Gambling Industry Overview 2022*,
    Wash. State Gambling Comm'n (2022), https://bit.ly/3RKErkO (last visited Oct. 10, 2022) ..7

*Gaming Compacts*, Wash. State Gambling Comm'n,
    https://bit.ly/3MdcgKr (last visited Oct. 10, 2022)......................................................2

Indian Entities Recognized by and Eligible To Receive Services
    From the United States Bureau of Indian Affairs, 87 Fed. Reg. 4636 (Jan. 28, 2022).............2

Office of Inspector General, Report No: 18-0480,
    *Former Secretary and Chief of Staff Did Not Comply With Their Duty of Candor* (2022),
    https://bit.ly/3T97XSC..........................................................................16

Tribal-State Compact for Class III Gaming
    Between the Shoalwater Bay Indian Tribe and the State of Washington (Sept. 4, 2002),
    https://bit.ly/3fX45FI......................................................................11

Tribal-State Compact for Class III Gaming Between the Tulalip Tribes
    and the State of Washington (Aug. 2, 1991), https://bit.ly/3CD70wa......................................5

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – v

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

## I.    INTERESTS OF THE *AMICI*

The Suquamish Tribe, the Confederated Tribes of the Chehalis Reservation, the Hoh Indian Tribe, the Kalispel Tribe, the Makah Indian Tribe, the Nisqually Indian Tribe, the Nooksack Indian Tribe, the Port Gamble S'Klallam Tribe, the Puyallup Tribe of Indians, the Quinault Tribe, the Samish Indian Nation, the Skokomish Indian Tribe, the Spokane Tribe, the Squaxin Tribe, the Swinomish Indian Tribal Community, the Tulalip Tribes, and the Confederated Tribes and Bands of the Yakama Nation ("*Amici* Tribes") submit this brief in support of the motion to dismiss filed by Limited Intervenor Shoalwater Bay Tribe of the Shoalwater Bay Indian Reservation ("Shoalwater Bay").  Doc. 85.  *Amici* Tribes are federally recognized Indian nations that exercise sovereign powers of self-government over their lands in the State of Washington.  *See* Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 87 Fed. Reg. 4636, 4637–39 (Jan. 28, 2022).  *Amici* Tribes are parties to class III gaming compacts with the State of Washington that Plaintiff Maverick Gaming LLC ("Maverick") challenges in this lawsuit.  *See Gaming Compacts*, Wash. State Gambling Comm'n, https://bit.ly/3MdcgKr (last visited Oct. 10, 2022).  Pursuant to their compacts, *Amici* Tribes own and operate casinos within the State, and/or lease all or a portion of their allocation of video lottery terminals to tribes that own and operate casinos.  *Id.*  The revenues from these casinos and/or leases have, for decades, provided essential funding for *Amici* Tribes' governments and services for their members.  *Amici* Tribes' interests are thus directly implicated by this suit, and *Amici* Tribes themselves are required parties to it, as this brief explains.  Moreover, *Amici* Tribes possess unique knowledge and information as to, *inter alia*, how (1) Maverick's claims would impair the sovereign interests of the Tribes in Washington ("the Tribes") in their compacts and gaming activities, (2) the inability of the Federal and State Defendants to adequately represent those

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 1

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

interests, and (3) the devastating effects that this lawsuit could have on the Tribes and their members if it proceeded in their absence.

## II.    INTRODUCTION

As Shoalwater Bay correctly observes, "[i]t is [Shoalwater Bay], along with the twenty-eight other Washington Tribes, that are the real parties in interest in this litigation." Doc. 85 at 22. Maverick asks this Court to "void" the Tribes' gaming compacts and amendments, First Am. Comp., Doc. 66 ¶¶ 6, 187, 189, 207(1), declare "that the Tribes' class III gaming activities violate IGRA," *id.* ¶¶ 189, 207(4), and even rule that the Tribes' gaming activities violate federal criminal law, *id.* Yet Maverick did not sue Shoalwater Bay, *Amici* Tribes, nor any other Tribe that is targeted by these claims. Rather, recognizing that the Tribes' sovereign immunity would bar suit, Maverick tried to circumvent that immunity by proceeding in their absence. Federal Rule of Civil Procedure 19 ("Rule 19") is designed to prevent such gamesmanship. Because Maverick's suit would impair the sovereign rights of the Tribes, they are, for the reasons set forth herein, required parties to this suit.

To avoid this inescapable conclusion, Maverick argues that the existing Federal and State Defendants adequately represent the Tribes' interests. It is wrong. The Tribes depend upon gaming revenues to fund their governments and essential services for their members, and Maverick's claims thus strike directly at the Tribes' independence, self-governance, and economic well-being. The Federal and State Defendants do not share these unique tribal sovereign interests. Under controlling Ninth Circuit precedent, that divergence alone makes the Federal and State Defendants inadequate substitutes for the Tribes. Moreover, the Federal and State Defendants' interests could further diverge from the Tribes' later in this case because their overriding interest is to comply with their understanding of their legal obligations and with their duties to their broader citizenry, which may not align with the Tribes' sovereign interests. Indeed, both the United States

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 2

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

and the State opposed tribal gaming in Washington in the past.  And while Maverick observes that the United States owes a trust obligation to the Tribes, the Ninth Circuit has made plain that the trust obligation alone does not render the United States an adequate tribal representative.

Equity and good conscience also preclude this case from proceeding. A wall of Ninth Circuit authority requires dismissal when a required party cannot be joined due to tribal sovereign immunity.  Nor does dismissal leave Maverick without recourse.  Maverick could continue its efforts to lobby the State to allow it to conduct the types of gaming that it seeks in this case.  And it could go to Congress itself—which is free to amend the Indian Gaming Regulatory Act ("IGRA").

For these reasons, *Amici* Tribes urge this Court to recognize their sovereign interests, rule that the Tribes are required parties who cannot be joined, and grant the motion to dismiss.

