1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAVERICK GAMING LLC, | No. 22-cv-05325 DGE |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS** |
| v. | |
| UNITED STATES OF AMERICA, et al., | NOTED ON MOTION CALENDAR:  October, 28, 2022 |
| Defendants. | |

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1

2

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARDS .................................................................................................... 4

ARGUMENT .................................................................................................................. 5

    I.      The Tribe Is Not A "Required Party" Under Rule 19(a) ...................................... 5

           A.     Disposition Of This Action In The Tribe's Absence Would Not
Impair The Tribe's Ability To Protect Its Interests ................................ 5

           B.     The Tribe's Joinder Is Not Required To Accord Complete Relief .......... 14

    II.     This Action Should Proceed In The Tribe's Absence ......................................... 17

CONCLUSION .............................................................................................................. 24

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

# <u>TABLE OF AUTHORITIES</u>

CASES

*Alto v. Black,*
    738 F.3d 1111 (9th Cir. 2013) ...............................................4, 5, 7, 13, 16, 17

*Am. Greyhound Racing, Inc. v. Hull,*
    305 F.3d 1015 (9th Cir. 2002) ...............................................11, 17, 18, 19

*Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.,*
    795 F.3d 351 (2d Cir. 2015) ...............................................19

*Aminoil U.S.A., Inc. v. Cal. State Water Res. Control Bd.,*
    674 F.2d 1227 (9th Cir. 1982) ...............................................20

*Artichoke Joe's Cal. Grand Casino v. Norton,*
    353 F.3d 712 (9th Cir. 2003) ...............................................6

*Cassidy v. United States,*
    875 F. Supp. 1438 (E.D. Wash. 1994) ...............................................6

*Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne,*
    471 F. Supp. 2d 295 (W.D.N.Y. 2007) ...............................................6

*City of Sault Ste. Marie v. Andrus,*
    458 F. Supp. 465 (D.D.C. 1978) ...............................................6

*Clinton v. Babbitt,*
    180 F.3d 1081 (9th Cir. 1999) ...............................................17

*Confederated Tribes of Chehalis Indian Rsrv. v. Lujan,*
    928 F.2d 1496 (9th Cir. 1991) ...............................................9, 17, 18, 19

*Conner v. Burford,*
    848 F.2d 1441 (9th Cir. 1988) ...............................................22, 23, 24

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
    276 F.3d 1150 (9th Cir. 2002) ...............................................17, 18

*De Csepel v. Republic of Hungary,*
    27 F.4th 736 (D.C. Cir. 2022) ...............................................10, 19

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs,*
    932 F.3d 843 (9th Cir. 2019) ...............................................8, 9, 12, 14, 18, 21

*Friends of Amador Cnty. v. Salazar,*
    554 F. App'x 562 (9th Cir. 2014) ...............................................10, 17

ii

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

*Issa v. Sch. Dist. of Lancaster*,
    847 F.3d 121 (3d Cir. 2017)...........................................................................12

*Jamul Action Comm. v. Simermeyer*,
    974 F.3d 984 (9th Cir. 2020) .......................................................................8, 10

*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*,
    48 F.4th 934 (9th Cir. 2022) ............................................................................10

*Knox v. U.S. Dep't of Interior*,
    759 F. Supp. 2d 1223 (D. Idaho 2010) ....................................................6, 11, 14

*Makah Indian Tribe v. Verity*,
    910 F.2d 555 (9th Cir. 1990) ..............................................9, 11, 12, 19, 20

*Manygoats v. Kleppe*,
    558 F.2d 556 (10th Cir. 1977) ........................................................................23

*Metcalf v. Daley*,
    214 F.3d 1135 (9th Cir. 2000) ..........................................................................8

*Naartex Consulting Corp. v. Watt*,
    722 F.2d 779 (D.C. Cir. 1983)........................................................................17

*National Licorice Co. v. NLRB*,
    309 U.S. 350 (1940).........................................................................22, 23, 24

*Pimentel. Gensetix, Inc. v. Bd. of Regents*,
    966 F.3d 1316 (Fed. Cir. 2020).......................................................................19

*Pit River Home & Agric. Coop. Ass'n v. United States*,
    30 F.3d 1088 (9th Cir. 1994) ....................................................................11, 17

*Ramah Navajo Sch. Bd., Inc. v. Babbitt*,
    87 F.3d 1338 (D.C. Cir. 1996) ..........................................................................6

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008)...................................................................................18, 20

*Sac & Fox Nation of Mo. v. Norton*,
    240 F.3d 1250 (10th Cir. 2001) ....................................................................6, 16

*Sw. Ctr. for Biological Diversity v. Babbitt*,
    150 F.3d 1152 (9th Cir. 1998) ..........................................................7, 12, 13, 17

*Tenn. Valley Auth. v. Hill*,
    437 U.S. 153 (1978).............................................................................................8

iii

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

*United States v. Dion*,
    476 U.S. 734 (1986)...................................................................................8

*Washington v. Daley*,
    173 F.3d 1158 (9th Cir. 1999) .............................................6, 7, 12, 13

*West Flagler Associates v. Haaland*,
    573 F. Supp. 3d 260 (D.D.C. 2021)...........................6, 7, 11, 13, 14, 16, 19, 20, 21

*White v. Univ. of Cal.*,
    765 F.3d 1010 (9th Cir. 2014) .................................................................11

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
    788 F.2d 765 (D.C. Cir. 1986) ...............................................................10

**STATUTES**

5 U.S.C. § 702................................................................................................21

25 U.S.C. § 2702(1)–(2) .................................................................................9

25 U.S.C. § 2703(8) ........................................................................................2

25 U.S.C. § 2710(d)(1) ...................................................................................2

25 U.S.C. § 2710(d)(1)(A)..............................................................................2

25 U.S.C. § 2710(d)(1)(B)...........................................................................2, 3

25 U.S.C. § 2710(d)(1)(C)...............................................................15, 17, 24

25 U.S.C. § 2710(d)(8) ....................................................................................3

**OTHER AUTHORITIES**

*Washington Indian Gaming Association Statement on Maverick Gaming's Federal Lawsuit
    Seeking to Undermine Washington's State's System of Tribal Gaming* (Jan. 11, 2022),
    https://tinyurl.com/5y598e3c ...................................................................10

**RULES**

Fed. R. Civ. P. 19(a)(1)...................................................................................4

Fed. R. Civ. P. 19(a)(1)(A)..............................................................................5

Fed. R. Civ. P. 19(a)(1)(B)(i)..........................................................................5

Fed. R. Civ. P. 19(b)..................................................................................5, 21

iv

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**REGULATIONS**

86 Fed. Reg. 51,373, 51,373 (Sept. 15, 2021) ...................................................................3

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

## INTRODUCTION

The Administrative Procedure Act ("APA") establishes the right to judicial review of illegal and unconstitutional federal governmental action and waives federal sovereign immunity to ensure the vindication of that right.  The Shoalwater Bay Tribe ("Tribe") has moved to dismiss this action on a sweeping theory that would prevent *any* private plaintiff from *ever* bringing an APA challenge to the Secretary's approval of a state-tribal gaming compact; indeed, it would eliminate the right to judicial review of illegal governmental action whenever an absent sovereign claims an interest in the suit.  The Tribe has also presented its argument via an unusual and inequitable use of the Federal Rules of Civil Procedure, first using Rule 24 to be joined to this action, and then using Rule 19 to argue that it "cannot be joined," requiring the dismissal of this action.  The stunning position that tribes must be joined as parties in all APA challenges to the Secretary's approvals of state-tribal gaming compacts, and that those challenges must then be dismissed because of sovereign immunity, would render these APA claims unreviewable, a result at odds with common sense, fundamental principles of review of agency action, and the practice of federal courts—including the Ninth Circuit—which routinely hear APA claims challenging the Secretary's approval of state-tribal compacts.

