**HONORABLE DAVID G. ESTUDILLO**

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| MAVERICK GAMING LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | Case No.: 22-cv-05325-DGE <br><br> **LIMITED INTERVENOR SHOALWATER BAY TRIBE'S REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> **Note on Motion Calendar: October 28, 2022** <br><br> **ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

I.     The Tribe has Legally Protected Interests in the Compact which Maverick Seeks to Invalidate ...................................................................................................................................1

II.    The Tribe Meets and Exceeeds the Standard Set Forth in *Dine Citizens* and *Klamath Irrigation* to Establish that the United States is Unable to Adequately Represent the Interests of the Tribe; Maverick's Contrary Analysis is Unavailing................................................................2

III.   Under Maverick's Erroneous Interpretation of Rule 19, a Real Conflict Prevents the United States from Adequately Representing the Tribe, Mandating Dismissal Per Rule 19......................6

IV.    All Four Factors Considered Under Rule 19(b) Weigh in the Tribe's favor; The Tribe's Interest in Maintaining Sovereign Immunity Leaves Very Little Room in Balancing the Four Factors of Rule 19(b) ..................................................................................................................10

V.     Conclusion ........................................................................................................................12

i

Reply in Support of Motion to Dismiss           Crowell Law Office-Tribal Advocacy Group
Case No.: 22-cv-05325-DGE                      1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
                                                                            Tel: (425) 802-5369

# TABLE OF AUTHORITIES

**Cases**

*Am. Greyhound Racing, Inc. v. Hull*,
   305 F.3d 1015 (9th Cir. 2002) ................................................................................. 1, 10, 11

*Artichoke Joe's California Grand Casino v. Norton*,
   353 F.3d 712 (9th Cir. 2002) ................................................................................................ 5

*Backcountry Against Dumps v. Bureau of Indian Affairs*,
   case # 21-55869, 2022 WL 15523095 (9th Cir. Oct. 27, 2022) ................................. 3, 5, 10

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
   140 S. Ct. 2335 (2020) .......................................................................................................... 9

*Califano v. Westcott*,
   443 U.S. 76 (1979) ................................................................................................................ 9

*California v. Cabazon Band of Mission Indians*,
   480 U.S. 202 (1987) .............................................................................................................. 7

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ............................................................................................... 2

*Deschutes River All. v. Portland Gen. Elec. Co.*,
   1 F.4th 1153 (9th Cir. 2021) ............................................................................................... 10

*Dewberry v. Kulongoski*,
   406 F. Supp. 2d 1136 (D. Or. 2005) ..................................................................................... 1

*Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*,
   932 F.3d 843 (9th Cir. 2019) ......................................................................................*passim*

*Fort Sill Apache Tribe v. National Indian Gaming Commission*,
   459 F. Supp. 3d 256 (D. D.C. 2020) ..................................................................................... 7

*Friends of Amador Cnty. v. Salazar*,
   554 F. App'x 562 (9th Cir. 2014) ......................................................................................... 1

*Jamul Action Comm. v. Simermeyer*,
  974 F.3d 984 (9th Cir. 2020), *cert denied*, 142 S. Ct. 83 (2021) .................................................1

*Klamath Irrigation District et. al. v. United States Bureau of Reclamation et. al.*,
  48 4th 934 (9th Cir. Sept. 8, 2022) ..........................................................................................*passim*

*Knox v. U.S. Dep't of Interior*,
  759 F. Supp. 2d 1223 (D. Idaho 2010) .............................................................................................5

*Levin v. Comm. Energy, Inc.*,
  560 U.S. 413 (2010) ..........................................................................................................................9

*Lomayaktewa v. Hathaway*,
  520 F.2d 1324 (9th Cir. 1975) ..........................................................................................................2

*Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*,
  853 F.3d 618 (1st Cir. 2017) ............................................................................................................4

*Sessions v. Morales-Santana*,
  137 S. Ct. 1678 (2017) .....................................................................................................................9

*United States v. approx. $ 10,128,847.42 Seized from US Bank Account*,
  2018 WL 6381150 (D. N.M. 2018) ..................................................................................................7

*United States v. Spokane Tribe*,
  139 F.3d 1297 (9th Cir. 1998) ..........................................................................................................7

