UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAVERICK GAMING LLC,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES OF AMERICA et al.,<br><br>    Defendants. | CASE NO. 3:22-cv-05325-DGE<br><br>ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) |

**I  INTRODUCTION**

This matter comes before the Court on Limited Intervenor Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation's ("Shoalwater") motion to dismiss (Dkt. No. 85) for failure to join a required party pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19. Having reviewed the briefing of the parties, the Court finds that Shoalwater is a required party that cannot be joined and therefore GRANTS Shoalwater's motion.

## II       BACKGROUND

Plaintiff Maverick Gaming LLC ("Maverick") brings suit to challenge Washington state's tribal gaming monopoly.  (*See* Dkt. No. 66 at 4.)

**A. Legal Framework**

The Indian Gaming Regulatory Act ("IGRA") was passed in 1988 after the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), which overturned existing state laws regulating gaming on tribal lands.  *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1018 (9th Cir. 2002).

IGRA creates a classification system for different kinds of gaming.  "Class I includes social games for prizes of minimal value and traditional forms of Indian gaming. Class II includes bingo, similar games, and certain card games.  Class III comprises all games not in classes I or II. Slot machines, keno, and blackjack are Class III games." *Id.* at 1019 (internal citations omitted).  IGRA further provides that Class III gaming is permitted on tribal lands only where such activities are authorized by the tribe, "located in a State that permits such gaming for any purpose by any person, organization, or entity, and . . . conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State."  25 U.S.C. § 2710(d).  Failure to operate pursuant to these provisions may subject a tribe to criminal liability under multiple statutes, including IGRA.  *See, e.g.*, 18 U.S.C. § 1166.

Once a tribe and a state have entered into a Tribal-State compact, they must submit the compact to the Secretary of Interior ("Secretary") for approval.  *Amador Cnty., Cal. v. Salazar*, 640 F.3d 373, 377 (D.C. Cir. 2011).  The Secretary may "approve the compact; he may disapprove the compact, but only if it violates IGRA or other federal law or trust obligations; or

he may choose to do nothing, in which case the compact is deemed approved after forty-five days" to the extent the compact complies with IGRA. *Id.*

Washington makes offering most forms of gaming a crime. *See* Wash. Rev. Code § 9.46.222. Nonetheless, starting in the 1990s the State slowly agreed to gaming compacts with Washington's federally recognized tribes. (Dkt. No. 87-1 at 11.) Tribal gaming provides significant economic benefits to the tribes themselves and also the State and local communities. *See generally The Economic & Community Benefits of Tribes in Washington*, Wash. Indian Gaming Ass'n, (May 2022), https://bit.ly/3RGO8Ri.

In March 2020, the Washington legislature passed a new bill permitting sports betting at tribal casinos and gaming facilities. *See* Wash. Rev. Code § 9.46.0368. Sports betting otherwise remains illegal in the State. The State has steadily entered into amended compacts with Washington's tribes permitting them to operate sports betting operations and the Secretary has approved these amended compacts. (Dkt. No. 66 at 17–19; *see generally* Dkt. No. 67.)

**B. Procedural Background**

Maverick "owns and operates 18 cardrooms in Washington and owns several hotel/casinos in Nevada and Colorado." (*Id.* at 4.) Maverick hopes to expand its gaming operations further in Washington but alleges that "it is unable to proceed because of Washington's criminal prohibitions of most forms of class III gaming." (*Id.*) Maverick's complaint alleges the Secretary acted unlawfully when they approved Washington's compact amendments for sports betting because these amendments violated IGRA and the Fifth Amendment's equal protection clause. (Dkt. No. 66 at 33–34.) Maverick brings suit against the United States Department of Interior as well as responsible federal officials (together the "United States") and various state officials ("Washington State Defendants"). (*See generally id.*)