## III.     FACTUAL BACKGROUND

### A.     The Indian Gaming Regulatory Act

The primary purpose of IGRA is "to provide a … means of promoting tribal economic development, self-sufficiency, and strong tribal governments."  *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1018 (9th Cir. 2002) (quoting 25 U.S.C. § 2702(1)).  The interests of Indian tribes are thus both paramount and unique in IGRA's statutory scheme.  IGRA achieves its purpose by authorizing Indian tribes to offer different forms of gaming activity on the condition that certain statutory requirements are met.  Most significantly, IGRA allows Indian tribes to offer "class III" gaming activities, including traditional casino-style games such as roulette, keno, and sports wagering, if: "(1) the tribe has authorized the Class III gaming by a tribal ordinance or resolution; (2) the Class III gaming will be 'located in a State that permits such gaming for any purpose by any person, organization, or entity'; and (3) the Class III gaming is conducted in conformity with a tribal-state compact that is in effect."  *Id.* at 1019 (quoting 25 U.S.C. § 2710(d)(1)).  In the

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 3

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

compact negotiation process, the State and Indian tribes are in an inherently adversarial position, with each side representing its sovereign interests. *See id.* at 1023 n.5 (state and tribes "often" adversaries in disputes over gaming and their "interests under the compacts are potentially adverse").

IGRA specifies that the net revenues from tribal gaming can only be used for certain purposes, namely: "(i) to fund tribal government operations or programs; (ii) to provide for the general welfare of the Indian tribe and its members; (iii) to promote tribal economic development; (iv) to donate to charitable organizations; or (v) to help to fund operations of local government agencies." 25 U.S.C. § 2710(b)(2)(B), (d)(1)(A)(ii); *see Kalispel Tribe of Indians v. U.S. Dep't of the Interior*, 999 F.3d 683, 686 n.1 (9th Cir. 2021). IGRA also requires that tribes have the "sole proprietary interest" in any gaming activity, 25 U.S.C. § 2710(b)(2)(A), (d)(1)(A)(ii), and that tribes are "primary beneficiar[ies]" of gaming operations, *id.* § 2702(2). These statutory requirements ensure that tribal gaming operations are a critical source of funding for tribal governments and the variety of services they provide to their communities, not "mere profit-making ventures." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 810 (2014) (Sotomayor, J., concurring). For some tribes, gaming may be the only viable means to raise government revenues, due to legal barriers to tribes' authority to impose taxes on tribal lands. *See id.* at 810–13.

### B.    Tribal Gaming in Washington

Over the past thirty years, the Tribes have built successful gaming operations throughout the State of Washington, which have become an essential source of funding for tribal governments and services, just as Congress intended. The first tribal gaming compact in Washington was executed on August 2, 1991, between the State and the Tulalip Tribes. *See* Tribal-State Compact for Class III Gaming Between the Tulalip Tribes and the State of Washington, 37 (Aug. 2, 1991),

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 4

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

https://bit.ly/3CD70wa.[1]  Today, all 29 federally recognized Indian tribes in Washington have class III gaming compacts.  *See Casino Locations*, Wash. State Gambling Comm'n, https://bit.ly/3SAlAdz (last visited Oct. 10, 2022).

Currently, 22 Tribes operate 29 class III casinos within the state, and the remaining 7 Tribes lease all or a portion of their compact allocation of video lottery terminals to the other Tribes.  *Id.*  These gaming enterprises have been successful in advancing IGRA's goal of promoting tribal economic development—in Fiscal Year 2021, for example, the Tribes' net gambling receipts (gross wagering receipts minus prizes paid) amounted to $2.297 billion. *See Gambling Industry Overview 2022*, Wash. State Gambling Comm'n, 2 (2022), https://bit.ly/3RKErkO.  In Fiscal Year 2020, the Tribes' net gambling receipts were $2.824 billion.  *See Annual Gambling Activity Report: Fiscal Year 2020*, Wash. State Gambling Comm'n, 3 (updated Apr. 25, 2022), https://bit.ly/3fPQznh.

Tribal casinos provide employment to over 14,000 tribal members and non-members across Washington.  *See The Economic & Community Benefits of Tribes in Washington*, Wash. Indian Gaming Ass'n, 12 (May 2022), https://bit.ly/3RGO8Ri (data from 2020).  In some places, Tribal casinos are the primary source of on- or near-reservation employment.  At least eleven tribal casinos are located in "distressed" counties where the unemployment rate is greater than or equal to 7.2%.  *See Distressed Areas List*, Wash. State Emp't Sec. Dep't (Apr. 28, 2022), https://bit.ly/3CDL18w;  *Gaming Compacts*, Wash. State Gambling Comm'n, https://bit.ly/3MdcgKr (last visited Oct. 10, 2022) (identifying tribal casinos).[2]  Tribal gaming thus

---

[1] *Amici* Tribes respectfully request that the Court take judicial notice of the documents posted on government websites cited in this brief.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); Fed. R. Evid. 201(b)(2).

[2] The tribal casinos located in counties with unemployment rates of at least 7.2% are: 7 Cedars Casino (Jamestown S'Klallam Tribe) and the Elwha River Casino (Lower Elwha Klallam Tribe) in Clallam County; Quinault Beach Resort and Casino (Quinault Nation) in Grays Harbor County; Little Creek Casino Resort (Squaxin Island Tribe) and Lucky Dog Casino (Skokomish Indian Tribe) in Mason County; 12 Tribes Omak Casino Hotel and 12 Tribes Coulee

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 5

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

provides an employment lifeline to tribal citizens and others living on or near reservations.  And it remains essential: while the overall unemployment rate for Washington is 5.9%, approximately 9.3% of the Indian population in Washington remains unemployed.  *See 2021: ACS 1-Year Estimates Subject Tables, Employment Status*, U.S. Census Bureau (last visited Oct. 11, 2022), https://bit.ly/3fRwb5e.

After paying their employees and the scores of local businesses that provide the goods and services necessary to support their gaming operations, Tribes use gaming revenues, consistent with the purpose and requirements of IGRA, to invest in their communities, build their economies, and strengthen their governmental operations—including funding health and wellness programs, education and child development, public safety, law enforcement, conservation and habitat protection, cultural programs, and much more.  *See* WIGA 2022 at 4–24.  Tribal gaming also provides significant funding for local governments and services throughout the State.  In 2022, contributions from tribal gaming to non-tribal government entities and nonprofits totaled $25,744,687, which included approximately $8 million for non-tribal government agencies, fire departments, and police departments; $10.8 million for charitable organizations; $3.2 for anti-smoking programs; and $3.5 million for problem gaming programs.  *See Gambling Industry Overview 2022*, Wash. State Gambling Comm'n, 3 (2022), https://bit.ly/3RKErkO.