The Tribe's theory is fundamentally mistaken.  Rule 19 does not require the presence of any tribes in this litigation.  In order for the Tribe's motion to dismiss to succeed, it must demonstrate that it is both (1) a required party under Rule 19(a); and (2) an indispensable party under Rule 19(b).  It cannot make either showing.

*First*, the Tribe is not a required party because the United States adequately represents its interest in defending the compacts.  The federal government adequately represents the interests of an absent Indian tribe unless there is an actual conflict of interest between the government and the tribe in the context of the suit.  In fact, the United States takes the position that absent tribes are not required parties in IGRA challenges like this one for just this reason.  The Tribe even admits that the federal government will vigorously defend the challenged compacts and provides only speculation that some undetermined conflict could emerge at some future date.  This speculation

1

is woefully insufficient, as demonstrated by the fact that the cases on which the Tribe relies involve an *actual* conflict between the federal government and an absent tribe.

Moreover, although the Tribe claims that it is impossible for this Court to accord Maverick complete relief in its absence, neither form of relief would require the Tribe to be bound by a judgment of this Court.  This Court could either (a) enjoin the state defendants from enforcing Washington's criminal class III gaming prohibitions against Maverick, which would have *no effect* on the Tribe, its compact, or its gaming operations; or (b) hold that the compacts and compact amendments violate IGRA and the Constitution, in which case it would be the operation of IGRA, the Constitution, and federal criminal statutes—not the judgment of this Court—that would prohibit the Tribe from conducting class III gaming.  The Tribe therefore is not a required party.

*Second*, even if the Tribe were a required party, this challenge can and should "in equity and good conscience" proceed in its absence under Rule 19(b).  The Tribe will not be prejudiced because the United States adequately represents its interests.  And because there is no prejudice in the first place, there is no need to consider whether the prejudice to the Tribe could be minimized. A judgment rendered in the Tribe's absence would be adequate and would not risk piecemeal litigation.  Finally, dismissing the action for nonjoinder would deprive Maverick of any judicial remedy for its injuries, especially considering that APA claims can be brought in federal court alone.  All four factors therefore weigh against dismissal.

The Tribe does not seriously contest any of this.  Rather, the Tribe repeatedly emphasizes its entitlement to sovereign immunity.  Rule 19 is not a rule that allows an absent sovereign to obtain the dismissal of any case in which it claims an interest.  Because the Tribe is neither a required nor indispensable party, its motion must be denied.

## BACKGROUND

Most forms of casino gaming (referred to as "class III gaming," *see* 25 U.S.C. § 2703(8)) on Indian lands are presumptively illegal and may be conducted only if the requirements of the Indian Gaming Regulatory Act ("IGRA") are met.  25 U.S.C. § 2710(d)(1).  First, the tribe must authorize such gaming in an ordinance or resolution that is approved by the Chairman of the

2

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

National Indian Gaming Commission.  *Id.* § 2710(d)(1)(A).  Second, the gaming must be "located in a State that permits such gaming for any purpose by any person, organization, or entity."  *Id.* § 2710(d)(1)(B).  Finally, the gaming must be "conducted in conformance with a Tribal-State compact" that has been approved by the Secretary of the Interior.  *Id.* § 2710(d)(1)(B), (8).

Maverick, the owner and operator of 18 cardrooms in the State of Washington, wishes to expand its gaming offerings to include games such as roulette, craps, sports betting, and dealer-assisted electronic table games, but Maverick cannot do so because Washington permits only federally recognized Indian tribes to offer these types of games and makes it a crime for anyone else to offer them.  Dkt. # 66, ¶¶ 1–3.

The State of Washington has entered into IGRA gaming compacts with all 29 Indian tribes in the state that authorize those tribes to offer a wide range of class III games, such as craps and roulette, and these compacts were approved by the Secretary of the Interior, rendering them effective under IGRA.  Dkt. # 66, ¶¶ 66–73.  By contrast, it is a crime for any non-tribal entity to offer those class III games.  RCW 9.46.220–.222, 9.46.0269(1); Dkt. # 66, ¶¶ 57–66.  The State of Washington and several Indian tribes (including the Tribe) have also executed compact amendments permitting the tribes—and only the tribes—to offer sports betting, which the Secretary of the Interior has approved.  *See, e.g.*, 86 Fed. Reg. 51,373, 51,373 (Sept. 15, 2021).

On January 11, 2022, Maverick filed this action challenging the Secretary of the Interior's approval of the sports-betting compact amendments under the Administrative Procedure Act ("APA") because the amendments violate IGRA, the Constitution's guarantee of equal protection, and the Constitution's anti-commandeering doctrine.  Dkt. # 1, ¶¶ 161–73.  Maverick also challenged under 42 U.S.C. § 1983 various Washington State officials' execution and administration of the State's gaming compacts and criminal gaming prohibitions because they violate IGRA, equal protection, and the anticommandeering doctrine.  *Id.* ¶¶ 174–203.

The compacts and compact amendments, by permitting the Tribes—and *only the Tribes*—to offer most forms of class III gaming violate IGRA's rule that class III gaming on Indian lands must be located in a state that permits such gaming, which Washington does not.  Dkt. # 66, ¶¶ 96–

3

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

107, 134.  Because membership in a Washington Indian tribe often depends on a person's lineal descent from historical tribal rolls and a minimum blood quantum, Washington's decision to limit class III gaming to Indian tribes (and the Secretary's approval of that decision) discriminates on the basis of race in violation of the Constitution's guarantee of equal protection. Dkt. # 66, ¶¶ 108–21, 135, 139.  And because the compacts and compact amendments are the product of IGRA's command that the States must negotiate compacts with the Tribes, they violate the constitutional principle that Congress may not commandeer state governments.  Dkt. # 66, ¶¶ 122–28, 136.

On August 3, 2022, the Shoalwater Bay Tribe moved for limited intervention for purposes of moving to dismiss this action under Rule 19 of the Federal Rules of Civil Procedure, Dkt. # 68. This Court granted the Tribe's motion.  Dkt. # 84.

## LEGAL STANDARDS

Rule 19(a) of the Federal Rules of Civil Procedure states that a "required party" must be joined in an action if feasible.  It defines a "required party" as (1) a person in whose absence "the court cannot accord complete relief among existing parties"; or (2) a person who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1).  "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit."  *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (quotation marks omitted).

If it is not feasible to join a party that is required under Rule 19(a), the court then "determine[s] whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  In making this determination, courts consider four factors:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

4

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1       (A) protective provisions in the judgment;

2       (B) shaping the relief; or
        (C) other measures;

3  (3) whether a judgment rendered in the person's absence would be adequate; and

4  (4) whether the plaintiff would have an adequate remedy if the action were
    dismissed for nonjoinder.