*West Flagler Associates v. Haaland*,
  573 F. Supp. 3d 260 (D.D.C. 2021) ..................................................................................................5

**Statutes**

25 U.S.C. § 2710(d) ................................................................................................................................7

42 U.S.C. § 1983 ....................................................................................................................................5

**Constitution**

Wash. Const. Art. II, Sec. 24 ..................................................................................................................9

Reply in Support of Motion to Dismiss                    Crowell Law Office-Tribal Advocacy Group
Case No.: 22-cv-05325-DGE                                1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
                                                         Tel: (425) 802-5369

1 | **Rules**
2 | Rule 12(b)(7) ................................................................................................................12
3 | Rule 19 ................................................................................................................*passim*
4 | Rule 19(a) .....................................................................................................................10
5 | Rule 19(b) .....................................................................................................................10

iv

Reply in Support of Motion to Dismiss　　　　　　　　　Crowell Law Office-Tribal Advocacy Group
Case No.: 22-cv-05325-DGE　　　　　　　　　1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Tel: (425) 802-5369

Limited Intervenor the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation ("Tribe") submits this reply brief in support of its Motion to Dismiss ("Motion") (Dkt. 85) this lawsuit filed by Plaintiff Maverick Gaming LLC ("Maverick").

The defendants, the United States, various federal officials (collectively, "Federal Defendants"), and officials of the State of Washington (collectively, "State Defendants") have responded (Dkts. 94 and 95) in support of the Tribe's Motion. Seventeen Tribes with similar gaming compacts with Washington State (collectively "Amici Tribes") have submitted an amicus brief (Dkt. 87-1) in support of the Tribe's Motion. The Shoalwater Bay Tribe endorses the arguments in those briefs, which address many of the arguments in Maverick's opposition (Dkt. 96). The Tribe provides this reply brief to further respond to Maverick's opposition.

## I. THE TRIBE HAS LEGALLY PROTECTED INTERESTS IN THE COMPACT WHCH MAVERICK SEEKS TO INVALIDATE

The Tribe has demonstrated that it has legally protected interest in the Compact and Compact Amendment that are subject of this action. Dkt. 85 at 13-14. Maverick's contention that if the Court "prohibit[ed] the Tribes from offering the class III games that Washington forbids Maverick from offering," the Tribes could not assert rights under its Compact because its "compact rights would not be legally enforceable." Dkt. 96 at 15. But this is circular because in fact it would directly impact the Tribe's interests by depriving the Tribe of a significant source of governmental revenue and employment. Moreover, the assertion confirms that the Tribe has "legally protected interest[s]" in its Compact, *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 83 (2021); *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023-24 (9th Cir. 2002), and the Tribes' interests may be "affected as a practical matter by the judgment that [their gaming] operations are illegal" triggering Rule 19. *See also Friends of Amador Cnty. v. Salazar*, 554 F. App'x 562, 564 (9th Cir. 2014); *accord Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136, 1147 (D.

Or. 2005); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002)(affirming "fundamental principle" that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside … a contract, all parties who may be affected by the determination of the action are indispensable.").

## II. THE TRIBE MEETS AND EXCEEEDS THE STANDARD SET FORTH IN *DINE CITIZENS* AND *KLAMATH IRRIGATION* TO ESTABLISH THAT THE UNITED STATES IS UNABLE TO ADEQUATELY REPRESENT THE INTERESTS OF THE TRIBE; MAVERICK'S CONTRARY ANALYSIS IS UNAVAILING.

The Tribe has demonstrated (Dkt. 85 at 18-23) that the Federal Defendants and State Defendants[1] do not adequately represent the Tribe's interests under controlling Ninth Circuit precedent, applying *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 850 (9th Cir. 2019), which was recently affirmed in *Klamath Irrigation District et. al. v. United States Bureau of Reclamation et. al.*, 48 4th 934, (9th Cir. Sept. 8, 2022). The Ninth Circuit in *Dine Citizens* rejects Maverick's view that it is sufficient the Federal Defendants seek to defend their approval of the Compact and Amendments. While Federal Defendants in *Dine Citizens* "ha[d] an interest in defending their own analyses," they "[did] not share an interest in the *outcome* of the approvals—the continued operation of" the Tribe's mine and associated powerplant. 932 F.3d at 855. Similarly, in *Klamath Irrigation,* citing and applying *Dine Citizens*, the court reasoned:

> [t]he Tribes' primary interest is in ensuring the continued fulfillment of their reserved water and fishing rights, while Reclamation's primary interest is in defending its Amended Proposed Action taken pursuant to the ESA [Endangered Species Act] and APA. While Reclamation and the Tribes share an interest in the ultimate outcome of

---

[1] Maverick's Opposition makes no argument that the State Defendants may adequately represent the interests of the Tribe, failing to refute the Tribe's analysis (Dkt. 85 at 18-19) in any manner.

this case, our precedent underscores that such alignment on the ultimate outcome is insufficient for us to hold that the government is an adequate representative of the tribes.

48 F.4th at *944-45*.

Since the filing of the Tribe's Motion, on October 27, 2022, the Ninth Circuit, yet again, reaffirmed its holdings in both *Dine Citizens* and *Klamath Irrigation* in *Backcountry Against Dumps v. Bureau of Indian Affairs,* case # 21-55869, 2022 WL 15523095 (9th Cir. Oct. 27, 2022). There, plaintiffs filed an APA challenge against the Bureau of Indian Affair's approval of a land lease between a private company and the Campo Band of Diegueno Mission Indians for the construction and operation of wind power generation. In affirming the District Court's dismissal per Rule 19, the unanimous panel reasoned:

> The complaint seeks to vacate the BIA's decision approving the lease agreement, and a successful outcome for the plaintiffs would affect not only the Band's rights under the agreement, but also investments made in reliance on the agreement and expected jobs and revenue. *See Diné*, 932 F.3d at 853. The suit also implicates the Band's sovereignty, which "is tied to its very ability to govern itself, sustain itself financially, and make decisions about its own natural resources." *Id.* at 856. That interest is implicated even though the lawsuit only facially challenges the federal defendants' environmental-review processes. *See id.* at 852–53; *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 945 n.2 (9th Cir. 2022). Backcountry argues that the Band's interests are adequately represented by the federal defendants and Terra-Gen. However, "while Federal Defendants have an interest in defending their own analyses that formed the basis of the approvals at issue, here they do not share an interest in the *outcome* of the approvals." *Diné*, 932 F.3d at 855; *see also Klamath*, 48 F.4th at 945.

2022 WL 15523095 at *1 (emphasis in original)

The Tribe's position is further reinforced by the Federal Defendants' response brief, which concludes that dismissal is appropriate under *Dine Citizens* and *Klamath Irrigation* because "[t]his challenge has the potential to impair the Tribe's sovereign interest in protecting its sovereign rights and its tribal economy." Dkt. 94 at 6. Similarly, the State Defendants, citing *Dine Citizens* and *Klamath Irrigation,* note that "no other party shares the Shoalwater Bay Tribe's sovereign,

3

proprietary, and economic interests in operating its own gaming business on its sovereign land." Dkt. 95 at 5. The Amici Tribes go into extensive detail about how the interests of the Tribes and the United States in defending the compact approvals differ. Dkt. 87-1 at 12-18. Amici Tribes demonstrate that like the mining operation at issue in *Dine Citizens*, the Tribes have a unique "sovereign interest in ensuring that [their gaming establishments] continue to operate and provide profits." *Id.* at 13. Amici Tribes also demonstrate that the United States' interests diverge from the Tribe's because the United States has an overriding interest in compelling compliance with federal law, including IGRA, *id.* at 14 and n.5. Amici Tribes also note that the United States' general trust responsibility to Tribes is not without limitations and is often overridden by other legal duties of the federal government. *Id.* at 17. Maverick does not respond to these arguments.