Maverick filed its initial complaint on January 11, 2022. (Dkt. No. 1.) On July 5, 2022, Maverick filed an amended complaint. (Dkt. No. 66.) Shoalwater moved to intervene on August 3, 2022 (Dkt. No. 68) and the Court granted Shoalwater's motion for limited intervention on September 29, 2022 (Dkt. No. 84). On October 3, 2022, Shoalwater filed its motion to dismiss for failure to join a required party. (Dkt. No. 85.) A group of federally recognized Indian nations ("Amici" or "Tribes") moved to submit an amicus brief (Dkt. No. 87), which this Court granted (Dkt. No. 91). On October 24, 2022, the federal government filed its response to Shoalwater's motion to dismiss. (Dkt. No. 94.) The United States supported the motion but disagreed with some of the bases for the motion. (*See id.* at 6.) The Washington State Defendants also filed a response in support of the motion. (Dkt. No. 95.) Maverick filed its response in opposition to the motion (Dkt. No. 96) on that same day, and Shoalwater filed a timely reply on October 28, 2022 (Dkt. No. 97).

### III    DISCUSSION

**C. Legal Standard**

A party may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) by challenging the plaintiff's "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). In evaluating whether to grant a motion pursuant to Rule 12(b)(7), a court must first "determine whether a nonparty should be joined under Rule 19(a)." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). If the court determines that a nonparty is a required party, "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* If it is not feasible to join the absent party, "the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an

'indispensable party' such that the action must be dismissed." *Id.*; *see also Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 48 F.4th 934, 943 (9th Cir. 2022).

The Court also accepts allegations in Plaintiff's complaint as true and construes the complaint in Plaintiff's favor.  *See Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019); *see also Her Majesty Queen in Right of Canada as Represented by Minister of Agric. & Agri-Food v. Van Well Nursery, Inc.*, No. 2:20-CV-00181-SAB, 2021 WL 131261, at *1 (E.D. Wash. Jan. 13, 2021).

### D. Rule 19(a) Analysis

The Court agrees Shoalwater is a required party.

An absentee is a required party if "in that person's absence, the court cannot accord complete relief among existing parties; or . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1).

Shoalwater argues it is a required party because it "has a federal right to conduct Class III gaming on its Reservation, rights in its compact with Washington State that federal law expressly recognizes, and the sovereign right to immunity from unconsented suit." (Dkt. No. 85 at 22.) Additionally, Shoalwater asserts that "complete relief is not available where the absent party is a tribe that is a signatory to the agreement at issue because the judgment would not be binding on the tribe, which could assert its rights under the agreement." (*Id.* at 22–23.)

Maverick, in rebuttal, argues that Shoalwater's interest in conducting Class III gaming is not sufficient to make it a required party and that the United States can adequately represent its interests in this litigation. (Dkt. No. 96 at 11–17.)

The named defendants and Amici support Shoalwater's position. The United States, for example, filed a response noting controlling Ninth Circuit precedent in *Dine* and *Klamath* support a finding that Shoalwater is a required party. (Dkt. No. 94 at 6.) However, "the United States [also] disagrees with the ruling in *Dine Citizens* and reserves the right to assert in future proceedings that the United States is generally the only required and indispensable defendant in APA litigation challenging federal agency action." (*Id.*) The Washington State Defendants and Amici argue Shoalwater is a necessary party and no currently named party can adequately represent their interests. (*See* Dkt. Nos. 95 at 3–4; 87-1 at 15–25).

Ninth Circuit case law is "clear that an absent party may have a legally protected interest at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted." *Dine*, 932 F.3d at 852. And the Ninth Circuit has repeatedly held that tribes are necessary parties in third party suits challenging federal agency actions where the suits may negatively implicate tribal economic or sovereign interests. *See, e.g.*, *Backcountry Against Dumps v. Bureau of Indian Affs.*, No. 21-55869, 2022 WL 15523095, at *1 (9th Cir. Oct. 27, 2022); *Klamath*, 48 F.4th at 944; *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th Cir. 2020); *Dine*, 932 F.3d at, 852–53*; cf. Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) (holding that Clean Water Act citizen suit against electric company operating within tribal lands implicated "sovereign interests in self-governance and the preservation of treaty-based fishing rights throughout the Deschutes River Basin."); *Am. Greyhound Racing*, 305 F.3d at 1023 (determining that tribal compacts authorizing casino-type gaming represent a legally protected interest for purposed of Rule 19).