In reliance on the rights secured by their gaming compacts, the Tribes have invested hundreds of millions of dollars in their gaming facilities and associated business enterprises.  *See, e.g.*, Steve Powell, *New Casino, Hall, Marina Add to Economic Power of Tulalip*, The Marysville

Dam Casino (Confederated Tribes of the Colville Reservation) in Okanogan County; Shoalwater Bay Casino (Shoalwater Bay) in Pacific County; Kalispel Casino in Pend Oreille County (Kalispel Tribe); Chewelah Casino (Spokane Tribe) in Stevens County; and Legends Casino (Yakama Nation) in Yakima County.  Moreover, some tribes that do not own and operate casinos are located in rural and remote parts of the same counties, and revenue from leasing their allocation of video lottery terminals to tribes with casinos in larger markets provides direct, vital support for tribal employment and essential governmental services in those areas.  *See The Economic & Community Benefits of Tribes in Washington*, Wash. Indian Gaming Ass'n, 21 (May 2022), https://bit.ly/3RGO8Ri ("WIGA 2022"); *Distressed Area List*.

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 6

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Globe (Jul. 4, 2019), https://bit.ly/3SVxy1o (discussing construction of $125 million tribal casino); Will Campbell, *ilani to Add 14-Story Hotel, Enlarge Gaming Space*, The Columbian (Oct. 3, 2020), https://bit.ly/3CFHwP6 (discussing $30 million expansion of tribal casino and hotel).

In sum, over the past thirty years, the Tribes have developed substantial vested interests in their gaming operations and gaming compacts.  The invalidation of those compacts and the disruption of tribal gaming would cripple tribal governmental operations, decimating tribal budgets for the law enforcement, health care, housing, education, and other essential services upon which their members and surrounding communities rely.

### C.    Sports Wagering in Washington

In 2020, the Washington Legislature authorized the Tribes to offer sports wagering.  *See* 2020 Wash. Sess. Laws ch. 127.  The Legislature explicitly decided to limit sports wagering to tribal casinos due to the Tribes' "more than twenty years' experience with, and … proven track record of, successfully operating and regulating gaming facilities in accordance with tribal gaming compacts." *Id.* ch. 127, § 1.  The Legislature also explained that restricting sports wagering to tribal casinos would further the State's longstanding policy of "prohibit[ing] all forms and means of gambling except where carefully and specifically authorized and regulated." *Id.*; *see also* RCW § 9.46.010 (state gambling policy).  The Legislature's stated policy preferences squarely aligned with the public testimony that the Legislature heard in support of tribal sports wagering.  *See* H.B. Rep. on H.B. 2638, at 6, 66th Leg., Reg. Sess. (Wash. 2020), https://bit.ly/3RMewcy ("H.B. Rep. on H.B. 2638") (Staff summary of public testimony: "The state has a history of acting conservatively in terms of expanding gambling. Tribal gaming is a structured regulatory environment and there are significant internal controls."); S.B. Rep. on Engrossed Substitute H.B. 2638, at 5, 66th Leg., Reg. Sess. (Wash. 2020), https://bit.ly/3SNmxzh ("S.B. Rep. on E.S.H.B. 2638") (similar).  Proponents of tribal sports wagering additionally pointed out that for tribal

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-5325) – 7

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

gaming, "100 percent of the profit supports tribes, and the money is re-invested in the community," which "is not the case with gaming conducted by private companies."  H.B. Rep. on H.B. 2638 at 6; *see also* S.B. Rep. on E.S.H.B. 2638 at 5, 7 (similar).

While considering sports wagering at tribal casinos in 2020, the Legislature considered and rejected multiple alternative proposals to more broadly authorize sports wagering, including proposals that would have allowed sports wagering by Maverick and other cardrooms.  *See* 2638-S.E AMS RIVE JOSU 302, 66th Leg., 2020 Reg. Sess. (Wash. 2020), https://bit.ly/3CDwk5h; S.B. 6277, 66th Leg., 2020 Reg. Sess. (Wash. 2020), https://bit.ly/3CqYzCU.  In testimony to the Legislature, Maverick argued why it should be permitted to offer sports wagering, but the Legislature was unpersuaded.  *See* H.B. Rep. on H.B. 2638 at 7–9; S.B. Rep. on E.S.H.B. 2638 at 6–8.  In both 2021 and 2022, the Legislature again rejected bills that would have authorized sports wagering in cardrooms and racetracks.  S.B. 5212, 67th Leg., Reg. Sess. (Wash. 2021), https://bit.ly/3COQEk8; H.B. 1674, 67th Leg., Reg. Sess. (Wash. 2022), https://bit.ly/3emrHmU.  Maverick disagrees with the Legislature's informed policy choice and now seeks to achieve its objectives through this litigation by attacking tribal compacts.

## IV.   ARGUMENT

### A.   The Tribes Are Required Parties Because Maverick's Claims Would Severely Impair Their Existing Rights to Their Compacts and Gaming Activities.

Maverick's complaint, in its own words, makes abundantly clear that the Tribes are "required parties" in this case under Rule 19(a)(1).  In the Ninth Circuit, a tribe has "legally protected interest[s]" under Rule 19(a)(1) when the claims at issue "would have retroactive effects on rights already enjoyed by a tribe." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 8

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Cir. 2020) (quotation marks omitted), *cert. denied*, 142 S. Ct. 83 (2021).[3]  That is indisputable where, as here, Maverick's claims directly threaten the existing rights of the Tribes in multiple respects.