5  Fed. R. Civ. P. 19(b).

6  

**ARGUMENT**

7  **I.   The Tribe Is Not A "Required Party" Under Rule 19(a).**

8       The Tribe claims that it is a required party under Rule 19(a) for two reasons.  First, it argues

9  that disposing of this action in its absence would impair its ability to protect its interests in the

10  action.  Dkt. # 85, at 13–14; *see* Fed. R. Civ. P. 19(a)(1)(B)(i).  Second, the Tribe claims that this

11  Court cannot accord complete relief to Maverick in its absence.  Dkt. # 85, at 14–15; *see* Fed. R.

12  Civ. P. 19(a)(1)(A).  Both attempts to claim "required party" status are foreclosed by precedent.

13      **A.    Disposition Of This Action In The Tribe's Absence Would Not Impair The Tribe's Ability To Protect Its Interests.**

14

15     **1.**  The Tribe claims that it is a required party because it has an interest in conducting class

16  III gaming under its compacts with Washington.  But that interest does not suffice to render it a

17  required party under Rule 19(a), which requires the Tribe to show that disposition of this action in

18  its absence would impair the Tribe's ability to protect its interest.  It is black-letter law in this

19  circuit that "an absent party's ability to protect its interest will not be impaired by its absence from

20  the suit where its interest will be adequately represented by existing parties to the suit."  *Alto*, 738

21  F.3d at 1127 (quotation marks omitted).  Further, in light of the federal government's "trust

22  responsibility" to Indian tribes, "Tribes are not necessary parties" when the federal government is

23  already a party because "[t]he United States can adequately represent an Indian tribe unless there

24  exists a conflict of interest between the United States and the tribe."  *Washington v. Daley*, 173

25  F.3d 1158, 1167–68 (9th Cir. 1999) (quotation marks omitted); *see also Sac & Fox Nation of Mo.*

26  *v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001); *Ramah Navajo Sch. Bd., Inc. v. Babbitt*¸ 87 F.3d

   1338, 1351 (D.C. Cir. 1996); *Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471

5

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

F. Supp. 2d 295, 315 (W.D.N.Y. 2007) (Department of Interior's interests in "Indian self-government, including tribal self-sufficiency and economic development … make[] it uniquely qualified to represent a tribe's interests"); *Cassidy v. United States*, 875 F. Supp. 1438, 1445 (E.D. Wash. 1994); *City of Sault Ste. Marie v. Andrus*, 458 F. Supp. 465, 473 (D.D.C. 1978).

Accordingly, federal courts have uniformly held that the federal government adequately represents an Indian tribe in IGRA challenges like this one when it "share[s] the Tribe's position … that [a] Compact is consistent with [federal law]." *W. Flagler Assocs. v. Haaland*, 573 F. Supp. 3d 260, 270–71 (D.D.C. 2021). Even if "a decision striking down the Compacts at issue would have a substantial and serious financial impact on the Tribe[]," it is not a "necessary part[y] under Rule 19(a) if [its] interests are adequately protected by the Secretary" of the Interior. *Knox v. U.S. Dep't of Interior*, 759 F. Supp. 2d 1223, 1235–36 (D. Idaho 2010). Because the Secretary of the Interior had approved the challenged compact amendments in *Knox*, he had "every incentive to zealously defend" their legality, so the Tribes were not necessary parties. *Id.* at 1236–37; *see also Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003) (noting in similar IGRA challenge that, under Rule 19, "[t]he Secretary's interests are not adverse to the tribes' interests and the Department of Interior has the primary responsibility for carrying out the federal government's trust obligation to Indian tribes").

The federal government, too, has repeatedly taken the position that Indian tribes are not required parties in IGRA challenges of this nature because "the Federal Defendants adequately represent the Tribes' interest in seeing [a compact] approval upheld." Federal Defendants' Response to Seminole Tribe of Florida's Motion to Dismiss 9, *W. Flagler*, 2021 WL 8344054 (D.D.C. Oct. 26, 2021). Finding a Tribe to be a necessary party in a challenge to governmental action of this sort would "undermine important public rights crafted by Congress," such as the right to "judicial review of agency action." *Id.* at 8. In fact, as the United States has explained, it "is the only required or necessary party in such suits." *Id.* at 9.

To show that the federal government will not adequately represent its interests, it is not enough for the Tribe to point out conflicts that are not "at issue" in the present suit or speculate

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

that the federal government's "potentially inconsistent responsibilities" might result in some undetermined conflict with the Tribe. *Daley*, 173 F.3d at 1168. To the contrary, the Tribe bears the burden to "demonstrate how such a conflict might actually arise in the context of this case." *Id.*; *see also Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1154 (9th Cir. 1998) (denying motion to dismiss because tribe never "explained how [a hypothetical] conflict might actually arise in the context of Southwest's suit" and "identif[ied] no argument the United States would not or could not make on [the tribe's] behalf"). For example, the Ninth Circuit, in determining that the BIA adequately represented the absent tribe in *Alto*, emphasized that "the United States shares with the Tribe an interest in defending" the challenged action, "which granted precisely the relief the Tribe sought," and that the Secretary's trust responsibilities to the tribe obligated him to protect the Tribe's interests. 738 F.3d at 1128. "To be sure, conflicts can arise between the United States and an Indian tribe; when they do, the government cannot adequately represent the tribe's interest. But no such conflict has surfaced to this point in this case," and therefore the motion to dismiss necessarily failed. *Id.* (citation omitted).

The Tribe has not come anywhere close to articulating a conflict of interest with the federal defendants that would render them inadequate representatives in this action. The Tribe relies on cases in which a conflict between the United States and an absent tribe already *did* exist, but those cases simply underscore the Tribe's failure to point to any existing conflict here.

For example, the Tribe relies on *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843 (9th Cir. 2019). *Dine Citizens* involved a suit claiming that federal defendants' environmental analyses—which were prerequisites to the reauthorization of mining by a tribally owned mine—were insufficient under the Endangered Species Act and the National Environmental Policy Act. 932 F.3d at 850. But those statutes are fundamentally different from IGRA. They require the federal government to take actions in the interest of the general public, without consideration of the effects those actions might have on Indian tribes. Indeed, they impose obligations that directly conflict with the interests of Indian tribes. *See, e.g.*, *United States v. Dion*, 476 U.S. 734, 735–36 (1986) (upholding Endangered Species Act conviction of member of

7

Yankton Sioux Tribe); *Metcalf v. Daley*, 214 F.3d 1135, 1146 (9th Cir. 2000) (federal government's authorization of Makah Indian Tribe to resume whaling "delay[ed] … by the need to respect NEPA's commands"); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978) ("The plain intent of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction, *whatever the cost*." (emphasis added)).

The Ninth Circuit accordingly concluded that the federal defendants could not adequately represent the tribal mine owner because, while they had "an interest in defending their own [environmental] analyses that formed the basis of the approvals at issue," their "overriding interest … must be in complying with environmental laws such as NEPA and the ESA," not the approval of continued mining operations. *Dine Citizens*, 932 F.3d at 855.  Because the "overriding interest[s]" of the federal defendants were not to grant the tribal mining permits but to ensure that "the proposed action would not jeopardize the continued existence of any of the threatened and endangered species evaluated" and to take a "'hard look' at the various impacts of the mining complex," the federal defendants could not be "counted on to adequately represent" the tribal interests in the continued operation of the mine.  *Id.* at 849–50, 855.  The interests of the tribes and the federal government thus were fundamentally misaligned.  *See Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th Cir. 2020) (federal defendants' "obligations to follow relevant environmental laws were in tension with tribal interests" in *Dine Citizens*).