Maverick attempts to distinguish the instant litigation from *Dine Citizens* and *Klamath Irrigation* by noting that the statutes at issue therein, the National Environmental Policy Act and the Endangered Species Act require the United States to protect overriding interests, namely compliance with federal environmental laws, rather than approval of the tribe's operations at issue. Dkt. 96 at 7-9. In contrast, Maverick characterizes IGRA as merely concerned with the Federal Defendants' trust obligations towards Indian Tribes. *Id.* That is a false distinction – IGRA was the product of years of deliberation by Congress in an effort to bring balance to multiple competing interests of the United States, the Tribes and the states, and it provides a complex and sophisticated scheme regarding the authorization and regulation of gaming on Indian lands. *See, e.g.*, *Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*, 853 F.3d 618, 622 (1st Cir. 2017). The competing interests at stake are rather evident in the conflict between the Tribe, Washington State and the United States detailed in the Tribe's Motion and ignored by Maverick (discussed further in Section III, below). Indeed, it was IGRA that the United States looked to for authority to shutter the Tribe's gaming operation,

highlighting the United States' view that its overriding obligation to ensure compliance with federal law supersedes its general trust responsibility to the Tribe.

Maverick looks to distinguishable Rule 19 cases from the Ninth Circuit that predate *Dine Citizens* and *Klamath Irrigation* and to out-of-circuit cases[2], citing repeatedly to *Knox v. U.S. Dep't of Interior*, 759 F. Supp. 2d 1223 (D. Idaho 2010), Dkt. 96 at 6, 11 and 14, and to *West Flagler Associates v. Haaland*, 573 F. Supp. 3d 260 (D.D.C. 2021) Dkt. 96 at 6-7, 11, 13-14, 16, and 19-21. Notably, the Ninth Circuit never had the opportunity to review the correctness of the *Knox* opinion as the plaintiffs voluntarily dismissed their own Complaint. *See* Dkt. 79 at 3, n.2. The Seminole Tribe's has appealed the District Court's denial of its motion for limited intervention to the D.C. Circuit Appeals Court. Dkts. 21-5265 and 22-5022. There, in contrast to the instant litigation, the United States opposed both limited intervention and dismissal pursuant to Rule 19. Moreover, Maverick's citations are to cases only raising causes of action under the APA, ignoring the fact that Maverick's FAC asserts two non-APA claims: Count II "42 U.S.C. § 1983 (Violation of IGRA, Equal Protection, and Tenth Amendment)", Dkt. 66 at 35-37, and Count III "42 U.S.C. § 1983 (Violation of Equal Protection)", Dkt. 66 at 38-40. Maverick does not even attempt to show that the Federal Defendants could adequately represent the Tribe for the two non-APA claims. Neither *Knox*, nor *West Flagler*, nor any of the cases provided by Maverick provide persuasive authority for this Court not to apply *Dine Citizens*, *Klamath Irrigation*, and now, *Backcountry Against Dumps*.

---

[2] The Tribe more fully addresses the inapplicability of the pre-*Dine Citizens* and distinguishable out-of-circuit cases in its reply in support of limited intervention, Dkt. 79 at 2-4. Maverick also briefly cites *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003) (a case that Maverick claims was wrongly decided, *see* Dkt. 75 at 13, 16-17, 19-20, 25). Dkt. 96 at 6. But *Artichoke Joe's* "d[id] not address the [Rule 19] issue" presented there because it was "raised only in an amicus brief." 353 F.3d at 719 n.10.

Maverick engages in hyperbole suggesting that the Tribe proposes a framework that precludes review in every APA case where a Tribe asserts an interest. Clearly that is not correct, as the Tribe bears the burden to establish that it has protectable interests at stake, and that the Tribe's interests in the outcome of the litigation are not aligned with those of the Federal Defendants. Moreover, the Ninth Circuit distinguished in *Dine Citizens* between "a suit seeking only to enforce compliance with administrative procedures," in which an absent party has no legally protected interest at stake, versus "procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted." 932 F.3d at 852*; see also Klamath Irrigation* 48 F.4th at 943–44. Here, Maverick's claims clearly fall into the latter category, because its legal arguments challenge the validity of *all* the compacts in Washington and would necessarily impair the Tribes' existing rights in those compacts, as evident from the very broad relief requested in Maverick's FAC.

### III. UNDER MAVERICK'S ERRONEOUS INTERPRETATION OF RULE 19, A REAL CONFLICT PREVENTS THE UNITED STATES FROM ADEQUATELY REPRESENTING THE TRIBE, MANDATING DISMISSAL PER RULE 19.