The Court agrees with Shoalwater that, based on circuit precedent, it has a legally protected interest and the outcome of this action may impair that interest if it was not included as

a party.  Shoalwater and the Amici highlight the importance of their gaming compacts and the revenue that such compacts provide for Washington's federally recognized tribes.  (*See* Dkt. Nos. 85 at 16; 87-1 at 11–14).  Amici also note the long history of tribal gaming and associated employment benefits for the tribes and the surrounding community.  (Dkt. No. 87-1 at 11–13.)  Given this history, and the economic and sovereign rights implicated by Maverick's suit, the Court agrees that Shoalwater is "necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."  *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002)

In response, Maverick does not directly dispute Shoalwater has a legally protected interest that could be impaired by the instant litigation.  Rather, Maverick argues Shoalwater's interests won't be impaired by this suit because the tribes are adequately represented by the United States.[1]  (Dkt. No. 96 at 5.)

Maverick asserts that "federal courts have uniformly held that the federal government adequately represents an Indian tribe in IGRA challenges like this one when it 'share[s] the Tribe's position . . . that [a] Compact is consistent with [federal law].'"  (Dkt. No. 96 at 12.)  Maverick also points to the United States' repeated position that the federal government may adequately represent tribal interests in challenges to IGRA.  (*Id.*)

"As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit."  *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (quoting *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir.1999)).  An existing party may adequately represent an absent one

---

[1] Maverick does not contest, and the Court agrees, that the State cannot adequately represent Shoalwater's interests in this litigation.  *See Am. Greyhound Racing*, 305 F.3d at 1023 n.5.

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 7

if the present party's interests are such that they will "undoubtedly" make all of the arguments of the absent one, if the present party is capable and willing to make such arguments, and if the absent party would not "offer any necessary element to the proceedings that the present parties would neglect." *Klamath*, 48 F.4th at 944.

The Court is convinced that none of the parties can adequately represent Shoalwater's interests in this lawsuit. Shoalwater and the United States' interests clearly diverge under *Dine* and its progeny. In *Dine*, conservation groups sued the federal government challenging environmental analyses under the National Environmental Policy Act ("NEPA") conducted by federal agencies as part of their approval of the continued operation of a mine and power plant owned by the Navajo Nation. 932 F.3d at 848–50. The Navajo Transitional Energy Company ("NTEC"), a Navajo Nation owned company that owned the mine at issue, moved to intervene and asserted, like in the instant matter, that it was a necessary party and could not be joined because of its sovereign immunity. *Id.* at 850. The Ninth Circuit ultimately upheld the district court's dismissal for failure to join a required party. *Id.* at 848. In doing so, the Ninth Circuit analyzed whether the federal government could adequately represent the NTEC's interests in the suit such that they were not a required party. The Ninth Circuit concluded that "[a]lthough Federal Defendants have an interest in defending their decisions, their overriding interest . . . must be in complying with environmental laws such as NEPA and the ESA. This interest differs in a meaningful sense from NTEC's and the Navajo Nation's sovereign interest in ensuring that the Mine and Power Plant continue to operate and provide profits to the Navajo Nation." *Id.* at 855.

The Ninth Circuit further elaborated that though the federal government maintained the same litigation position as the Navajo Nation, upholding environmental analyses supporting the

continued operation of the mine and power plant, this position could change if the court found the environmental analyses to be inadequate. *Id.*  The Ninth Circuit placed great weight on how decisions by the courts could implicate the Navajo Nation's "sovereign interests" and determined that such interest could not be properly represented by the federal government or state defendants. *Id.* at 855–56. Ultimately, the Ninth Circuit concluded that "while Federal Defendants have an interest in defending their own analyses that formed the basis of the approvals at issue, here they do not share an interest in the *outcome* of the approvals—the continued operation of the Mine and Power Plant." *Id*. at 855 (emphasis in original).