Most obviously, Maverick's claims seek to "void" the Tribes' gaming compacts and amendments—some of which have been in effect for over thirty years.  *See, e.g.*, Doc. 66 ¶¶ 6, 104, 187, 189, 207(1).  The Ninth Circuit has specifically held that tribes have a "substantial" legal interest, and thus are required parties, when claims seek to invalidate their gaming compacts.  *Am. Greyhound Racing*, 305 F.3d at 1023–24; *see also Friends of Amador Cnty. v. Salazar*, 554 F. App'x 562, 564 (9th Cir. 2014); *accord Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136, 1147 (D. Or. 2005).  And as this Court has already recognized with respect to Shoalwater Bay, "even if the Tribe is not currently a named defendant, it may be affected by the outcome given this suit could nullify the Washington Tribe's Compacts."   Order Granting Mot. for Relief from Summ. J. Deadlines, Doc. 81 at 6; *see also id.* (noting that "Maverick concedes this interest").  The Ninth Circuit has also affirmed the "fundamental principle" that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002); *see also Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside … a contract, all parties who may be affected by the determination of the action are indispensable.").

---

[3] Maverick frames one of its counts as arising under the federal Administrative Procedure Act ("APA"), *see* Doc. 66 ¶¶ 164–176, but the rule is the same for APA claims: "an absent party may have a legally protected interest at stake in procedural claims where the effect of a plaintiff's successful suit *would be to impair a right already granted*." *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, No. 20-36009, __ F.4th __, 2022 WL 4101175, at *6 (9th Cir. Sept. 8, 2022) (emphasis added) (quoting *Diné Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 852 (9th Cir. 2019)).

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 9

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Maverick further confirms the applicability of Rule 19(a)(1) by seeking a declaration "that the Tribes' class III gaming activities violate IGRA." Doc. 66 ¶ 189; *see also, e.g.*, *id.* ¶ 207(4) (same). It is clear that Maverick's true target is the Tribes' gaming; in fact, Maverick's complaint acknowledges that its requested relief would "prohibit the Tribes from offering class III gaming that Washington does not permit non-tribal entities to offer." Doc. 66 ¶ 187. Maverick even asks the Court to declare that the Tribes are conducting gaming activities in violation of federal *criminal* statutes. *See* Doc. 66 ¶¶ 189, 207(4). In short, Maverick seeks to stop the Tribes' gaming in the absence of the Tribes themselves.

The Tribes' legally protected interests are also implicated by Maverick's challenges to the State Defendants' authority to execute and administer the compacts. *See, e.g.*, Doc. 66 ¶¶ 6, 105, 189, 190, 207(2), 207(6), 207(7), 207(8); *see also Am. Greyhound Racing*, 305 F.3d at 1023–24 (tribes required parties to action challenging Governor's authority to enter into compacts); *Dewberry*, 406 F. Supp. 2d at 1147 (same). Such claims threaten the validity of the Tribes' compacts, including the provision stating the compacts shall "be in effect until terminated by the written agreement of both parties." *E.g.*, Tribal-State Compact for Class III Gaming Between the Shoalwater Bay Indian Tribe and the State of Washington § XV(C) (Sept. 4, 2002), https://bit.ly/3fX45FI; *see also Am. Greyhound Racing*, 305 F.3d at 1023 (tribes' interests impaired by termination of compacts' automatic renewal provision). Maverick's equal protection arguments similarly threaten the validity of the Tribes' compacts by challenging the legality of the state law provisions that permit tribal gaming. *See* Doc. 66 ¶ 198. Maverick's request for an injunction prohibiting the State Defendants from executing new compacts, *see* Doc. 66 ¶¶ 6, 190, would additionally impair "[t]he sovereign power of the tribes to negotiate compacts." *Am. Greyhound Racing*, 305 F.3d at 1024; *see also Dawavendewa*, 276 F.3d at 1157 ("Undermining

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 10

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

the [tribe's] ability to negotiate contracts also undermines the [tribe's] ability to govern the reservation effectively and efficiently.").

Maverick's claims, if successful, would have "far-reaching retroactive effects on the [Tribes'] existing sovereignty and proprietary interests." *Jamul Action Comm.*, 974 F.3d at 997. Maverick's claims not only directly threaten the Tribes' gaming compacts and gaming revenues—which are essential for funding the Tribes' governments and important tribal services—they also jeopardize other vested sovereign interests of the Tribes, including the employment of tribal members and non-members, investments in tribal gaming facilities and related enterprises, and the Tribes' contracts with gaming vendors and other third parties. *See Backcountry Against Dumps v. U.S. Bureau of Indian Affairs*, No. 20-CV-2343, 2021 WL 3611049, at *9 (S.D. Cal. Aug. 6, 2021) (tribe could be prejudiced by loss of "tens of millions of dollars in revenue that it plans to use to fund its governance"), *appeal docketed*, No. 21-55869 (9th Cir. Aug. 13, 2021); *Dawavendewa*, 276 F.3d at 1157 (tribe could be "grievously impaired" by claims that "challenge[] the [tribe's] ability to secure employment opportunities and income for the reservation"); *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996) ("action could affect the [tribes'] interests in their lease agreement and the ability to obtain the bargained-for royalties and jobs"); *see also supra* pp. 5–7 (explaining how the Tribes have deployed gaming revenues).

In short, the Tribes' interests would be "as a practical matter impair[ed] or impede[d]" if the case were to proceed in their absence. Fed. R. Civ. P. 19(a)(1)(B)(i); *see also Am. Greyhound Racing*, 305 F.3d at 1024 (tribes' interests may be "affected *as a practical matter* by the judgment that [their gaming] operations are illegal"). Maverick's suit also subjects the State Defendants "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). If Maverick prevailed in enjoining the State Defendants' administration of the compacts, for instance, the Tribes could seek to continue operating under the compacts and

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 11

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

could even seek enforcement of the compacts against the State Defendants in a separate action. *See Dawavendewa*, 276 F.3d at 1158–59 (defendant subject to substantial risk of inconsistent obligations because absent tribe would not be bound by ruling on tribal contract). In other words, if this case were allowed to proceed, the State of Washington could find itself trapped between conflicting court orders requiring it to simultaneously implement and not administer the gaming compacts. This is the precise type of situation that Rule 19 is intended to avoid.