This case, by contrast, involves IGRA, a statute that is explicitly concerned with the federal government's trust obligation towards Indian tribes.  Among IGRA's primary goals are "promoting tribal economic development, self-sufficiency, and strong tribal governments," and "ensur[ing] that the Indian tribe is the primary beneficiary of the gaming operation."  25 U.S.C. § 2702(1)–(2).  A suit to compel the federal government to comply with a statute that expressly directs the federal government to protect the interests of Indian tribes—in contrast to a statute passed to protect the environment, endangered species, or some other public interest—does not present a conflict of interest.

Nor can the Tribe analogize this case to *Dine Citizens* on the ground that its interests might

8

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

diverge with the federal government *after* this Court holds that the challenged compacts violate IGRA and the Constitution.  Dkt. # 85, at 21–22.  Rule 19 is concerned not with *any conceivable* interest of an absent party, but only with its "*legally protected interest*[*s*]."  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *see also Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1503 (9th Cir. 1991) (O'Scannlain, J., concurring in part and dissenting in part) ("The relevant inquiry for Rule 19(a), however, must be whether *cognizable legal rights* of the absent non-party will be prejudiced by the suit's continuation.  'Prejudice to one's self-interest' and 'prejudice to one's legally protected interests' are not synonymous." (footnotes omitted)).  If this Court concludes that the tribal gaming monopoly violates IGRA and the Constitution, the Tribe will obviously not have any legally protected right in maintaining that illegal monopoly.  In *Dine Citizens*, by contrast, if the court had concluded that the federal defendants needed to conduct additional analysis under NEPA and the ESA, the tribal mine owner's interest in operating a mine would not have been rendered illegal—let alone unconstitutional.  Rather, it merely would have been subject to delay.  *Dine Citizens* thus involved a conflict of interest that the legal issues in this case do not present.

Furthermore, because "tribal … conservation organizations" were among the parties that had challenged the federal decisions reauthorizing coal mining at a tribally owned mine, *Dine Citizens*, 932 F.3d at 847, there were tribal interests on both sides of the litigation in *Dine*.  Where the "allegiance the government owes to the tribes as trustee[] is necessarily split among … competing tribes," it cannot represent them all, so its representation is inadequate.  *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 775 (D.C. Cir. 1986).  Here, however, the tribes "stand united in opposing" Maverick's challenge.  WIGA, *Washington Indian Gaming Association Statement on Maverick Gaming's Federal Lawsuit Seeking to Undermine Washington's State's System of Tribal Gaming* (Jan. 11, 2022), https://tinyurl.com/5y598e3c.  When, as here, the interests of the absent sovereign and the remaining defendants are "closely aligned," there is no risk of prejudice, and dismissal is improper.  *De Csepel v. Republic of Hungary*, 27 F.4th 736, 750 (D.C. Cir. 2022).

9

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

Similarly, the Tribe points to *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022), but that case is inapposite for the same reasons that *Dine Citizen* is. The federal defendants' interest in *Klamath Irrigation* was in fulfilling their duties under the ESA—specifically, preserving "the largest remaining contiguous habitat for endangered suckers in the Upper Klamath Basin"—not in defending the Tribes' "reserved water and fishing rights." *Id.* at 939, 944–45. This general public-interest obligation to preserve endangered species of fish in the Upper Klamath Basin conflicted with the Tribes' specific interests in fishing in the basin. In addition, "the Tribes [were] in active litigation over the degree to which Reclamation is willing to protect the Tribes' interests in several species of fish" in the basin, which "would materially limit Reclamation's representation of the Tribes' interests." *Id.* at 945. The federal government thus already had material conflicts of interest with the tribe in question.

The Tribe's other authorities are likewise inapt. In most of them, the court had identified an actual conflict between the federal government and the absent tribe that made the United States an inadequate representative. *See, e.g.*, *Jamul Action Comm.*, 974 F.3d at 997–98 (lawsuit involving tribal lands that plaintiff "contends are owned by individual Indians rather than the Village, thus calling into question the government's ability to adequately represent the Village's interests"); *Friends of Amador Cnty. v. Salazar*, 554 F. App'x 562, 564 (9th Cir. 2014) ("government's response to the district court's questions" led district court to suspect government "would seek to avoid taking positions contrary to its national Indian policy, even if contrary to the Tribe's interest"); *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir. 1994) (lawsuit involved "conflicting claims" of two Native American groups); *Makah*, 910 F.2d at 559 ("federal government could not protect the interests of the absent tribes because those interests conflict among themselves"). In others, no federal parties were present in the suit, so the presumption that the federal government adequately represents the interests of absent Indian tribes could not have applied. *See White v. Univ. of Cal.*, 765 F.3d 1010 (9th Cir. 2014); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002).

Here, by contrast, the interests of the federal defendants and the Tribe are perfectly aligned.

10

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA 98020
(425) 967-3550

Both believe that the compacts do "not violate the Indian Gaming Regulatory Act" or "any other provision of Federal law" and should continue in effect.  *See, e.g.*, Dkt. # 67-9, at 1.  The Tribe has not identified—and cannot identify—any conflict of interest with the federal defendants in this lawsuit similar to those that existed in the cases it relies on.  Indeed, the Tribe admits that "the State and the United States appear poised to vigorously defend the compacts at issue."  Dkt. # 85, at 23.  The Tribes' admission that the United States will forcefully defend its interests in the challenged compacts—in other words, be an adequate representative—dooms its motion to dismiss.  *See W. Flagler*, 573 F. Supp. 3d at 271 (tribe was adequately represented because "[t]he Secretary and the State share the Tribe's position on the key issue in this case—*i.e.*, that the Compact is consistent with IGRA"); *Knox*, 759 F. Supp. 2d at 1236 (tribes were adequately represented because "the Secretary approved [the compact] amendments and hence has every incentive to zealously defend its approval").

**2.**  With its interests in this litigation perfectly aligned with the federal defendants, the Tribe attempts to show that the federal defendants' representation is inadequate by making arguments that have been soundly rejected in this circuit.

*First*, the Tribe argues that the federal government does not have a pecuniary interest in the Tribe's gaming operations.  Dkt. # 85, at 21.  But a party is not required to have a shared financial interest with an absent party in order to be an adequate representative under Rule 19, nor can the Tribe cite any authority for that proposition.  *Dine Citizens* held only that a mere shared financial interest was *insufficient* to make a party an adequate representative.  932 F.3d at 856.  Moreover, the Ninth Circuit has repeatedly made clear that financial stakes are largely irrelevant for the purposes of Rule 19.  *See id.* at 852 (holding that an absent party's legally protected interest under Rule 19 "must be 'more than a financial stake'" (quoting *Makah*, 910 F.2d at 558)).

*Second*, the Tribe speculates that some hypothetical and as-yet-unknown conflicts *might* emerge at some point.  In particular, the Tribe contends that if this Court enters judgment in Maverick's favor, then, *after* the litigation, the federal government may "take enforcement action to stop the Tribe's gaming."  Dkt. # 85, at 21–22.  But the only relevant question is whether the

11

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

Tribes' and the federal defendants' positions are aligned *in the litigation*. *See Daley*, 173 F.3d at 1168 ("A conflict would arise only in regard to the level of allocations, which are not at issue here" and the "Tribes have failed to demonstrate how such a conflict might actually arise in the context of this case."); *Sw. Ctr. for Biological Diversity*, 150 F.3d at 1154 (similar).  If this Court concludes that the compacts violate federal law, any interest the Tribe might have in continuing to conduct gaming in violation of federal law is not an interest that justifies deeming the Tribe a required party.  *See Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) (a party has "'no interest in continuing practices' that violate" the law).