Maverick incorrectly contends that the Federal Defendants adequately represent the Tribe in the absence of a "conflict of interest" and that the conflict must arise in the context of the litigation itself (Dkt. 96 at 7). As discussed above, this misconstrues the standard for inadequate representation. But even assuming, *arguendo,* that a direct and present conflict of interest were required, the sweeping relief Maverick seeks, including a declaration that the Tribe's Compact and its amendments are "void, were not validly entered into, and are not in effect," and its class III gaming activities "violate IGRA." First Amended Complaint ("FAC"), Dkt. 66 at 40, ¶ 207, and narrowed to an order allowing Maverick to offer the same games that the Tribes offer, or to prohibit the Tribes from offering the games that Maverick is prohibited from offering (Dkt. 96 at 15), produces such a conflict in context of the instant litigation.

In Maverick's attempt to avoid dismissal, it asks this Court to ignore the sweeping relief it seeks in its First Amended Complaint ("FAC"), including *inter alia,* a declaration that the Tribe's compact and its amendments are "void, were not validly entered into, and are not in effect," and a declaration that the "Tribes' class III gaming activities violate IGRA." FAC, Dkt. 66 at 40, ¶ 207. Instead, Maverick asks this Court to only consider relief that either allows Maverick and the Washington Tribes to offer the same games, or not offer the same games (Dkt. 96 at 15). Neither of these forms of requested relief avoids dismissal under Rule 19.

First, Granting Maverick the relief it requests would result in a conflict resembling the conflict the Tribe had with the United States in the 1990s. Mot. at 4-9. The Tribe's legal position is, as in the 1990s, that enforcement action cannot be taken against a Tribe for offering games without a compact when the Tribe has requested a compact and negotiated in good faith, 25 U.S.C. § 2710(d). *See United States v. Spokane Tribe*, 139 F.3d 1297, 1298 (9th Cir. 1998) (enforcement action against a Tribe for operating in the absence of a compact in effect is inappropriate where the Tribe has done everything it is required to do in pursuit of a compact). The Tribe maintains that its inherent authority to govern gaming activities on its Indian lands predates IGRA and colonization under *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216, 221–22 (1987). So, if the Court granted the narrowed relief now proposed by Maverick, the Tribe will advocate that the invalidation of the Compact or Amendment does not prevent the Tribe from continuing to offer sports betting or any other form of Class III gaming. In contrast, the consistent position of the United States is that IGRA prevents a Tribe operating Class III gaming that is not authorized by a tribal/state gaming compact in effect. *See, e.g.*, *Spokane Tribe*, 139 F.3d at 1298; *United States v. Approx. $ 10,128,847.42 Seized from US Bank Account*, 2018 WL 6381150 (D. N.M. 2018); *Fort Sill Apache Tribe v. Nat' Indian Gaming Comm'n*, 459 F.Supp.3d 256 (D. D.C. 2020). If the Court proceeds to consider granting

Maverick such relief, the conflict between the Shoalwater Bay Tribe and the United States regarding gaming on the Tribe's lands will arise in the context of the instant litigation. Yet, Maverick asserts the "Tribe has not come anywhere close to articulating a conflict of interest with the federal defendants that would render them inadequate representatives in this action" (Dkt. 96 at 7). It is not speculative or hypothetical. It is real and mandates dismissal, even under Maverick's narrow view of Rule 19. If indeed this litigation proceeds with the refined relief now proposed by Maverick, the Tribe and only the Tribe will be advocating that the invalidation of the compact does not prevent the Tribe from operating sports-betting or any other form of Class III gaming. Maverick cannot secure relief from this Court that prevents the Tribe from offering sports-betting or any other form of Class III gaming with a judgment against only the State and Federal Defendants, such relief would be horribly incomplete for Maverick as the Tribe would continue operating while Maverick could not.