This emphasis on the inadequacy of the federal government, despite its trust relationship, to adequately represent tribal sovereign interests, particularly where vested property or contractual rights are at issue, has been reiterated in subsequent opinions. *See, e.g.*, *Backcountry*, 2022 WL 15523095, at *1; *Klamath*, 48 F.4th at 944–45.  Indeed, the lower court in *Backcountry* noted specifically that "Federal Defendants' overriding interest must be in complying with environmental laws, an interest that is meaningfully different from the Tribe's sovereign interest in ensuring that the Project is realized." *Backcountry Against Dumps v. United States Bureau of Indian Affs.*, No. 20-CV-2343 JLS (DEB), 2021 WL 3611049, at *8 (S.D. Cal. Aug. 6, 2021).

Here, as in *Dine*, Shoalwater asserts that the suit threatens their sovereign interests. (Dkt. No. 85 at 30.) Granting the relief Maverick seeks would "eviscerate[] the Tribe's 'very ability to govern itself, sustain itself financially, and make decisions about its own' gaming operation." (*Id.*) *Shoalwater* also attests to prior tensions with the State and federal government over permitting casino gaming on tribal lands. (*See, e.g.*, Dkt. No. 86-1, 86-2).

Maverick attempts to distinguish this recent and binding authority.  Maverick argues that *Dine* and its progeny are distinguishable because these cases involved statutes that required the

federal government to take actions in the interest of the general public, not the tribes (Dkt. No. 96 at 13) and any conflict of interest that may emerge after this Court makes a decision is irrelevant to the Rule 19 analysis (*Id.* at 15). Maverick also asserts that the other cases cited by Shoalwater in support of its motion involved "an actual conflict between the federal government and the absent tribe. (*Id.* at 16.)

The Court is not persuaded that *Dine* and the other cases cited by Shoalwater are distinguishable. As discussed above, *Dine*'s analysis of the conflict between federal and tribal sovereign interests appears to apply in this matter. While the federal government has an interest in upholding IGRA and IGRA is intended to promote "tribal economic development, self-sufficiency, and strong tribal governments," 25 U.S.C. § 2702(1), this does not mean that the federal government and the tribes' interests are aligned sufficiently such that the federal government can adequately represent the tribes' interests. *See Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1936 (2022) ("Because *Cabazon* left certain States unable to apply their gaming regulations on Indian reservations, some feared the Court's decision opened the door to a significant amount of new and unregulated gaming on tribal lands. In 1988, Congress sought to fill that perceived void by adopting . . . IGRA."). As Shoalwater notes, "it was IGRA that the United States looked to for authority to shutter the Tribe's gaming operation, highlighting the United States' view that its overriding obligation to ensure compliance with federal law supersedes its general trust responsibility to the Tribe." (Dkt. No. 97 at 9–10.) Indeed, the United States expressly details this conflict in its brief by noting that IGRA balances efforts to promote tribal self-sufficiency with "a regulatory and supervisory role for the states and the federal government to prevent the infiltration of 'organized crime and other corrupting influences.'" (Dkt. No. 94 at 3.) And though the federal government maintains an interest in

defending its own analysis that formed the basis of its decision to approve the sports-betting compact amendments, it does not share an interest in the *outcome* of the continued approval of the sports-betting compact amendments—the continued operation of sports-betting at tribal casinos—which Shoalwater asserts is a matter of sovereign authority.  (*See* Dkt. No. 97 at 12) ("The Tribe maintains that its inherent authority to govern gaming activities on its Indian lands predates IGRA and colonization under [*Cabazon*].").

Additionally, the Court finds that Shoalwater presents actual, not hypothetical or unknown conflicts with the United States.  As Amici note, it is precisely because the United States is obligated to uphold federal law that a conflict might arise.  (*See* Dkt. No. 87-1 at 21–22.)  And there is a documented history of the federal government acting as an adverse party to Shoalwater in the absence of a tribal compact with Washington that permits Class III gaming.  (*See* Dkt. No. 86-1.)  The Court is also cognizant that changes in policy or personnel within the federal government may lead to changes in approach to federal litigation strategy.  *See, e.g.*, *Mashpee Wampanoag Tribe v. Bernhardt*, 466 F. Supp. 3d 199, 210–11 (D.D.C. 2020); *see also Connecticut v. United States Dep't of the Interior*, 344 F. Supp. 3d 279, 292 (D.D.C. 2018).