### B. Existing Defendants Do Not Adequately Represent the Tribes' Interests.

Controlling Ninth Circuit case law makes plain that the Tribes are not adequately represented by the Federal or State Defendants in this case. To evaluate whether an existing party adequately represents the interests of an absent tribe, courts consider (1) "whether the interests of a present party to the suit are such that it will undoubtedly make all of the [tribe's] arguments"; (2) "whether the party is capable of and willing to make such arguments"; and (3) "whether the [tribe] would offer any necessary element to the proceedings that the present parties would neglect." *Diné Citizens*, 932 F.3d at 852 (quoting *Alto v. Black*, 738 F.3d 1111, 1127–28 (9th Cir. 2013)). In *Diné Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, the Ninth Circuit held that these considerations compel dismissal where no existing party shares an absent tribe's "*sovereign* interest," or where the interests of the existing parties and the tribe "might [later] diverge." *Id.* at 855–56 (emphasis in original). Here, the Tribes have critical sovereign interests in their compacts and gaming activities that no existing party shares, and there is also a risk of further divergence between the interests of the Tribes and the existing parties, which would leave the Tribes' interests completely unrepresented in this case.

#### 1. The Federal and State Defendants Do Not Share the Tribes' Sovereign Interests.

Although the Federal and State Defendants and the Tribes "share an interest in the ultimate outcome of this case," they do so "for very different reasons." *Klamath Irrigation District*, 2022

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 12

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

WL 4101175, at *8.  As explained above, the Tribes use their tribal gaming revenues to further tribal sovereignty in a variety of respects, including by funding tribal governments and essential government services, and fostering economic development on tribal lands.  The Tribes thus have a unique "sovereign interest in ensuring that [their gaming establishments] continue to operate and provide profits." *Diné Citizens*, 932 F.3d at 855.  Neither the Federal nor State Defendants share these tribal sovereign interests, making them "necessary element[s] to the proceedings that the present parties would neglect," *id.* at 852 (quoting *Alto*, 738 F.3d at 1127–28), and, in turn, rendering the Federal and State Defendants "not … adequate representative[s] of the tribes," *Klamath*, 2022 WL 4101175, at *7.

*Diné Citizens* is instructive.  There, environmental groups challenged federal action authorizing the operation of a Navajo coal mine and a related non-Indian power plant.  932 F.3d at 847–50.  The environmental groups claimed that the existing defendants—federal agencies and officials and the non-tribal operator of the power plant—adequately represented the interests of the Navajo Nation and its corporation that owned the mine.  *Id.*  The Ninth Circuit disagreed.  It held that the named defendants did "not share the Navajo Nation's *sovereign* interest in controlling its own resources, and in the continued operation of the Mine and Power Plant and the financial support that such operation provides." *Id.* at 856 (emphasis in original).  So too here, Maverick asks this Court to invalidate the Tribes' gaming compacts, Doc. 66 ¶ 207(1), and "[d]eclar[e] that the Tribes' class III gaming activities" are unlawful, *id.* ¶ 207(4).  Such relief would vitiate the Tribes' unique sovereign interests by eliminating their "very ability to govern [and] sustain" themselves "financially, and make decisions about [their] own" gaming operations.  *Diné Citizens*, 932 F.3d at 856.  Indeed, at least in *Diné Citizens*, the non-tribal power plant operator "share[d] … some of [the Navajo Nation's] financial interest in the outcome of the case." *Id.*  Here, the federal government has no pecuniary interest in the Tribes' gaming operations.  And the State—

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

according to Maverick—has a financial interest in *ending* tribal gaming exclusivity. *See* Geoff Baker, *Pledge to Boost Depleted Washington Tax Revenues Now a Main Thrust of Expanded Sports Gambling Push*, Seattle Times (Jan. 14, 2021), https://bit.ly/3fpVStq (Maverick maintains the State could increase its revenues by "up to $50 million … annually" if it expanded sports wagering).[4]

In short, Washington Tribes' unique interests are not shared—and thus not represented—by the Federal and State Defendants.

### 2. The Interests of the Federal and State Defendants and the Tribes Could Fully Diverge.

The State and Federal Defendants also cannot adequately represent the Tribes because of the substantial risk that their interests could fully diverge from the Tribes' as this case proceeds. Start with the Federal Defendants. "Although Federal Defendants have an interest in defending their decisions," they "do not share an interest in the *outcome* of the [compact] approvals." *Diné Citizens*, 932 F.3d at 855 (emphasis in original). Rather, "their overriding interest … must be in complying with" federal law—here, IGRA and the Constitution. *Id.*; *see also, e.g.*, *Klamath*, 2022 WL 4101175, at *7–8 (same). As a result, if this Court were to issue a "holding that [federal law] required something other than what [the] Federal Defendants have interpreted [it] to require," that ruling could "change [the] Federal Defendants' planned actions," including whether to continue to defend their actions on appeal. *Diné Citizens*, 932 F.3d at 855.[5]

---

[4] What is more, the gaming compacts that Maverick seeks to invalidate are the product of complex and inherently adversarial negotiations between the Tribes and the State over subjects like the allocation of criminal and civil jurisdiction, tribal payments to states, and other core interests of both parties. *See* 25 U.S.C. § 2710(d)(3)(C); *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1154–58 (9th Cir. 2015) (discussing complicated nature of gaming compact terms and negotiations in compact interpretation dispute between Tribe and State). The State thus has its own sovereign interests at stake that make it an inadequate representative of the Tribes' sovereign interests.

[5] *See also, e.g.*, *Manygoats v. Kleppe*, 558 F.2d 556, 558 (10th Cir. 1977) (holding that the Secretary of the Interior could not adequately represent absent tribe because "[t]he Secretary must act in accord with the obligations imposed by [law]"). Precisely because the federal government's ultimate obligation in every case is to comply with federal law, it is not uncommon for the federal government to reverse its position on appeal in response to an adverse district

---

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 14

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Further, it is possible that the Federal Defendants could change their litigation position because of, *inter alia*, a change in internal policy or change in leadership.[6]  There is thus no assurance, let alone a guarantee, that the Federal Defendants will maintain a litigation position that aligns with the Tribes' interests.