*Third*, The Tribe claims that the federal defendants do not adequately represent it because they have not made the Tribe's Rule 19 arguments.  Dkt. # 85, at 22.  The Ninth Circuit has emphatically rejected this "circular" argument:  It "would preclude the United States from opposing frivolous motions to dismiss out of fear that its opposition would render it an inadequate representative" and "would also create a serious risk that non-parties clothed with sovereign immunity, such as [an Indian tribe], whose interests in the underlying merits are adequately represented could defeat meritorious suits simply because the existing parties representing their interest opposed their motion to dismiss." *Sw. Ctr. for Biological Diversity*, 150 F.3d at 1154.

*Fourth*, the Tribe speculates that the federal government *might* pursue a litigation strategy that diverges from the Tribe's, and that, in light of the federal government's obligation to serve multiple constituencies, its interests *might* diverge at some unknown point in the litigation in some unknown way.  Such conjectures have never been enough to demonstrate that the federal government is an inadequate representative of an absent Indian tribe.  *Alto*, 738 F.3d at 1128 ("conflicts can arise between the United States and an Indian tribe … [b]ut no such conflict has surfaced to this point in this case"); *Daley*, 173 F.3d at 1168 (the "Tribes have failed to demonstrate how such a conflict *might actually arise in the context of this case*") (emphasis added).  Indeed, the Ninth Circuit reversed a district court's conclusion that the federal government could not adequately represent an absent Indian tribe due to "the possibility of conflict arising from the federal government's potentially inconsistent responsibilities" because "[n]either the district court

12

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

nor any of the parties has explained how such a conflict might actually arise in the context of [the] suit." *Sw. Ctr. for Biological Diversity*, 150 F.3d at 1154.

Nor is a mere difference in litigation strategy—let alone the hypothetical one in this case—sufficient to make the federal government an inadequate representative.  In *Daley*, the Ninth Circuit agreed with the district court "that the Tribes are better prepared than the federal defendants to present" certain evidence, but it reversed the district court's conclusion that the absent Tribes were required parties because "this concern is outweighed by the absence of any direct conflict of interest between the United States and the Tribes in this matter."  173 F.3d at 1167 n.11.  Even if a difference in litigation strategy *were* enough to make the federal defendants' representation inadequate, the Tribe has not identified any such actual difference in this case.

*Finally*, the Tribe claims that its sovereign immunity and interests are implicated in this action and that those interests cannot be adequately represented by the federal defendants.  Dkt. # 85, at 14, 18, 21.  But the Tribe has not explained how its "sovereignty would be implicated in the adjudication" of this action.  *See Sw. Ctr. for Biological Diversity*, 150 F.3d at 1154–55.  As with the challenge to the gaming compact in *West Flagler*, "the Tribe is not a party to this case, and the plaintiff[] make[s] no attempt to bind either the Tribe or its agents."  573 F. Supp. 3d at 270.  Nor does it "resolve the ownership of any asset to which the Tribe has a 'nonfrivolous, substantive claim,' which would indirectly violate the Tribe's immunity."  *Id.*  Rather, Maverick seeks a holding that the federal defendants violated federal law by approving the challenged gaming compact amendments and that the state defendants are violating federal law by simultaneously enforcing the challenged compacts and compact amendments and Washington's criminal prohibitions of class III gaming.  Dkt. # 66, ¶¶ 164–206.  Such holdings "would fully respect the Tribe's sovereign immunity."  *W. Flagler*, 573 F. Supp. 3d at 270.

Again relying on the inapt *Dine Citizens*, the Tribe wrongly suggests that the federal defendants cannot adequately represent its sovereign interests in conducting class III gaming and obtaining the revenue such gaming provides the Tribe.  Dkt. # 85, at 21.  But the problem in *Dine Citizens* was not that it was impossible for the federal government to represent the tribe's

13

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1   "sovereign interest in ensuring that the Mine and Power Plant continue to operate and provide

2   profits to the Navajo Nation," but that the federal government's "overriding interest … in

3   complying with environmental laws … differs in a meaningful sense" from the tribe's interest.

4   932 F.3d at 855.   Where there is no such conflict, the federal government is fully capable of

5   representing a tribe's interest in continuing to conduct class III gaming pursuant to a state-tribal

6   compact. *W. Flagler*, 573 F. Supp. 3d at 270–71; *Knox*, 759 F. Supp. 2d at 1236–37.  Because the

7   Tribe's presence in this litigation is not necessary to accord Maverick complete relief and the

8   Tribe's interests in this action are adequately represented by the federal defendants, the Tribe is

9   not a required party under Rule 19(a).  Its motion to dismiss should be denied for that reason alone.

**B.      The Tribe's Joinder Is Not Required To Accord Complete Relief.**

10          The Tribe contends that this Court cannot accord complete relief to Maverick in its absence

11   because it would not be bound by a judgment in Maverick's favor, but this argument rests on a

12   fundamental misunderstanding of the nature of Maverick's claims and injuries.   Washington's

13   tribes would not have to be bound by a judgment in this action for Maverick to obtain full relief

14   on its claims.

15          The Tribe repeatedly claims that the Washington Tribes "are the true target of Maverick's

16   suit," and that, because the Tribes are immune from suit, Maverick has circumvented that

17   immunity by suing state and federal officials instead.  Dkt. # 85, at 1, 10, 13–14.  The Tribe is

18   mistaken.   It is not the Tribes' operation of class III gaming—standing alone—that injures

19   Maverick.   Maverick is injured because it is forced to compete with the Tribes on an unequal

20   playing field, in which the Tribes are given carte blanche to offer a wide variety of class III games,

21   while Maverick is criminally prohibited from offering those same games.  Dkt. # 66, ¶¶ 144–45,

22   152–63.   Washington's Tribes did not create and do not administer this discriminatory gaming

23   regime.   Rather, it is the product of Washington's decision to simultaneously allow the Tribes to

24   offer class III gaming while criminally prohibiting everyone else from doing so, and the Secretary

25   of the Interior's decision to permit this regime to go into effect. Dkt. # 66, ¶¶ 152–56.  Maverick

26   has thus named as defendants the persons responsible for its injuries, and would have sued the

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

same state and federal officials even if the Washington Tribes weren't immune from suit.

Because Maverick's injuries are caused by the actions of the state and federal defendants—not Washington's Tribes—the Tribe would not have to be bound by a judgment of this Court for Maverick to obtain complete relief.  Indeed, this Court could redress Maverick's injuries by simply enjoining the State defendants from enforcing against Maverick Washington's criminal prohibitions against the forms of class III gaming that it permits Indian tribes in the State to offer. Dkt. # 66, ¶ 157.  That would allow Maverick to offer the full range of games that the tribes currently offer and compete on an equal playing field without having any effect on the tribes' existing gaming operations or compacts.  The availability of this form of relief *alone* is a basis to reject the Tribe's argument that it is impossible to accord complete relief in its absence.