Second, Maverick argues that the Tribe does not have to be bound by the judgment to obtain relief because it asks the Court to enjoin the State Defendants from applying to Maverick "Washington's criminal prohibitions against the forms of class III gaming that it permits Indian tribes in the State to offer." Dkt. 96 at 15. But that relief simply isn't available to remedy Maverick's claims. Neither Maverick's claim that the Compacts violate IGRA, nor its assertion that IGRA violates anti-commandeering principles, provides a basis for enjoining state law, because those claims allege that IGRA or the Compacts are invalid. The Court simply cannot leave in place the laws and agreements Maverick claims to be invalid, while enjoining the enforcement of other gambling laws which Maverick does not challenge. Nor is Maverick's equal protection claim properly remedied by an injunction against the application of state criminal laws to Maverick. As the Supreme Court has explained: "a court theoretically can cure that unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for

all. . .  If the statute contains a severability clause, the Court typically severs the discriminatory exception or classification, and thereby extends the relevant statutory benefits or burdens to those previously exempted, rather than nullifying the benefits or burdens for all. *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2354 (2020) (collecting cases); *accord Califano v. Westcott*, 443 U.S. 76, 89-90 (1979). "In light of the presumption of severability, the Court generally does the same even in the absence of a severability clause. The Court's precedents reflect that preference for extension rather than nullification." *Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. at 2354. "The choice between these outcomes is governed by the legislature's intent, as revealed by the statute at hand." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 (2017) (quoting *Levin v. Comm. Energy, Inc.*, 560 U.S. 413, 427 (2010)).

Here, the Washington Legislature enacted a law allowing Indian Tribes to offer sports-betting.  That law provides a narrow exception to the general statutory burden that gambling in Washington State is illegal, with exceptions to be allowed only by a super-majority of the Legislature and be narrowly construed. Wash. Const. Art. II, Sec. 24.  Assuming only for purposes of argument that the State's exception for Indian Tribes is found invalid (which it clearly is not), the proper remedy would be to strike the exception and extend the regulatory burden – i.e., the ban on sports-betting – to everyone in Washington State. The same is true of other Class III gaming that Indian Tribes can conduct under their Compacts, but that other entities in Washington State may not conduct on the same terms, for essentially the same reasons.  The relief proposed by Maverick, as noted by *Amici* Tribes, Dkt. 87-1 at 19 n.10, would instead require the Court to strike down Washington's general prohibition on gambling, which would effectively legalize all gambling by any person or entity, directly contrary to the Legislature's prohibition on all gaming not expressly permitted, and such relief goes well beyond the appropriate role of this Court.

Nor does Rule 19 require the Court to determine what remedy would be appropriate if Maverick prevailed. Quite the opposite. As the Ninth Circuit just emphasized, "the question at this stage must be whether the litigation *threatens* to destroy an absent party's legal entitlements." *Backcountry Against Dumps* 2022 WL 15523095, at *2 (emphasis in original) (quoting *Diné Citizens* 932 F.3d at 860). Because the remedy here *could* (and indeed would) be invalidation of the Tribe's compact, that test is met, and this case must be dismissed.

### IV. ALL FOUR FACTORS CONSIDERED UNDER RULE 19(B) WEIGH IN THE TRIBE'S FAVOR; THE TRIBE'S INTEREST IN MAINTAINING SOVEREIGN IMMUNITY LEAVES VERY LITTLE ROOM IN BALANCING THE FOUR FACTORS OF RULE 19(B).

Equity and good conscience favor dismissal here. The Tribe's sovereign immunity[3] is critical to this analysis. As the Ninth Circuit recently reaffirmed, "a wall of circuit authority requir[es] dismissal when a Native American tribe cannot be joined due to its assertion of tribal sovereign immunity." *Klamath,* 48 F.4th at 947; *see also, e.g.*, *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) (dismissing suit on Rule 19 grounds after concluding that Tribe could not be joined due to its sovereign immunity).

The Rule 19(b) factors confirm the need to dismiss. The first factor "largely duplicates" the required-party analysis under Rule 19(a) and thus favors dismissal for the reasons above. *American Greyhound Racing*, 305 F.3d at 1025. Under the second factor, relief cannot be shaped to avoid prejudice. Just like in *American Greyhound Racing*, Maverick seeks in this case nothing short of a "declaration that the gaming conducted by the tribes pursuant to their compacts is illegal." *Id.*; *see* FAC ¶¶ 189, 207(4).[4] And under the third factor, a judgment in the Tribe's absence would be

---

[3] Maverick provides a spurious argument that the Tribe's limited intervention constitutes a waiver of its immunity such that Rule19 is no longer at issue. Dkt. 96 at 17-18. This Court's Order granting limited intervention clearly is with the understanding that the Tribe's immunity remains intact, and Rule 19 should be considered because the Tribe has not waived its immunity. Such procedure has commonly been affirmed by the Ninth Circuit, including in *Dine Citizens*, 932 F.3d at 850, as the appropriate mechanism to bring the issue forward.