In sum, the Court concludes that Shoalwater is a required party with real interests at stake in this litigation and that the current parties to this suit will not adequately represent those interests.

**E.  Shoalwater Cannot be Joined to this Litigation**

The Court finds that Shoalwater has not waived its sovereign immunity and cannot be joined to this action.

"Native American tribes are 'domestic dependent nations that exercise inherent sovereign authority.'"  *Klamath*, 48 F.4th at 945–46 (quoting *Michigan v. Bay Mills Indian Comm.*, 572

U.S. 782, 788 (2014)); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (noting that "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers."). Absent an express waiver by Congress or a clear and unequivocal waiver by the tribe, tribes retain sovereign immunity from suit. *See Deschutes*, 1 F.4th at 1159; *Dine*, 932 F.3d at 856.

Shoalwater has expressly indicated that it has not waived its sovereign immunity. (Dkt. No. 86 at 2.) It is well established in this Circuit that tribes may intervene for the limited purpose of asserting they are required parties without waiving their sovereign immunity. *See Backcountry*, 2022 WL 15523095, at *1; *Klamath*, 48 F.4th at 942; *Dine*, 932 F.3d at 850. The Court also notes this procedure has been accepted by courts in sister circuits. *See, e.g.*, *MGM Glob. Resorts Dev., LLC v. United States Dep't of the Interior*, No. CV 19-2377 (RC), 2020 WL 5545496, at *6 (D.D.C. Sept. 16, 2020) (approving tribal intervention for the limited purpose of asserting Rule 19 defense without finding a waiver of tribal sovereign immunity); *Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471 F. Supp. 2d 295, 312 (W.D.N.Y. 2007) (discussing propriety of intervening for the sole purpose of seeking dismissal based on sovereign immunity).

Maverick analogizes to cases touching on state waiver of sovereign immunity (*see* Dkt. No. 96 at 17–18) to argue that permitting such a procedural maneuver would produce unfair results. These cases are distinguishable, however. The Supreme Court's decision in *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) deals with waiver of sovereign immunity in cases of removal to federal court, not intervention. *Id.* at 619. Though the Supreme Court mentioned in passing that a state may waive sovereign immunity by intervening in a case, *see id.*, the case cited in support of this principle involved interpleaded funds and the "the state of

Rhode Island appeared in the cause and presented and **prosecuted a claim to the fund in controversy**, and thereby made itself a party to the litigation to the full extent required for its complete determination." *Clark v. Barnard*, 108 U.S. 436, 448 (1883) (emphasis added).  It was not the mere intervention of the state that merited waiver of sovereign immunity, but rather the state's active prosecution of claims over disputed funds that led to the waiver.

As such, the Court finds that Shoalwater did not waive its sovereign immunity from suit by intervening for the limited purpose of raising a Rule 19 defense and thus cannot feasibly be joined in this litigation.

### F. Rule 19(b) Analysis

Since the Court has determined Shoalwater is a required party that cannot feasibly be joined to this litigation, the Court must determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  The Court must consider four factors: "1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum."  *Dawavendewa*, 276 F.3d at 1161–62.

"[T]he first factor of prejudice, insofar as it focuses on the absent party, largely duplicates the consideration that made a party necessary under Rule 19(a)." *Am. Greyhound Racing*, 305 F.3d at 1024–25.  As discussed, the suit poses a substantial risk to Shoalwater's sovereign interests.  If Maverick were to prevail in seeking to invalidate the tribal compacts, the prejudice to Shoalwater would be substantial.

The second factor also weighs in favor of dismissal.  Maverick seeks a declaratory judgment that the tribal compacts permitting Class III gaming such as sports betting are

unconstitutional and therefore void. (Dkt. No. 66 at 40.) Maverick also seeks a declaratory judgment that "the Tribes' class III gaming activities violate IGRA." (*Id.*) Such relief cannot be tailored to lessen the prejudice faced by Shoalwater or other absent tribes—Maverick seeks nothing less than a wholesale revocation of the tribes' ability to operate casino gaming facilities. As the Tribes note, such relief threatens not only tribal revenue and contracts, but also tribal and non-tribal employment and other businesses. (*See* Dkt. No. 87-1 at 18.)