The State Defendants' interests are even more prone to divergence from the Tribes' interests.  Washington State has "a broad obligation to serve the interests of the people of [Washington], rather than any particular subset, such as the people of the [Tribes]."  *White v. Univ. of Cal.*, 765 F.3d 1010, 1027 (9th Cir. 2014).  Thus, if the Court were to determine that the State acted unlawfully in executing and amending its compacts with the Tribes, it is "questionable whether—perhaps even unlikely that—the [State defendants] would pursue the same next course of action" as the Tribes.  *Id.*  Indeed, the Ninth Circuit has squarely held that a state cannot adequately represent tribes in a dispute over the validity of compacts.  *Am. Greyhound Racing*, 305 F.3d at 1023 n.5; *see also, e.g.*, *Dewberry*, 406 F. Supp. 2d at 1147 (same).  That is for good reason.  As the Supreme Court recently observed, states are "the very neighbors who might be least inclined to respect [Tribes' legal rights]."  *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2462 (2020).  While the State of Washington and Tribes work together successfully in many areas, the State is

---

court decision.  *See United States v. AT&T Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (concluding that the United States did not adequately represent a private party because "the United States did not share the strong interest [the private party] had to appeal for protection of its work product privilege" and because "in fact the United States chose not to appeal"); *see also, e.g.*, *City of Cleveland v. Ohio*, 508 F.3d 827, 837 (6th Cir. 2007) ("When the district court rejected its position, … the United States chose not to appeal."); *United States v. Egan Marine Corp.*, 843 F.3d 674, 679 (7th Cir. 2016) (observing that a district court decision in a related case was "reviewable," but "the United States chose not to appeal").

[6] *See, e.g.*, *Maine v. Wheeler*, No. 14-CV-00264, 2018 WL 6304402, at *1–2 (D. Me. Dec. 3, 2018) (allowing EPA to not defend its disapproval of state water quality standards that insufficiently protected tribal fishing rights); *Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 292–93 (D.D.C. 2018) (recounting that Interior Department "repeatedly informed" tribes that it supported compact amendments before changing its position); *see also* Office of Inspector General, Report No: 18-0480, *Former Secretary and Chief of Staff Did Not Comply With Their Duty of Candor*, 6–15 (2022), https://bit.ly/3T97XSC (detailing the political influence that caused Interior Department to reverse its position in *Connecticut*).

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 15

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

also often at odds with tribal rights.[7]  The State Defendants are thus not adequate representatives to defend the Tribes' gaming rights in their absence.

The possibility of interests diverging in this suit is not hypothetical.  Even at this early stage, it is evident that the Federal and State Defendants are not willing and able to make all of the Tribes' arguments.  The Federal and State Defendants, for instance, did not raise a Rule 19 defense and would have proceeded with briefing on the merits if Shoalwater Bay had not intervened.  That "indicate[s] divergent interests between the Tribe and the government."  *Friends of Amador Cnty.*, 554 F. App'x at 564.[8]  Moreover, the Federal and State Defendants are unable to fully address Maverick's arguments specific to the Tribes' interests.  Maverick maintains, for instance, that statutory classifications based on tribal status violate equal protection unless they "affect uniquely Indian interests."  Doc. 75 at 23.  While Maverick is wrong that equal protection requires such a showing in this case, *see Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 735 (9th Cir. 2003), only the absent Tribes themselves could fully and effectively explain the impact on their "unique" interests.

History confirms the substantial possibility that the Federal and State Defendants could change their position as this case proceeds. As Shoalwater Bay recounts, when the federal government and Washington State (wrongly) believed in the 1990s and early 2000s that

---

[7] *E.g.*, *Wash. State Dep't of Licensing v. Cougar Den, Inc.*, 139 S. Ct. 1000, 1006 (2019) (involving Yakama Nation's treaty right to travel); *United States v. Washington*, 853 F.3d 946, 954 (9th Cir. 2017) (involving treaty fishing rights), *aff'd by an equally divided Court*, 138 S. Ct. 1832 (2018) (per curiam); *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 162 (1980) (involving tribal tax immunity); *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 172-73 (1977) (involving tribal sovereign immunity); *see also United States v. Spokane Tribe of Indians*, 139 F.3d 1297, 1301 (9th Cir. 1998) (noting that "Washington invoked its rights under the Eleventh Amendment and caused the Tribe's suit to be dismissed, distorting the IGRA process").

[8] Relying on *Southwest Center for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) (per curiam), Maverick says the Ninth Circuit has rejected this supposedly "circular" argument.  Pl.'s Opp'n to Mot. for Limited Intervention, Doc. 78 at 12.  But *Southwest Center* was a situation where the refusal to raise the Rule 19 argument was the *only* concrete divergence that the tribe identified.  *See* 150 F.3d at 1154.  *Friends of Amador County* subsequently made clear that the federal government's decision not to "move for its own dismissal under Rule 19" is a proper basis for dismissal when, as here, it is one of several factors that "indicate divergent interests between the Tribe and the government."  554 F. App'x at 564.

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Shoalwater Bay's gaming operation did not comply with IGRA, they actively worked to *halt* the operation.  *See* Doc. 85 at 14–16.  In this respect, this case is the same as *American Greyhound Racing, Inc. v. Hull*, where the Ninth Circuit held that the governor of Arizona was an inadequate representative of absent tribes in a challenge to tribal-state gaming compacts because "the State and the tribes have often been adversaries in disputes over gaming."  305 F.3d at 1023 n.5.  Because the state and the federal government have previously sought to shut down tribal gaming, they "cannot be counted on" to vigorously defend against this suit that seeks precisely that relief.  *Diné Citizens*, 932 F.3d at 855.  For this and the other reasons stated here, the Federal and State Defendants do not adequately represent the Tribes.

### 3.   Maverick's Adequate Representation Arguments are Wrong.

Maverick's attempts to show adequate representation fail.  First, Maverick argues that the United States adequately represents the Tribes' interests because of the federal government's "'trust responsibility' to Indian tribes."  Doc. 78 at 9.  But the Ninth Circuit "has firmly rejected the notion that a trustee-trustor relationship alone is sufficient to create adequate representation."  *Klamath*, 2022 WL 4101175, at *8.  Indeed, as the Supreme Court has explained, the federal government's "'general trust relationship' with the Indian people" is subject to limitations—including that "[t]he Government may need to comply with other [legal] duties."  *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 182 (2011); *see also, e.g.*, *Nevada v. United States*, 463 U.S. 110, 127–28 (1983) (explaining that the federal government can be required to represent "potentially conflicting interests" despite trust obligations).