Alternatively, if this Court decided to create parity by leveling down instead of leveling up, Dkt. # 66, ¶ 158, an order declaring the compacts and compact amendments void and enjoining the State defendants from enforcing them would render the compacts not "in effect" under IGRA. *See* 25 U.S.C. § 2710(d)(1)(C).  It would be *IGRA and the Constitution*—not this Court's judgment—that would prohibit the Tribes from offering the class III games that Washington forbids Maverick from offering.  The Tribe is therefore incorrect in claiming that, as a party not bound by this Court's judgment, it could still "assert its rights under the agreement." Dkt. # 85, at 14.  The Tribes' compact rights would not be legally enforceable if a judgment of this Court rendered the compacts not "in effect" under IGRA.

The Ninth Circuit's decision in *Alto v. Black*, 738 F.3d 1111 (9th Cir. 2013), compels the conclusion that the Tribe's presence is not necessary to award complete relief.  In that case a tribe had disenrolled members, and the BIA issued an order upholding that decision.  *Id.* at 1115.  The disenrolled members sued the federal officials, seeking a preliminary injunction of the approval order, which would have rendered the tribe's disenrollment decision unenforceable.  *Id.* at 1117–19.  The tribe intervened to move to dismiss under Rule 19 for failure to join it as an indispensable party, claiming that complete relief could not be accorded in its absence.  *Id.* at 1119, 1126.

The Ninth Circuit disagreed, explaining that the plaintiffs' requested "relief is 'meaningful'

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

as between [them] and the BIA, even if it does not bind the Tribe directly," because "[t]he injury resulted from the Secretary's actions in ruling the [plaintiffs] ineligible for tribal membership, not from the Band's prior actions with regard to the membership issue" and "[w]e may assume that the Band will then abide by the BIA's [court-ordered] decision, as it is committed by [law] to do." *Id.* at 1126–27; *id.* at 1127 ("The practical implications of the Secretary's decision … hinge not on any court order, but on the Band's legal duties … under its own governing documents and applicable federal law.").

The Ninth Circuit explained that the cases the Tribe relies on here were inapposite because "[i]n those cases, however, the injury complained of was a result of the absent *tribe's* action, not only or principally that of the named agency defendant," whereas in *Alto*, "the injury complained of" was "the BIA's violation of the APA." *Id.*; *see also Sac & Fox Nation*, 240 F.3d at 1258 (complete relief could "clearly" be accorded in tribe's absence because action focused on "the propriety of the Secretary's determinations," so "the absence of the Wyandotte Tribe does not prevent the plaintiffs from receiving their requested declaratory relief"); *W. Flagler*, 573 F. Supp. 3d at 271 (Tribe's presence was not necessary to award complete relief in challenge to Secretary's approval of the Tribe's gaming compact because the "plaintiffs challenge an action by the Secretary and obtaining relief against the Secretary would fully redress their injury"). The Court explained that the Navajo Nation was a required party in *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002), because enjoining the tribe's lessee from enforcing a challenged lease condition would not stop the absent tribe from enforcing the same condition. *Alto*, 738 F.3d at 1126. And it explained that the Quinault Nation was a required party in *Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496 (9th Cir. 1991), because it would still be able to assert sovereign power over the reservation, the "very practice that prompted the plaintiffs' complaint." *Alto*, 738 F.3d at 1127; *see also Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) (absent tribe would still be able to assert rights under challenged accommodation agreement); *Pit River*, 30 F.3d at 1099 (absent tribe would still be able to exercise

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA 98020
(425) 967-3550

right to possess land).[1]

This case is governed not by the Tribe's inapposite cases but by *Alto*.  A declaratory judgment that the compacts and compact amendments violate IGRA and the Constitution, *see* Dkt. # 66, ¶ 207, would render them not "in effect" under IGRA, 25 U.S.C. § 2710(d)(1)(C).  The practical implication of that decision would thus bar the Tribe from asserting its rights under the compacts not because it would be bound by this Court's judgment (it would not be) but because the operation of *federal law* would prevent the Tribe from conducting class III gaming pursuant to compacts that are not in effect under IGRA.  The Tribe's contention that this Court cannot accord complete relief in its absence is therefore meritless.

## II.    This Action Should Proceed In The Tribe's Absence.

**A.**   As a threshold matter, it is far from clear that Rule 19(b) even applies.  Rule 19(b) applies only if a required party "cannot be joined."  Fed. R. Civ. P. 19(b).  But by seeking and obtaining intervention, the Tribe has now been joined to this action, necessarily defeating any argument that it "cannot be joined."  The Tribe asserts that it has waived its immunity *solely* for the purposes of arguing that it cannot be joined and the action cannot proceed in its absence.  Dkt. # 85, at 2.  But the Supreme Court does not permit the "seriously unfair results" that would occur if a sovereign were permitted to both voluntarily "invoke federal jurisdiction" while simultaneously claiming immunity from that jurisdiction.  *Lapides v. Bd. of Regents*, 535 U.S. 613, 619 (2002).  Because that would be "anomalous or inconsistent ... it is not surprising that more than a century ago this Court indicated that a State's voluntary appearance in federal court amounted to a waiver of its" immunity.  *Id.*; *see also Pettigrew v. Oklahoma ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013) ("moving to intervene in federal-court litigation" constitutes waiver of sovereign immunity); *Bd. of Regents v. Phoenix Int'l Software,*

---

[1] The Tribe also relies on several irrelevant cases that did not even *consider* whether it was possible to accord complete relief.  *See* Dkt. # 85, at 14–15 (citing *Friends of Amador Cnty. v. Salazar*, 554 F. App'x 562 (9th Cir. 2014); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002); *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983)).

17

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1   *Inc.*, 653 F.3d 448, 463 (7th Cir. 2011) ("When a state chooses to intervene in a federal case, it

2   waives its immunity for purposes of those proceedings."). Because the Tribe has waived its

3   immunity and voluntarily joined this action, it cannot now turn around and argue that it cannot be

4   joined to an action *it has already joined* because it is immune from suit.

5   **B.** Even if this Court were to conclude that the Tribe is a required party that cannot be

6   joined (despite already being joined), that still would not justify dismissal because *none* of the

7   Rule 19(b) factors weighs in favor of dismissal. Sensing that it cannot succeed under the Rule

8   19(b) factors, the Tribe urges this Court to ignore them, stating that when an absent party is

9   immune from suit, "there is 'very little room for balancing of other factors' under Rule 19(b)."

10  Dkt. # 85, at 17 (purporting to quote *Am. Greyhound Racing*, 305 F.3d at 1025). The quoted

11  language appears nowhere in *American Greyhound Racing*. In fact, that case said the exact

12  opposite: That court noted that "some courts have held that sovereign immunity forecloses in

13  favor of tribes the entire balancing process under Rule 19(b), *but we have continued to follow the*

14  *four-factor process even with immune tribes*." *Am. Greyhound Racing*, 305 F.3d at 1025

15  (emphasis added). Numerous other Ninth Circuit decisions have made the same point. *See, e.g.*,

16  *Dawavendewa*, 276 F.3d at 1162 ("Cognizant of these out-of-circuit decisions, the Ninth Circuit

17  has, nonetheless, consistently applied the four part balancing test to determine whether Indian

18  tribes are indispensable parties."); *Confederated Tribes*, 928 F.2d at 1499 ("Some courts have

19  noted, however, that when the necessary party is immune from suit, there is very little need for

20  balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor,"

21  but "[w]e have nonetheless consistently applied the four-part test to determine whether Indian