[4] As explained above, Maverick's new request that this Court instead strike down Washington's general prohibition on gaming "would be too drastic and yet insufficient at the same time." *American Greyhound,* 305 F.3d at 1025.

inadequate because if Maverick achieves what it seeks, the Tribe's "protectible interests [will be] impaired." *American. Greyhound Racing,* 305 F.3d at 1025.

Maverick's purported lack of an alternative remedy does not outweigh these considerations. "[V]irtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether [an alternate] remedy is available, if the absent parties are Indian tribes invested with sovereign immunity." *Diné Citizens*, 932 F.3d at 857. Moreover, dismissal does not leave Maverick without recourse here. As the Tribe set forth, Dkt. 85 at 12, and as *Amici* Tribes observe, Maverick retains options including through enactments of Congress or the State of Washington. Dkt. 87-1 at 27.

Nor does the Tribe's position produce "startling" implications. Dkt. 96 at 27. As noted above, review remains available in Administrative Procedure Act ("APA") cases—even IGRA ones—that are procedural and prospective, such as a suit "to require adherence to certain procedures in entering or extending gaming compacts with the tribes." *American. Greyhound Racing*, 305 F.3d at 1026. But this case is not "merely procedural." *Klamath,* 48 F.4th at 944. Where, as here, a suit seeks "to prevent new compacts [and invalidate] existing ones," Rule 19 applies. *America. Greyhound Racing*, 305 F.3d at 1026; *see also, e.g.*, *Diné Citizens*, 932 F.3d at 852.

In short, Maverick seeks sweeping relief – a declaration that all tribal gaming activity be declared "illegal." FAC ¶¶ 189, 207(4). Yet Maverick realizes it cannot seek this from suing the Tribe directly due to sovereign immunity. To circumvent that immunity, it sues other parties. However, Rule 19 is intended, *inter alia,* to stop precisely this kind of gamesmanship. And this is why the Ninth Circuit has consistently determined that equity and good conscience favor dismissal in cases such as this one.

## V. CONCLUSION

The stated purpose of Maverick's lawsuit is to void the Tribal-State gaming compacts entered into between the non-party Washington Tribes and the State of Washington. The Tribe has not waived its sovereign immunity from the lawsuit. As a required party that cannot be joined to the FAC, the case cannot in equity and good conscience proceed in the Tribe's absence. Accordingly, for the reasons set forth herein and in the Tribe's Motion, Dkt. 85, the Tribe's reply in support of its motion for limited intervention, Dkt. 79, the Federal Defendants' and State Defendants' responses in support, Dkts. 94 and 95, and the seventeen *Amici* Tribes' brief in support of the Tribe's Motion, Dkt. 87-1, the Tribe respectfully requests this Court to embrace the analysis of the twenty sovereign governments that have filed briefs to this Court and dismiss Maverick's claims in their entirety pursuant to Rule 12(b)(7) and Rule 19.

Respectfully submitted this 28th day of October, 2022.

s/ *Scott D. Crowell*
SCOTT CROWELL (WSBA No. 18868)
CROWELL LAW OFFICE-TRIBAL ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
Fax: (509) 290-6953
Email: scottcrowell@hotmail.com

LAEL ECHO-HAWK (WSBA No. 34525)
MThirtySix, PLLC
700 Pennsylvania Avenue SE
The Yard – 2nd Floor
Washington, D.C. 20003
Telephone: (206) 271-0106
Email: Lael@MThirtySixPLLC.com

*Attorneys for Limited Intervenor Shoalwater Bay Tribe*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I filed the foregoing REPLY BRIEF with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in this matter.

DATED: October 28, 2022

s/ *Scott D. Crowell*
SCOTT CROWELL (WSBA No. 18868)
CROWELL LAW OFFICE-TRIBAL ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
Fax: (509) 290-6953
Email: scottcrowell@hotmail.com