The third factor also favors Shoalwater. To afford Maverick the relief it seeks, the Court would not only have to find that tribal gaming violates IGRA and the Equal Protection Clause, but also that the State's criminal laws prohibiting Class III gaming are unconstitutional. (*See* Dkt. No. 66 at 39–40.) "A statute's severability is determined under state law." *Arce v. Douglas*, 793 F.3d 968, 989 (9th Cir. 2015). In Washington, whether a law is severable depends on "whether the constitutional and unconstitutional provisions are so connected . . . that it could not be believed that the legislature would have passed one without the other." *League of Educ. Voters v. State*, 295 P.3d 743, 752 (Wash. 2013). The Court agrees with Shoalwater that, assuming the Court determined the Washington law permitting sports betting at tribal operated casinos was unconstitutional, the proper remedy would be to strike the provision, not extend intrusive injunctive relief. Washington's broader regulatory scheme criminalizes gambling. *See* Wash. Rev. Code § 9.46.222   In authorizing sports betting on a limited basis, the Washington legislature emphasized that "[i]t has long been the policy of this state to prohibit all forms and means of gambling except where carefully and specifically authorized and regulated. The legislature intends to further this policy by authorizing sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington." H. Com. & Gaming 2638, 66th Leg., Reg. Sess. (Wash. 2020). The remedy Maverick seeks runs in contrast to this legislative intent to

limit gambling and would run beyond this Court's jurisdiction.  Thus, the relief the Court could provide to Maverick would not adequately remedy its injury because it would still be precluded from operating sports betting or other Class III gambling operations.

The Court acknowledges that the fourth factor weighs in Maverick's favor.  There is no alternate judicial forum in which Maverick could seek the relief it requests.  However, the Court faces a "'wall of circuit authority' requiring dismissal when a Native American tribe cannot be joined due to its assertion of tribal sovereign immunity." *Klamath*, 48 F.4th at 947 (quoting *Deschutes*, 1 F.4th at 1163).  "The balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity." *Deschutes*, 1 F.4th at 1163 (quoting *Jamul Action Comm.*, 974 F.3d at 998).

The Court thus finds that the action should not proceed in equity or good conscience.

### G. The Public Rights Exception Does Not Apply

Finally, the Court finds that the public rights exception does not apply.

"The public rights exception is a limited 'exception to traditional joinder rules' under which a party, although necessary, will not be deemed 'indispensable,' and the litigation may continue in the absence of that party. *Dine*, 932 F.3d at 858 (quoting *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988)).  The exception is applied in cases that seek "'to vindicate a public right'" and may apply where litigation "could 'adversely affect the absent parties' interests,' but 'the litigation must not destroy the legal entitlements of the absent parties' for the exception to apply." *Id.* (quoting *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996)).

The Court is persuaded that the threat posed by the instant suit to Shoalwater's legal entitlements is sufficient such that the public rights exception should not apply. *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992) ("Because of the threat to the absent tribes'

legal entitlements, and indeed to their sovereignty, posed by the present litigation, application of the public rights exception to the joinder rules would be inappropriate.") Maverick seeks to invalidate tribal gaming compacts, an acknowledged legal entitlement. As the Ninth Circuit has noted, on a Rule 12(b)(7) motion "the question at this stage must be whether the litigation threatens to destroy an absent party's legal entitlements." *Dine*, 932 F.3d 843, 860 (9th Cir. 2019); *see also Backcountry*, 2022 WL 15523095 at *1.[2]

## IV     CONCLUSION

Accordingly, and having considered Shoalwater's motion (Dkt. No. 85), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Shoalwater's motion is GRANTED and Maverick's claims are dismissed without prejudice.

Dated this 21st day of February, 2023.

David G. Estudillo
United States District Judge

---

[2] The Court is also not convinced this litigation is brought in the public interest. Maverick specifically details in the complaint how invalidation of the tribal compacts would "increas[e] Maverick's commercial revenue." (Dkt. No. 66 at 32.)