Next, Maverick says that unlike in *Diné Citizens*, the Tribes have only shown the possibility of conflict "*after* th[is] litigation."  Doc. 78 at 11.  Maverick, however, ignores that: (1) the Federal and State Defendants already do not share the Tribes' unique sovereign interests, (2) that their and the Tribes' interests could fully diverge as this case moves forward, and (3) the

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 17

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

defendants are already unwilling or unable to advance all of the Tribes' arguments. *Diné Citizens* is thus squarely on point.[9]

Maverick also fails to distinguish *Klamath*. It contends that *Klamath* turned on the existence of separate "active litigation" between the tribal parties and the Bureau of Reclamation over the Bureau's defense of tribal interests. Pl.'s Resp. to Shoalwater Bay's Not. Suppl. Auth., Doc. 83 at 2 (quoting *Klamath*, 2022 WL 4101175, at *7–8). Not true. As the Ninth Circuit made clear, even absent the separate litigation the United States was an inadequate representative in *Klamath*—the litigation merely "*further increase[d]* the likelihood that [the Bureau] would not" adequately represent the tribes. 2022 WL 4101175, at *8 (emphasis added).

Finally, Maverick cites to out-of-circuit authorities. *See* Doc. 78 at 9–12. But those cases are of no moment because Ninth Circuit precedent directly controls. In short, neither the Federal nor State Defendants can adequately represent the Tribes, rendering the Tribes required parties.

### B.  This Action Cannot Proceed in Equity and Good Conscience Without the Tribes.

Since the Tribes cannot be joined to this action due to their sovereign immunity, *see Kescoli*, 101 F.3d at 1310, the final consideration is whether this case can "in equity and good conscience" continue in the absence of the Tribes, Fed. R. Civ. P. 19(b). It cannot. In the Ninth Circuit, "there is a wall of circuit authority in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity." *Klamath*, 2022 WL 4101175, at *10 (quoting *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021)).

---

[9] Maverick further claims that "because [a] tribal conservation organization[] [was] among the" *Diné* plaintiffs, "tribal interests [were] on both sides of the litigation in *Dine*," dividing the federal government's allegiance. Doc. 78 at 12 (cleaned up). But *Diné Citizens* never identified such a conflict, and for good reason: the United States' trust obligation to a tribe is not impacted when a few tribal members merely disagree with a tribe's decision. Moreover, even if, counterfactually, *Diné Citizens* had turned on that consideration, this case remains on all fours: just as one of the plaintiff organizations in *Diné Citizens* had Navajo members, *see* Compl. ¶ 16, *Diné Citizens Against Ruining Our Environment v. BIA*, No. 16-cv-08077 (D. Ariz. Apr. 20, 2016), 2016 WL 1614184, Maverick's CEO is a member of Shoalwater Bay, *see* Doc. 85 at 17.

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Indeed, "virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether [an alternative] remedy is available, if the absent parties are Indian tribes invested with sovereign immunity." *Id.* (alteration in original) (quoting *Deschutes*, 1 F.4th at 1163). Accordingly, "[t]he balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity." *Id.* (quoting *Deschutes*, 1 F.4th at 1163).

Application of the four factors under Rule 19(b) confirms dismissal is appropriate here. On the first factor, which "largely duplicates" the required party analysis under Rule 19(a), the "amount of prejudice to the tribes from termination of [their] existing compacts and inability to enter new ones would be enormous." *Am. Greyhound Racing, Inc.*, 305 F.3d at 1025. Second, there is no way to shape relief in this case to avoid the prejudice to the Tribes from the potential effects of a determination that the Tribes' compacts or gaming activities are illegal. *Id.*; *Friends of Amador Cnty.*, 554 F. App'x at 566; *see supra* pp. 8–12. Third, a judgment would not be "adequate" in the Tribes' absence because any judgment would severely impair the Tribes' legally protected interests. And if the judgment were tailored to avoid such prejudice to the Tribes, it would not be "adequate" to address Maverick's alleged injury. *See, e.g.*, *Am. Greyhound Racing*, 305 F.3d at 1025; *Dawavendewa*, 276 F.3d at 1162; *Dewberry*, 406 F. Supp. 2d at 1148.[10] Fourth, "the tribes' interest in maintaining their sovereign immunity outweighs the plaintiff['s] interest in litigating [its] claims." *Am. Greyhound Racing*, 305 F.3d at 1025; *see also Diné Citizens*, 932 F.3d

---

[10] Maverick now suggests this Court could authorize Maverick to "offer the full range of games the tribes currently offer" and allow the Tribes to continue their operations. Doc. 78 at 13. But the relief Maverick requests in its complaint would end tribal gaming in Washington. *E.g.*, Doc. 66 ¶ 207(4); *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (a "plaintiff is the master of the plaintiff's complaint"). Moreover, in order to authorize Maverick to expand its class III gaming in Washington State, the Court would need to strike down the general prohibitions on gambling under Washington law, which would effectively legalize *all* gambling by *any* person or entity, despite Washington State's choice to generally prohibit class III gaming within its borders subject only to narrow exceptions. *See supra* pp. 7–8 (discussing the Washington Legislature's reasons for limiting sports wagering to tribal casinos). That goes well beyond the appropriate role of this Court.

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 19

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

at 858 ("Even assuming that no alternate remedy exists … we would hold that dismissal is proper.").

This conclusion is underscored by the opportunities Maverick has had to pursue redress for its grievance in alternative fora.  For the past several years, Maverick has sought legal authorization from the Washington Legislature to conduct sports wagering.  While the Legislature has declined to adopt Maverick's preferred public policy, that does not entitle it to attack the existing rights and interests of the Tribes in their absence and without their sovereign consent.  Going forward, additional opportunities to voice Maverick's complaints will arise: Maverick can continue to lobby the Washington Legislature or it could even ask Congress to amend IGRA.  What Maverick cannot do is pursue this suit in the absence of the Tribes.

## V.    CONCLUSION

The Court should grant Shoalwater Bay's motion to dismiss.