22  tribes are indispensable parties."). Even in the Tribe's preferred case, *Dine Citizens*, the Ninth

23  Circuit made this same point. 932 F.3d at 857 (quoting *Am. Greyhound Racing*, 305 F.3d at 1025).

24  Moreover, the Tribe's proposed rule is inconsistent with Supreme Court precedent. In

25  *Republic of Philippines v. Pimentel*, 553 U.S. 851, 855 (2008), the Supreme Court considered the

26  Philippines' claim that an action needed to be dismissed under Rule 19(b) because it was absent

    (it had previously been dismissed from the suit as an immune foreign sovereign). The Supreme

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

Court considered the prejudice that would result to the Philippines if a judgment were rendered in its absence, *Pimentel*, 553 U.S. at 865–69, but it did not ignore the other Rule 19(b) factors simply because the Philippines was an absent sovereign.  Rather, the Court conducted "further analysis under the additional provisions of Rule 19(b)," noting that, "in the Rule 19(b) inquiry, a court *must* examine, to some extent, the claims presented and the interests likely to be asserted both by the joined parties and the absent entities or persons." *Id.* at 868, 872 (emphasis added).  As the Federal Circuit has noted, any rule that an absent party's status as an immune sovereign should be given controlling weight in the Rule 19(b) balancing is inconsistent with the Supreme Court's reasoning in *Pimentel*.  *Gensetix, Inc. v. Bd. of Regents*, 966 F.3d 1316, 1327 n.9 (Fed. Cir. 2020).

The Tribe contends that the first Rule 19(b) factor—the extent to which the Tribe would be prejudiced by a judgment in its absence—weighs in its favor simply because its compacts might be rendered ineffectual under IGRA if Maverick succeeds.  Dkt. # 85, at 16.  This factor "asks whether a party might suffer prejudice not simply from an adverse result, but specifically from the decision being 'rendered in [its] absence.'" *De Csepel*, 27 F.4th at 748 (alteration in original). This factor "largely duplicates" the consideration under Rule 19(a) whether an absent party has "a protectible interest that will be impaired or impeded by the party's absence." *Am. Greyhound Racing*, 305 F.3d at 1025; *see also Confederated Tribes*, 928 F.2d at 1499 ("prejudice test under Rule 19(b) is essentially the same as the inquiry under Rule 19(a)").  Accordingly, "[c]ourts recognize that 'prejudice to absent parties approaches the vanishing point' when 'the absent and remaining parties' interests are aligned in all respects,' including in cases in which *the absent party is an immune sovereign*." *De Csepel*, 27 F.4th at 748 (emphasis added) (citation omitted) (quoting *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 360 (2d Cir. 2015)); *see also Makah*, 910 F.2d at 560 ("As in Rule 19(a)(2), the presence of a representative may lessen prejudice.").  The first Rule 19 factor weighs against dismissal for the same reason that the Tribe is not a required party:  The federal defendants adequately represent its interests. *See supra* at 5–14; *W. Flagler*, 573 F. Supp. 3d at 270–71 ("the Tribe's absence is not prejudicial because both the Secretary and the State of Florida have defended the Compact on its merits" and "share the

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1  Tribe's position on the key issue in this case—*i.e.*, that the Compact is consistent with" federal

2  law).

3          The Tribe offers no serious argument that the second and third factors weigh in favor of

4  dismissal, offering only a single, conclusory sentence that they do.  Dkt. # 85, at 16.  The Tribe

5  offers no explanations for this unsupported assertion because there are none.  The second factor—

6  the extent to which prejudice to the Tribe could be minimized—is irrelevant because its adequate

7  representation by the federal defendants ensures that it will not be prejudiced.  *W. Flagler*, 573 F.

8  Supp. 3d at 271 ("[T]he ability to minimize prejudice … bears on indispensability only when there

9  is prejudice to be minimized.").  Thus, the second factor also weighs against dismissal.

10          The third factor—whether a judgment rendered in the Tribe's absence would be

11  adequate—also counsels against dismissal.  "[A]dequacy refers to the 'public stake in settling

12  disputes by wholes whenever possible" and "the avoidance of multiple litigation."  *Pimentel*, 553

13  U.S. at 870 (quotation marks omitted).  As explained above, *see supra* at 15–16, Maverick's

14  injuries are not caused by the Tribe but by the federal and state defendants, and granting Maverick

15  relief from the defendants' actions would fully redress its injuries.  *See W. Flagler*, 573 F. Supp.

16  3d at 271–72.  There is no risk of follow-on litigation:  If this Court enters a judgment either

17  (1) enjoining Washington from enforcing against Maverick its criminal prohibitions of class III

18  gaming; or (2) holding the challenged compacts and compact amendments to be not in effect under

19  IGRA, there will be no need for any further litigation.  Maverick would be able to offer class III

20  gaming on an even playing field.  There is no possibility that failure to join the Tribe would render

21  the judgment inadequate because "obtaining relief against the Secretary [and the state defendants]

22  would fully redress the[] injury."  *Id.* at 271.

23          Finally, the fourth factor—whether Maverick would have an adequate remedy if this action

24  were dismissed for nonjoinder—weighs heavily against dismissal.  "[I]f no *alternative forum* is

25  available to the plaintiff, the court should be 'extra cautious' before dismissing the suit."  *Makah*,

26  910 F.2d at 560.  Dismissing this action for failure to join the Tribe would leave Maverick with no

27  alternative forum for its suit.  Maverick would not be able to bring its claim in any non-federal

20

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

forum because the United States' waiver of sovereign immunity for suits against it and its officers applies only to suits in federal courts. *Aminoil U.S.A., Inc. v. Cal. State Water Res. Control Bd.*, 674 F.2d 1227, 1233 (9th Cir. 1982). And Maverick would not be able to bring its suit in any federal forum because the Tribe would always be able to raise the same Rule 19 argument it makes here.

Indeed, the implications of the Tribe's Rule 19 argument are startling. Were the Tribe's Rule 19 arguments to prevail, they would not only bar *Maverick* from obtaining relief for its injuries; they would effectively prohibit any person in any court from ever obtaining judicial review of the Secretary of the Interior's approval of a class III state-tribal gaming compact, making those actions unreviewable and nullifying the APA's cause of action. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, *is entitled to judicial review thereof*." (emphasis added)).

The District Court for the District Court of Columbia rejected this "extreme and unworkable" argument in a similar challenge to an IGRA gaming compact: "[H]olding that the Tribe is indispensable in this case, where the Tribe has made no particularized showing of prejudice, would require treating tribes as indispensable in *every* case that challenges the Secretary's approval of a gaming compact. And under that rule, those approvals will *never* be subject to judicial review because the nonjoinder of a tribe will *always* require dismissal." *W. Flagler*, 573 F. Supp. 3d at 272.

The Rule 19(b) factors are designed to help a court "determine whether, in equity and conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). It would be highly inequitable to adopt a rule that would make agency action approving state-tribal compacts—no matter how flagrantly such a compact might violate federal law—completely unreviewable.