Dated: October 11, 2022                    Respectfully submitted,

By:  /s/ Tim Woolsey

Tim Woolsey
Washington Bar No. 33208
OFFICE OF THE TRIBAL ATTORNEY
SUQUAMISH TRIBE
P.O. Box 498
Suquamish, WA 98392
(360) 394-8493
twoolsey@suquamish.nsn.us

Keith M. Harper*
Leonard R. Powell*
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
(202) 639-6000
kharper@jenner.com

NON-PARTY TRIBES' *AMICUS* BRIEF          JENNER & BLOCK LLP
(No. 22-cv-05325) – 20                    1099 New York Avenue, NW, Suite 900
                                          Washington, DC 20001-4412
                                          Tel. 202 639-6000

leonardpowell@jenner.com

**Counsel for the Suquamish Tribe**

———

Cory J. Albright
Washington Bar No. 31493
Kanji & Katzen, P.L.L.C.
811 1st Avenue, Suite 630
Seattle, WA 98104
(206) 344-8100
calbright@kanjikatzen.com

Harold Chesnin
Washington Bar No. 398
Lead Counsel for the Tribe
420 Howanut Road
Oakville, WA 98568
(360) 529-7465
hchesnin@chehalistribe.org

**Counsel for the Confederated Tribes of the Chehalis Reservation**

———

Kathleen M. Gargan
Washington Bar No. 56452
Dorsay & Easton LLP
1737 NE Alberta Street, Suite 208
Portland, OR 97211
(503) 790-9060
katie@dorsayindianlaw.com

**Counsel for the Hoh Indian Tribe**

———

Jenner & Block LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Lorraine A. Parlange
Washington Bar No. 25139
Aubrey A. Seffernick
Washington Bar No. 37998
KALISPEL TRIBE OF INDIANS LEGAL OFFICE
934 S .Garfield Road
Airway Heights, WA 99001
(509) 789-7600
lparlange@kalispeltribe.com
aseffernick@kalispeltribe.com

***Counsel for Kalispel Tribe***

———

Brian C. Gruber
Washington Bar No. 32210
Crystal Pardue
Washington Bar no. 54371
ZIONTZ CHESTNUT
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230
bgruber@ziontzchestnut.com
cpardue@ziontzchestnut.com

***Counsel for Makah Indian Tribe***

———

Nate J. Cushman
Washington Bar No. 34944
OFFICE OF THE TRIBAL ATTORNEY
NISQUALLY TRIBE
4820 She-Nah-Num Drive SE
Olympia, WA 98513
(360) 456-5221
cushman.nate@nisqually-nsn.gov

***Counsel for Nisqually Indian Tribe***

———

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 22

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Charles N. Hurt, Jr.
Washington Bar No. 46217
NOOKSACK INDIAN TRIBE
5047 Mt. Baker Highway
P.O. Box 63
Deming, WA 98244
(360) 592-4158
churt@nooksack-nsn.gov

***Counsel for Nooksack Indian Tribe***

———

Steven D. Moe
Washington Bar No. 41123
LEGAL DEPARTMENT
PORT GAMBLE S'KLALLAM TRIBE
31912 Little Boston Road NE
Kingston, WA 98346
(360) 297-6242
smoe@pgst.nsn.us

***Counsel for Port Gamble S'Klallam Tribe***

———

Robert L. Hunter, Jr.
Washington Bar No. 48726
PUYALLUP TRIBE OF INDIANS
3009 E. Portland Avenue
Tacoma, WA 98404
(253) 573-7873
robert.hunter@puyalluptribe-nsn.gov

***Counsel for Puyallup Tribe of Indians***

———

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 23

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Lori Bruner
Washington Bar No. 26652
QUINAULT INDIAN NATION
OFFICE OF THE ATTORNEY GENERAL
136 Cuitan Street
P.O. Box 613
Taholah, WA 98587
(360) 276-8215
lbruner@quinault.org

***Counsel for Quinault Tribe***

———

Corin La Pointe-Aitchison
Washington Bar No. 54924
DORSAY & EASTON
1737 NE Alberta Street, Suite 208
Portland, OR 97211
(503) 790-9060
corin@dorsayindianlaw.com

***Counsel for Samish Indian Nation***

———

Earle David Lees, III
Washington Bar No. 30017
SKOKOMISH LEGAL DEPARTMENT
SKOKOMISH INDIAN TRIBE
N. 80 Tribal Center Road
Skokomish Nation, WA 98584
(360) 877-2100
elees@skokomish.org

***Counsel for the Skokomish Indian Tribe***

———

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 24

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Scott Wheat
Washington Bar No. 25565
WHEAT LAW OFFICES
23215 West Long Lake Road
Ford, WA 99013
(509) 458-6521
scottwheat@me.com

***Counsel for Spokane Tribe***

———

Nathan Schreiner
Washington Bar No. 31629
SQUAXIN ISLAND LEGAL DEPARTMENT
3711 SE Old Olympic Highway
Kamilche, WA 98584
(360) 432-1771
nschreiner@squaxin.us

***Counsel for Squaxin Tribe***

———

Rachel Sage
Washington Bar No. 42231
OFFICE OF TRIBAL ATTORNEY
SWINOMISH INDIAN TRIBAL COMMUNITY
11404 Moorage Way
La Conner, WA 98257
(360) 707-1501
rsage@swinomish.nsn.us

***Counsel for Swinomish Indian Tribal
Community***

———

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 25

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000

Lisa Koop Gunn
Washington Bar No. 47115
THE TULALIP TRIBES
6406 Marine Drive
Tulalip, WA 98271
(206) 683-5667
lkoop@tulaliptribes-nsn.gov

**Counsel for the Tulalip Tribes**

———

Marcus Shirzad
Washington Bar No. 50127
YAKAMA NATION OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Skokomish Nation, WA 98584
(509) 865-7268
marcus@yakamanation-olc.org

**Counsel for the Confederated Tribes and Bands
of the Yakama Nation**

———

*Pro Hac Vice Motion Forthcoming*

NON-PARTY TRIBES' *AMICUS* BRIEF
(No. 22-cv-05325) – 26

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel. 202 639-6000