The Tribe contends that Maverick has alternative fora for its claims in this action because it could lobby Congress or the Washington legislature to amend their laws or ask the federal

21

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

government to institute enforcement actions against the tribes.  Dkt. # 85, at 3, 17.  But as the Tribe's own authority makes clear, this factor looks to whether a plaintiff has an "alternate forum in which to *sue*."  *Dine Citizens*, 932 F.3d at 858 (emphasis added).  Maverick's claim is that the federal and state defendants have injured it by violating federal law *as it currently stands*, so amendments to IGRA are unnecessary.  It is no answer under Rule 19 to say that a plaintiff could lobby legislatures to accord it relief or beg the defendants outside the context of litigation to stop injuring it.  If that were so, a plaintiff would *always* have an adequate alternate forum for remedying his injuries.  Because all four Rule 19(b) factors weigh against dismissal, this action should in equity and good conscience proceed in the Tribe's absence.

**C.**  Even if the Tribe *were* a required party under Rule 19(a), and even if the Rule 19(b) factors *did* weigh in favor of dismissal, this Court *still* should not dismiss this action because the public-rights exception to Rule 19 would apply.  "In a proceeding … narrowly restricted to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights."  *National Licorice Co. v. NLRB*, 309 U.S. 350, 363 (1940).  When the "rights asserted [in a suit] arise independently of any contract which an adverse party may have made with another, not a party to the suit, even though their assertions may affect the ability of the former to fulfill his contract[,] … the Court may, in a proper case, proceed to judgment without joining other parties to the contract."  *Id.*

The Ninth Circuit has similarly "refused to require the joinder of all parties affected by public rights litigation—even when those affected parties have property interests at stake— because of the tight constraints traditional joinder rules would place on litigation against the government."  *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988).  In *Conner*, the Bureau of Land Management had leased federal land for oil and gas exploration, and many of the leases were "non-NSO leases," which "authorize[d] the government to impose reasonable conditions on drilling, construction, and other surface-disturbing activities," but, unlike leases with NSO stipulations, "they do not authorize the government to preclude such activities altogether."  *Id.* at 1443–44.  The Ninth Circuit "enjoin[ed] the federal defendants from permitting any surface-

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

disturbing activity to occur on any of the leases until they have fully complied with NEPA and ESA." *Id.* at 1461. The Ninth Circuit concluded that the lessees were not indispensable parties under the public-rights exception to Rule 19, explaining that the "litigation against the government does not purport to adjudicate the rights of current lessees; it merely seeks to enforce the public right to administrative compliance with the environmental protection standards of NEPA and the ESA." *Id.* at 1460. The Ninth Circuit reached this conclusion even though its order "essentially creat[ed] NSO leases out of non-NSO leases," subjecting the lessee's surface-disturbing activities to governmental *approval* rather than mere *reasonable conditions*. *Id.* at 1461. "The order as modified will obviously preclude immediate government approval of surface-disturbing activity, but such foreclosure of the lessees' ability to get 'specific performance' until the government complies with NEPA and the ESA is insufficient to make the lessees indispensable to this litigation." *Id.* at 1461.

Because Maverick's suit does not seek to adjudicate the rights of the Tribe under the terms of its compact with the State of Washington but to enforce the public right to administrative compliance with IGRA and the Constitution, the public-rights exception to Rule 19 applies to this action, and it should not be dismissed. As in *Conner*, the Tribe is not an indispensable party simply because an order compelling the federal and state defendants to comply with federal law might as a practical matter prohibit it from exercising rights under its gaming compact.

The Tribe contends that the public-rights exception does not apply on the ground that this "lawsuit seeks to extinguish" its "substantial legal entitlements." Dkt. # 85, at 23. But the rule that an adjudication must not "destroy the legal entitlements of the absent parties," is designed to cover actions that would destroy an absent party's rights *under the terms of an agreement to which it is party*. *Conner*, 848 F.2d at 1459, 1461 ("The order as modified does not adjudicate or 'prejudge' the rights of the lessees against the government," and "the lessees remain free to assert whatever claims they may have against the government."); *see Nat'l Licorice*, 309 U.S. at 364 ("[T]he right asserted by the Board is not one arising upon or derived from the contracts between petitioner and its employees."). In *Manygoats v. Kleppe*, 558 F.2d 556, 557–59 (10th Cir. 1977),

the Tenth Circuit distinguished between an action seeking the "cancellation of [a] lease," in which a party to the lease was deemed indispensable, and an action challenging the government's *approval* of an agreement without complying with NEPA, where "[d]ismissal of the action for nonjoinder of the Tribe would produce an anomalous result."

An interpretation of the public-rights doctrine that would bar its application in cases where an order compelling the government to comply with federal law has the *practical effect* of eliminating an absent party's ability to assert a legal entitlement is inconsistent with the public-rights cases.  In creating the public-rights exception to joinder rules, the Supreme Court relied on cases where an "injunction was broad enough to prevent the offender from carrying out contracts with persons not parties to the suits," where "the order restraining unfair methods of competition may preclude the performance of outstanding contracts by the offender," and where "the effect of the decree was to order the employer to deal exclusively with [one party], although the employer had a contract with [another party] not a party to the suit."  *Nat'l Licorice*, 309 U.S. at 365–66. The order in *Conner* effectively destroyed the lessees' right to "get 'specific performance'" under the their leases.  848 F.2d at 1461.  In all these cases, "the public right was vindicated by restraining the unlawful actions of the defendant *even though the restraint prevented his performance of the contracts*,"—*i.e.*, had the practical effect of eliminating a contractual right of a nonparty.  *Nat'l Licorice*, 309 U.S. at 366 (emphasis added).

So too here.  An order holding the challenged compacts and compact amendments illegal under IGRA and the Constitution would render them not "in effect" under IGRA, 25 U.S.C. § 2710(d)(1)(C), which would, as a practical matter, prevent the Tribe from exercising its rights under its compact.  But the fact that an order compelling the government to respect public rights may incidentally "foreclos[e]" the assertion of a nonparty's legal entitlement does not render the public-rights exception inapplicable.  The Tribe's interest in this matter provides no basis to dismiss this action, which seeks solely to enforce Maverick's public rights under federal law.

## <u>CONCLUSION</u>

This Court should deny the Tribe's Motion to Dismiss.

24

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1     DATED October 24, 2022.

2                      **BRENNAN LEGAL, PLLC**

3

4                    By: *s/ Thomas M. Brennan*

5                    Thomas M. Brennan, WSBA No. 30662
                      P.O. Box 1384

6                    144 Railroad Ave. S., Suite 308
                      Edmonds, WA  98020

7                    Phone: (425) 967-3550
                      Email: tom@brennanlegalpllc.com

8

9                      **GIBSON, DUNN & CRUTCHER LLP**

10                 By: *s/ Theodore B. Olson*

11                 By: *s/ Matthew D. McGill*
                    By: *s/ Lochlan F. Shelfer*

12                 Theodore B. Olson, D.C. Bar No. 367456
                    Matthew D. McGill, D.C. Bar No. 481430

13                 Lochlan F. Shelfer, D.C. Bar No. 1029799
                    1050 Connecticut Avenue, N.W., Suite 900

14                 Washington, D.C.  20036-5303
                    Phone: (202) 955-8668

15                 Email: tolson@gibsondunn.com
                    Email: mmcgill@gibsondunn.com

16                 Email: lshelfer@gibsondunn.com

17                 *Attorneys for Plaintiff Maverick Gaming LLC*

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that on this date I caused the foregoing document to be electronically filed

3   with the Clerk of the Court using the CM/ECF system which sends notification of the filing to all

4   counsel of record.

5   DATED October 24, 2022.

6                                          /s/ Thomas M. Brennan
                                           Thomas M. Brennan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

26

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
(3:22-cv-05325 DGE)